United States District Court
District of Delaware

Hillard M. Winn                          |

Defendant · Petitioner below             | Docket No. 22, 2007

                                         | Case No. 0603002909

V.                                       | No.# _____

Warden Terry Phelps                      |                 08 - 422

Respondent                               |

Appendix to
Memorandum in support of Habeas Corpus Petition

2008 JUL -9  PM 12: 47

7 / 2 / 08

Mr. Hillard M. Winn Pro se
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

Titles:                    Table of Content                    Pages:


Superior Court Docket                                          A1-A8

Arrest Warrant / Probable Cause Affidavit                      A9 - A13

Ofc. Provenza's Police Report                                  A14 - A22

Grand Jury's indictment                                        A23 - A25

Ofc. Provenza's trial testimony                                A26 - A31

Witness Duane Rollins testimony                                A32

State's Request / Defense Objection to lesser included offense
instruction                                                    A33 - A37

Court's decision granting lesser offense instruction           A38

State's Closing Summation                                      A39 - A42

Defense Closing Summation                                      A43 -

The Court's Jury instructions                                  A44 - A50

Motion for Acquittal / Mistrial                                A54 - A75

Amendment to Motion for Acquittal / Mistrial                   A59 - A60

State's Response to Motion for Acquittal / Mistrial            A61 - A64

Defense Reply to State's Response to Acquittal / Mistrial      A65 - A71

The Court's Order denying Motion Acquittal / Mistrial          A72 - A75

Appeal to Supreme Court                                        A76 - A146

Supreme Court Order denying appeal                             A147 - A150

Motion for Reargument                                          A151 - A154

Supreme Court Order denying reargument                         A155

State Habeas Corpus Petition                                   A156 - A184

```
              SUPERIOR COURT CRIMINAL DOCKET              Page    1
                    ( as of  03/06/2008 )
```

```
State of Delaware v.  HILLARD M WINN                      DOB: 04/09/1965
State's Atty: , Esq.                        AKA: HILLIARD WINN
Defense Atty: , Esq.                             HILLIARD WINN
                                                 HILLIARD M WINN
                                                 HILLARD CLEMBIRD
                                                 HILLARD MCKINLEY
                                                 WILLARD WINN
```

Assigned Judge:

Charges:

| Count | DUC# | Crim.Action# | Description | Dispo. | Dispo. Date |
|-------|------|--------------|-------------|--------|-------------|
| 001 | 0603002909 | IN06031040 | PDWDCF | GLTY | 09/11/2006 |
| 002 | 0603002909 | IN06031041 | BURGLARY 1ST | GLTY | 09/11/2006 |
| 003 | 0603002909 | IN06031042 | ASSAULT 3RD | GLTY | 09/11/2006 |
| 004 | 0603002909 | N06031043 | AGGR MENACING | DISM | 04/11/2006 |
| 005 | 0603002909 | N06031044 | PDWBPP | DISM | 04/11/2006 |
| 006 | 0603002909 | IN06031045 | TERROR THREAT | GLTY | 09/11/2006 |

| No. | Event Date | Event | Judge |
|-----|------------|-------|-------|
| 1 | 03/14/2006 | CASE ACCEPTED IN SUPERIOR COURT. ARREST DATE: 03/05/2006 PRELIMINARY HEARING DATE: 031306 BAIL: SECURED BAIL-HELD     37,000.00  10% CONDITION OF BAIL: NO CONTACT WITH VICTIMS DIRECT OR INDIRECT PRE-TRAIL SUPERVISION, CURFEW 8PM -7AM JOB SEARCH, NOT TO POSSESS ANY WEAPONS | |
| 2 | 03/30/2006 | MOTION FOR REDUCTION OF BAIL FILED. BY BRADLEY MANNING,ESQ SCHED FOR 04/11 @9:30 | |
| 3 | 04/03/2006 | INDICTMENT, TRUE BILL FILED.NO 110 SCHEDULED FOR CASE REVIEW AND ARRAIGNMENT 05/22/06 AT 1:45 | |
| 6 | 04/06/2006 | ACKNOWLEDGEMENT OF RECEIPT OF DISCOVERY RESPONSE. FROM THE PUBLIC DEFENDER'S OFFICE. | |
| 4 | 04/11/2006 | MOTION FOR REDUCTION OF BAIL DENIED. DISMISSED N06031043 & N06031044 | REYNOLDS MICHAEL P. |
| 5 | 04/11/2006 | COMMITMENT TO DEPARTMENT OF CORRECTION. $31,000 SECURED @ DCC | REYNOLDS MICHAEL P. |

A-1

                          SUPERIOR COURT CRIMINAL DOCKET                    Page    2
                            ( as of  03/06/2008 )

State of Delaware v.  HILLARD M WINN                                 DOB: 04/09/1965
State's Atty: , Esq.                              AKA: HILLIARD WINN
Defense Atty:                                          WILLARD WINN

     Event
No.  Date          Event                                        Judge
------------------------------------------------------------------------------------
7    05/01/2006
     SCHEDULING ORDER ISSUED
     THE FOLLOWING COURT DATES ARE ESTABLISHED:
     (A) FIRST CASE REVIEW  05/22/2006
     (B) FINAL CASE REVIEW 08/28/2006
     (C) TRIAL 09/06/2006
8    05/09/2006
     SUMMONS MAILED FOR CASE REVIE/ARRAINGMENT 05/22/06
     05/22/2006                                        SCOTT CALVIN L. JR.
     CASE REVIEW & ARRAIGNMENT CALENDAR: SET FOR FINAL CASE REVIEW.
     DATE: 08/28/06 @ 1:45. WRNG/MANNING ENTERED APPEARANCE. DEF'S ORAL
     MOTION TO REDUCED BAIL WAS DENIED BY JUDGE SCOTT W/O PREJUDICE DEF.
     MAY FILE WRITTEN MOTION.
9    06/09/2006
     DEFENDANT'S LETTER FILED.
     TO: JUDGE CARPENTER
     GROUNDS FOR BAIL MOTION
10   06/23/2006
     MOTION TO PROCEED  PRO SE FILED.  REFERRED TO JUDGE COOCH (OFFICE
     JUDGE).
11   06/23/2006
     MOTION TO DISMISS COUNSEL FILED PRO SE. REFERRED TO JUDGE CARPENTER.
     ***PER JUDGE CARPENTER-SCHEDULE THESE MOTIONS ON CRIMINAL MOTIONS
     CALENDAR 07/10/06 @ 1:30  DEFENDANT TO BE TRANSPORTED
12   07/10/2006                                        SILVERMAN FRED S.
     MOTION TO DISMISS COUNSEL-DENIED.
     THE COURT CONDUCTED A LENGHTY HEARING AT WHICH IT REVIEWED MR. WINN'S
     POSITION. THE COURT IS SATISFIED THAT WHATEVER DAMAGE TO THE ATTORNEY/
     CLIENT RELATIONSHIP EXISTS, IT IS DUE TO MR.WINN'S INTRANSIGENCE, NOT
     TO MR.MANNING. ORDERED DENIED W/O PREJUDICE TO DEFENDANT'S FILING A
     MOTION TO APPEAR PRO SE.   FSS
     (NOTE ON CALENDAR/C.W.)
13   07/31/2006
     MOTION FOR WAIVER OF COUNSEL FILED.
     BY BRADLEY MANNING,ESQ
     SCHED FOR 08/07 @1:30
34   08/02/2006
     SUBPOENA(S) ISSUED._SHERIFF_(2)
14   08/04/2006
     LETTER FROM MARSHA J.WHITE,DAG        TO BRAD MANNING
     RE:I AM FORWARDING TO YOU A COPY OF THE DEFENDANT'S STATEMENT IN THE
     CASE.YOU HAD REQUESTED THE STATEMENTS OF OTHER WITNESSES,AS WELL AS

$A\mathcal{2}$

```
                     SUPERIOR COURT CRIMINAL DOCKET              Page    3
                          ( as of  03/06/2008 )

State of Delaware v.  HILLARD M WINN                             DOB: 04/09/1965
State's Atty: , Esq.                        AKA: HILLIARD WINN
Defense Atty:                                    WILLARD WINN

      Event
No.   Date         Event                                   Judge
-------------------------------------------------------------------------------
      THAT OF THE VICTIM.AS YOU ARE AWARE,THE STATE IS NOT UNDER ANY OBLIGAT
      ION PURSUANT TO RULE 16 TO PROVIDE THOSE ADDITIONAL STATEMENTS,PRIOR
      TO TRIAL, AND I DO NOT INTEND TO DO SO. I WOULD APPRECIATE YOU EXPLAN
      ING THIS PROCEDURAL ISSUE WITH YOUR CLIENT
15    08/07/2006                                   DEL PESCO SUSAN C.
      WAIVER OF COUNSEL FORM- APPROVED BY JUDGE DEL PESCO
      BRADLEY MANNING ALLOWED TO WITHDRAW AS COUNSEL
      DEFENDANT IS NOW PRO SE
16    08/07/2006
      MOTION TO SUPPRESS FILED PRO SE.  REFERRED TO JUDGE JURDEN OFFICE
      JUDGE.
18    08/10/2006
      SUBPOENA(S) SERVED BY SHERIFF.
      SERVICE ON DOMINIQUE L. BENSON, POSTED.
22    08/14/2006                                   JURDEN JAN R.
      LETTER FROM: JUDGE JURDEN          TO: COUNSEL
      PLEASE RESPOND IN WRITING BY AUGUST 28, 2006 TO THE ENCLOSED MOTION
      FILED BY THE DEFENDANT.
17    08/17/2006
      MOTION FOR DISCOVERY FILED PRO SE.  REFERRED TO JUDGE JURDEN.
30    08/18/2006
      NOTICE OF SERVICE - DISCOVERY RESPONSE.
      FROM MARSHA J. WHITE, DAG.
19    08/21/2006
      SUBPOENA(S) NOT SERVED BY SHERIFF.
      ATT. SERVICE ON ALBERTA M. GRANT, VACANT.
23    08/23/2006
      STATE'S RESPONSE FILED.
      STATE'S RESPONSE TO DEFENDANT'SMOTION TO SUPPRESS EVIDENCE SEIZED AND
      TO DISMISS INDICTMENT.
20    08/25/2006
      MOTION TO SUPPLEMENT/AMEND MOTION TO SUPRESS OR DISMISS FILED.
      REFERRED TO JUDGE JURDEN.
      08/28/2006                                   COOCH RICHARD R.
      FINAL CASE REVIEW:  NO PLEA/SET FOR TRIAL_9/6/2006
21    08/31/2006
      DEFENDANT'S RESPONSE TO STATES RESPONSE TO DEFENDANT'S MOTION TO
      DISMISS INDICTMENT AND MOTION FOR SUPPRESSION OF EVIDENCE.
      REFERRED TO JUDGE JURDEN
24    09/01/2006                                   JURDEN JAN R.
      ORDER: DEFENDANT'S MOTION TO DISMISS INDICTMENT AND TO SUPPRESS
      EVIDENCE IS DENIED.  TRIAL SHALL PROCEED ON 9/6/06.
```

A-3

```
                         SUPERIOR COURT CRIMINAL DOCKET              Page    4
                            ( as of  03/06/2008 )
```

State of Delaware v.  HILLARD M WINN                              DOB: 04/09/1965
State's Atty: , Esq.                         AKA: HILLIARD WINN
Defense Atty:                                     WILLARD WINN

```
     Event
No.  Date         Event                                       Judge
----------------------------------------------------------------------------
     09/06/2006                                        COOCH RICHARD R.
         TRIAL CALENDAR- WENT TO TRIAL JURY
26   09/06/2006                                        COOCH RICHARD R.
         JURY TRIAL HELD BEFORE JUDGE COOCH.
         STATE'S ATTY: MARSHA WHITE
         DEFT WAS PRO-SE.
         COURT REPORTER: T. MAURER AND L. COALE
         COURT CLERK: C. SHERR AND C. TAYLOR
         TRIAL DATES: 09/06/06, 09/07/06, 09/08/06, AND 09/11/06.
         DEFT WAS FOUND GUILTY OF PDWDCF (06-03-1040), BURGLARY 1ST (06-03-1041
         ASSAULT 3RD (LIO 06-03-1042), AND TERRORISTIC THREAT (06-03-1045). PSI
         ORDERED. BAIL REVOKED.
         MOTIONS: 09/08/06 - DEFT'S MTN FOR SEQUESTRATION: GRANTED. 09/08/06 -
         STATE'S MTN TO AMEND INDICTMENT: GRANTED, 09/08/06 - DEFT'S MTN TO LET
         THE JURY SEE VICTIM'S SCAR: DENIED, 09/08/06 - DEFT'S MTN FOR
         REARGUEMENT TO LET THE JURY SEE VICTIM'S SCAR: GRANTED, 09/08/06 -
         STATE'S MTN FOR LESS INCLUDEDS: DENIED, 09/11/06 - STATE'S REMTN FOR
         LESSER INCLUDEDS: GRANTED, 09/11/06 - DEFT'S MTN FOR JUDGMENT OF
         ACQUITTAL OF COUNT 2: DENIED, 09/11/06 - STATE'S EXHIBIT #27 WAS
         MOVED INTO COURT EXHIBIT #1 AND A REDACTED #27 WAS SUBSTITUTED IN ITS
         PLACE.
         EXHIBITS PUT IN VAULT.
32   09/06/2006
         SUBPOENA(S) SERVED BY SHERIFF.
25   09/11/2006                                        COOCH RICHARD R.
         CHARGE TO THE JURY FILED.
27   09/11/2006                                        COOCH RICHARD R.
         COMMITMENT TO DEPARTMENT OF CORRECTION. BAIL REVOKED.
28   09/15/2006
         DEFENDANT'S LETTER FILED.
         RECEIVED BY JUDGE COOCH'S CHAMBERS
         LETTER REQUESTING INDEPENDENT VIOR DIRE OF JUROR #7 .
29   09/20/2006
         MOTION FOR JUDGMENT OF ACQUITTAL FILED PRO SE.  REFERRED TO JUDGE
         COOCH.
33   10/19/2006
         DEFENDANT'S LETTER FILED.
         REQUEST FOR ANSWER TO MOTION FOR JUDGEMENT OF ACQUITAL.
36   10/19/2006                                        COOCH RICHARD R.
         LETTER/ORDER ISSUED BY JUDGE: COOCH. DEFENDANTS REQUEST FOR FURTHER
         ACTION BY THE COURT WITH REQUEST FOR FURTHER ACTION BY THE COURT WITH
         REQUEST TO JUROR #7 IS DENIED.
```

A4

```
                  SUPERIOR COURT CRIMINAL DOCKET              Page    5
                        ( as of  03/06/2008 )

State of Delaware v.  HILLARD M WINN                    DOB: 04/09/1965
State's Atty: , Esq.                      AKA: HILLIARD WINN
Defense Atty:                                  WILLARD WINN

      Event
No.   Date         Event                              Judge
-------------------------------------------------------------------------------
      IT IS SO ORDERED
31    10/20/2006                                     COOCH RICHARD R.
      LETTER FROM JUDGE COOCH    TO MARSHA WHITE, DAG & HILLARD WINN.
      RE: THE COURT HAS REVIEWED DEFENDANT'S MOTION FOR ACQUITTAL/MISTRIAL
      FILED SEPT. 20, 2006. AGAIN, THE COURT WILLNOTE THAT IT WAS DEFENDANTS
      RESPONSIBILITY TO HAVE SERVED A COPY ON THE STATE. THE STATE SHALL
      FILE A RESPONSE TO THE THREE CLAIMS OF ERROR CITED BY DEFENDANT IN
      HIS MOTION, SUCH RESPONSE TO BE FILED ON OR BEFORE NOV. 20, 2006.
35    11/02/2006
      SENTENCING CALENDAR - CONTINUED.  PROSECUTIONS REQUEST - ATTY. ON
      VACATION.
37    11/09/2006
      MOTION TO DECLARE DEFENDANT AN HABITUAL OFFENDER FILED.
      BY MARSHA WHITE,DAG
      SENT UP TO CHAMBERS/JUDGE COOCH HAS FILE
38    11/22/2006
      STATE'S RESPONSE TO DEFENDANT'S MOTION FOR ACQUITTAL/MISTRIAL FILED.
      FILED BY MARSHA WHITE, DAG
      RETURNED TO JUDGE COOCH
40    12/11/2006                                     COOCH RICHARD R.
      EMAIL FILED TO JUDGE COOCH FROM MARSHA WHITE, DAG
      RE: DEFENDANT'S TWO PENDING CASES. BOTH MR. WINN AND THE STATE ARE
      RESPECTFULLY REQUESTING THAT MR. WINN ENTER HIS GUILTY PLEA TO THAT
      MISDEMEANOR CHARGE TO RESOLVE THIS PENDING CASE THIS COMING FRIDAY
      DURING YOUR HONOR'S SENTENCING CALENDAR, BUT PRIOR TO YOUR HONOR'S
      SENTENCING HIM ON THE FIRST CASE.
      (SEE FILE FOR ENTIRE EMAIL)
41    12/11/2006                                     COOCH RICHARD R.
      EMAIL FILED TO MARSHA WHITE, DAG FROM JUDGE COOCH
      RE: THIS IS SATISFACTORY PROCEDURE. LETTER OPINION DENYING
      DEFENDANT'S MOTION BEING SENT TO THE STATE AND DEFENDANT TODAY.
39    12/13/2006                                     COOCH RICHARD R.
      ORDER: DEFENDANT'S MOTION FOR ACQUITTAL/MISTRIAL IS DENIED.
42    12/19/2006
      LETTER FROM RRC TO M. WHITE AND H. WINN
      THE COURT WILL SENTENCE THE ABOVE NAMED DEFT ON 1/3/07 IN THE ABOVE
      CASE. THE PLEA IN ID# 0607008082 WILL BE TAKEN IMMEDIATELY PRIOR TO
      SENTENCING
43    12/20/2006
      DEFENDANT'S LETTER FILED.
      RECEIVED BY JUDGE COOCH'S CHAMBERS
      RE: LACK OF PARTICIPATION, INCLUSION OF PRO SE DEFENDANT.
```

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page    6
                        ( as of  03/06/2008 )

State of Delaware v.  HILLARD M WINN                          DOB: 04/09/1965
State's Atty: , Esq.                      AKA: HILLIARD WINN
Defense Atty:                                  WILLARD WINN

      Event
No.   Date          Event                               Judge
----------------------------------------------------------------------------
      01/03/2007                                  COOCH RICHARD R.
        SENTENCING CALENDAR: DEFENDANT SENTENCED.
        THE SENTENCE THAT THE DEFENDANT RECEIVED WAS ABOVE GUIDELINES DUE TO
        THE DEFENDANT'S CRIMINAL HISTORY AND THE SEVERITY OF THE CRIME. THE
        DEFENDANT WAIVED HIS RIGHT TO HAVE 7 DAYS TO REVIEW THE PSI REPORT
        PRIOR TO SENTENCING. MOTION TO DECLARE THE DEFENDANT HABITUAL WAS
        GRANTED. DEFENDANT HAS 30 DAYS TO APPEAL THE SENTENCE TO THE SUPREME
        COURT
44    01/03/2007                                  COOCH RICHARD R.
        MOTION TO DECLARE DEFENDANT AN HABITUAL OFFENDER GRANTED.
45    01/03/2007                                  COOCH RICHARD R.
        ORDER: UPON MOTION BY HE ATTORNEY GENERAL OF THE STATE OF DELAWARE,
        THROUGH, MARSHA WHITE, DEPUTY ATTORNEY GENERAL TO HAVE HILLARD M. WINN
        DECLARED AN HABITUAL CRIMINAL OFFENDER UNDER THE PROVISIONS OF
        11 DEL.C. SECTION 4214(A);
        HAVING FOUND BEYOND A REASONABLE DOUBT THAT HILLARD M. WINN HAS BEEN
        CONVICTED OF 3 SEPARATE FELONIES, EACH SUCCESSIVE TO THE OTHER, PRIOR
        TO THE PRESENT MATTER FOR WHICH HE IS TO BE SENTENCED; AND,
        HAVING FOUND THAT HILLARD M. WINN HAS HAD SOME CHANCE FOR
        REHABILITATION, AS DEFINED IN EADDY V. STATE, DEL.SUPR., NO. 440,
        WALSH J. (MAY 30, 1996)(ORDER), AFTER EACH SUCCESSIVE CONVICTION;
        THIS COURT FINDS THAT HILLARD M. WINN FALLS WITHIN THE PROVISIONS OF
        11 DEL.C. SECTION 4214(A); AND,
        IT IS THEREFORE ORDERED THAT HILLARD M. WINN IS DECLARED TO BE AN
        HABITUAL CRIMINAL OFFENDER UNDER THE LAWS OF THE STATE OF DELAWARE;
        IT IS FURTHER ORDERED THAT HILLARD M. WINN SHALL BE SENTENCED PURSUANT
        TO 11 DEL.C. SECTION 4214(A) FOR THE OFFENSE OF BURGLARY FIRST DEGREE
        (IN06-03-1041).
        SO ORDERED THIS 3RD DAY OF JANUARY, 2007.
        THE HONORABLE RICHARD R COOCH
46    01/03/2007                                  COOCH RICHARD R.
        SENTENCE: ASOP ORDER SIGNED & FILED ON 1/11/07
47    01/18/2007
        LETTER FROM SUPREME COURT TO HILLARD WINN
        RE: DESIGNATION OF TRANSCRIPT
        22, 2007
48    02/08/2007
        DOCUMENT(S) FILED REGARDING SUPREME COURT APPEAL.
        RE: DESIGNATION OF TRANSCRIPT.
49    02/12/2007                                  COOCH RICHARD R.
        LETTER FROM JUDGE COOCH TO MARSHA WHITE, DAG & HILLARD WINN
        RE: MOTION TO DISMISS
```

```
                         SUPERIOR COURT CRIMINAL DOCKET              Page    7
                              ( as of  03/06/2008 )

State of Delaware v.  HILLARD M WINN                          DOB: 04/09/1965
State's Atty: , Esq.                          AKA: HILLIARD WINN
Defense Atty:                                      WILLARD WINN

      Event
No.   Date          Event                                  Judge
------------------------------------------------------------------------------
      THE COURT HAS RECEIVED DEFENDANT'S "MOTION TO DISMISS" DATED 1/12/07.
      HOWEVER, DEFENDANT HAS FILED AN APPEAL TO THE DELAWARE SUPREME COURT.
      THIS COURT IS THEREFORE WITHOUT JURISDICTION TO ACT ON THE "MOTION
      TO DISMISS".
50    03/07/2007
      MOTION FOR TRANSCRIPT FILED.
      (PRO SE) DESIGNATION OF TRANSRIPT.
      REFERRED TO JUDGE COOCH 03/07/07.
51    03/12/2007                                     COOCH RICHARD R.
      ORDER: I AM IN RECEIPT OF YOUR FEBRUARY 8, 2007 "MOTION FOR TRANSCRIPT
      " IN THE ABOVE CATIONED CASE.  THIS CASE IS PRESENTLY ON APPEAL TO THE
      DELAWARE SUPREME COURT.  I HAVE ORDERED PREPARATION OF THE FOLLOWING
      TRANSCRIPTS: 1) PRELIMINARY HEARING IN THE COURT OF COMMON PEAS, NEW
      CASTLE, DELAWARE IN THE MATTER OF CAS NO. 0607008082 HELD ON JULY 24,
      2006, 2) TRANSCRIPTS OF THE TRIAL HELD IN SUPERIOR COURT, NEW CASTLE,
      DELAWARE IN THE MATTE OF THE CASE NO. 063002909 ON SEPT. 6 THROUGH
      SEPT. 11, 2006, INCLUDING JURY SELECTION, OPENING ARGUMENT, AND
      CLOSING ARGUMENTS, 3) THE TRANSCRIPT OF THE SENTENCING IN THE CASE NO.
      0603002909 ON JANUARY 3, 2007.  THE ORDER OF TRANSCRIPTS IN THESE
      MATTERS ABOVE ARE HEREBY GRANTED.  YOUR REQUEST THAT THE COURT PREPARE
      TRANSCRIPTS OF THE AUDIO TAPE OF THE 911 CALL, TAPED STATEMENTS OF
      RUTH ANN BOCCELLII, DAEKINON ROLLINS, MELISSA GRODON AND HILLARD M.
      WINN IS DENIED.  THE COURT DOES NOT PREPARE TRANSCRIPTS OF SUCH
      EVIDENTIARY ITEMS.
52    04/18/2007
      LETTER FROM SUPREME COURT TO THOMAS MAURER
      RE: AN EXTENSION TO FILE THE TRANSCRIPT HAS BEEN GRANTED.
      THE TRANSCRIPT IS DUE MAY 29, 2007.
53    05/25/2007
      TRANSCRIPT FILED.
      SEPTEMBER 11, 2006 TRIAL BEFORE THE HONORABLE RICHARD R. COOCH AND A
      JURY.
      COURT REPORTER: LYNNE COALE
54    06/12/2007
      TRANSCRIPT FILED.
      JURY TRIAL BEFORE JUDGE COOCH
      SEPTEMBER 6, 2006.
      (THOMAS MAURER, RPR)
55    06/12/2007
      TRANSCRIPT FILED.
      JURY TRIAL BEFORE JUDGE COOCH
      SEPTEMBER 7, 2006
```

A7

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page    8
                       ( as of  03/06/2008 )
```

State of Delaware v.  HILLARD M WINN                              DOB: 04/09/1965
State's Atty: , Esq.                        AKA: HILLIARD WINN
Defense Atty:                                    WILLARD WINN

```
      Event
No.   Date          Event                                Judge
------------------------------------------------------------------------------
      (THOMAS MAURER, RPR)
56    06/12/2007
      TRANSCRIPT FILED.
      JURY TRIAL BEFORE JUDGE COOCH
      SEPTEMBER 8, 2006
      (THOMAS MAURER, RPR)
57    06/26/2007
      LETTER FROM SUPREME COURT TO HILLARD WINN
      RE: THE SENTENCING TRANSCRIPT IS DUE JULY 16, 2007.
      BY COPY OF THIS LETTER, THE COURT REPORTER'S OFFICE IS NOTIFIED
      OF THIS DUE DATE AND IS REQUESTED TO PREPARE THE TRANSCRIPT.
      22, 2007.
58    07/20/2007
      TRANSCRIPT FILED.
      PLEA AND SENTENCING - JANUARY 3, 2007
      BEFORE JUDGE COOCH
      M.HONAKER,RPR
59    07/25/2007
      LETTER FROM SUPREME COURT   TO MS.AGNEW
      THE TRANSCIRPT MUST BE FILED WITH THIS OFFICE NO LATER THAN
      JULY 30,2007. LISA A. SEMANS
      07/25/2007
      RECORDS SENT TO SUPREME COURT.
      NO. 22/34,2007
60    08/01/2007
      RECEIPT FROM SUPREME COURT ACKNOWLEDGING RECORD.
      22/34, 2007
61    02/20/2008
      MANDATE FILED FROM SUPREME COURT:  SUPERIOR COURT JUDGMENT AFFIRMED.
      SUPREME COURT CASE NO: 22, 2007
      SUBMITTED: OCTOBER 26, 2007
      DECIDED: JANUARY 28, 2008
      BEFORE, STEELE, CHIEF JUSTICE, JACOBS AND RIDGELY, JUSTICES.
      MOTION FOR REARGUMENT IS DENIED
      SUBMITTED: FEBRUARY 11, 2008
      DECIDED: FEBRUARY 14, 2008
      BEFORE STEELE, CHIEF JUSTICE, JACOBS AND RIDGELY, JUSTICES.
62    03/05/2008
      PETITION FOR A WRIT OF HABEAS CORPUS FILED (PRO SE)
      REFERRED TO JUDGE COOCH
      DATE REFERRED: 03/06/2008
      CIVIL CASE NO: 08M-03-018 RRC

                *** END OF DOCKET LISTING AS OF  03/06/2008 ***
                        PRINTED BY: CSCJRUE
```

A8

NEW CASTLE CITY POLICE                                        JP11                    016

Adult Complaint and Warrant
## In the Justice of the Peace Court
In and for the
## State of Delaware

### State of Delaware vs.  HILLARD M. WINN

I, OFC. DEBORAH PROVENZA (2479) of New Castle County PD, do hereby state under oath or affirmation, to the best of my knowledge, information and belief that the above-named accused violated the laws of the State of Delaware by committing criminal acts in New Castle county on or about the date, or dates, and at or about the location, or locations, as indicated in Exhibit A hereto attached and made a part hereof.

Wherefore, your affiant prays that the above-named accused may be forthwith approached and held to answer this complaint consisting of 6 charges, and to be further dealt with as the law directs.

_____ 2479
Affiant

Sworn to and subscribed to before me this 5th day of March 2006.

_____
Judge/Commissioner

(To be completed by the Judge/Commissioner/Court)

| | |
|---|---|
| A. _____ | The crime was committed by an adult. |
| B. _____ | A misdemeanor was committed against a child. |
| C. _____ | A misdemeanor was committed by one family member against another family member. |
| D. _____ | Other: Explain _____ |

## Warrant

To any constable or other authorized person:

Whereas, the foregoing complaint consisting of 6 charges, having been made, as listed in Exhibit A which is attached hereto and incorporated herein, and having determined that said complaint has been properly sworn to and having found that there exists probable cause for the issuance of process, based upon the affidavit of probable cause which is attached hereto and incorporated herein as Exhibit B, you are hereby commanded in the name of the State of Delaware, to take HILLARD M. WINN accused, and bring same before

### Justice of the Peace Court 11, FORTHWITH, to answer said charges

GIVEN UNDER MY HAND, this 5th day of March AD, 2006.

_____
Judge/Commissioner

Executed on  March 05, 2006,  by  _____ # 2479

Case Number: 06 03 002909   Warrant Number:  06 001494   Arrest Number:

A 9

State of Delaware vs. **HILLARD M. WINN**          Case Number: 06 03 002909

## Exhibit A

Charge Sequence: 001     Police Complaint Number: 32 06 025964   Arrest Number: 227550
Charge: **Possession of a Deadly Weapon During the Commission of a Felony**
In Violation of 11 Del.C. § 1447 0000 F B
Location: 106 AVALON BLDG - Bear, 19701
TO WIT: HILLARD M WINN, on or about the 5th day of MARCH, 2006, in the County of NEW
CASTLE, State of Delaware, did knowingly possess a deadly weapon during the commission of a felony
by possessing BURGLARY 1ST, a deadly weapon, during the commission of BURGLARY 1ST. To
wit: did have a crow bar in his possession.

Charge Sequence: 002     Police Complaint Number: 32 06 025964   Arrest Number: 227550
Charge: **Burglary First Degree Dwelling Night Physical Injury to Person Not Participant**
In Violation of 11 Del.C. § 0826 0002 F C
Location: 106 AVALON BLDG - Bear, 19701
TO WIT: HILLARD M WINN, on or about the 5th day of MARCH, 2006, in the County of NEW
CASTLE, State of Delaware, did knowingly enter or remain unlawfully in a dwelling at night located at
106 . AVALON BLDG., Newark  19702 with the intent to commit the crime of ASSAULT 2ND ME
therein and while in said dwelling did cause physical injury to Ruth A. Bocelli, who was not a
participant in the crime by throwing a crowbar at her and striking her in the head causing swelling and a
contusion to same.

Charge Sequence: 003     Police Complaint Number: 32 06 025964   Arrest Number: 227550
Charge: **Assault Second Degree Recklessly or Intentionally Causes Phys Injury Weapon**
In Violation of 11 Del.C. § 0612 00A2 F D
Location: 106 AVALON BLDG - Bear, 19701
TO WIT: HILLARD M WINN, on or about the 5th day of MARCH, 2006, in the County of NEW
CASTLE, State of Delaware, did recklessly intentionally cause physical injury to RUTH ANN
BOCELLI by means of a deadly weapon, to wit: did throw a crow bar a Ruth Bocelli striking her in the
head and causing swelling and a contusion to same.

Charge Sequence: 004     Police Complaint Number: 32 06 025964   Arrest Number: 227550
Charge: **Aggravated Menacing**
In Violation of 11 Del.C. § 0602 000B F E
Location: 106 AVALON BLDG - Bear, 19701
TO WIT: HILLARD M WINN, on or about the 5th day of MARCH, 2006, in the County of NEW
CASTLE, State of Delaware, did by displaying what appears to be a deadly weapon, intentionally place
RUTH ANN BOCELLI in fear of imminent physical injury, to wit: did swing a crow bar at Ruth Bocelli
prior to throwing same at her.

A 10

State of Delaware vs. **HILLARD M. WINN**          Case Number: 06 03 002909

Charge Sequence: 005          Police Complaint Number: 32 06 025964  Arrest Number:
Charge: **Possession of a Deadly Weapon By Person Prohibited**

In Violation of 11 Del.C. § 1448 000B F F
Location: 106 AVALON BLDG - Bear, 19701

TO WIT: HILLARD M WINN, on or about the 5th day of MARCH, 2006, in the County of NEW
CASTLE, State of Delaware, did have in his possession CROW BAR, a deadly weapon defined under
11 DEL. C. sec 222(5), after having pled guilty convicted in Criminal Action No(s) 9506006838 in the
Superior Court of the State of Delaware in and for NEW CASTLE COUNTY on 010792 of the charges
of ROBBERY SECOND.

Charge Sequence: 006          Police Complaint Number: 32 06 025964  Arrest Number:
Charge: **Terroristic Threatening**

In Violation of 11 Del.C. § 0621 00a1 M A
Location: 106 AVALON BLDG - Bear, 19701

TO WIT: HILLARD M WINN, on or about the 5th day of MARCH, 2006, in the County of NEW
CASTLE, State of Delaware, did threaten to commit a crime likely to result in death or serious injury to
person or property, to wit: did state he was going to kill Ruth Bocelli and put her in the ground.

*A ll*

State of Delaware vs. **HILLARD M. WINN**                     Case Number: 06 03 002909

## Exhibit B

SBI Number: **00152383**    ; Also Known As:
Date of Birth/Age: **04/09/1965 (40)**         Sex: **Male**         Race: **Black**
Eye Color: **Brown**         Hair Color: **Gray**    Height: **5'10"**    Weight: **185 lbs**
Driver's License:        Social Security Number: **221603239**

Address: **718 N scott ST**                    Next of Kin, Address, Employer
        **Wilmington, DE 19805**            **ROSLIE MINUS**
Phone:                               **710 RYSING DR**
                                     **EDGMOORE**
Employer:                            **WILMINGTON, DE 19809**
                                     Phone: **3027619667**
        **(302) 479-7500**

Date and Times of Offense: **Between 03/05/2006 at 0020 and 03/05/20060045**
Location of Offense: **106 AVALON BLDG - Bear, 19701**

Your affiant OFC. DEBORAH PROVENZA can truly state that:

1. Your affiant is a sworn police officer for the New Castle County Police Department and has been since November 1996. Your affiant is currently assigned to the Patrol Division.

2. On 030506, your affiant responded to 106 Avalon Building, Newark, De 19702, which is in the County of New Castle, State of Delaware for a Burglary in Progress.

3. Upon arrival, your affiant and several other officers were confronted with several subjects exiting the residence. The following subjects were identified as they were taken into custody, Hillard Winn (040965), Daekwon Rollins (050677), and Dominique Benson (101690). There were two females that were also detained as they exited the building Melissa Gordon (061680) and Alberta Grant (012760).

4. Your affiant responded to the location where Ruth Boccelli (012563) was located. Your affiant who responded back to the scene with Ms Boccelli for a show up. Ms Boccelli positively identified all the above subjects being in her residence. Ms Boccelli stated that Hillard Winn (T.C.) was the main problem. Ms Boccelli advised that Hillard Winn came banging on her front door and forced his way in. Ms Boccelli stated that Hillard Winn came into her rear bedroom armed with a crow bar. Ms Boccelli advised that Hillard Winn began swinging the crowbar at her, and eventually threw it at her causing a contusion and swelling to the left temple area.

5. Ms Boccelli stated that she observed a black semi-automatic handgun in his waistband. Ms Boccelli advised that Hillard Winn continued to assault her about the apartment while Daekown Rollins (Pooh) tried to get him to stop. Ms Boccelli stated that Hillard Winn stated he was going to kill her and put her in the ground. Ms Boccelli advised that she convinced Hillard Winn to let her go change and she responded to the rear bedroom window and jumped. Ms Boccelli stated that she jumped over the fence and fled to the church to call the police.

6. All the above subjects were detained and transported back to headquarters for interviews. Your affiant spoke with Melissa Gordon (061680) after miranda was waived. Ms Gordon stated that she was with (Pooh) Daekwon Rollins and (T.C.) Hillard Winn in the vehicle and Hillard Winn stated that he needed to get his clothes. Ms Gordon advised that she was in the vehicle while Daekown Rollins and Hillard Winn responded up to the apartment. Ms Gordon stated that about 20 minutes passed and Daekown Rollins responded back to the vehicle with a crow bar and said Hillard Winn is beating up that lady you need to come back and help. Ms Gordon stated that she responds upstairs to the apartment and observes Hillard Winn assaulting Ruth Boccelli and she and Daekown attempt to stop him. Ms Gordon stated that Daekown Rollins responds into the apartment and pulls (T.C.) Hillard Winn off of the lady and they walk out back. Ms Gordon stated that she waited outside and Hillard Winn and Daekown Rollins respond back upstairs and the police arrive.

7. Your affiant with the assistance of Ofc. Godwin interviewed the other persons above. Ofc. Godwin interviews

Affiant

Sworn and _____ before me this 5th day of March AD 2006.

Judge/Commissioner/Court Official

$A\,12$

State of Delaware vs. **HILLARD M. WINN**                    Case Number:  06 03 002909

Daekown Rollins after miranda was waived. Daekown Rollins provides a similar incident to that of Ms Gordon. Writer interviewed Alberta Grant after miranda was waived. Ms Grant advised that she got involved after she was contacted by Daekown Rollins and Dominique Benson that T.C. (Hillard Winn) was assaulting Ruth Boccelli. Ms Grant advised that she ran over to the residence to help when the police arrived. Ofc. Godwin spoke with Dominique Benson after miranda and parental permission. Dominique could not provide much information pertaining to this incident.

8. Your affiant interviewed Hillard Winn about the incident after he waived miranda. Mr Winn stated that he responded over to the residence to obtain his personal belongings because he left them there until he had a place to stay. Mr Winn advisedthat originally no one answered the front door and he got really mad. Mr Winn stated that he be gan banging on the front door and a tall black male opened the door. Mr Winn advised that he walked right into the residence looking for Ruth Boccelli to get his things. Mr Winn stated that he never touched Ruth Boccelli but he did throw things around the apartment. Mr Winn denied any thing involving a weapon or assaultive behavior.

9. Your affiant inquired through deljis and found that Hillard Winn pled guilty to Robbery 2nd on 010792 (CN 9506006838) making him a person prohibited.

Affiant: OFC. DEBORAH PROVENZA (2479) of New Castle County PD

Victims:                    Date of Birth      Relationship Victim to Defendant

RUTH ANN BOCELLI            01/25/1963         Relationship Undetermined

SOCIETY/PUBLIC                                 Victimless Crime

Affiant

Sworn to and subscribed to before me this 5th day of March AD, 2006.

Judge/Commissioner/Court Official

A13

| Page: 1 | Report Date: 03/05/2006 | Agency: New Castle County PD | | | Complaint: 32-06-025964 |
|---|---|---|---|---|---|

| Reported Date and Time SUN 03/05/2006 0550 | Initial Crime Report | Occurred: SUN 03/05/2006 0020 thru SUN 03/05/2006 0045 |
|---|---|---|

**Location:**
106 AVALON BLDG    Bear, DE 19701

**2. and Incident Overview:**
... did force his way into V1's residence and did assault her with his fist.  D1 did have a crow bar in his possession and swung it at V1, then threw it striking V1 causing injury to same.  D1 is a person prohibited.

| Grid 060-352 | Sector 33 | County New Castle | Domestic Related ☐Yes ☒No | 4-F-14 Sent? ☐Yes ☒No | Gen Broadcast Sent? ☐Yes ☒No |
|---|---|---|---|---|---|

## Victim Information

| Victim Number 001 | Name |
|---|---|

| Type Individual | Sex | Race | | Ethnic Origin | Age | D.O.B. |
|---|---|---|---|---|---|---|

| Address | | Resident Status | Home Telephone | Cell Phone | |
|---|---|---|---|---|---|

| Reporting Person? ☒Yes ☐No | Victim Injured? ☒Yes ☐No | Victim Deceased? ☐Yes ☒No | Officer Comments |
|---|---|---|---|

| Injuries Apparent Minor Injury | Description of Injuries CONTUSION TO THE LEFT SIDE OF HER HEAD/LEFT LEG SCRATCH/RIGHT AND LEFT ELBOW ABRASION |
|---|---|

| Employer/School NONE | Work Telephone |
|---|---|

| Victim Number 002 | Name |
|---|---|

| Type Society/Public | Sex | Race | | Ethnic Origin | Age | D.O.B. |
|---|---|---|---|---|---|---|

| Address | | Resident Status | Home Telephone | Cell Phone |
|---|---|---|---|---|

| Reporting Person? ☐Yes ☒No | Victim Injured? ☐Yes ☒No | Victim Deceased? ☐Yes ☒No | Officer Comments |
|---|---|---|---|

| Injuries. | Description of Injuries |
|---|---|

## Suspect/Defendant Information

| Sequence 001 | Type Defendant | SBI Number 00152383 | Name WINN, HILLARD M | | | Nick Name | |
|---|---|---|---|---|---|---|---|

| Sex Male | Race Black | Ethnic Origin Non-Hispanic | Age 40 | D.O.B. 04/09/1965 | Height 5' 10" | Weight 185 | Skin Tone | Eye Color Brown |
|---|---|---|---|---|---|---|---|---|

| Hair Color Gray | Hair Length | Hair Style | Facial Hair | Voice Speech | Teeth | Build | Glasses |
|---|---|---|---|---|---|---|---|

| Disguise | Disguise Color(s) | Resident Status Full Time | Unusual Characteristics | Armed With Unarmed |
|---|---|---|---|---|

| Address 718 N scott ST Wilmington, DE 19805 | | Home Telephone | Cell Phone | |
|---|---|---|---|---|

| Arrest Number 000000 | Arrest Type Warrant | Suspect's Clothing Description |
|---|---|---|

## Crimes and Associated Information

| Victim Number 001 | Crime Seq 001 | Statute DE:11:0826:0002:F:C | Crime Description Burglary First Degree Dwelling Night Physical Injury to Person Not Participant |
|---|---|---|---|

| Location Of Offense Residence/Home/Garage | Status Adult Arrest 03/05/2006 | Involvement ☐Alcohol ☐Drugs ☐Computer | General Offense |
|---|---|---|---|

| Suspected Hate/Bias ☐Yes ☒No - N/A | Crime Code 22045A - Burglary/No Forced Entry/Residence |
|---|---|

| Number of Premises 0 | Burglary Force Involved ☐Yes ☒No |
|---|---|

| Stolen Property | Property Category None | | Quantity | Unit Price | Stolen Value .00 | Recovered Value .00 | Recovery Date | |
|---|---|---|---|---|---|---|---|---|

| Evidence Information | Evidence Type Photographs | | Date Collected 03/05/2006 | Time Collected 0100 | Collected By PROVENZA | | |
|---|---|---|---|---|---|---|---|

| | Address 106 AVALON BLDG Bear | | Other Location | | | |
|---|---|---|---|---|---|---|

| | Type of Processing | | | Disposition LOGGED INTO EVIDENCE | |
|---|---|---|---|---|---|

| Victim Number 001 | Crime Seq 003 | Statute DE:11:0602:000B:F:E | Crime Description Aggravated Menacing |
|---|---|---|---|



| Reporting Officer OFC. PROVENZA    2470.2 | Supervisor Approval |
|---|---|

Case 1:08-cv-00422-GMS    Document 2    Filed 07/09/2008    Page 17 of 93

## Crimes and Associated Information

| Location Of Offense | Status | Involvement | General Offense |
|---|---|---|---|
| Residence/Home/Garage | Adult Arrest 03/05/2006 | ☐ Alcohol ☐ Drugs ☐ Computer | |

| Suspected Hate/Bias | Crime Code |
|---|---|
| ☐ Yes ☒ No - N/A | 13234C - Aggravated Assault/Non-Family Other Dangerous Weapon |

| Burglary Force Involved | Weapon/Force Used | Assault Factor |
|---|---|---|
| ☐ Yes ☐ No | Blunt Object/Club | Argument |

| Victim Number 001 | Crime Seq 004 | Statute DE:11:0612:00A2:F:D | Crime Description Assault Second Degree Recklessly or Intentionally Causes Phys Injury Weapon |
|---|---|---|---|

| Location Of Offense | Status | Involvement | General Offense |
|---|---|---|---|
| Residence/Home/Garage | Adult Arrest 03/05/2006 | ☐ Alcohol ☐ Drugs ☐ Computer | |

| Suspected Hate/Bias | Crime Code |
|---|---|
| ☐ Yes ☒ No - N/A | 13234C - Aggravated Assault/Non-Family Other Dangerous Weapon |

| Burglary Force Involved | Weapon/Force Used | Assault Factor |
|---|---|---|
| ☐ Yes ☐ No | Blunt Object/Club | Argument |

| M.O. Information | MO Class | MO Description |
|---|---|---|
| | Suspect's General Actions | Unknown |
| | MO Class Means of Attack | MO Description Other Object |
| | MO Class Type of Weapon Used | MO Description Other |

| Victim Number 001 | Crime Seq 006 | Statute DE:11:0621:00a1:M:A | Crime Description Terroristic Threatening |
|---|---|---|---|

| Location Of Offense | Status | Involvement | General Offense |
|---|---|---|---|
| Residence/Home/Garage | Adult Arrest 03/05/2006 | ☐ Alcohol ☐ Drugs ☐ Computer | |

| Suspected Hate/Bias | Crime Code |
|---|---|
| ☐ Yes ☒ No - N/A | 13234C - Aggravated Assault/Non-Family Other Dangerous Weapon |

| Burglary Force Involved | Weapon/Force Used | Assault Factor |
|---|---|---|
| ☐ Yes ☐ No | Blunt Object/Club | Argument |

| Victim Number 002 | Crime Seq 002 | Statute DE:11:1448:000B:F:F | Crime Description Possession of a Deadly Weapon By Person Prohibited |
|---|---|---|---|

| Location Of Offense | Status | Involvement | General Offense |
|---|---|---|---|
| Residence/Home/Garage | Adult Arrest 03/05/2006 | ☐ Alcohol ☐ Drugs ☐ Computer | |

| Suspected Hate/Bias | Crime Code |
|---|---|
| ☐ Yes ☒ No - N/A | 5202 - Carrying a Concealed Deadly Weapon/Deadly Instrument/CCDW/CCDI |

| Burglary Force Involved | Criminal Activity | Weapon/Force Used |
|---|---|---|
| ☐ Yes ☐ No | Possessing/Concealing | Blunt Object/Club |

| Victim Number 002 | Crime Seq 005 | Statute DE:11:1447:0000:F:B | Crime Description Possession of a Deadly Weapon During the Commission of a Felony |
|---|---|---|---|

| Location Of Offense | Status | Involvement | General Offense |
|---|---|---|---|
| Residence/Home/Garage | Adult Arrest 03/05/2006 | ☐ Alcohol ☐ Drugs ☐ Computer | |

| Suspected Hate/Bias | Crime Code |
|---|---|
| ☐ Yes ☒ No - N/A | 5202 - Carrying a Concealed Deadly Weapon/Deadly Instrument/CCDW/CCDI |

| Burglary Force Involved | Criminal Activity | Weapon/Force Used |
|---|---|---|
| ☐ Yes ☐ No | Possessing/Concealing | Blunt Object/Club |

## Victim - Suspect/Defendant Relationships

| Victim - 001 ▓▓▓ | Suspect/Defendant - 001 WINN, HILLARD M | Victim Offender Relationship Acquaintance |
|---|---|---|
| Victim - 002 Society/Public | Suspect/Defendant - 001 WINN, HILLARD M | Victim Offender Relationship Victimless Crime |

## Witness Information

| Sequence | Type | Name | Sex | Race | Age | D.O.B. |
|---|---|---|---|---|---|---|
| 001 | Witness | ▓▓▓ | | | | |
| Address ▓▓▓ | | Home Telephone / Cell Phone | | | | |
| 002 | Witness | ▓▓▓ | | | | |
| Address ▓▓▓ | | Home Telephone / Cell Phone | | | | |
| 003 | Witness | ▓▓▓ | | | | |
| Address ▓▓▓ | | Home Telephone / Cell Phone | | | | |
| 004 | Witness | ▓▓▓ | | | | |



A15

| Reporting Officer | Supervisor Approval |
|---|---|
| OFC PROVENZA   2470-2 | JAIME A DOLAN-GRISILE Recording |

| Page: 3 | Report Date: 03/05/2006 | Agency: New Castle County PD | Complaint: 32-06-025964 |
|---|---|---|---|

| Sequence 004 Continued | Witness Information | | |
|---|---|---|---|

| Address 60■■ | Home Telephone (302) 000-0000 | Call Phone | |
|---|---|---|---|

## Investigative Narrative

Crime Scene: The crime scene is a second floor apartment located in the Avalon Building in Lexington Green. The apartment was a two bedroom, and the incident occurred in the rear bedroom and the living room area of the apartment. The living room area of the apartment had items all over the floor, the sofa was moved and a chair was flipped over by the sofa. There were items pulled out of the closet in the dining room area. The first bedroom on the right side is ■■■■ ■■■■■room, but she was not sleeping in there at the time of the incident. This room had clothing and other items spread all over the floor. The second back bedroom had a twin sized bed by the door and several items about the floor. There was a lamp located between the bed and the wall, which would be consistent with items being thrown.

Victim Interview:  see statements

Witness Interview:  see statements

Neighborhood Canvass: The only witnesses located were directly involved in this incident.

Evidence:  Writer took several polaroids of the injuries sustained during this altercation. Writer collected the polaroids and logged them into evidence. Writer obtained polaroids of the crow bar/tire iron that was located in the trunk of the vehicle and the vehicle tag.

Suspect Interview:  see statements

Investigative Narrative:

On 030506, writer responded to 106 Avalon Building, Newark, De 19702, which is in the County of N  Castle, State of Delaware for a Burglary in Progress.  Upon arrival, writer, Ofc. K ,ewski and Ofc. Jackson were confronted with several subjects exiting the residence.  The following subjects were identified as they were taken into custody, Hillard Winn (040965), ■■■■■■■■■■■ and ■■■■■■■■■■■.  There were two females that were also detained as they exited the building ■■■■■■■■ and ■■■■.

 A 16

| Reporting Officer | Supervisor Approval |
|---|---|

| Page: 4 | Report Date: 03/05/2006 | Agency: New Castle County PD | Complaint: 32-06-025964 |
|---|---|---|---|

### Investigative Narrative - Continued

Writer and Ofc. Jackson detained, ▐▐▐▐▐▐ and Hillard Winn. Ofc. Krajewski ▐▐tained ▐▐▐▐▐▐▐▐▐▐▐on, and ▐▐▐▐▐▐. Writer responded to the ▐cation where ▐▐▐▐▐▐▐ was located. Writer who responded back to the scene with Ms ▐▐▐▐▐ for a show up. Ms ▐▐▐▐▐ positively identified all the above subjects being in her residence.

M▐▐▐▐▐▐ stated that Hillard Winn (T.C.) was the main problem. ▐▐▐▐▐advised that Hillard Winn came banging on her front door and forced his way in. ▐▐i stated that Hillard Winn came into her rear bedroom armed with a crow bar. ▐▐▐▐▐ advised that Hillard Winn began swinging the crowbar at her, and eventually threw it at her causing a contusion and swelling to the left temple area. ▐▐▐▐▐stated that she observed a black semi-automatic handgun in his waistband. ▐▐▐▐▐ advised that Hillard Winn continued to assault her about the apartment while ▐▐▐▐▐▐▐(Pooh) tried to get him to stop. ▐▐▐▐▐ advised that she convinced Hillard Winn to let her go change and she responded to the rear bedroom window and jumped. ▐▐▐▐▐stated that she jumped over the fence and fled to the church to call the police. (see statements)

All the above subjects were detained and transported back to headquarters for interviews. Writer spoke with ▐▐▐▐▐▐▐ after miranda was waived. ▐▐▐▐stated that she was with (Pooh) ▐▐▐▐▐▐nd (T.C.) Hillard Winn in the vehicle and Hillard Winn stated that he needed to get his clothes. ▐▐▐▐▐advised that she was in the vehicle while ▐▐▐, and Hillard Winn responded up to the apartment. ▐▐▐▐▐stated that about 20 minutes passed and D▐▐▐▐▐ responded back to the vehicle with a crow bar and said Hillard Winn is beating up that lady you need to come back and help. ▐▐▐▐▐ stated that she responds upstairs to the apartment and observes Hillard Winn assaulting ▐▐▐▐▐ and she and ▐▐ ▐▐tempt to stop him. ▐▐▐▐▐▐ stated that ▐▐▐▐▐▐responds into the apartment and 1s (T.C.) Hillard Winn off of the lady and they walk out back. ▐▐▐▐▐ stated that she w▐ited outside and Hillard Winn and ▐▐▐▐▐respond back upstairs and the police arrive. (see statements)

Writer with the assistance of Ofc. Godwin interviewed the other persons above. Ofc. Godwin interviews ▐▐▐▐▐after miranda was waived. ▐▐▐▐▐provides a similar incident to that of ▐▐▐▐ Writer interviewed ▐▐▐▐▐after miranda was waived. Ms ▐▐▐▐dvised that she got involved after she was contacted by ▐▐▐▐▐ and ▐▐▐▐ ▐▐▐that T.C. (Hillard Winn) was assaulting ▐▐▐▐▐▐sed that she ran over to the residence to help when the police arrived. Ofc. Godwin spoke with ▐▐▐ after miranda and parental permission. ▐▐▐▐▐could not provide much information pertaining to this incident. (see statements)

Writer interviewed Hillard Winn about the incident after he waived miranda. Mr Winn stated that he responded over to the residence to obtain his personal belongings because he left them there until he had a place to stay. Mr Winn advised that originally no one answered the front door and he got really mad. Mr Winn stated that he began banging on the front door and a tall black male opened the door. Mr Winn advised that he walked right into the residence looking for Ruth Boccelli to get his things. Mr Winn stated that he never touched Ruth Boccelli but he did throw things around the apartment. Mr Winn denied any thing involving a weapon or assaultive behavior. (see statements)

V ▐er inquired through deljis and found that Hillard Winn pled guilty to Robbery 2nd on 010792 (▐. 9506006838) making him a person prohibited. Writer found through the interviews that the crow bar that was used in the incident was placed in the vehicle that was still at the scene. Writer had an officer respond back to the scene and secure the vehicle. The vehicle was still locked when the officer arrived and the keys were on ▐▐▐▐▐▐ when he was detained at the


A17

| Reporting Officer | Supervisor Approval |
|---|---|

Investigative Narrative - Continued

scene. The vehicle was towed back to headquarters by Ofc. Jackson which maintained the security of the vehicle. The keys to the vehicle were still with ⬛⬛⬛⬛ personal belongings in a secured locker in the turnkey area of headquarters. Writer completed warrants for the arrest of 'llard Winn, while Ofc. Godwin completed a search warrant for the vehicle that was used to ransport Mr Winn to the residence. Writer had the search warrant and arrest warrant signed by Judge Kenney at JP Court #11. Writer responded back to headquarters and turned the arrest warrant over to turnkey for processing. Writer and Ofc. Godwin executed the warrant at 0732 hours at the E.D.U. back outside of headquarters. Writer was advised by Ofc. Godwin, in the interview of ⬛⬛⬛⬛ the crow bar/tire iron was placed in the trunk of the vehicle. Writer opened the trunk and located a black tire iron, as described by ⬛⬛⬛⬛ laying on top of items in the trunk. Writer took a polaroid photograph of the tire iron and then collected same at 0742 hours. The rest of the vehicle was searched for the possible handguns that were mentioned in the incident. There were no handguns located in the vehicle or at the scene. The search warrant was completed at 0745 hours. Writer has no further information pertaining to this incident. nfd.

Further investigation: None at this time.

Prosecutive action: Conduct an intake with the Attorney General's office and pre-arrest intake. reference to Daekwon Rollins and his part in this incident.

Statement of Victim 001 - ⬛⬛⬛⬛

⬛⬛⬛⬛

Date/Time: 030506/0152 hours

Location: ⬛⬛⬛⬛

Interviewer: Ofc. Provenza

⬛⬛⬛⬛ was located at the church on Songsmith Drive after fleeing the residence. Writer orted ⬛⬛⬛ back to the rear of the residence to conduct a show up. ⬛⬛⬛ was able to identify ;.. the subjects involved in this incident. ⬛⬛⬛ was taken inside her residence for a taped interview. Below is a brief synopsis of the incident, for further details refer to the micro cassette recording.

*A18*

6       03.05.2006       New Castle County PD       32-06-025964

Statement of Victim 001 - ▓▓▓▓▓▓▓▓▓▓ - Continued

Ruth advised that T.C. (identified as Hillard Winn) stopped by some time ago to leave some clothing at her residence until her found a place to live. ▓▓▓ stated that it has been about 10 days so she threw the items out since T.C. never returned. ▓▓▓ stated that she is in the process of being evicted so she could not keep the items in her residence. ▓▓▓ advised that she was asleep in the back bedroom when someone was pounding on the door. ▓▓▓ stated that her friend Smoke 'unknown real name' was asleep in the living room. ▓▓▓ stated that Smoke has been keeping an eye on her so she does not let anyone in that would assist her in using again. ▓▓▓ advised that Smoke told her later that he believed whoever was pounding on the door was going to break it down. ▓▓▓ stated that she was awakened by T.C. standing over her with a crowbar swinging it at her asking where his shit is. ▓▓▓ stated that the crow bar was black in color and approximately 12 inches long. ▓▓▓ advised that T.C. was very irate and was telling her that she better tell him where his shit is bitch or he was going to kill her. ▓▓▓ continued to state T.C. yelled don't play with me bitch and grabbed her out of bed. ▓▓▓ advised that T.C. said that she was a dead bitch and we are going to bury this bitch tonight. ▓▓▓ stated that she told T.C. that she took his stuff over mom's ▓▓▓▓▓▓▓▓ thinking he would just leave. ▓▓▓ advised that T.C. threw the crow bar at her and it struck her. ▓▓▓ advised that she could not say if it hit her in the head or hip area because she was curled up trying to avoid being hit. ▓▓▓ stated that she observed a black handgun in T.C.'s waistband and Pooh had one as well. ▓▓▓ stated that T.C. told Pooh (▓▓▓▓▓▓▓▓) to stay there and not let her go any where. ▓▓▓ advised that a few minutes later, T.C. showed back up and there were other people with him. Ruth stated a female (identified as ▓▓▓▓▓▓▓▓), Pooh's younger brother (identified as ▓▓▓▓▓▓▓▓), and some other lady (identified as ▓▓▓▓▓▓▓▓) . ▓▓▓ advised that T.C. came back to the residence and grabbed her up out of the chair, smoke was trying not to get involved and was standing in the dining room area. ▓▓▓ stated that T.C. was hitting her about the body, then throwing things at her. ▓▓▓ advised that the female ▓▓▓▓▓ ▓▓▓▓▓ was screaming stop get off her. ▓▓▓ stated that Pooh (▓▓▓▓▓▓▓▓) was also telling T.C. to stop that he did not want to go back to jail for some clothes. ▓▓▓ advised that she convinced T.C. to put on clothes since she was in her pajamas. ▓▓▓ stated that she went into the back bedroom, and T.C. went into her room. ▓▓▓ advised that she tried to slide the bed up against the door, she climbed out the window onto the lower roof. ▓▓▓ stated that she walked across the roof to the end, and then jumped down. ▓▓▓ advised that she ran to the ▓urch to call the police. ▓▓▓ advised that she did not know who the girls were or where smoke ft. ▓▓▓ stated that she was so scared when T.C. was hitting her, she believed that he was going to kill her, that she peed her pants . (writer observed that Ruth did urinate in her pants and allowed her to change prior to the interview). nfd

Statement of Suspect 001 - HILLARD M WINN

Hillard Winn


Date/Time: 030506/0430 hours


Location: Headquarters Interview Room #1


Interviewer: Ofc. Provenza


Hillard Winn was detained by writer and Ofc. Jackson while exiting the residence. Hillard was transported to headquarters for an interview about the incident. Hillard was taking into ▓erview room #1 and was mirandized which he waived by signing the appropriate form. Hillard identified by his nickname T.C. throughout this report. Below is a brief synopsis of the ▓ncident, for further statements refer to the audio taped interview. T.C. stated that he knows ▓th through mutual friends. T.C. advised that he is currently homeless and he was trying to ▓rrange to move in with Ruth to help her out with the rent. T.C. stated that a couple of weeks ▓go, he filled out a paper in the rental office to apply for the apartment but they told him it

▓▓▓▓▓  (▓▓▓) A19

| Page: 7 | Report Date: 03/05/2006 | Agency: New Castle County PD | Complaint: 32-06-025964 |
|---|---|---|---|

## Statement of Suspect 001 - HILLARD M WINN - Continued

will take a few weeks. T.C. advised that he went back a little later and they told him Ruth said he is not moving into the apartment. T.C. stated that he asked Ruth to keep his stuff there until he finds a place to live. T.C. advised that Smoke was even staying at the apartment ¬ help Ruth keep in line so she can get into rehab. T.C. stated that if there was a problem .th him, why was it he went to court to help Ruth get her child back. T.C. advised that this does not make sense.

T.C. advised that he called Pooh tonight and offered him $7.00 to take him over to Ruth's so he can get his belongings out of her house. T.C. stated that they showed up and he went up to knock on the door, but no one answered. T.C. advised that he could hear someone in the house. T.C. he responded back downstairs and told Pooh that he would be back and responded over to mom's. T.C. advised that mom told him that Ruth threw his stuff out, so he responded back over to the apartment. T.C. advised that he was banging on the door and Smoke opened it. T.C. advised that he walked in and was looking for Ruth. T.C. agreed that Smoke never invited him in, he just assumed he could go in because he opened the door all the way. T.C. stated that Pooh went up with him and a verbal altercation occurred. T.C. denied any physical altercation occurred between him and Ruth. T.C. stated that he was very mad and he was throwing things trying to locate his items in the apartment. T.C. denied any weapons being involved in the incident and again there was no physical altercation. T.C. advised that if Ruth had injuries it was from jumping out the window. T.C. would not explain why Ruth would of jumped out the window if it was just a verbal altercation. T.C. advised that Pooh did not do anything he just went with him into the apartment. T.C. advised that they did go down to the dumpster to retrieve his clothes and not all of the bags were there so he went back up. T.C. advised that he was mad when he went back up and was throwing items around, looking for his stuff. T.C. stated that the next thing he knew, the police were at the front door arresting everyone. T.C. would not provide any further information pertaining to this incident. nfd.

---

### Statement of Witness 001 - ██████████████

Daekwon Rollins was interviewed by Ofc. Godwin, see supplement for further.

---

### Statement of Witness 002 - ██████████████████

██████████

Date/Time: 030506/0300 hours

Location: Headquarters Interview Room #1

Interviewer: Ofc. Provenza

██████████ was detained out back of the Avalon Building when the police arrived. ███ sa was detained by Ofc. Krajewski and his k9 partner until it could be identified what ███████ part was in the incident. ███████ as transported back to headquarters for an interview.

█ ███ was escorted to interview room #1 and mirandized prior to questioning. ████████ waived h. . right and signed the appropriate form. Below is a brief synopsis of the interview, for full statement refer to audio taped recording. ████████ ated that she did not know what was going on, but she will do whatever to help. ███████ ised that she was home earlier tonight, when Pooh (█████████) called and asked if she wanted to hang out. ██████ stated sure, and he

(████) A 20

| Reporting Officer | Supervisor Approval |
|---|---|

| Page: 8 | Report Date: 03/05/2006 | Agency: New Castle County PD | Complaint: 32-06-025964 |
|---|---|---|---|

## Statement of Witness 002 - ███████████ - Continued

responded over to pick her up. ███████ advised that T.C. was driving Pooh's car when they arrived. ███████ a advised that she did not know where they were going, but T.C. stated he had to go pick up some clothes. ███████ stated that they pulled up out front of the Avalon Building in xington Green. ███████ advised that she stayed in the vehicle and Pooh and T.C. went inside. ███████ ated about half hour later, Pooh came outside to the vehicle with a crow bar in his hand. M█████ advised that Pooh told her that T.C. was beating the lady up. ███████ stated that Pooh asked for her to help him stop T.C., so she responded upstairs. ███████ stated that she stood in the doorway, while another black male (possibly Smoke) was standing behind the door. ███████ advised that there were no lights on inside so she stood in the doorway because she did not know what was up with the guy behind the door. ███████ stated that she observed T.C. grab the white female and started hitting her, and throwing things around. ███████ advised that she began screaming for T.C. to stop and to leave her alone. ███████ advised that she observed Pooh grab T.C. to get him off the lady, and they got him to leave. ███████ stated that she told T.C. if the lady threw his stuff out let's check the dumpster. ███████ advised that they responded out back, and Pooh brought the car around. ███████ stated that T.C. found some of his stuff in the trash but not all of it. ███████ stated that T.C. was really mad and responded back upstairs. ███████ advised that the next thing she knew, Pooh and his brother and her were detained out back by the k9 officer. ███████ stated that she could not provide any further information pertaining to this incident.   nfd.

---

## Statement of Witness 003 - ███████████

Dominique Benson was interviewed by Ofc. Godwin, see supplement for further.

---

## Statement of Witness 004 - ███████████

███████

.e/Time: 030506/0400 hours

Location:  Headquarters Interview Room #1

Interviewer: Ofc. Provenza

███████ was stopped as she was exiting the apartment of ███████ ███████ stated that she had nothing to do with the incident, she just came over to check on her friend when the police arrived. ███████ as transported to headquarters for an interview.

███████ s taken into interview room #1 for an interview.  Below is a brief synopsis of the incident, for further statements refer to audio taped interview. ███████ aived her miranda and agreed to speak with writer about the incident. ███████ advised that she and Tish (Pooh's and Dominique's mother) were at her apartment. ███████ stated that T.C. showed up at her door looking for his stuff. ███████ tated that she told T.C. that ███████ told her that she threw his stuff out. ███████ advised that T.C. left and shortly thereafter, Pooh and Dominique came back █████ the apartment and said you need to come and help ███████ █████ ised that she and Tish ran over after being told that T.C. was assaulting ███████ ███████ stated that they showed up and went in looking for ███████ advised that she, Tish, and T.C. were walking out when the police arrived but they could not find ███████ a stated that all she knows is that T.C. apparently was beating ███████ ███████ could not provide any further information pertaining to

(███████)  Aa1

| Reporting Officer | Supervisor Approval |
|---|---|

| Page: 9 | Report Date: 03/05/2006 | Agency: New Castle County RD | Complaint: 32-06-025964 |
|---|---|---|---|

Statement of Witness 004 - ███████████ - Continued

this incident.   nfd.

A 22

| Reporting Officer OFC. PROVENZA   - 2479 2 | | Supervisor Approval JAIME A DOLAN  OJNCJAD  Date 03/06/2006 0139 | | |
|---|---|---|---|---|
| Detective Notified | | Referred To New Castle County PD  -  Criminal Unit | | |
| Solvability Factors | ☐ Witness | ☐ M. O. | ☐ Trace Stolen Property | ☐ Suspect Named | Status |

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| **THE STATE OF DELAWARE** | ) |
| | ) |
| **V.** | ) **INDICTMENT BY THE GRAND JURY** |
| | ) |
| | ) I.D. #      **0603002909** |
| **HILLARD M. WINN** | ) |

The Grand Jury charges **HILLARD M. WINN** with the following offenses:

### COUNT I. A FELONY

#N_____

**BURGLARY FIRST DEGREE** in violation of Title 11, Section 826 of the Delaware Code of 1974, as amended.

**HILLARD M. WINN**, on or about the 5th day March, 2006, in the County of New Castle, State of Delaware, did knowingly enter or remain  unlawfully in a dwelling located at 106 Avalon Building at night, with the intent to commit the crime of Assault Second Degree, therein, and when, in effecting entry or when in said dwelling or in immediate flight therefrom, he or another participant in the crime did cause physical injury to Ruth Ann Bocceloli, who was not a participant in the crime.

### COUNT II. A FELONY

#N_____

**ASSAULT SECOND DEGREE** in violation of Title 11, Section 612 of the Delaware Code of 1974, as amended.

**HILLARD M. WINN**, on or about the 5th day of March, 2006, in the County of New Castle, State of Delaware, did intentionally or recklessly cause physical injury to Ruth Ann Boccelli, by



A23

means of a crowbar, a deadly weapon or a dangerous instrument as those terms are defined in Title

11, Section 222 of the Delaware Code of 1974, as amended.

### COUNT III. A FELONY

#N_____

**POSSESSION OF A DEADLY WEAPON DURING THE COMMISSION OF A**

**FELONY** in violation of Title 11, Section 1447 of the Delaware Code of 1974, as amended.

**HILLARD M. WINN**, on or about the 5th day of March, 2006, in the County of New Castle,

State of Delaware, did knowingly possess a deadly weapon during the commission of a felony by

possessing a crowbar, a deadly weapon as defined by Title 11, Section 222 of the Delaware Code
.
of 1974, as amended, during the commission of Burglary First Degree and/or Assault Second

Degree, a felony as set forth in Count I and/or II of this Indictment, which is incorporated herein by

reference.

### COUNT IV. A MISDEMEANOR

#N_____

**TERRORISTIC THREATENING** in violation of Title 11, Section 621 of the Delaware

Code of 1974, as amended.

**HILLARD M. WINN**, on or about the 5th day March, 2006, in the County of New

Castle, State of Delaware, did threaten to commit a crime likely to result in death or serious



A24

injury to the person or property of Ruth Ann Boccelli, by threatening to kill her.

A TRUE BILL

_____
(FOREPERSON)

ATTORNEY GENERAL

DEPUTY ATTORNEY GENERAL



A25

9

Provenza - Direct

1   position?
2       A. I was on patrol.
3       Q. Were you called to an incident that occurred
4   at 106 Avalon Building, Lexington Green Apartments?
5       A. Yes, I was.
6       Q. Did you have an occasion to speak with a
7   Ruth Boccelli?
8       A. Yes, I did.
9       Q. When you first came in contact with her,
10  where was she?
11      A. She was at the church around the corner from
12  her residence.
13      Q. At that point, what did you do in
14  relationship to ascertaining the facts of what her
15  complaint was?
16      A. I asked her what occurred that evening.
17      Q. Did you conduct that interview at the church
18  that was around the corner from her house or
19  someplace else?
20      A. I brought her back to the residence.
21      Q. Prior to taking a statement from her, did
22  you do anything in terms of a show-up lineup? If you
23  know what I mean by that.

10

Provenza - Direct

1       A. Yes, I did.
2       Q. And please explain to the jury what you did.
3       A. What happened was when we arrived initially
4   at the apartment we detained several subjects exiting
5   Ms. Boccelli's residence. Once we detained those
6   subjects, I responded over to Ms. Boccelli, who was
7   at the church, and I brought her back to the rear of
8   her building for a show-up of the subjects that we
9   detained.
10      Q. And she was able to identify the defendant
11  Hillard Winn?
12      A. Yes.
13      Q. As being involved in this incident?
14      A. Yes.
15      Q. When you interviewed her, where did you
16  interview her?
17      A. In her residence, in the living room.
18      Q. To the best of your knowledge, what was the
19  state of that apartment? Were there lights on in
20  that apartment?
21      A. No.
22      Q. Was there electricity, to the best of your
23  knowledge, in that apartment?

11

Provenza - Direct

1       A. To the best of my knowledge, no.
2       Q. Did you in any way record the statement that
3   you made with Ms. Boccelli?
4       A. Yes, I did. I had a micro cassette
5   recorder.
6       Q. Prior to coming into court yesterday and
7   today did you review the statement that Ms. Boccelli
8   made?
9       A. Yes.
10      Q. Can you please tell the jury what it was
11  that she told you occurred on earlier that evening
12  that brought you and her together?
13      A. She stated that she was in the rear bedroom
14  of her residence sleeping when she heard loud banging
15  at the front door. She stated that her friend,
16  Smoke, who was in the living room area sleeping
17  basically was saying who was it at the door. She
18  said that she woke up actually in the back bedroom
19  with T.C., which Mr. Winn was identified as, standing
20  over top of her with a crowbar.
21      Q. What else did she tell you happened?
22      A. She stated that he basically ripped her out
23  of bed, started tossing her around, swinging the

12

Provenza - Direct

1   crowbar at her, telling her that she was going to
2   die, bitch. He wanted to know where her stuff was --
3   or his actual words were, "Where is my shit, bitch?"
4       She tried to state that, to basically keep
5   him from assaulting her, that she gave it to Mom,
6   which is a female that lives in the complex.
7       She stated at that point Mr. Winn left the
8   residence and within a few minutes later came back
9   and began to assault her again because he had found
10  out she threw the property away.
11      MS. WHITE: One minute, your Honor, if you
12  would.
13      Q. Did she tell you how it was that Mr. Winn's
14  property came to be at her house to begin with?
15      A. Yes. She stated that she had just met him
16  through a mutual friend a little while prior. She
17  said that he didn't have a place to stay, so she
18  allowed him to keep his property at her residence.
19  And she hadn't heard from him in approximately ten
20  days, and she was getting evicted, so she needed to
21  get rid of it, so she threw it away.
22      MS. WHITE: Again, one minute, your Honor,
23  if I could. (Pause.)

29

Provenza - Cross

1  went into her room. Ruth advised that she tried to
2  slide the bed up against the door, she climbed out
3  the window onto the lower roof. Ruth stated that she
4  walked across the roof to the end and then jumped
5  down. Ruth advised that she ran to the church to
6  call the police.
7      "Ruth advised that she did not know who the
8  girls were or where Smoke" went -- or Smoke left.
9  Sorry. "Ruth stated that she was so scared when T.C.
10  was hitting her, she believed he was going to kill
11  her, that she peed her pants." And I put that,
12  "Writer observed that Ruth did urinate in her pants
13  and allowed her to change prior to the interview."
14      Q.  Okay. Now, she says she urinated in her
15  pants because she was scared when she was being
16  beaten, right?
17      A.  Correct.
18      Q.  That's not being kicked in the ribs and
19  being forced to urinate from the kick, as she
20  testified yesterday, right?
21      A.  These statements are a brief synapsis of her
22  interview, which it states in the report.
23      Q.  Right. But if she said that she urinated

30

Provenza - Cross

1  from a kick, you would have put that in there, right?
2  That's --
3      A.  No.
4      Q.  You wouldn't have put that in there?
5      A.  Like I said, it's a brief synapsis, and it
6  says to refer to the micro cassette recording for the
7  full statement.
8      Q.  So that's in the recording?
9      A.  Yes.
10      Q.  Okay. All right. When you got Ruth from
11  the church, you brought her back to the back of the
12  residence, you had the line-up, and then you went in
13  the house and conducted the interview, took the
14  statement, right?
15      A.  Correct.
16      Q.  One event followed the other?
17      A.  Excuse me?
18      Q.  One event followed the other, in concession,
19  it happened in concession. When you picked her up,
20  you had the line-up, you took her in and you took the
21  statement, right?                                    A27
22      A.  I mean, I talked to her while I was taking
23  her back to the residence. I'm not exactly what your

31

Provenza - Cross

1  question is.
2      Q.  Okay. Here's the grit of my question: She
3  says in here that Smoke told her later on that I
4  tried to force my way into the house, was banging on
5  the door. Where did later on come about that she got
6  a chance to talk to Smoke? Because she left the
7  house, she went and called you, you got her from the
8  church, you brought her from the church to the
9  line-up, from the line-up you took her in the house.
10  So she never had a chance to talk to Smoke to get any
11  information from him to give to you in this
12  interview.
13      A.  I never stated that she spoke with him
14  later.
15      Q.  It's in here it says that she said she spoke
16  with, she talked to Smoke later -- hold up, let me
17  find it.
18          MS. WHITE: Eight lines down.
19          MR. WINN: Excuse me?
20          MS. WHITE: Eight lines down.
21          THE WITNESS: Are you talking about where it
22  says that "Ruth advised that Smoke told her later
23  that he believed whoever was pounding on the door was

32

Provenza - Cross

1  going to break it down"?
2  BY MR. WINN:
3      Q.  Yes.
4      A.  That was after they heard the initial
5  pounding on the door.
6      Q.  I mean, where did they get a chance to have
7  that conversation? If you're saying it happened
8  after I came into the house, she said I was beating
9  her the whole time.
10      A.  I didn't say that it was after you came into
11  the residence, I said that he was pounding on the
12  door, someone was pounding on the door, Ruth heard
13  someone pounding on the door. Pooh stated -- or, I'm
14  sorry -- Smoke stated that whoever's pounding on the
15  door is going to end up breaking it down, as in after
16  the initial pounding on the door.
17      Q.  Okay. But she was supposed to have been in
18  the room asleep. She said, she testified yesterday
19  that I woke her up, I punched her in her face. Now
20  she's saying that I woke her up pounding on the door,
21  and she had a conversation with Smoke at that time
22  where he said somebody's going to break the door
23  down. Is that what you're saying she said?

33

Provenza - Cross

1   A. Like I said, this is a brief synapsis. What
2   she said was that she heard the pounding --
3       Q. Well --
4       THE COURT: Mr. Winn, you have to let the
5   witness finish your question before you ask another
6   one.
7   A. She heard the pounding on the door, Smoke
8   said whoever's pounding on your door is going to
9   break it down. She said then she woke up with you --
10  someone might not -- might hear something, but
11  they're waking up out of bed and looking up and
12  you're standing in front of her with a crowbar.
13      Q. But she can have a conversation with a
14  person about somebody banging on her door, she can
15  hear somebody banging on her door, and she can talk
16  to somebody about it, but she's not really woke, and
17  through that time he opens the door, a person comes
18  in her room, she don't know they're in her room, she
19  wakes up from a punch in the face.
20      Does that sound realistic to you?
21  A. That was her statement.
22      Q. And you're the investigator.
23      Okay. All right. She said that she was in

34

Provenza - Cross

1   her pajamas and she urinated on herself, right?
2   A. Correct.
3       Q. She went to change her clothes. So when she
4   left, when you picked her up she had pants on. And
5   in this statement she only told you she urinated
6   once, right?
7   A. She stated that -- she didn't say once or
8   twice, she said she urinated on herself.
9       Q. Well, she only gave you one example in here.
10  So could it mean five times, or could it mean one
11  time or three times?
12  A. I don't know. It was her statement. She
13  said that she was scared, that she urinated on
14  herself.
15      Q. You was taking this statement, what did you
16  consider it as?
17  A. I took it that she was scared and she
18  urinated on herself. I didn't ask how many times.
19      MR. WINN: Your Honor, can I let the jury
20  see these pictures?                    A 28
21      THE COURT: Yes. Have they all been
22  introduced into evidence? I understand the State has
23  no objection, I understand?

35

Provenza - Cross

1       MS. WHITE: That's correct, your Honor.
2       THE COURT: So they'll be introduced as
3   Defendant's Exhibits 1, 2 and 3. They may then be
4   shown to the jury. And let's have two in the first
5   row, one in the second row. And, again, when the
6   jury looks at them, you're not allowed to discuss
7   them, just observe them in silence, and one or more
8   jurors can look at the picture at the same time.
9   BY MR. WINN:
10      Q. Um...
11      THE COURT: Excuse me. What we need to do
12  now, since you've asked they go to the jury, is get
13  them marked, give them to the jury, and we'll have to
14  hold off any questioning until the jury's finished
15  seeing the photographs.
16      THE BAILIFF: Publishing the photos,
17  your Honor.
18      (Jury views photographs.)
19      THE COURT: The jury has completed its view
20  of the pictures, so you may continue with any further
21  cross-examination questions.
22  BY MR. WINN:
23      Q. All right. In your, in your statement here

36

Provenza - Cross

1   she says that I woke her up standing over top of her
2   with a crowbar swinging it at her and asking her
3   where is my shit, right?
4   A. Yes.
5       Q. But in her testimony yesterday she said I
6   woke her up by punching her in the face. And here
7   you don't say anything about waking her up, punching
8   her in her face. Is that because it's only a brief
9   synapsis of what the statement was?
10  A. I haven't listened to the micro cassette
11  recently, so I can't say 100 percent.
12      Q. Well, if she told you I woke her up by
13  punching her in her face, don't you think that would
14  have been important enough to put in here?
15  A. Like I stated several times, it's a brief
16  synapsis of the incident.
17      Q. In your affidavit of probable cause for
18  arrest, I believe you stated that I hit her in the
19  head, I hit her in the temple area with a crowbar,
20  right?
21  A. If that's what it states. I don't have
22  that.
23      Q. Evidently that's what she says she said to

Provenza - Cross

1  you, right, that I hit her in her temple area?
2   A. I never said that's what she stated.
3   Q. Well, you wrote here --
4      MR. WINN: And can I let her see this?
5      THE COURT: Yes. The bailiff can hand the
6  document to the witness.
7      (Bailiff hands picture to witness.)
8  BY MR. WINN:
9   Q. If you don't mind, you can read the whole
10 thing, I don't mind.
11  A. Well, I need to answer your question first.
12     THE COURT: What is your question?
13     MR. WINN: Go ahead.
14     THE WITNESS: You stated that, you wanted to
15 know if it was where she, it struck her was in the
16 temple area, correct?
17 BY MR. WINN:
18  Q. Yeah. That's what you put in there.
19  A. Yes, I did state that you eventually threw
20 it and caused a contusion and swelling to the left
21 temple area.
22  Q. Okay. So evidently she told you that I hit
23 her with the crowbar in her temple area, right?

Provenza - Cross

1   A. No. That's not --
2   Q. I threw it and it hit her in her temple
3  area, she told you that?
4   A. She didn't say where it hit her, like I
5  stated earlier.
6   Q. Then why did you put it in there if she
7  didn't say it?
8   A. Because that was the major injury that she
9  sustained that night, that I could observe, so that's
10 why I put it in there.
11  Q. So you can just automatically make it up and
12 say, well, it hit her in the temple area?
13  A. It's not made up, sir.
14  Q. Well, if she didn't actually tell you it hit
15 her in the temple area, you're actually saying on
16 paper that it hit her in the temple, what is it?
17  A. If you recall, I stated earlier that she
18 wasn't sure that if it hit her in the head area or
19 the hip area because she was crawled up in a ball.
20  Q. That's what you said in this report --
21  A. That's the report --    *A 29*
22  Q. An affidavit for my arrest, that's the
23 affidavit you used to arrest me on --

Provenza - Cross

1   A. It's because she sustained an injury --
2      THE COURT: Let Mr. Winn finish his
3  question.
4      THE WITNESS: I'm sorry.
5  BY MR. WINN:
6   Q. You're submitting that to a judge as
7  reasonable cause to arrest me. So that's supposed to
8  be factual evidence that you're putting forth to a
9  judge to make a decision to arrest me, and you're
10 telling him factually that she told you, or that it
11 was thrown and hit her in the head and she suffered a
12 wound from that thing hitting her in the head, that's
13 what you're saying factually?
14  A. I came to the conclusion through the
15 investigation that since she couldn't determine if it
16 hit her in the head or the hip, that the throwing of
17 the crowbar did at least, from the injury that I saw
18 on her temple area, was sustained by the crowbar
19 striking her in the head.
20  Q. Okay. But she also told you that she was
21 punched in the face. So what made you decide that
22 the injury came from the crowbar rather than a fist?
23  A. I never testified that she told me that.

Provenza - Cross

1  That was from her statements yesterday.
2   Q. Well, she told you, she testified yesterday
3  that she was hit in the face. And you're saying that
4  she never told you throughout any of your interviews
5  with her that she was hit in the face?
6   A. Like I stated, I can't say 100 percent
7  because I have not listened to her statements on the
8  micro cassette. What's in my report is a brief
9  synapsis of the incident.
10     MR. WINN: Okay. Let me get that back.
11     THE BAILIFF: (Indicating.)
12     MR. WINN: Thank you.
13  Q. There was no lights, and the crowbar, she
14 says, is black. How could she determine a color if
15 you can't -- could you see in the apartment?
16  A. I could see, yes.
17  Q. Did you take pictures of the apartment?
18  A. No, I did not.
19  Q. It's a crime scene. You said that I threw
20 things all over the place. And from your scenario,
21 it should have been pretty bad, you didn't think
22 there was evidence to take pictures of?
23  A. We're not required to take pictures of a

105

Provenza - Cross

1  incident. For further details refer to audio
2  cassette."
3         You have this documented as 1:52 in the
4  morning?
5     A. That was the time of her interview, her full
6  interview.
7     Q. That's the time of her interview.
8         On your sheet, your log sheet, you have us
9  being -- what time did you do the line-up, show-up
10 identification done?
11    A. For the show-up it was at zero 105 hours.
12    Q. That's 1:05. You sent us back to police
13 station at what?
14    A. I'm sorry, what?
15    Q. What time.
16    A. What time did we take you back?
17    Q. Yeah. What time did we get escorted back to
18 the police station?
19    A. It looks like people started to be
20 transported at zero 113 hours.
21    Q. Now, you was identifying five people one at
22 a time, right?
23    A. Correct.

106

Provenza - Cross

1     Q. Now, you said you went and picked Ruth up,
2  you did, went and picked Ruth up from the church.
3  You got her back at 1:05. So how did you take those
4  pictures of Ruth at one o'clock?
5     A. It's an estimated time when the pictures are
6  taken in the report.
7     Q. Well --
8     A. It's not the exact time. Because my watch
9  might say something different than yours, so it's
10 always an estimated time of when evidence is
11 collected.
12    Q. Well, considering your testimony, your
13 estimated time is like an hour off, right?
14    A. No. I said that the pictures were taken at
15 zero 100 hours.
16    Q. Okay. What time -- you took the pictures
17 during her interview, correct?
18    A. Yes.
19    Q. Her interview started at 1:52?
20    A. Correct. It's an estimated time.   A-30
21    Q. Is there any facts that you document in your
22 report that's reliable that I can look at and say
23 they're not going to change, those facts aren't going

107

Provenza - Cross

1  to change?
2         MS. WHITE: Your Honor, I consider that an
3  argumentative question.
4         THE COURT: Overruled. It is
5  cross-examination. You may ask the question.
6         THE WITNESS: I mean, do you want me to go
7  through the entire report?
8  BY MR. WINN:
9     Q. Well, see, here's the thing: You stated in
10 your affidavit of probable -- what is an affidavit of
11 probable cause?
12    A. It's probable cause for a warrant.
13    Q. Okay. And it's a sworn statement, right?
14    A. Correct.
15    Q. And you're swearing that it's, all the
16 information you're putting in here is true?
17    A. True and correct to the best of my knowledge
18 is the way it's sworn to.
19    Q. And you put in here that "Ms. Boccelli
20 advised that Hillard Winn began swinging the crowbar
21 at her and eventually threw it at her causing a
22 contusion and swelling to the left temple area."
23        Ain't that what you put in there?

108

Provenza - Cross

1     A. Like I said yesterday, yes.
2     Q. That's not true, though, right?
3     A. It was part of the investigation. To the
4  best of my knowledge the injuries that she sustained
5  to her face was from when the crowbar was thrown.
6     Q. Did she tell you that?
7     A. I can't recall her exact statements, I
8  haven't listened to the audiotape.
9     Q. Well, why don't we just listen to her
10 audiotape.
11        MR. WINN: Can we listen to the audiotape
12 that she gave to her?
13        THE WITNESS: It's in evidence right there
14 on the table.
15        MR. WINN: Can we hear it?
16        THE COURT: Do you wish to play a portion of
17 the tape?
18        MR. WINN: I want it admitted into evidence.
19        THE WITNESS: Your Honor, just so you're
20 aware, it's a micro cassette, which I don't know if
21 we have one.
22        MS. WHITE: I have made the micro cassette
23 into a regular cassette.

Provenza - Cross

1  THE COURT: How long is the tape?
2  THE WITNESS: It's, I would estimate
3  approximately 15 minutes, if that.
4  THE COURT: May I, let me meet with Mr. Winn
5  and Ms. White at sidebar with the court reporter.
6  (The following took place at sidebar:)
7  THE COURT: So this is a micro cassette tape
8  of approximately 15 minutes in length?
9  MS. WHITE: Seems about right.
10  THE COURT: Any objection from the State to
11  it being played?
12  MS. WHITE: No.
13  THE COURT: Mr. Winn, if it's your wish to
14  play the entirety of the tape, I'll do that. Is that
15  your wish?
16  MR. WINN: Well, yes. Yes, I want to, yes,
17  I want the whole tape played.
18  THE COURT: All right. Then, we'll play
19  that tape.
20  (Sidebar concluded.)
21  MS. WHITE: Without objection, the State --
22  is this going to be the State's next exhibit?
23  THE COURT: Well, it's really a defense

Provenza - Cross

1  exhibit because it's being introduced by the
2  defendant, although it's the State's object.
3  THE CLERK: Defendant's Exhibit No. 5.
4  (Portion of Ms. Boccelli audiotape statement
5  played, 2:33 to 2:38 p.m.)
6  MR. WINN: Can we stop that for one second?
7  Did you hear that?
8  BY MR. WINN:
9  Q. She said he threw it at me and it missed me?
10  A. She said it hit her.
11  MR. WINN: Can you just, it's a couple
12  seconds back, can you just play that back?
13  (Portion of Ruth Boccelli audiotape played.)
14  MR. WINN: Stop it.
15  BY MR. WINN:
16  Q. Now, what part of that "miss" did you
17  interpret it as hit?
18  A. That sounded like "hit" to me from here.
19  Q. Cha, cha, cha, cha.        A-31
20  A. But that's not the completion of her
21  statement, either.
22  MR. WINN: Well, can you please finish it?
23  THE COURT: Continue playing the tape,

Provenza - Cross

1  please.
2  (Ruth Boccelli audiotape played.)
3  BY MR. WINN:
4  Q. Well, did you hear it? Can you tell us
5  where it's at? You heard the whole tape like us.
6  A. Like I stated, it sounded like hit to me.
7  And I wouldn't have put it in a warrant that I'd
8  sworn to if it wasn't incorrect.
9  Q. But you just did. I mean, that's the
10  statement that's in the warrant. Can you show me in
11  the statement, where it's in the statement?
12  A. There's other statements that weren't
13  recorded, as well. I mean, not, the entire
14  statement, while she was going back to the scene with
15  me she was talking to me the whole time.
16  Q. So, again, is there any facts that you have
17  that don't change when you need them to change?
18  A. I haven't changed my statements at all.
19  Q. Well, you said, you testified, right, that
20  the things you're putting in your report are a brief
21  synapsis of the things you took from the tape. But
22  now that you look and listen to the tape, and it's
23  not in the tape, you're saying it's coming from

Provenza - Cross

1  other --
2  A. It stated -- she stated that you threw it
3  and it hit her, is what I understood that to say.
4  Q. I don't understand that, though. I mean,
5  unless --
6  THE COURT: You can't make statements, you
7  can only ask questions.
8  MR. WINN: Okay, whatever. All right.
9  THE COURT: Any further questions of this
10  witness?
11  MR. WINN: Yeah.
12  BY MR. WINN:
13  Q. You made out an affidavit in another sworn
14  affidavit charging me with the offense of
15  intimidating a witness. And it was entered into
16  evidence here a letter, an envelope that I was
17  supposed to have sent to Ms. Boccelli. Would you
18  mind reading -- I'll give it to you.
19  MR. WINN: Can I give this to her, or have
20  someone give it to her?
21  THE COURT: Yes.
22  MS. WHITE: Can I see what it is, please?
23  MR. WINN: Yes (indicating).

45

Rollins - Cross

1 a minute because there's people that's in the house
2 that don't want to answer the door?
3    A. Yeah. You said you did see her or somebody
4 in there with her, and they wouldn't answer the door.
5    Q. I popped the trunk, I went in the trunk.
6 Did you see me take anything out of the trunk?
7    A. No, I didn't.
8    Q. You followed me upstairs?
9    A. Right.
10    Q. Did you see anything in my hands when I went
11 upstairs?
12    A. No, I didn't.
13    Q. When we got to the door, I'm banging on the
14 door. Did I force the door open, or did the door --
15 did somebody open the door?
16    A. No. The guy that was sitting there in the
17 hood opened the door, that was on the other side of
18 the door opened the door.
19    Q. Did you see a crowbar leave my hand and fall
20 on the floor?
21    A. The crowbar was on the floor. I picked it
22 up from the floor and put it in the trunk.
23    Q. But you never actually seen the crowbar

46

Rollins - Cross

1 leave my hand from -- at what point did you see the
2 crowbar?
3    A. I think it was after you all started talking
4 about where your clothes was, and stuff like that.
5 Actually, after he opened the door, after that,
6 that's when the crowbar was on the floor.
7    Q. How long after you seen the crowbar did you
8 pick the crowbar up?
9    A. I think it was immediately after I seen it I
10 picked it up.
11    Q. And what you do with it?
12    A. I put it in the trunk.
13    Q. Did you immediately take it to the trunk?
14 Did you take it later on to the trunk, or did you --
15    A. I think it was, I think it was when I went
16 out to go talk to Moms about the clothes, or
17 whatever, that's when I put it in there, I think.
18    Q. At anytime did you see me put my hands on
19 Ruth?
20    A. No, I didn't.
21    Q. In no kind of way, no smack, no push, no
22 punch, no kick, no nothing?
23    A. No, I didn't.

A32

47

Rollins - Cross

1    Q. When the police came, where were you?
2    A. I was outside. The thing is, I was trying
3 to get ready for you to bring your clothes
4 downstairs, I thought you was going to bring your
5 clothes down, so that's why I had somebody bring the
6 car around the back, that's where I was parked in the
7 fire lane.
8    Q. At some point did you see me inside the
9 trash Dumpster getting bags out of the Dumpster?
10    A. Yes.
11    Q. And is that when you went and got the car,
12 or had somebody get the car?
13    A. Yes.
14    Q. When the police came, when they first
15 approached you, where were you at?
16    A. I was standing outside, like right outside
17 of the building.
18    Q. In the back of the building by the car?
19    A. Yes.
20    Q. Now, the Dumpster, did I take bags out of
21 the Dumpster?
22    A. Yes, you did.
23    Q. And they're my stuff that's sitting outside

48

Rollins - Cross

1 in the Dumpster?
2    A. Right outside the Dumpster on the floor,
3 right on the ground.
4    Q. If you're at the trunk of your car and you
5 turn around and you put your back to the trunk of
6 your car, what are you facing?
7    A. The Dumpster.
8    Q. All right. When the police arrested you,
9 what did they say -- did they say anything to you?
10 How did they approach you?
11    A. I don't understand your question.
12    Q. Okay. Tell me what happened when the police
13 came, when they came and ran up on you, or seized
14 you, or arrested you, or when they first made contact
15 with you, how did that happen?
16    A. I was walking up the steps to try to get my
17 mom to tell her to come downstairs. And that's when
18 the door opened, flew open. And all I seen was the
19 dog and the gun. And I didn't know if it was the
20 police or somebody trying to rob me, so I immediately
21 ran up the steps.
22    Q. And they said, "Halt"?
23    A. And they told me to freeze, and I stopped.

165

1 because he is physically incapable, I assume that
2 that's where he's going with that.
3           The State's position is, as your Honor
4 instructed him earlier, if he takes the stand he's
5 opening himself up to questioning on the whole entire
6 case, just not on the limited issue regarding his
7 physical disability. And the State would want to
8 cross-examine him about the whole entire incident,
9 the statements that he made, the letters that he
10 wrote, the reasons for writing the letters, the whole
11 case. And the State objects to a limited purpose.
12           THE COURT: Mr. Winn, in brief response.
13           MR. WINN: I don't think she could be able
14 to cross-examine me on the letters, because --
15           THE COURT: Well, I'm -- excuse me for
16 interrupting you.
17           MR. WINN: This is why I'm objecting.
18 Because it's my Fifth Amendment right, Article VII,
19 to self-incrimination. I have another case which
20 involves those letters, you know what I mean. So if
21 I testify to them today it would be pertinent to my
22 prosecution tomorrow. You know what I mean?
23           THE COURT: Well, the Court's ruling is what

166

1 it was before, which is that you, a person like
2 yourself cannot testify only as to limited areas that
3 they want the jury, he or she wants the jury to hear
4 about and not about other areas. You open yourself
5 up for cross-examination to all relevant areas of
6 inquiry. So is it your decision not to testify in
7 this case?
8           MR. WINN: Yes. But can I reserve my right
9 to appeal that issue?
10           THE COURT: You can appeal on whatever -- if
11 you are convicted, if you are convicted you can
12 appeal on whatever grounds are appropriate. I'm
13 simply now determining that you are exercising your
14 constitutional right not to testify in a knowing,
15 voluntarily and intelligent manner.
16           Is it your decision not to testify?
17           MR. WINN: Yes.
18           THE COURT: Do you believe that you are
19 knowingly, voluntarily, and intelligently making the
20 decision not to testify on your behalf in this case?
21           MR. WINN: Yes.                          A 33
22           THE COURT: All right. I'm going to go up
23 and revise the jury instructions. I'll be down in

167

1 hopefully ten minutes, and we'll have a prayer
2 conference. And what I propose to do is to begin
3 with closing arguments this afternoon. If we can at
4 least get the State's argument in, that will be done.
5 And then we will probably have to continue on Monday.
6           We're in recess.
7           (Recess taken, 3:54 to 4:07 p.m.)
8           THE COURT: Be seated. Can you give this to
9 Winn. We're not convening yet. Here's a copy for
10 Ms. White. And after you both have had the chance to
11 look at them, let me know and I'll come down.
12           MS. WHITE: Thank you.
13           (Recess taken, 4:08 to 4:26 p.m.)
14           THE COURT: Ms. White and Mr. Winn, I have
15 just decided -- maybe you came to the same conclusion
16 I did -- that it just doesn't make sense to try to do
17 the State's closing, I thought. It's a bit more
18 optimistic than I should have been. So I think we'll
19 have the prayer conference only right now, bring in
20 the jury, allow Mr. Winn to rest before the jury so
21 the jury now knows when it goes home for the weekend
22 the evidence is concluded. We'll ask them to come
23 back at nine o'clock on Monday. The bailiff tells me

168

1 that only Juror No. 14, Alternate No. 2, has a prior
2 commitment on Monday. So we will, I guess, have to
3 excuse him.
4           First, the State's comments on the jury
5 instructions.
6           MS. WHITE: Your Honor, may I remain seated?
7           THE COURT: Yes.
8           MS. WHITE: Okay. Thank you.
9           The State finds that -- do you want me to go
10 page by page?
11           THE COURT: Yes.
12           MS. WHITE: I have no problems with jury,
13 duty and function of judge and jury, objections to
14 rulings on evidence, attorney's belief or opinion, or
15 the indictment, as they are standard and what the
16 Court does in each and every case before the Superior
17 Court.
18           On the indictment -- well, I'm going to
19 flip -- your Honor, I'm going to move ahead and I'm
20 going to work backwards, and you'll understand how my
21 logic works.
22           Count I of the indictment alleges burglary
23 in the first degree --

169

1    THE COURT: Wait. May I just interrupt to
2    say this: Probably as a courtesy to the jury we
3    should let them go now, bring them in. And, as I
4    said, I'll turn to you, Mr. Winn, you'll rest before
5    the jury, I'll tell the jury the evidence is closed,
6    not to discuss the case.
7        Please bring in the jury.
8    THE BAILIFF: Yes, your Honor.
9    (Jury enters the courtroom at 4:29 p.m.)
10    THE COURT: Members of the jury, as you
11    know, the State has rested its case.
12    Mr. Winn.
13    MR. WINN: I rest.
14    THE COURT: The defense rests its case.
15    Therefore, the evidence is closed in the case. The
16    next step will be closing arguments, followed by jury
17    instructions by me and deliberations by you. It's
18    4:30. We're not going to be able to do anything
19    further today. I'm sorry about that. But just we
20    still have to go over jury instructions, Ms. White,
21    Mr. Winn and myself. So, I think one juror, perhaps
22    Juror No. 14, has advised the bailiff that you are
23    not able to come back on Monday?

170

1    JUROR 14: (Nods head.)
2    THE COURT: Do I understand you have some
3    prior commitment, could you tell me what that is?
4    JUROR 14: I have a doctor's appointment.
5    THE COURT: And I assume it's appropriate
6    not to reschedule the doctor's appointment? We don't
7    usually ask that, sometimes they can be.
8    JUROR 14: (Pause.)
9    THE COURT: You'd prefer to go forward with
10    the medical appointment?
11    JUROR 14: My preference would be, yes.
12    THE COURT: Then, of course, we'll keep
13    that. Then, you are excused. When you go out with
14    the bailiff you'll be excused permanently. Thank you
15    very much, I know I speak for the State and the
16    defendant, for your service in this case.
17        To the other jurors, am I correct in
18    understanding that the other 13 of you can come back,
19    it would be at nine o'clock on Monday to hear closing
20    arguments and then jury instructions?        A34
21        Then, let me just instruct you that during
22    this hot long weekend -- or the weekend, the long
23    recess, you're not allowed to discuss the case with

171

1    anyone or allow anyone to discuss the case with you.
2    That's the same thing that I've been saying for ten
3    years. Have a good weekend, we'll see you Monday at
4    nine o'clock. Thank you very much for your
5    cooperation with the various delays that we have had
6    in this case. Please take out the jury.
7        (Jury leaves the courtroom at 4:31 p.m.)
8    THE COURT: Ms. White.
9    MS. WHITE: Thank you again, your Honor.
10        I'm going to be working backwards in my way
11    of thinking.
12        Defendant was charged with assault in the
13    second degree, and it alleges that victim was caused
14    physical injury by means of a dangerous instrument or
15    a deadly weapon, i.e., the crowbar/tire iron. The
16    jury may conclude that Mr. Winn caused physical
17    injury to the victim but not by means of a deadly
18    weapon or a dangerous instrument. So the State is
19    going to be asking for the lesser included of assault
20    in the third degree as one of the alternatives.
21        That being the case, that then impacts on
22    the crime of burglary in the first degree where it
23    was indicted, and it says in your instructions that

172

1    he did break into the building at night with the
2    intent to commit the crime of assault in the second
3    degree. Our statute, under 826, certainly would
4    permit this still to be a burglary in the first
5    degree even if the defendant only committed assault
6    in the third degree.
7    THE COURT: All right. Let me hear
8    Mr. Winn's position on the State's request to give
9    the jury the so-called lesser included offense
10    instruction of assault third degree misdemeanor. And
11    if I were to do that, that would also potentially
12    affect the burglary in the first degree instruction,
13    because the crime would then be either assault second
14    degree or the misdemeanor assault third degree.
15    MR. WINN: I object, your Honor. I believe
16    I have the right to be tried as the indictment reads.
17    And that's how I would like the jury to address the
18    indictment.
19    THE COURT: Well, the law is that if there
20    is a, quote, Rational basis in the evidence, unquote,
21    for a lesser included instruction, either the State
22    or the defendant can request such lesser included
23    instruction. Vincent Cox vs. State holds that. So

1  if there is a rational basis in the evidence, and

2  you've heard Ms. White state the State's position.

3       MR. WINN: I don't see that there's a

4  rational basis in the evidence. The victim testified

5  that she was hit with a crowbar. The State put on

6  evidence that she was hit with a crowbar. And I

7  think I have a right for the jury to decide whether

8  or not that's true, that's factual.

9       THE COURT: I actually have been thinking

10  about this issue during the trial, and I'm going to

11  deny the State's request for a lesser included

12  offense for this reason:

13       It's almost a parallel thinking to whether

14  or not the State could have moved to amend the

15  assault second degree indictment to charge physical

16  injury other than by a tire iron or crowbar. Had the

17  State moved to amend the assault second degree

18  indictment to read, "Or by fist or punching," I

19  probably would have not allowed it because of the

20  theory in the case law that the State can only

21  proceed in the way that the grand jury presumably

22  heard the evidence.

23       And since the grand jury presumably was only

1  told that the injuries occurred by way of the tire

2  iron and crowhorn (sic), not any other way, I

3  wouldn't have allowed it. And I think it follows,

4  then, that there's not a rational basis in the

5  evidence, given the law as I see it, for the giving

6  of the assault third degree instruction, because that

7  would require a finding of causation of physical

8  injury other than the way the indictment says.

9       MS. WHITE: Your Honor, may I argue your

10  ruling?

11       THE COURT: I'll hear further from you.

12       MS. WHITE: Thank you. I can appreciate why

13  your Honor would have denied my motion had I moved to

14  amend, because I do agree with the Court that that is

15  different than what the grand jury heard.

16       However, for purposes of a lesser included,

17  as your Honor just stated, it's a rational basis in

18  the evidence. And this witness more than once -- in

19  fact, every time she testified said not only was she

20  hit by a crowbar, but she was punched and kicked and

21  hit, and items were thrown at her. So there is a

22  rational basis in the evidence for this jury to

23  conclude that she was not hit with a crowbar, because

*A-35*

1  there was evidence that Mr. Winn introduced that the

2  crowbar missed her, but, nevertheless, she did suffer

3  physical injury at the hands of Mr. Winn by means of

4  being punched and kicked and hit.

5       That is a different standard than the motion

6  to amend, which -- and I do think there is clearly a

7  rational basis in the record to say an assault in the

8  third degree is something that this jury could find.

9       THE COURT: Well, the -- I'm thinking

10  through the State's position -- the problem is that

11  the defendant has been defending the case, and I

12  think I can sort of glean that from his

13  cross-examination, to the crowbar defense. The State

14  could have phrased the indictment originally "by

15  means of a crowhorn (sic) or tire iron, or by fists."

16       MS. WHITE: Then it wouldn't have been an

17  assault in the second degree, your Honor, because

18  fists and hands are not a deadly weapon or a

19  dangerous instrument. So we would have had to

20  indicted assault in the second degree and assault in

21  the third degree both.

22       THE COURT: That's a good point.

23       MR. WINN: But the State still had the

1  option of putting that before the grand jury, though,

2  right? They had an option when they sent up the

3  packet to the grand jury to present the evidence in

4  that manner and let the grand jury decide how they

5  was going to rule on it. They had that option.

6       Throughout the whole trial I defended my

7  case from the reading of the indictment, because

8  that's what I was under the impression that I had to

9  defend against. Now she wants to change the reading

10  of the indictment and impair my ability to now defend

11  myself against fists and other -- because that wasn't

12  originally in the indictment.

13       MS. WHITE: Your Honor, if I can respond to

14  Mr. Winn. I can appreciate that he did defend

15  himself against an assault in the second degree

16  charge against the use of a crowbar. But that does

17  not preclude him to be found guilty of the lesser

18  included offense which is part of the indicted

19  offense of an assault without a crowbar. And he --

20  if in fact he's successful in that manner, he will

21  escape a felony conviction.

22       MR. WINN: But I was not given due notice

23  that I would have to defend myself against fists and

*A-35*

**177**

1 kicks or --
2 THE COURT: All right. I'm going to think
3 about this and I'll make a ruling at the end of the
4 prayer conference. So let's, I'm going to put that
5 aside for just a moment while I think further about
6 it, because it's an interesting issue.
7 MS. WHITE: Your Honor, frankly, that was
8 the only, State's only issue, whether the lesser
9 included on the assault second would then come back
10 and affect the wording of the burglary in the first
11 degree. Other than that, the State finds no other
12 changes or alterations or any issues with the
13 instructions as prepared.
14 THE COURT: All right. Mr. Winn, what
15 issues, if any, or comments do you have to make about
16 the proposed jury instructions?
17 MR. WINN: I don't know enough to argue if
18 there's any flaws in the jury instructions at this
19 time, I don't know enough. I can tell you, since
20 we're going to recess until Monday, I can make any
21 objections or anything at that time that I may come
22 up with over the weekend. But, you know what I mean,
23 for me to tell you definitively right now that I can

**178**

1 present to you every argument I may have, I can't do
2 that. But --
3 THE COURT: Well, this is --
4 MR. WINN: -- from what I've seen so far, I
5 don't have a problem.
6 THE COURT: Well, this is the time set
7 for a prayer conference. I want to adjourn at
8 five o'clock, knowing, both parties knowing what the
9 jury instructions, how they're going to read, so that
10 over the weekend each of you can prepare your closing
11 arguments. So I'm going to think, then, just a
12 moment further about the State's request. I'm going
13 to take a recess for five minutes, or so. I'll be
14 back myself.
15 (Recess taken, 4:40 to 5:00 p.m.)
16 THE COURT: Counsel, Ms. White and
17 Mr. Winn, I've not yet made up my mind on the assault
18 third degree issue, it's, I think it needs a bit more
19 research by me. So I'm going to have to think about
20 it over the weekend. And I'll let you know, of
21 course, first thing on Monday before you begin your
22 closing arguments. And I'm sorry not to have that
23 decision made so over the weekend you could know

**179**

1 that, but unfortunately I just want to take some more
2 time to think about it.
3 MS. WHITE: Your Honor, I can appreciate
4 that. There is one other addition I would like to
5 mention before we adjourn for the day. On your
6 possession of a deadly weapon during commission of a
7 felony instruction, if your Honor goes below, you
8 have No. 1, No. 2, No. 3 on that page. I'll let you
9 find the page, please.
10 THE COURT: I have it.
11 MS. WHITE: After, you start in the
12 definition portion of explaining to the jury what a
13 deadly weapon is, do you see where it says, "A deadly
14 weapon includes a dangerous instrument. Title 11
15 Section 222, Subsection (5), deadly weapon includes
16 a" -- and I'm going to leave out the firearm, a
17 knife, since those aren't mentioned -- "but includes
18 a billy, a blackjack, a bludgeon, or any other
19 dangerous instrument." And I would ask that either
20 the word bludgeon, billy, blackjack, bludgeon, be
21 added before you go on in your definition to say
22 "includes any dangerous instrument."
23 THE COURT: Mr. Winn.

**180**

1 MR. WINN: I would make the same objection,
2 your Honor. I was never given due notice that I
3 would have to defend against all those other things.
4 It was never put in before the grand jury for the
5 jury to make a decision upon it. I think I should be
6 given due notice to what I would have to defend. And
7 I think it's like a Monday morning issue where you're
8 telling me something after it's over where I don't
9 have a chance to defend myself against it.
10 THE COURT: Well, I overlooked that. I'm
11 going to grant the State's request. Because what the
12 inclusion of the words -- and I'm not going to
13 include blackjack, that's too dissimilar to the
14 object in question -- but the crowbar (sic) slash
15 tire iron is close to a billy, maybe slightly closer
16 to a bludgeon. And it's for the purpose of aiding
17 the jury in understanding what exactly a dangerous
18 instrument is. So I am going to grant the State's
19 request to include the words "billy" and "bludgeon"
20 in that definitional phrase.
21 We are in recess until nine o'clock on
22 Monday.
23 MS. WHITE: Thank you, your Honor.
(Court adjourned at 5:03 p.m.)

A36

181

## R E P O R T E R   C E R T I F I C A T E   P A G E

STATE OF DELAWARE:

NEW CASTLE COUNTY:

     I, Thomas E. Maurer, RPR, Official Court
Reporter of the Superior Court, State of Delaware, do
hereby certify that the foregoing is an accurate
transcript of the proceedings had, as reported by me
in the Superior Court of the State of Delaware, in
and for New Castle County, in the case therein
stated, as the same remains of record in the Office
of the Prothonotary at Wilmington, Delaware, and that
I am neither counsel nor kin to any party or
participant in said action, nor interested in the
outcome thereof.

     This certification shall be considered null
and void if this transcript is disassembled in any
manner by any party without authorization of the
signatory below.

     WITNESS my hand this 12th day of June, 2007.

          Thomas E. Maurer, RPR

          Official Court Reporter

          Delaware Cert. No. 155-PS

A37

12

1

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE )
v. ) I.D. No. 0603002909
HILLARD M. WINN, )
Defendant. )

MONDAY, SEPTEMBER 11, 2006

BEFORE: HONORABLE RICHARD R. COOCH, J. AND A JURY

APPEARANCES:

DEPARTMENT OF JUSTICE
BY: MARSHA WHITE, ESQ., Deputy Attorney General for the State

HILLARD M. WINN, Pro Se

TRANSCRIPT OF TRIAL

LYNNE BELL COALE
Registered Diplomate Reporter
Certified Realtime Reporter
SUPERIOR COURT REPORTERS
500 N. KING STREET WILMINGTON, DELAWARE 19801
(302) 255-0562

2

(Courtroom 6A, 9:23 A.M.)

- - -

THE COURT: Good morning, everyone.

MS. WHITE: Good morning, your Honor.

THE COURT: Still pending before me is the State's request to have the jury instructions on the lesser-included offense of assault in the third degree. And after thinking about it, I will grant the State's request for the following reasons:

As I mentioned on Friday, when the issue first came up, I gave it much thought in connection with the case law and the standard required under Criminal Rule 7(e), which becomes involved if there's a motion to amend an indictment or an information. And as we know and as I said, amendments to indictments, or to counts of indictments, can occur if there's no new or additional charge sought to be included and the substantial rights of the defendant are not prejudiced. And I believe, as I thought about it further, the standard of whether or not either party can request a lesser-included offense is whether or not there is a "rational basis in the evidence," under Section 206 of the criminal code.

Here, I do think there is a rational basis in the

3

evidence for the jury, potentially, to find that injuries -- ordinary physical injury was inflicted by the defendant, not necessarily by use of the crowbar or tire iron. So, for that reason, I will grant the State's request. The jury instructions will reflect that I will give the lesser-included offense of assault third degree. It follows from that, as the State said, that, in the burglary first-degree charge, the indictment -- the instruction will be changed to add in assault with the intent to commit the offense of assault second degree or assault third degree. The verdict page will be amended to reflect the possibility of the lesser-included offense of assault third degree. And the only other change is the change on the very first instruction to the jury, speaking -- instructing them on the law about the offenses, as well as any lesser offense of which the defendant might be convicted.

So, that's the Court's ruling.

MR. WINN: Your Honor, I would like to object to that because I was never made aware of the fact that I would have to defend against a simple assault charge.

THE COURT: You've already -- Mr. Winn, you've already had your chance for oral argument on the motion. I understand your position. You said that on Friday. Of

4

course, I've taken into account the position you articulated, but that's the Court's decision.

MR. WINN: Okay.

THE COURT: Anything else to take up before we bring in the jury?

MR. WINN: I would like to read something into -- on to the record.

Your Honor --

THE COURT: What is this you want to read into the record?

MR. WINN: A motion for direct acquittal on Count 2 because it was -- it's actually incumbent upon the Court, when the officer -- when the tape was played -- before you made any amendments to Count 2, when the tape was played and the statement of the complaining witness said that I did not hit her with a crowbar, I was effectively exonerated of the charge at that point. And there should have been no amendment from that point because the indictment was made moot by -- or moat, or however you pronounce it --

THE COURT: Moot.

MR. WINN: -- by the statement made by the complaining party. Now, everything else is -- is excess to

A38

29

1  have the letter; we only have the envelope. But we have the
2  testimony of Ruth Bocelli in which she says the defendant
3  wrote to her and said "200 bucks, call this number," and it
4  turns out to be the same Leonise that he mentions in the
5  Pooh letter. "Leonise is ready to pay you off. Call
6  Leonise. She will give you money" -- consciousness of
7  guilt, ladies and gentlemen, consciousness of guilt.
8      Now, defendant was charged with assault in the
9  second degree. In the indictment, it is alleged that he did
10  cause physical injury by means of a deadly weapon, the
11  crowbar or a tire iron. A crowbar or a tire iron is not
12  specifically listed in our criminal code as a deadly weapon.
13  But I'm going to read what, under Section 222, deadly weapon
14  is what you normally think it would be -- a firearm, a
15  knife. But it's also -- I'll read it: "A firearm" -- "A
16  deadly weapon includes a firearm, a bomb, a knife" --
17      THE COURT: Excuse me, Miss White, I will be
18  defining what a deadly weapon is in my instructions, so I
19  think it should be limited to that.
20      MS. WHITE: Thank you, your Honor.
21      It goes on to say a billy or a bludgeon. A
22  bludgeon, that's a word, sort of sounds medieval, a
23  bludgeon. A bludgeon is an item that is weighted more

30

1  heavily at one end than the other -- an item that is
2  weighted more heavily at one end than the other. The State
3  asserts --
4      THE COURT: May I see -- I'd like to see
5  Miss White and Mr. Winn at sidebar.
6      (The following sidebar conference was held.)
7      THE COURT: Miss White, what's the basis of your
8  statement that a bludgeon, if I heard you correctly, was
9  more heavily weighted at one end than the other?
10      MS. WHITE: Webster's Dictionary, your Honor.
11      THE COURT: I thought that was probably the case.
12  The problem is that's not inserted into the jury
13  instructions. I'm not sure that's commonly known by the
14  jury. I think, if a Webster's definition of bludgeon, may
15  well be correct, is to be allowed, it should be in the jury
16  instructions.
17      MS. WHITE: Well, it is a word that people don't
18  commonly know what the definition is, yet, we've inserted
19  it.
20      However your Honor wants to take care of it. A-39
21      THE COURT: Is it the State's proposal that a
22  bludgeon -- as we know, jurors can give the common ordinary
23  everyday meaning of words that meaning. Is the State

31

1  suggesting that the Webster's definition of bludgeon be
2  additionally cited in the jury instructions?
3      MS. WHITE: Yes, your Honor, if that makes the
4  Court happier. I'm sorry, you know, I -- if I had to
5  explain other words, I probably would.
6      THE COURT: Mr. Winn?
7      MR. WINN: You all keeping changing the rules,
8  so, you know, however, man.
9      THE COURT: Well, since the time to have
10  requested a Webster's definition of bludgeon was before we
11  began closing arguments, I'm not going to allow any further
12  definition of bludgeon. I'm going to direct, I think, in
13  fairness to Mr. Winn, that the jury be directed not to
14  consider any definition of what a deadly weapon is other
15  than what's in the jury instructions. I just don't think
16  it's proper to argue a dictionary definition of a term in
17  the instructions that hasn't been raised.
18      MS. WHITE: However, supposedly, the jury is to
19  take the ordinary common-day meaning, and that may be a word
20  they don't know the meaning of.
21      THE COURT: Just in the particular context of
22  this case, I'm not going to allow it.
23      MS. WHITE: Okay.

32

1      (Sidebar conference concluded.)
2      THE COURT: Members of the jury, you should
3  disregard any statements of the prosecutor right before the
4  objection. Or the call was taken to go to sidebar by me,
5  relating to any definition of a bludgeon. You should rely
6  exclusively on the jury instructions on the definition of a
7  deadly weapon or dangerous instrument.
8      So, you may continue.
9      MS. WHITE: Thank you, your Honor.
10      As I was saying, tire iron, as defined in the
11  jury instructions -- well, excuse me, I misspeak.
12      A deadly weapon will be defined as a billy or a
13  bludgeon, or it also includes any dangerous instrument which
14  is used or attempted to be used to cause death or serious
15  physical injury. And it goes on, a dangerous instrument
16  means any article that is either used, attempted to be used,
17  threatened to be used, that is readily capable of causing
18  death or serious physical injury. Our code allows for
19  deadly weapons themselves, what you know to be a deadly
20  weapon to be considered a deadly weapon, but also a common
21  ordinary object that is used in such a way that could cause,
22  is readily capable of causing serious physical injury or
23  death to also be considered a deadly weapon.

33

1  For example, a household iron, used to iron
2  clothes, it's not a deadly weapon in and of itself --
3  MR. WINN: Your Honor, can I -- can I have
4  sidebar for a second.
5  THE COURT: Yes.
6  (The following sidebar conference was held.)
7  MR. WINN: Your Honor, I understand, she's trying
8  to get the jury to say that an iron or any object could have
9  been used as a deadly weapon in this case. And that's not
10  in the indictment. So, now, her statements are included in
11  all these other items that's not a part of the indictment.
12  THE COURT: Miss White, in response?
13  MS. WHITE: A tire iron is part of the
14  indictment.
15  MR. WINN: Yeah, but you're --
16  THE COURT: Let her speak.
17  MS. WHITE: And any item can be considered a
18  deadly weapon if it is used, readily capable of being used
19  to cause serious physical injury.
20  THE COURT: I think the prosecutor's argument is
21  appropriate. She's trying to explain through examples of
22  the concept of how a dangerous -- how an ordinary object
23  can, depending how it's used, become a dangerous instrument

34

1  under our criminal code. Objection overruled. Let's
2  continue.
3  (Sidebar conference concluded.)
4  MS. WHITE: An iron that you use to iron your
5  clothes on a day-to-day basis is not a deadly weapon. But
6  if a person, not this defendant, a person picked up that
7  iron and used it to repeatedly hit somebody in the head over
8  and over and over, because of the weight of the object and
9  the force that was used, it can become a deadly weapon. It
10  can become an object that is readily capable of causing
11  serious physical injury or death.
12  In this case, likewise, the State is alleging one
13  of two things: Either it is, in and of itself -- a tire
14  iron or a crowbar is, in and of itself, a deadly weapon
15  because it is analogous to, it is the same as a billy or a
16  bludgeon; or it is a dangerous instrument such that, as it
17  is used, could cause -- could cause, not that, in this case,
18  it did cause -- but that it is readily capable of causing
19  death or serious physical injury. A tire iron, in and of
20  itself, is used to change a tire; or if it was a crowbar,  A40
21  whatever you want to call this, it is used for a common
22  everyday purpose. But when it is used as a weapon, it is
23  capable of causing serious physical injury or death.

35

1  Now, in this case, the State is not alleging that
2  it was used to cause serious physical -- actually cause
3  serious physical injury or death. But that's not what the
4  definition requires. It requires it to be a dangerous
5  instrument that is capable of causing serious physical
6  injury or death.
7  Now, serious physical injury and physical injury
8  are also terms that are defined and will be defined by the
9  Honorable Judge Cooch. But just so you understand again how
10  our criminal code works, a bruise is an impairment of
11  health. That is the definition of physical injury.
12  Title 11, Section 222, Section 23, "Physical injury means
13  impairment of physical condition or substantial pain."
14  In this case, in Count 2, assault in the second
15  degree, the State is alleging that the defendant did
16  intentionally or recklessly cause physical injury. And a
17  bruise, the State submits, is a substantial impairment of
18  health or pain -- to Ruth Ann Bocelli by means of a crowbar
19  or a tire iron which is a deadly weapon or a dangerous
20  instrument, as I just explained.
21  Now, we have evidence that the crowbar was used
22  to injure Miss Bocelli. What evidence do we have of that?
23  Well, we know the crowbar certainly was there. We know that

36

1  the trunk was popped. Poohmere saw the defendant with the
2  crowbar in his hand and, in the taped statement, Poohmere
3  says that the defendant was getting ready to use it, he was
4  over on top of Ruth Ann, and that Poohmere picked that tire
5  iron up off the floor -- it obviously got on to the floor
6  either by being placed there or thrown there. The State
7  submits it was thrown there. It's consistent with Ruth
8  having told you he threw it at her. The crowbar was on the
9  floor and, then, he put it back in the trunk. So, we know
10  Poohmere says the crowbar was there.
11  Ruth said he threw it at her and it hit her.
12  We're not exactly sure where it hit her. We know that the
13  crowbar was recovered in the trunk of the car that TC and
14  Poohmere were riding in.
15  Now, State will submit that Photographs No. 7 and
16  8 have shown, do show that the victim was hit with this
17  crowbar. These are the photographs that Debra Resurreccion,
18  the SANE nurse, said there is a patterned injury. Patterned
19  injury, you can see that notch up on the shoulder in
20  Pictures No. 7 and 8, same notch. And, unfortunately, the
21  State wants to say these pictures aren't that clear. Nurse
22  Resurreccion told you that the actual CD of these pictures
23  which we could not play because there's no computer in this

37

1 courtroom were clearer, not as dark and more defined. But,
2 anyway, the State is directing you to look at the notch on
3 that bruise. And the State submits, if you look at that
4 notch and if you look at that tire iron, they match. They
5 match.
6         Ruth thinks perhaps -- she's not sure -- that
7 when she got hit on the shoulder with the tire iron, this
8 end of it hit her on the eye. And the State submits that is
9 a very real possibility, if you look at the length of the
10 tire iron, the positioning. And you'll see, on the other
11 photographs, the ones that show her eye, which are -- well,
12 State's No. 3, in particular, there is the cut that you see
13 to -- well, this, I believe, is a birthmark on her eye. So,
14 the cut right by her eye lines up with the crowbar having
15 been thrown at her and that pointy end having hit her in the
16 eye. Pattern injury on the arm consistent with that rounded
17 part of the crowbar, Ruth said she was hit with the crowbar,
18 we know the crowbar was there.
19         Now, think about it. Think about this for a
20 minute, ladies and gentlemen. Out of all the potential
21 items in the world that Miss Bocelli could have said she was
22 hit with, because she was woken out of a sleep and it was
23 dark, did she see a crowbar? Ladies and gentlemen, it is a

38

1 hundred percent that she saw the crowbar in the defendant's
2 hand because she could have said it was a riding crop, it
3 was a cord to an electric toaster, it was a snorkel, it was
4 -- think of any object that you can possibly think of. But
5 she said tire iron, and, lo and behold, Poohmere says
6 there's a tire iron and, lo and behold, there is a tire
7 iron. Why is that happening? Because there was a tire iron
8 that he was swinging at her.
9         Now, the defense is going to say, "Oh, she's been
10 inconsistent. She says oh, he was swinging it, he threw it,
11 oh, he missed it." All of those things are possible without
12 being a lie. Could he have been swinging it at her,
13 swinging it but never hitting her, to scare her? Yes. Yes.
14 He probably was swinging it at her, just to scare her but
15 not hitting her with it. Could he have, one time, thrown it
16 at her and hit her with it? Yes. Could he have swung once
17 or twice and missed her? Yes. All of those things could
18 have happened without them being lies. So we know that
19 there's a tire iron and, therefore, the State submits, if
20 you believe beyond a reasonable doubt that the defendant
21 caused her injury by means of a tire iron, crowbar, he is   *A41*
22 guilty of assault in the second degree.
23         Now, ladies and gentlemen, you're going to hear,

39

1 when the judge read the instructions, that you also are
2 going to be able to consider, if you do not believe, or if
3 you find him not guilty beyond a reasonable doubt that her
4 injury was caused by a tire iron or a crowbar, you're also
5 going to be able to consider the fact of a lesser-included
6 offense charge of assault in the third degree. That means
7 you could convict him of an assault in the third degree
8 which would allege that he caused her physical injury,
9 period, he recklessly or intentionally caused physical
10 injury to her. Taking the crowbar out of the equation, we
11 also heard that he punched her, he kicked her, he threw her
12 against a wall. And you will see photographs and half
13 photographs and documented by the SANE nurse of almost seven
14 separate injuries to Ruth Bocelli's body: A bruise here,
15 the cut here, the bruises on the inside of the arms, the
16 bruises on the outside of her arm could have been, and the
17 State submits were caused by the defendant not by use of the
18 crowbar, but by use of his feet and/or his hands. And you
19 can convict on assault in the third degree if you do not
20 find him guilty of assault in the second degree -- either
21 one, not both. State submits this is an assault in the
22 second degree, and that's where you should find him guilty.
23 But I am telling you that the Court will be giving you an

40

1 option.
2         Now, why did I start with the assault charge when
3 the very first charge of the indictment is a burglary
4 charge? And I'll explain why. Because one charge sort of
5 builds on the other. And let me backtrack a second before I
6 go on with the burglary.
7         The third count of this indictment is possession
8 of a deadly weapon during commission of a felony. If you
9 find that the defendant had a crowbar or tire iron in his
10 possession, he can be convicted of this possession of a
11 deadly weapon during commission of a felony if you believe
12 beyond a reasonable doubt -- if you believe the State has
13 proven beyond a reasonable doubt that he did possess this
14 tire iron, crowbar, either while he committed the burglary
15 or while he committed the assault. Now, it's either/or in
16 that case.
17         Now, I'll go back to the burglary and, then, I'll
18 go back to this charge again.
19         Burglary alleges that he did enter or remain
20 unlawfully in a dwelling. A dwelling is a place, the judge
21 -- Judge Cooch will tell you it is a place where people
22 sleep at night, it's a dwelling. This is at night. At
23 night is defined, the hours after sunset and before sunrise.

41

1  We know this occurred at about midnight, or 40 minutes after
2  midnight, clearly after sunset and before sunrise. So, we
3  know that this is a dwelling. We know beyond a reasonable
4  doubt that it happened at night.
5       And the charge goes on to say, "And while in the
6  dwelling or in flight thereof, he did cause physical injury
7  to Ruth Ann Bocelli." We know she was injured. The only
8  question that you may have left to answer for yourselves is,
9  did the defendant knowingly enter or remain unlawfully?
10      Now, defendant is going to argue to you, ladies
11  and gentlemen, that Smoke let him in. He knocked on the
12  door, he knocked on the door, and Smoke let him in.
13  Therefore, he is going to argue to you, ladies and
14  gentlemen, that he was there lawfully. His belongings were
15  there, she had let him in in the past, he was let in, he had
16  the right to be there. But the logic fails, ladies and
17  gentlemen, the State submits. The logic fails for several
18  reasons:
19      The first is, Ruth had told him, and he admits in
20  his statement, she had told him to get out, "Get your stuff
21  and get out." Chances are, to begin with, he was not
22  welcome there. But that's not it. The code, the charge
23  states that he did either knowingly enter unlawfully or he

42

1  did remain unlawfully. That's what the wording of the code
2  says. And the State subjects -- suggests and submits to
3  you, he remained unlawfully.
4       What does that mean? What does that mean? Think
5  about it. He might have entered lawfully because Smoke let
6  him in. But the minute he made the intent in his mind to
7  assault Ruth in that dwelling, he is not remaining lawfully
8  anymore because, once you form the intent to commit a crime,
9  you can't be in that place lawfully. You're not in a place,
10  committing a crime, lawfully. It's impossible. So, once he
11  started to assault her, even if he had been let in lawfully
12  to begin with, he was no longer in there lawfully when he
13  began his assault on Ruth.
14      So, he remained unlawfully and, while he remained
15  unlawfully in a dwelling at night, he did cause physical
16  injury to Ruth. And he had, when he remained unlawfully, he
17  formed the intent to assault her, to commit a crime.
18  Whether he intended to hit her with a crowbar, assault in
19  the second degree, or whether he intended to just kick her
20  and hit her and punch her, assault in the third degree,
21  while in the building in a dwelling at night, he remained
22  unlawfully and he formed the intent to commit the crime of
23  assault and she was injured. It's burglary in the first

43

1  degree.
2       So, the State submits you will find beyond a
3  reasonable doubt the State has proven burglary in the first
4  degree. I've already gone through assault in the second
5  degree. And I started with possession of a deadly weapon
6  during commission of a felony. And now that I've explained
7  burglary, he can be found guilty of possessing a deadly
8  weapon, the crowbar, whether you find during the commission
9  of a felony. Assault in the second degree is a felony.
10  Therefore, he could be found guilty of this charge based
11  upon assault, or he could be found guilty of this charge
12  based upon the fact that he burglarized somebody. Burglary
13  has a different meaning than we all think, where you go in
14  and steal. It can also be this kind of burglary, as I just
15  said. Anyway, it could be he had the crowbar while he was
16  committing the felony of burglary. Either way, whatever is
17  the State's pleasure -- your pleasure, and the State submits
18  that we have proven both, or either.
19      And, lastly, there is the charge of terroristic
20  threatening. I have a feeling that the defendant isn't even
21  going to deny that he did this. It said, "He did threaten
22  to commit a crime likely to result in death or injury to
23  Ruth Bocelli." She said he said, "I'm going to kill you

44

1  tonight, Bitch. Clear the trunk. We're going to kill this
2  bitch tonight." He threatened to kill her. State submits
3  you should find him guilty beyond a reasonable doubt of that
4  charge, as well.
5       Now, lastly, defendant is going to argue to you,
6  ladies and gentlemen, that this victim is not to be believed
7  at all -- that she's not a very honest person, that she's
8  not a very trustworthy person, she has criminal convictions,
9  she told you she was using illegal electric service, she's a
10  drug user, she's a crack head.
11      She's been clean for six months, ladies and
12  gentlemen. When she came here and put her hand on the
13  Bible, she's not a crack head -- not today. Look at her
14  demeanor on the stand. First of all, look at her demeanor
15  to the 911 call taker. She was hysterical. She was
16  frantic. Her demeanor to Debbie Provenza -- hysterical,
17  upset -- to the SANE nurse three days later. And most
18  importantly, most importantly, the State submits, on the
19  stand, when she testified during the two days that she
20  testified, ask yourselves -- you are the judge of the
21  demeanor of every witness on the stand -- what did she say?
22  She looked right at TC and said, "TC, you know you did
23  this." She said it more than once. "You hit me and beat me

A42

49

1  accuse me of causing the injuries and -- in that situation.
2  I don't know what she did in between the 5th and the 8th
3  that caused them to cause an ambulance to send her to the
4  hospital.
5       The pictures they took that night, they try to
6  hide. They didn't turn it over in discovery to me. They
7  didn't want to let me know that they had pictures showing no
8  injuries. If you -- if you're not deceiving, if you don't
9  have nothing to -- to hide, why are you holding them back?
10 You had them for months. I put in motions in discovery.
11 They was supposed to give them to me. They never gave them
12 to me. They tried to slide them past me because they didn't
13 think I was going to catch it. I'm representing myself, so
14 they're trying to play me out on -- on issues such as
15 discovery and think I'm not going to find out what's going
16 on.
17      If the evidence is clear, if you -- if you have
18 proof that I did something, she came in here and she said,
19 "I'm going to put Smoke on the stand to show you that Smoke
20 witnessed him putting his hands on her," that I forced my
21 way in this place. Smoke was downstairs when she put on her
22 whole case. Did she call Smoke up here? He was here. She
23 could have called him here to testify. Did she? No,

50

1  because Smoke wouldn't have came up here and say that. It
2  didn't happen.
3       They offering people deals to testify against me.
4  And they got charges. They scared. They want to benefit
5  from whatever benefit that she can suggest that she going to
6  give them. "Oh, I'm not going to straight out tell you
7  because that's illegal. I ain't going to straight out tell
8  you I'm going to give you a deal. I'm just going to suggest
9  it." And because you're in a position where you need some
10 help, you're going to follow that suggestion.
11      Now, he -- he can't face just straight-up,
12 straight-out lied to me, lie on me. He don't want to do
13 that. But he want to say just enough to help himself, too.
14 You know what I mean? So, he come in here and he say just
15 enough for her to make a case out of -- or try to make a
16 case out of it.
17      But not even Ruth said or can say that I forced
18 my way into that apartment. I knocked on the door. They
19 opened the door -- no sign of forced entry. The police says
20 there's no sign of forced entry. How you going to say I
21 burglarized the place or I forced my way? That's what's in
22 the indictment, that I forced my way.        A43
23      All that's changing now. Everything change from

51

1  the indictment. When they first started off, I was charged
2  with hitting her with this crowbar. Now, they want to
3  change to it oh, no, not a crowbar, because she got on the
4  -- got in that taped statement and said that I didn't do it.
5  Now, they're changing it. Oh, well, he could have just
6  assaulted her this way, assaulted -- she said the same
7  things from the beginning. And if they thought that was
8  true, they could have put it in her indictment package, send
9  it back to the grand jury, and indicted me on this that.
10 But did they? No. But now that they think they're going to
11 lose their case, because she said in the statement that I
12 didn't hit her with the crowbar, they want to change to give
13 you the option of finding me guilty of something else. But
14 if you look at the evidence, if you look at how bad she said
15 she was beat -- kicked in the face, punched in the face -- I
16 ain't no small dude, you know what I'm saying? I'm not no
17 real gigantic dude, you know what I mean? I'm kind of big,
18 you understand? If I punched this woman in her face, you
19 think her face is not going to swell, her lip's not going to
20 be busted? She ain't got none of that. I'm kicking her in
21 the face. At least, she said she's getting kicked in the
22 face twice when she turned on a light and a dude said --
23      By the way, why would I say she saw my face? She

52

1  knows me. If she turns on the light and she seen me, what?
2  There's nothing simple. You know who I am. You know what I
3  look like, anyway. But she said she turned on the light and
4  I said, "Oh, she seen my face," walked over and punched her
5  in the face and kicked her in the face. Now, if I'm kicking
6  you in your face and I'm mad, you're telling me I'm not
7  going to bruise you, your face is not going to swell out,
8  your eye, your lips, something? They took pictures the same
9  night. Nothing.
10      Everything she said from the door, she's lying.
11 And she has a reason to lie because she told these people
12 these things and she told them -- the police officer got on
13 the stand and testified that I sent Ruth a letter, trying to
14 blackmail her. And she went over there to Ruth and Ruth
15 told her all these things. But when she actually went over
16 there, she went over there because the police told her they
17 found a letter in Pooh's house that said that she was asking
18 me for $1,500, right, that she was trying to blackmail me.
19      So, they go over there and she questioned her
20 about it. She said, "No, no, no. He was trying to get his
21 people to contact me here" at this time, this time, this
22 time. It was said to deflect criminality from herself, the
23 same way she been improvising all the way through this

57

1    Defendant had the synopsis of his statement. It
2  was provided to him by the State as part of discovery, what
3  the State had to turn over to him as part of this case.
4    MR. WINN: What? She's lying.
5    THE COURT: If you have an objection to make,
6  make an objection. Otherwise, you may continue, Miss White.
7    MS. WHITE: Thank you.
8    THE COURT: Is that an objection, Mr. Winn?
9    MR. WINN: Yes, yes, it's an objection.
10    THE COURT: Let's take the objection at sidebar.
11    (The following sidebar conference was held.)
12    THE COURT: Mr. Winn?
13    MR. WINN: She never gave me no synopsis, no
14  nothing of my statement.
15    THE COURT: Was that admitted in evidence at
16  trial?
17    MS. WHITE: His statement?
18    THE COURT: No, any pretrial production to
19  Mr. Winn of his statement.
20    MS. WHITE: Well --
21    THE COURT: Was that a fact that came out in
22  evidence?
23    MS. WHITE: I would assume, yes -- not

58

1  necessarily directly, but every single thing he talked
2  about, he had and had access to.
3    THE COURT: That may be true. But if the jury
4  wasn't told that, that's kind of a fact that you're
5  referring to now that you can't say with certainty was
6  admitted during the trial. So, I'm going to direct you to
7  confine yourself to the evidence at trial and not to
8  anything the State believes may have happened and may well
9  have, in fact, that happened. But if that wasn't -- you see
10  what I'm getting at?
11    MS. WHITE: I do.
12    THE COURT: I'm going to sustain the objection
13  and ask you to move on.
14    MS. WHITE: Okay.
15    (Sidebar conference concluded.)
16    THE COURT: The last objection is sustained. The
17  jury should disregard any reference to any pretrial
18  procedure.
19    And you may continue, Miss White.
20    MS. WHITE: Your Honor, I'm going to close.
21  That's it.                                    A44
22    THE COURT: All right. Members of the jury, the
23  closing arguments are now completed. I'm going to read jury

59

1  instructions to you. They'll take about 15 minutes. I will
2  be sending in four copies of the jury instructions to you.
3    You have now heard all of the evidence that's
4  going to be presented in the case and you heard the
5  arguments of both parties -- Mr. Winn and attorney for the
6  State. I shall not review the evidence that has been
7  presented because you, the jury, are the sole and exclusive
8  judges of the facts of the case, of the credibility of the
9  witnesses, and of the weight and the value of their
10  testimony.
11    I shall now instruct you as to the principles of
12  the law governing this case. No single one of these
13  instructions states all of the law applicable to this case.
14  Therefore, you should listen to and consider all of the
15  instructions together in reaching your verdict.
16    It is your duty as jurors to examine -- to
17  determine the facts, and to determine them only from the
18  evidence in this case. You are to apply the law as I state
19  it to you, to the facts as you find them to be and, in this
20  way, decide the case.
21    Under our criminal law, crimes are defined by
22  statute, and many other matters pertaining to the criminal
23  law are governed by statute. I shall explain to you the law

60

1  defining the offenses which this defendant is charged with
2  having committed, of any other offenses which he might be
3  found guilty under such a charge. I shall also explain to
4  you the burden of proof which is imposed on the State in
5  this case.
6    Mr. Winn, or counsel, may sometimes present
7  objections to some of the testimony or other evidence. It
8  is the duty of a lawyer or a party to object to evidence
9  which he or she believes may not properly be offered, and
10  you should not be prejudiced in any way against a lawyer or
11  party who makes objections or to the party a lawyer
12  represents. At times, I may sustain objections or direct
13  that you disregard certain testimony or exhibits. You must
14  not consider any evidence to which an objection has been
15  sustained, to which I have instructed you to disregard. At
16  other times, I may overrule objections, in which case you
17  are free to consider the evidence which has been offered.
18    Often, Mr. Winn or -- and Miss White will
19  approach sidebar to discuss evidentiary and other matters.
20  You are not to speculate on what may be said at such sidebar
21  conferences.
22    With respect to both the role of an attorney and
23  a person representing himself, the role of an attorney or to

1  a person representing himself is to zealously and
2  effectively advance the claims of themselves or the party
3  she represents within the bounds of the law. An attorney or
4  a party representing himself may argue all reasonable
5  inferences from evidence in the record. However, it is not
6  proper for an attorney or person representing himself to
7  state his or her opinion as to the truth or falsity of any
8  testimony or evidence, or the guilt or innocence of an
9  accused. What an attorney or a person representing himself
10 personally thinks or believes about the testimony or
11 evidence in a case is not relevant, and you are instructed
12 to disregard any personal opinion or belief concerning
13 testimony or evidence which an attorney or person
14 representing himself offers during opening or closing
15 statements or at any other time during the course of the
16 trial.
17        Further, what an attorney or person representing
18 himself states in his or her opening or closing arguments is
19 not evidence. Evidence consists of testimony from witnesses
20 testifying from the witness stand and exhibits introduced
21 through their testimony. If your recollection of that
22 evidence disagrees with anything said about it either by
23 counsel or by the Court, you should be guided entirely by

1  your own recollection. It's this evidence only which you
2  may consider in reaching your verdicts.
3        The defendant is charged in this Court by an
4  indictment. An indictment is a mere accusation against the
5  defendant. It is not in itself any evidence of the guilt of
6  the defendant. You should not allow yourselves to be
7  influenced in any way, however slight, by the fact that an
8  indictment has been returned against this defendant.
9        Whether this defendant is guilty or not guilty is
10 for you to determine solely from the testimony that has been
11 presented during the trial. The determination of the true
12 facts and the drawing of any inferences from the proven
13 facts are matters solely within your province.
14        The indictment reads as follows:  Count 1,
15 burglary first degree reads that Hillard M. Winn, on or
16 about March 5, 2006, in New Castle County, Delaware, did
17 knowingly enter or remain unlawfully in the dwelling located
18 at 106 Avalon Building at night, with the intent to commit
19 the crime of assault second degree therein; and when, in the
20 -- in effecting entry, or when in said dwelling or in
21 immediate flight therefrom, he or another participant in the
22 crime did cause physical injury to Ruth Ann Bocelli, who is
23 not a participant in the crime.          A 45

1        Count 2 is assault second degree and it reads
2  that the defendant, on or about the same date and place, did
3  intentionally or recklessly cause physical injury to Ruth
4  Ann Bocelli by means of a crowbar or tire iron, a deadly
5  weapon or dangerous instrument as those terms are defined by
6  law.
7        Count 3 is possession of a deadly weapon during
8  the commission of a felony. And it reads that the
9  defendant, on or about the same date and place, did
10 knowingly possess a deadly weapon during the commission of a
11 felony by possessing a crowbar or tire iron, a deadly weapon
12 as defined by law, during the commission of burglary first
13 degree and/or assault second degree, a felony as set forth
14 in Counts 1 and/or 2 of this indictment which is
15 incorporated herein by reference.
16        Count 4, the last count, is misdemeanor
17 terroristic threatening. And it reads that the defendant on
18 or about that date and place, did threaten to commit a crime
19 likely to result in death or serious injury to the person or
20 property of Ruth Ann Bocelli by threatening to kill her.
21        Delaware law defines the offense of burglary
22 first degree as follows:  A person is guilty of burglary in
23 the first degree when the person knowingly enters or remains

1  unlawfully in a dwelling at night, with the intent to commit
2  a crime therein; and when, in effecting entry or when in the
3  building or in immediate flight therefrom, the person or
4  another participant in the crime causes physical injury to
5  any person who is not a participant in the crime.
6        In order to find defendant guilty of burglary in
7  the first degree, you must find that the following elements
8  have been established beyond a reasonable doubt:
9        One, the defendant entered or remained unlawfully
10 in a dwelling; and, two, the place where the defendant
11 entered or remained unlawfully was a dwelling; and, three,
12 the defendant acted knowingly; and, four, defendant actions
13 occur at night; and, five, the defendant intended to commit
14 a crime in the dwelling -- in this case, assault second
15 degree or the lesser-included offense of assault third
16 degree; and, six, at the time of effecting entry or when in
17 the dwelling or immediate flight therefrom, the defendant
18 caused physical injury to any person who is not a
19 participant in the crime -- in this case, to Ruth Ann
20 Bocelli.
21        A person enters or remains unlawfully in a place
22 when the person has no license or privilege to be there;
23 that is, the person does not have the permission or consent

65

1 of the owner of the place to be there. Dwelling means a
2 building which is normally occupied by a person lodging
3 there at night. Knowingly means that he was aware that the
4 property involved was a dwelling and that he was entering or
5 remaining unlawfully. Night means that the offense occurred
6 during the period between 30 minutes after sunset and
7 30 minutes before sunrise. Physical injury means any
8 impairment of physical condition or substantial pain.
9      If, after considering all of the evidence, you
10 find that the State has established beyond a reasonable
11 doubt that the defendant acted in such a manner as to
12 satisfy all the elements that I have just stated at or about
13 the date and place stated in the indictment, you should find
14 the defendant guilty of burglary first degree. If you do
15 not so find, or if you have any reasonable doubt as to any
16 element of this offense, you must find the defendant not
17 guilty of burglary first degree.
18      Count 2 is assault second degree. Delaware law
19 defines the offense of assault second degree in pertinent
20 part as follows:
21      A person is guilty of assault in the second
22 degree when the person recklessly or intentionally causes
23 physical injury to another person by means of a deadly

66

1 weapon or dangerous instrument.
2      In order to find defendant guilty of assault
3 second degree, you must find that the following elements
4 have been established beyond a reasonable doubt:
5      One, defendant caused physical injury to the
6 victim -- in this case, Ruth Ann Bocelli -- by using a
7 crowbar or tire iron; and, two, the defendant acted
8 recklessly or intentionally; and, three, the defendant used
9 a deadly weapon or a dangerous instrument -- in this case, a
10 crowbar or tire iron.
11      Physical injury means impairment of physical
12 condition or substantial pain. Deadly weapon includes a
13 billy or bludgeon or any dangerous instrument which is used
14 or attempted to be used to cause death or serious physical
15 injury. Dangerous instrument means any instrument, article
16 or substance which, under the circumstances in which it is
17 used, attempted to be used, or threatened to be used, is
18 readily capable of causing death or serious physical injury.
19      Serious physical injury means physical injury
20 which creates a substantial risk of death, or which causes
21 serious and prolonged disfigurement, or prolonged impairment
22 of health, or prolonged loss or impairment of the function
23 of any bodily organ.                    A46

67

1      Recklessly means the defendant was aware of and
2 consciously disregarded a substantial and unjustifiable risk
3 that physical injury of another person would result from his
4 conduct. The risk must be of such a nature and degree that
5 disregard thereof constitutes a gross deviation from the
6 standard of conduct that a reasonable person would observe
7 in the situation.
8      Intentionally means that it was defendant's
9 conscious object or purpose to cause physical injury to
10 another person.
11      If, after considering all the evidence, you find
12 that the State has established beyond a reasonable doubt
13 that the defendant acted in such a manner as to satisfy all
14 the elements that I have just stated at or about the date
15 and place stated in the indictment, you should find the
16 defendant guilty of assault second degree. If you do not so
17 find, or if you have a reasonable doubt as to any element of
18 this offense, you must find the defendant not guilty of
19 assault second degree.
20      If you find the defendant not guilty on the
21 charge of assault second degree, or if, after reasonable
22 effort, you are at an impasse and are unable to reach a
23 unanimous verdict on the charge of assault second degree,

68

1 then you may go on to consider the lesser-included offense
2 of assault third degree.
3      Delaware law defines the offense of assault third
4 degree in pertinent part as follows:
5      A person is guilty of assault in the third degree
6 when the person intentionally or recklessly causes physical
7 injury to another person. In order to find the defendant
8 guilty of assault third degree, you must find that all the
9 following elements have been established beyond a reasonable
10 doubt:
11      One, the defendant caused physical injury to Ruth
12 Ann Bocelli; and, two, defendant acted intentionally or
13 recklessly. Recklessly has been previously defined for you.
14 The risk must be of such a nature and degree that disregard
15 thereof constitutes a gross deviation from the standard of
16 conduct that a reasonable person would observe in the
17 situation. Intentionally has been previously defined for
18 you. Physical injury means impairment of physical condition
19 or substantial pain.
20      If, after considering all the evidence, you find
21 that the State has established beyond a reasonable doubt
22 that the defendant acted in such a manner as to satisfy all
23 of the elements that I have just stated at or about the date

**1** and place stated in the indictment, you should find the
**2** defendant guilty of assault third degree. If you do not so
**3** find, or if you have any reasonable doubt as to any element
**4** of this offense, you must find the defendant not guilty of
**5** assault third degree.
**6**         Count 3 is possession of a deadly weapon during
**7** the commission of a felony. Note: If you, the jury, find
**8** the defendant not guilty of burglary first degree and not
**9** guilty of assault second degree, then the jury must find the
**10** defendant not guilty on this count.
**11**         Delaware law defines the offense of possession of
**12** a deadly weapon during the commission of a felony in
**13** pertinent part as follows:
**14**         A person who is in possession of a deadly weapon
**15** during the commission of a felony is guilty of possession of
**16** a deadly weapon during the commission of a felony. In order
**17** to find the defendant guilty of this charge, you must find
**18** that all of the following elements have been established
**19** beyond a reasonable doubt:
**20**         One, that the defendant committed a felony -- in
**21** this case, the felony charge is burglary first degree and,
**22** in Count 2, assault second degree -- and, two, during the
**23** commission of the felony, the defendant possessed a deadly

**1** weapon -- in this case, a crowbar or tire iron -- and,
**2** three, defendant acted knowingly.
**3**         A deadly weapon includes a billy or bludgeon or
**4** any dangerous instrument which is used or attempted to be
**5** used to cause death or serious physical injury. Dangerous
**6** instrument means any instrument, article or substance which,
**7** under the circumstances in which it is used, attempted to be
**8** used, or threatened to be used is readily capable of causing
**9** death or serious physical injury.
**10**         By possession, I do not mean that the weapon may
**11** have been in the area or vicinity of the defendant so that
**12** it might have been taken possession of if the defendant
**13** wanted to do so. Rather, in order for defendant to be found
**14** in possession of a deadly weapon as that word is used in
**15** this statute, you must find that the weapon was in the
**16** immediate personal possession of or under the immediate
**17** control of the defendant so that it was physically available
**18** or accessible during the commission of the crime. Defendant
**19** acted knowing if he was aware that the deadly weapon was in
**20** his possession at the time and place of the alleged offense.
**21**         If, after considering all the evidence, you find
**22** that the State has established beyond a reasonable doubt
**23** that the defendant acted in such a manner as to satisfy all

**1** the elements that I've just stated at or about the date and
**2** place stated in the indictment, you should find the
**3** defendant guilty of possession of a deadly weapon during the
**4** commission of a felony. If you do not so find, or if you
**5** have a reasonable doubt reasonable doubt as to any element
**6** of this offense, you must find the defendant not guilty of
**7** possession of a deadly weapon during the commission of a
**8** felony.
**9**         Count 4 is terroristic threatening. A person is
**10** guilty of terroristic threatening when the person threatens
**11** to commit any crime likely to result in death or serious
**12** injury to person or property. In order to find defendant
**13** guilty of terroristic threatening, you must find that the
**14** following elements have been established beyond a reasonable
**15** doubt:
**16**         One, defendant threatened to kill Ruth Ann
**17** Bocelli; and, two, the threatened crime would likely result
**18** in death or serious physical injury to person or property --
**19** in this case, Ruth Ann Bocelli -- and, three, defendant
**20** acted intentionally or knowingly. I have previously defined
**21** intentionally for you. Knowingly means that the defendant
**22** was aware that he was threatening to commit a crime likely
**23** to result in death or serious injury.

**1**         The statute imposes criminal liability for the
**2** use of words. Even if the actor does not intend to actually
**3** carry out his threat, the threat itself creates certain
**4** identifiable injuries; e.g., mental distress or panic that
**5** the criminal code protects against. Thus, the crime is
**6** complete when the actor threatens a crime, the commission of
**7** which would reasonably entail death or serious injury to a
**8** person. Whether the threatened act is completed is
**9** immaterial.
**10**         If, after considering all the evidence, you find
**11** that the State has established beyond a reasonable doubt
**12** that the defendant acted in such a manner as to satisfy all
**13** the elements that I've just stated at or about the date and
**14** place stated in the indictment, you should find the
**15** defendant guilty of terroristic threatening. If you do not
**16** so find, or if you have a reasonable doubt as to either
**17** element of this offense, you must find the defendant not
**18** guilty of terroristic threatening.
**19**         There are two types of evidence from which a jury
**20** may properly find the facts in a case. One is direct
**21** evidence, such as the testimony of an eyewitness. The other
**22** is indirect, or circumstantial evidence. That is the proof
**23** of facts or circumstances from which the existence or

1  nonexistence of other facts may reasonably be inferred.
2        In this case, the State and defendant have
3  relied, in part, upon circumstantial evidence. It is not
4  unusual in a criminal case for either side to rely upon
5  circumstantial evidence. To warrant a conviction based in
6  part on circumstantial evidence, all of the evidence, both
7  direct and circumstantial, must lead you to conclude beyond
8  a reasonable doubt that the accused committed the offenses
9  charged.
10        An element of a criminal offense deals with the
11  state of mind of the defendant. It is, of course, difficult
12  to know what is going on in another person's mind.
13  Therefore, you are permitted to draw an inference -- or, in
14  other words, to reach a conclusion -- about a defendant's
15  state of mind from the facts and circumstances surrounding
16  the act the defendant is alleged to have done. In reaching
17  this conclusion, you may consider whether a reasonable man
18  in the defendant's circumstances would have had or lacked
19  the requisite intention, recklessness, or knowledge or
20  belief. You should, however, keep in mind at all times that
21  it is the defendant's state of mind which is at issue and,
22  in order to convict a defendant, you are required to find
23  beyond a reasonable doubt that he, in fact, had the

1  intention, recklessness, or knowledge or belief required for
2  a finding of guilty. The fact that our law permits you to
3  draw inference about a defendant's state of mind in no way
4  relieves the State of its burden of proving beyond a
5  reasonable doubt every element of an offense.
6        As I mentioned before opening statements,
7  defendant, Mr. Winn, decided not to be represented by an
8  attorney but, instead, represented himself. Defendant has a
9  constitutional right to represent himself, and you must not
10  be prejudiced in any way against Mr. Winn because he chose
11  to represent himself.
12        The election of a person accused of a crime not
13  to testify must not be considered as an indication of his
14  guilt. Defendant has a constitutional right to testify or
15  not to testify as he chooses. The fact that the defendant
16  did not testify must not be considered by you as an
17  indication that the defendant is guilty of the crime
18  charged. Like every other person charged with an offense,
19  this defendant is presumed innocent until proven guilty
20  beyond a reasonable doubt.
21        You are the sole judges of the credibility of
22  each witness and of the weight to be given to the testimony
23  of each. In this connection, you should not give more

1  weight to the testimony of a police officer merely because
2  he or she is a police officer. You should take into
3  consideration each witness's means of knowledge; strength of
4  memory and opportunity for observation; the reasonableness
5  or unreasonableness of the testimony; the consistency or
6  inconsistency of the testimony; the motives actuating the
7  witness; the fact, if it is a fact, that the testimony has
8  been contradicted; the bias, prejudice, or interest of the
9  witness, if any; the manner or demeanor of the witness upon
10  the witness stand; and all other facts and circumstances
11  shown by the evidence which affects the credibility of the
12  testimony.
13        If you find the testimony to be conflicting by
14  reason of inconsistencies, it is your duty to reconcile it,
15  if reasonably possible, so as to make one harmonious story
16  of it all. But if you cannot do this, then it is your duty
17  and privilege to give credit to that portion of the
18  testimony which, in your judgment, is most worthy of credit
19  and disregard any portion of the testimony which, in your
20  judgment, is unworthy of credit. In so doing, you should
21  take into consideration the demeanor of the witnesses as
22  they testified before you, their apparent fairness in giving
23  their testimony, their opportunities for learning and

1  knowing the facts about which they testified, and any bias
2  or interests that they may have concerning the outcome of
3  this case.
4        The fact that a witness had been convicted of a
5  felony or of a crime involving dishonesty may be considered
6  by you for only one purpose; namely, in judging the
7  credibility of that witness. The fact of such a conviction
8  does not necessarily destroy or impair the witness's
9  credibility, and it does not raise an inference that the
10  witness has testified falsely. It is simply one of the
11  circumstances that you may take into consideration in
12  weighing the testimony of such a witness.
13        A matter which has been raised in this case is
14  the identification of the defendant. You must be satisfied
15  beyond a reasonable doubt that the defendant has been
16  accurately identified, that the defendant was indeed the one
17  that did the act charged, and that this act actually took
18  place before you may find him guilty of any crime. If there
19  is any reasonable doubt about his identification, you must
20  give the defendant the benefit of such doubt and find him
21  not guilty.
22        The law presumes every defendant charged with a
23  crime to be innocent. This presumption of innocence

A48

77

1  requires a verdict of not guilty unless you are convinced by
2  the evidence that the defendant is guilty beyond a
3  reasonable doubt.  The burden of proof is upon the State to
4  prove beyond a reasonable doubt all of the facts necessary
5  to establish each and every element of the crime charged.
6        Reasonable doubt is a practical standard.  On the
7  one hand, in criminal cases, the law imposes a greater
8  burden of proof than in civil cases.  Proof that a defendant
9  is probably guilty is not sufficient.  On the other hand,
10  there are very few things in this world that we know with
11  absolute certainty.  Therefore, in criminal cases, the law
12  does not require proof that overcomes every possible doubt.
13        Proof beyond a reasonable doubt is proof that
14  leaves you firmly convinced of the defendant's guilt.
15  Therefore, based upon your conscientious consideration of
16  the evidence, if you are firmly convinced that the defendant
17  is guilty of the crime charged, you should find the
18  defendant guilty.  If, on the other hand, you think there is
19  a real possibility -- or, in other words, a reasonable doubt
20  -- that the defendant is not guilty, you must give the
21  defendant the benefit of that doubt by finding the defendant
22  not guilty.
23        Your verdict must be based solely on the evidence

78

1  in the case.  You must not be governed by prejudice,
2  sympathy, or any other motive except a fair and impartial
3  consideration of the evidence.  You must not, under any
4  circumstances, allow any sympathy that you might have for
5  any of the parties to influence you in any way in arriving
6  at your verdict.
7        I'm not telling you not to sympathize with the
8  parties.  It is only natural and human to sympathize with
9  persons involved in litigation.  But you must not allow that
10  sympathy to enter into your consideration of the case or to
11  influence your verdict.
12        How the jury conducts its deliberations is within
13  the province of the jury itself.  However, I would like to
14  suggest that you discuss the issues fully, giving all jurors
15  a fair opportunity to express their views before committing
16  yourself to a particular position.  Jurors have a duty to
17  consult with one another with an open mind and to deliberate
18  with a view to reaching a verdict.  Each of you should
19  decide the case for yourself, but only after impartially
20  considering the evidence with your fellow jurors.  You
21  should not surrender your own opinion or defer to the
22  opinion of your fellow jurors for the mere purpose of
23  returning a verdict.  But you should not hesitate to

A49

79

1  reexamine your own view and change your opinion if you are
2  persuaded by another view.
3        You are further instructed that any questions or
4  requests to me from the jury during the jury's deliberations
5  must be communicated by written note from the foreperson to
6  the bailiff, who will then deliver that note to me.  Only
7  notes of a personal nature, such as a family emergency, may
8  be written by an individual juror and, then, given to the
9  bailiff to deliver to me.  I will confer with Mr. Winn and
10  Miss White about any question or request from the jury and
11  will then respond to your note in open court, with
12  Miss White and Mr. Winn present.
13        If you should send me a note indicating that you
14  are divided and you are not able to reach a unanimous
15  verdict, do not tell me in that note what your numerical
16  division is; i.e., do not tell me the number of jurors on
17  each side of the vote.
18        You are officers of the court and must act
19  impartially.  Throughout your deliberations, you may not be
20  influenced by passion, prejudice, sympathy, the consequences
21  of a verdict, or any motive except a desire to declare the
22  proper verdict upon the evidence and law.
23        There are four counts in the case and, therefore,

80

1  four separate verdicts are required.  With respect to
2  Count 1, 3, and 4, burglary first degree, possession of a
3  deadly weapon during the commission of a felony, and
4  terroristic threatening, your options are guilty as charged
5  or not guilty.  With respect to Count 2, assault second
6  degree, your options are, guilty as charged, or guilty of
7  the lesser-included offense of assault third degree, or, C,
8  not guilty.
9        Of course, your verdicts must be unanimous.
10        At this time, I will excuse the remaining
11  alternate.  Sir, thank you very much.  I know I speak for
12  the State and the defendant in thanking you for your service
13  in this case.  You may step down from the jury box now.  The
14  bailiff will escort you out.
15        (Alternate juror leaves at 11:17 A.M. )
16        THE COURT:  Members of the jury, as I think I
17  told you, I will be sending in four copies of the jury
18  instructions for you to review during deliberation, if you
19  wish to.  I have to make some typographical changes of some
20  typographical errors, so it will be a couple minutes before
21  I can get this to you.
22        At this time, please swear the bailiff.
23        THE CLERK:  Yes, your Honor.

(Erica Bradley, bailiff, sworn.)

THE COURT: Please take out the jury and, I suppose, come back in and get the evidence.

You may begin your deliberations.

(Jury leaves courtroom at 11:18 a.m.)

THE COURT: Are there any exceptions to jury instructions other than those previously identified? Miss White?

MS. WHITE: No, your Honor.

THE COURT: Mr. Winn?

MR. WINN: No.

THE COURT: We are in recess until there is a note or a verdict from the jury.

(Recess.)

- - -

(Note.)

THE COURT: Mike, did you give Miss White and Mr. Winn a copy of the note?

THE BAILIFF: The Prothonotary has them.

THE COURT: The jury has a note. I thought Mr. Winn and Miss White had gotten them before I came into the courtroom. Please take a moment to read it.

Erica, did you give the attorneys the revised

jury instructions? Marie said she brought down two copies for you.

THE BAILIFF: Not at this time. They just walked in.

THE COURT: I'm sorry. I thought they had gotten copies of the instructions.

THE BAILIFF: No, your Honor.

THE COURT: If you turn to the instruction, the note is attached to the instruction -- I'll read it. The note reads, from the jury, reference, possession of a deadly weapon during commission of a felony, note. The jury's note is quoting from the wording in the instruction:

"If the jury find defendant not guilty of burglary first degree," and that word circled, "and of assault second agree, the jury must find the defendant not guilty of this count? Then, there's a No. 1, first circled "and," "Is this correct as printed?"

And, then, the note goes on to say, "The Section 1, burglary first degree and assault second degree," again, they ask is the word "and" correct as printed? So, that's the jury's question.

Miss White, any comments as to -- well, my proposed response is this:

A50

"Yes, the word "and" is correct in there because, under recent case law, if a person is not convicted of the underlying offense that supports the possession of a deadly weapon during commission of a felony charge, he or she cannot be found guilty of the weapons charge independently.

MS. WHITE: Your Honor, I'm not sure that I totally understand their question. But I think I do, and I think that your answer will mislead them further, with all due respect.

I think what they're probably asking is, is the word "and" correct or is the word "or," and I think that perhaps they're right and the question really, and/or.

MR. WINN: Um --

MS. WHITE: Let me finish -- because they cannot -- he cannot be convicted of possession of a deadly weapon if they find him not guilty of burglary in the first degree or -- because they may find him guilty of one but not the other.

THE COURT: Granted, in which case they could find him guilty of this charge --

MS. WHITE: That's correct.

THE COURT: -- under the wording of the instruction.

MS. WHITE: Not really, because, here, it says you can only find him not guilty if you find him not guilty on both of those charges because it says "and." If the jury finds the defendant not guilty of burglary in the first degree and of assault second, then you cannot.

But in the case of this, they may -- let's just say, for hypothetical sake, they find him not guilty of burglary, but guilty of assault in the second degree, they have not found him guilty of both of those things, only one of those things. So, the "and" is confusing, if you're following me.

THE COURT: Yes, I see the State's point.

Mr. Winn?

MR. WINN: I think it's plain and simple the way it is. I'm saying, it says clearly, "If you find him not guilty of the burglary and not guilty of the assault second, then you must find him not guilty of possession of a deadly weapon." I think that's plain. I don't see where there's any difficulty in understanding that. And I think their question is whether or not they are obligated to find me not guilty of the possession of a deadly weapon if they find me not guilty of those two charges, and I think that's what's the intent of the question is.

1    THE COURT: I think, with all due respect to the
2    State's argument, it's best phrased the way it is. It also
3    makes sense to the jury that, if he's not found guilty of
4    either burglary first degree or assault second degree, then
5    there's no underlying offense. So, I'm going to keep the --
6    I've heard the State's argument. I'm going to tell the jury
7    in its response that the word "and" correctly appears
8    therein. Well, let me just --
9        MS. WHITE: Your Honor --
10       THE COURT: Wait a minute.
11       Thinking out loud, I'm still trying to keep the
12   word "and" in the first sentence. But as I think through
13   now a little further about Sub 1, the word "and," I think,
14   should be "or" in Subsection 1, only because they could find
15   him guilty of either one but -- if they do find him not
16   guilty of both, but they have to come back not guilty. So,
17   I'm going to respond to the jury that way.
18       MR. WINN: So I understand, you're going to
19   respond to them how?
20       THE COURT: I'm going to tell the jury that the
21   first use of the word "and" is correct in the first line of
22   the instruction and that the -- but, then, in Subsection 1,
23   as they point out, that should say "or." So, please bring

1    which reads, "Reference possession of deadly weapon during
2    commission of a felony, quote "note" and you're quoting the
3    instruction:
4        "If the jury find defendant not guilty of
5    burglary first degree and of assault second degree, the jury
6    must find the defendant not guilty of this count." And your
7    question to me is in two parts. "First, is the word "and"
8    correct at the top of the page in the first line? And,
9    then, secondly, you say in Section 1, burglary first degree
10   and assault second degree, is "and" in that Subsection 1
11   correct?"
12       With response to your -- responding to your note,
13   the first time that the word "and" appears at the top of the
14   section, it's correct, the word "and" should be there. But
15   you are correct in raising the issue because, in
16   Subsection 1, the word "and" should be replaced with the
17   word "or." So, it will now read, quote, "That the defendant
18   committed a felony. In this case, the felony charged is
19   burglary first degree or assault second degree rather than
20   both. But as we stated at the beginning, if you should come
21   back with the not-guilty verdict as to burglary first degree
22   and assault second degree, he cannot be found guilty of the
23   weapons charge because you found him not guilty on both

86                                                                                              88

1    in the jury and I'll so instruct them.
2        THE BAILIFF: Yes, your Honor.
3        MR. WINN: And can you use that in a sentence for
4    me?
5        THE COURT: Erica, one moment.
6        MR. WINN: The "or," can you use the sentence --
7        THE COURT: I'm going to tell them, and I'm going
8    to have them receive a corrected copy of the weapons page,
9    quote, Sub 1, "That defendant committed a felony. In this
10   case, the felony charged is burglary first degree or assault
11   second degree." That's -- that's the way that should have
12   appeared. I was focusing mostly on the first introductory
13   note. So, that's what they will be instructed.
14       Please bring in the jury.
15       THE BAILIFF: Yes, your Honor.
16       MR. WINN: Your Honor, is it possible to ask you
17   to explain to them that, if they find me guilty -- I mean,
18   not guilty of --
19       THE COURT: Take this up later.
20       THE BAILIFF: The jury, your Honor.
21       THE COURT: Thank you.          A51
22       (Jury enters courtroom at 1:29 P.M.)
23       THE COURT: Members of the jury, I have your note

1    felonies -- charge, the burglary first degree and the
2    assault second."
3        So with that, please take the jury out for
4    continued deliberations.
5        (Jury leaves courtroom at 1:32 P.M.)
6        THE COURT: To the Prothonotary, could you make a
7    copy of this one page only where I've changed the word "and"
8    to "or" and take that into the jury room.
9        THE CLERK: Okay.
10       THE COURT: Let's mark this jury note, please, as
11   court exhibit. I think it's Court Exhibit No. 2, not to go
12   to the jury.
13       With respect to timing, I have a 2 o'clock
14   medical appointment north of town. I've had this scheduled
15   once before for Court business and just shouldn't reschedule
16   it again. Judge Babiarz has told me that, if a verdict is
17   reached, that he could take the verdict if I'm not back in
18   time. I'll have to leave at about quarter of 2:00. I'll be
19   back around 3:15 to 3:30. If the jury's verdict comes when
20   I'm up there, I would like to, even though the jury might
21   have to wait a little bit, and I'm sorry to impose on
22   counsel and Mr. Winn in the delay. But I'd like to take it
23   myself, unless it would be too long of a way. So, I'll be

89

1  in touch with my secretary.

2          MS. WHITE: May I ask a question, your Honor?

3          THE COURT: Yes.

4          MS. WHITE: If there is another note --

5          THE COURT: If there is another note, I'll take

6  that note from the doctor's office and determine what the

7  response should be. If I need to be here to converse with

8  counsel, then, I'll just be here. I may be delayed getting

9  here.

10         So, we're in recess.

11         (Recess.)

12                - - -

13  (Verdict.)

14         THE COURT: Miss White, Mr. Winn, I'm advised the

15  jury has a verdict. Would the bailiff please bring in the

16  jury to take the verdict?

17         THE BAILIFF: Yes, your Honor.

18         MS. WHITE: I hope your doctor is understanding.

19         (Jury enters courtroom at 2:04 P.M.)

20         THE COURT: Members of the jury, the bailiff

21  advises me that you've reached a verdict. Could the

22  Prothonotary please take the verdict.

23         THE CLERK: Yes, your Honor.

90

1          Madame Forelady, please rise.

2          Has the jury agreed upon their verdict?

3          JUROR FOREPERSON: Yes.

4          THE CLERK: How does the jury find the defendant

5  at the bar, Hillard Winn, as to Count 1, burglary first

6  degree? Guilty as charged or not guilty?

7          JUROR FOREPERSON: Guilty as charged.

8          THE CLERK: As to Count 2, assault second degree,

9  guilty as charged, guilty of the lesser-included offense of

10 assault third, or not guilty?

11         JUROR FOREPERSON: Guilty of the lesser-included

12 offense of assault third.

13         THE CLERK: Count 3, possession of a deadly

14 weapon during the commission of a felony, guilty as charged

15 or not guilty?

16         JUROR FOREPERSON: Guilty as charged.

17         THE CLERK: As to Count 4, terroristic

18 threatening, guilty as charged or not guilty?

19         JUROR FOREPERSON: Guilty as charged.

20         THE CLERK: Thank you. Please be seated.

21         Members of the jury, harken to the verdict as the

22 Court has recorded it. Your foreperson said you find the

23 defendant at the bar, Hillard Winn, guilty of burglary first

91

1  degree, guilty of the lesser-included offense of assault

2  third, guilty of possession of a deadly weapon during the

3  commission of a felony, and guilty of terroristic

4  threatening. So say you all?

5          JURORS: Yes.

6          THE CLERK: Thank you.

7          Your Honor.

8          THE COURT: Are there any applications?

9          MS. WHITE: No, your Honor.

10         THE COURT: Hearing none, I'll discharge the jury

11 with the Court's real thanks for your service to the Court

12 and to the State in this case. This does conclude your jury

13 service. Have a good day.

14         Please take out the jury.

15         (Jury leaves courtroom at 2:06 P.M.)

16         THE COURT: Bail is revoked pursuant to law. A

17 Presentence investigation is ordered.

18         I don't have a sentencing date for me, Marie.

19 Marie, do you happen to know the sentencing date in late

20 November or early December?

21         SECRETARY: I do not.

22         THE COURT: I'll send out a letter right away,

23 advising what the sentencing date and time is.

92

1          MR. WINN: Your Honor, I'd like to make a motion

2  to dismiss the verdict, notwithstanding the evidence.

3          THE COURT: Well, any motion is going to have to

4  be done in writing and heard at a later time.

5          We're in recess.

6          (Conclusion of trial.)

A-53

93

CERTIFICATE OF COURT REPORTER

I, Lynne B. Coale, Registered Diplomate Reporter and Certified Realtime Reporter, Official Court Reporter of the Superior Court, State of Delaware, do hereby certify that the foregoing is an accurate transcript of the proceedings had, as reported by me, in the Superior Court of the State of Delaware, in and for New Castle County, in the case herein stated, as the same remains of record in the Office of the Prothonotary at Wilmington, Delaware.

This certification shall be considered null and void if this transcript is disassembled in any manner by any party without authorization of the signatory below.

WITNESS my hand this 14th day of May, 2007.

Cert. # 165-PS

/s/ Lynne Bell Coale
Lynne Bell Coale, RDR, CRR
Official Court Reporter

A53

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR New Castle County

STATE OF DELAWARE          |

                           |

V.                         |     I.D. # 0603002909

Hillard M. Winn,           |

        Defendant Pro Se   |

2006 SEP 20  AM 11:35
PROTHONOTARY FILED

Motion For Acquittal / Mistrial

Comes Now, Hillard M. Winn, Pro Se, Pursuant to the
relevant authorities of this Court to set aside, vacate and or set
forth an acquittal and or Mistrial as the Court May deem legally
appropriate to afford the defendant relief of constitutional violations.
In support the Movant submitts the following;

1. Prosecutorial Misconduct.
During prosecutorial Summations the state begin to comment to the
jury upon the elements of the offenses charged and Trial Court
directed the state to refrane from such comments and informed
that such duty was reserved for the Court.
However, Counsel choose to further instruct the jury. Counsel
informed the jury that if they found that the defendant had committed
the crime of assault on the primises (as Counsel spoke she raised
her head and had to the roof of the Court and preclaimed in a
loud voice) it is totally impossible, unthinkable and beyond
imagination of how you can find that the defendant was one

A54

the property lawfully. Claiming that the very act of Criminality makes the defendants presence unlawful. And that it's impossible for the two Concepts to coexist.

It is Movants contention that these comments deprived the defendant of a fair trial. In that the statements erroneously determined defendants guilt for the jury and eliminated the jurys need to Consider reasonable doubt upon element one (1) of the Burglary in the first degree offense.

Counsels, comments erroneously equated the "privileged" or "permission" of the unlawfulness element with the criminal element.

Movant further contends that because Conviction of the Burglary offense is the felony criminal element of possession of a deadly weapon during the Commission of a felony this Court must set aside, vacate, acquit and or declare a Mistrial upon both such offenses.

2. Plain error or abuse of descretion.

The Court allowed, in error of law, for the charge of assault second degree to go before the jury over defense objections where defendant was clearly exonerated of the offense charged as the indictment set forth, by a taped statement given to police on night of offense by the complaining witness. Wherein, the alleged victim clearly states that the defendant did not hit her with a crowbar or tire iron and causing injurie in such manner. And where,

 A-55

It was clear from the officers testimony that the officer that the officer erroneously relied upon the alleged victems taped statement to provide the facts for which the officer obtained an arrest warrant for defendant arrest on assault second degree. And where, Franks V. State, 438 U.S. 154, 98 S.Ct. 2674 established that, "where defendant establishes by a preponderance of the evidence that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by affiant in search warrant affidavit, and with affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, search warrant must be void and fruits of search excluded to the same extent as if probable cause was lacking on the face of the affidavit." Although it is movants position that the officer knowingly committed perjury in the warrant's affidavit Probable Cause sheet for arrest warrant, allegating that alleged victem stated in taped statement, that defendant threw crowbar at her causing a contusion and swelling to the left temple area, even if the court does not so find, It must be concluded that the statement was excepted with a reckless disregard for the truth considering that the statement was in fact false and the officer spoke from a personal knowledge stand point that said statement was in fact on the tape.

Therefore, the court erred in allowing the matter to go before the jury.

3. Plain error or abuse of discretions.

The law allows the Court to instruct the jury on a lesser included offense only if it is truly a lesser included offense and such instructions does not prejudice the defendant. It is the Movants contention that though the instructions may appear at first, to be a lesser included offense it is not "truly" a lesser offense. Consider that, A ███████ ████ the lesser included offense instructions also came with an instruction that the jury could "also" consider the lesser included offense as the criminal element in a first degree Burglary offense which would allow the state to also find the felony offense of a possession of a deadly weapon during the commission of a felony offense, thereby, "broading" the defendants chances of being found guilty of Burglary and weapon offense.

This must be ███ determined prejudicial to the defendant considering that no notice was given that defendant need prepare a defense to third degree assault and that had the Court not given such an instructions the defendant could have only been found guilty of terrorist threating. And Now defendant faces hibitual offenders status.

Although the Court may see a rational basis ██ in the evidence for the instructions, the instruction is not truly to a lesser included offense and the instruction is clearly prejudicial to the defendant.

Therefore, Movant prays that this honorable Court set aside, vacate, ███ acquit and or declare a Mistrial in above Mentron Case. APP. P4 ███████ ) A57

Movant so Moves

Date: Sept. 15, 2006

_Mr. Hillard M. Winn_ (signature)
Mr. Hillard M. Winn Pro Se
SBI. 153383 SHU 18
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

APP. A5

A-58

Mr. Hillard M. Winn
SBI. 152383 SHU 18
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

Nov. 21, 2006

THE Honorable Richard R. Cooch
Resident Judge
500 North King street Suite 10400
Wilmington, Delaware 19801-3733

Re: State of Delaware V. Hillard M. Winn, I.D. # 0603002909
Amendment to Motion for acquittal

The Honorable Judge Cooch,

Defendant prays that you
consider the following amended argument in your pending
decision upon Motion for acquittal.

1. Plain error or abuse of discretion

The Court committed error when the Court instructed
the jury on the criminal element of Burglary in the
first degree. The Court told the jury that they could
find the defendant guilty of Burglary in the first

APR.P6                    A59

degree if they found the defendant committed the ~~offense~~ offense of assault third degree in the primises.

Assault third degree is a _Misdemeanor_. De. title 11 Code 826 requires that, " An indictment for Burglary must lay a felonious intent, and that intent must be proved. State V. Eaton, 1840, 3 Del. 554, 1840 wL 3671; Lewis V. State, 1968, 251 A.2d 197.

Without an Felonious intent being proven this conviction is legally fractured and must be vacated, set aside, acquitted or a Mistrial declared.

The Movant so Moves

Nov. 21, 2006

Mr. Hillard M. Winn

Mr. Hillard M. Winn
SBI. 152383 SHU 18
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977



A60




# STATE OF DELAWARE
## DEPARTMENT OF JUSTICE

### CARL C. DANBERG
#### Attorney General

**NEW CASTLE COUNTY**
Carvel State Building
820 N. French Street
Wilmington, DE 19801
Criminal Division (302) 577-8500
Fax: (302) 577-2496
Civil Division (302) 577-8400
Fax: (302) 577-6630
TTY: (302) 577-5783

**KENT COUNTY**
102 West Water Street
Dover, DE 19904
Criminal Division (302) 739-4211
Fax: (302) 739-6727
Civil Division (302) 739-7641
Fax: (302) 739-7652
TTY: (302) 739-1545

**SUSSEX COUNTY**
114 E. Market Street
Georgetown, DE 19947
(302) 856-5352
Fax: (302) 856-5369
TTY: (302) 856-2500

**PLEASE REPLY TO:**

New Castle County - Criminal Division

November 20, 2006

The Honorable Richard R. Cooch,
Resident Judge
500 North King Street, Suite 10400
Wilmington, Delaware 19801-3733

> **RE:   State of Delaware v. Hillard M. Winn**
> **I.D. #0603002909**

Dear Judge Cooch:

This is the State's response to Hillard M. Winn's (hereafter, "Defendant") Motion for Acquttal/Mistrial filed with the Prothonotary on September 20, 2006.

1.  Prosecutorial Misconduct

Defendant asserts that the State disregarded Your Honor's admonition regarding defining and explaining the elements of the offense charged[1], and that my method of summation deprived Defendant of a fair and impartial trial. In particular, Defendant claims that counsel's assertion in summation, ". . . if they (the jury) found that defendant had committed the crime of assault on the premises. . . it is totally impossible, unthinkable and beyond imagination of how you can find that the defendant was on the property lawfully." Defendant summarizes the State's argument by stating, "[c]laiming that the very act of criminality makes defendants presence unlawful." This summary of State's argument <u>does</u>, in fact, correctly set forth the State's position, as well as the case law precedent which is analogous to the instant case. In <u>Pauls v. State</u>, Del. Supr., 476 A.2d 157 (1984), defendant was charged with and convicted of the charge of burglary second degree, involving an incident that occurred at a convenience store. There, defendant Pauls argued that he could not be convicted of a burglary because the store was open to

---

1 The State has not had the benefit of a trial transcript to review prior to drafting this response; so, all factual assertions are made from trial counsel's memory.


A61

the public at the time of the incident. In that case, defendant entered the store with a weapon. The victim refused to turn over cash and told defendant to leave. The victim left the store, with defendant following and then she re-entered the store with defendant following. It was at this point that the victim turned over cash to the defendant. The Supreme Court concluded that defendant Pauls was not in the store lawfully when he re-entered after having been told to leave by the victim.

By analogy, the jury could conclude that the facts of this case indicate that initially Defendant was let into the victim's apartment by a man named "Smoke". At that point, Defendant was arguably on the premises lawfully. The testimony by the victim indicated that she was hit, grabbed and thrown to the floor by Defendant. It was at that point, in order to get Defendant to leave the apartment, that the victim indicated his belongings were at "Mom's" house. Defendant, in his statement to the New Castle County Police, admitted that he left his friend, Duane Rollins "Pooh", there to watch the victim. When he returned, it was "Pooh" who opened the door to Defendant. By analogy to the Pauls case, Defendant, who was originally invited into the victim's apartment, could no longer be considered to be there "lawfully" when he re-entered the apartment IF the jury concluded beyond a reasonable doubt that prior to leaving the apartment to look for his belongings at Mom's house, he had assaulted the victim. The State's argument to the jury stated that proposition clearly: if the jury concluded that Defendant assaulted the victim before he left the apartment and before he re-entered the apartment, then there is no conceivable way, based-upon the evidence before the jury, that Defendant re-entered the property lawfully.

The State asserts, therefore, that counsel's arguments were proper and that Defendant was not deprived of a fair trial.

2. Plain Error or Abuse of Discretion

Here, Defendant asserts that the trial Court erred by allowing the charge of Assault Second to go to the jury. Defendant asserts that the victim's statement to the police the evening of the incident exonerates him of this charge. Defendant asserts that the victim in this taped statement clearly states that the Defendant did not hit her with a crowbar. However, victim's trial testimony was to the contrary. The victim indicated that she was hit in the shoulder area with the crowbar. The State introduced photographs of the shoulder injury that the Forensic Nurse Evaluator, Deborah Resurrection, indicated evidenced a "pattern injury." The victim also stated that Defendant threw the crowbar at her, but she wasn't sure where it hit her.

Defendant is correct that the victim appeared to give contradictory testimony regarding whether or not she had been hit by the crowbar, and, if she had been hit, where on her body that occurred. In instances such as this, where the complaining witness gives contradictory accounts of the event, the Supreme Court has concluded that the jury is in the best position to evaluate the credibility of the witness. State v. Smith, Del. Super., 1993 WL 1617680. It is the law of Delaware that the jury is the sole judge of the credibility of witnesses and is responsible for resolving conflicts in the testimony. See Tyre v. State, Del. Supr., 412 A.2d 326, 330 (1980); Sheeran v. State, Del. Supr., 526 A.2d 886, 892 (1987); Williams v. State, Del. Supr., 539 A.2d 164, 168 (1988).

 A62

The Court is bound to allow the charge to go to the jury for determination if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Williams v. State, supra at 168. The Court did so properly in this case, and the jury found Defendant guilty of the lesser-included offense of Assault Third Degree; thereby concluding that Defendant did not injure the victim with a crowbar. In any case, given the verdict, Defendant cannot demonstrate any prejudice resulting from the jury's consideration of the Assault Second charge.

3. Plain Error or Abuse of Discretion

Here Defendant asserts that the Court should not have instructed the jury on the lesser-included offense of Assault Third Degree. Defendant's argument is that the charge is not "truly" a lesser included offense. Defendant's contention is that it is not lesser because if the jury found him guilty (as it did) of the Assault Third, then, he is vulnerable to liability for the more serious offense of Burglary First Degree (of which he was found guilty).

Title 11, Section 206(b)(1) defines an offense as "lesser included" when: [i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged. Title 11, Section 206(c) states that the court is not obliged to charge the jury with respect to an included offense unless there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting the defendant of the included offense.

Here, Your Honor concluded that there was a rational basis in the evidence to conclude that Defendant did not injure the victim using a deadly weapon (the crowbar), but that the injuries she sustained were caused by Defendant without the use of a weapon, other than his hands and/or feet. The jury, therefore, was correctly instructed regarding the crimes of Assault Second Degree (physical injury caused by a deadly weapon) and Assault Third Degree (physical injury). The jury found Defendant guilty of Assault Third Degree. See State v. Cox, 851 A.2d 1269, 1274-75 (Del. 2003) ("The defendant is not entitled to 'force an all or nothing verdict' by objecting to instructions on the lesser included offense if the evidence warrants it.") (citations omitted).

The true gravamen of Defendant's issue is not that the jury was instructed on the lesser-included charge of Assault Third Degree, but that he was convicted of the Burglary First Degree (the jury having concluded that when he re-entered the apartment, he intended to cause physical injury to the victim and he did so cause such physical injury). Defendant had wrongly assumed that if he were acquitted of Assault Second Degree (the jury concluding that he did not injure the victim with a crowbar), then he could not be convicted of the Burglary First and the concomitant Possession of a Deadly Weapon During the Commission of a Felony.

Defendant sees this situation as prejudicial in that it "broadened" his chances of being found guilty. Merely because Defendant failed to foresee this possibility, does not make it legally infirm or prejudicial. Defendant claims he was not given notice to prepare a defense to Assault Third. Title 11, Section 206, involving lesser-included offenses, is sufficient notice to Defendant. The State asserts that the Court's decision to give the jury instruction to the lesser-included Assault Third is legally sound.

A56    A63

For the foregoing reasons, the State respectfully requests this Honorable Court to <u>DENY</u> Defendant's request to set aside, vacate, acquit or declare a mistrial in the above-captioned case.

Respectfully submitted,

Marsha J. White

Marsha J. White
Deputy Attorney General

MJW/edd
Enclosure
Cc:    Hillard Winn




A64

Mr. Hillard M. Winn
SBI. 152383  SHU18
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

Nov. 20, 2006


THE Honorable Richard L. Cooch
Resident Judge
500 North King Street, Suite 10400
Wilmington, Delaware 19801-3733


RE: State of Delaware v. Hillard M. Winn, I.D. # 0603002909
    Reply brief to states response to Motion for acquittal


1. IN RESPONSE to defense Motion for acquittal on the
   grounds that the State's closing summation was ONE (1)
   in violation of Your Honor's order to refrain from
   instructing the jury on the law, The State does NOT
   deny defying the Courts order in this regard.
   (2) And that the subsequent summation deprived defendant
   of a fair and impartial trial. The State concedes the
   ▄▄▄▄▄▄▄▄▄ the content of the offered summation to
   the effect that the very act of criminality Makes the
   defendants' presence unlawful. And cites Pauls v. State,
   476 A. 2d 157  as the authority.                    ▄▄▄▄
                                                          A65
                    APP-A12

However, the States Reliance upon Pauls in this Regard is clearly misplaced. The state seems to assert that the unlawful element in Pauls, was decided on the assault and re-entry factors set forth therein. Counsel is Mistaken.

Counsel fails to acknowledge that in Pauls, the victims ordered the defendant to leave the store, after which the defendant followed the victim out of the store, thereby, because of victims previous order to leave, the defendants subsequent re-entry was determined by the Court to be unlawful.

Nevertheless, It is the defendants position that the state comments to the jury to the effect that If the jury concluded that the defendant assaulted the victim before he left the apartment then, there is No conceivable way, based upon the evidence (evidence of assault) before the jury, that defendant re entered the property Innitally, as claimed by the state, subjects the defendant to an unfair trial. Because such comments deprived defendant of a fair consideration of evidence presented at trial to the effect that defendant had permission to enter which was never withdrawn.

It is also defendants position that no matter the evidence presented at trial, it is the states summation itself that violates the defendants Due process Rights. Even in the context in which the state claims to have made the comments.



  A66

(2)

Plain Error or Abuse of discretion

The defendant filed a Motion of acquittal based on the
argument that the Court erred in allowing the assault second
offense to go before the jury because defendant was exonerated
by the evidence which by effect resulted in a Moot indictment.

In the states response, the state seems to identify the
evidence that exonerated the defendant of the offense charged
in the indictment as "contradictory testimony" and claiming
that the Court is bound to allow the charge to go to the jury
for determination if any rational trier of fact could have
found the essential elements of the crime beyond a
reasonable doubt. The state further argues that in instances
such as this, where the complaining witness gives contradict-
ory accounts of the event, the Supreme Court has concluded
that the jury is in the best position to evaluate the
credibility of the witness and cites three Supreme Court cases
that decided the question of verdict being against the weight
of the evidence. which defers significantly from the
defendants position.

In response to states position the defendant leans
to the findings in Napue v. Illinois, 360 u.s. 264 '79
S.ct. 1173, 3 L. Ed 2d 1217 (1959) which sets forth that;
" Convictions obtained through use of false testimony
known to be such by representatives of the state is a
denial of due process, and there is also a denial of
due process, when the state, though not soliciting

APR PT9

(8)

 ) A67

False Evidence. allows it to go uncorrected when it appears." U.S.C.A. Const. Amend 14. And,

" Principle that a state may <u>not</u> knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the Credibility of the witness." U.S.C.A. Const. Amend. 14.

Therefore, the state and the Court (as a state representative) was obligated by the law to prevent the assault second degree offence from going before the jury, based on the revelations that the alleged victim gave police-affiant a determative statement on the day of the incident that clearly said that defendant did <u>not</u> hit her with a crowbar. This statement was conclusive and served to exonerate the defendant of the offense of assault second degree which was primised upon the claim in the warrant affidavit that defendant hit alleged victim in the left temple area with a crow bar.

The states claim that, the jury found defendant guilty of the lesser-included offense of assault third degree and thereby concluding that defendant did <u>not</u> injure the victim with the Crow Bar, defendant cannot demonstrate any prejudice is shortsighted and fails to consider all the facts.

The state fails to address the facts as relevant to defendants claim supported by Franks v. State, as set forth in motion for acquittal.

Franks v. state, sets forth that, If after evidentiary



Hearing, defendant establishes by a preponderance of evidence that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by affiant in search warrant affidavit, and, with affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish Probable Cause, search warrant must be voided and fruits of search excluded to the same extent as if Probable Cause was lacking on the face of the affidavit. U.S.C.A. Const. Amends. 4, 14.

Without a doubt, the alleged victims taped statement given to the police officer - affiant conclusively established that defendant did not hit alleged victim with a Crow Bar, therefore establishing that Probable Cause affidavit contained a deliberately false or recklessly false statement essential to a finding of Probable Cause to have defendant arrest on such offense and without which defendant would not had been before the Court to face charges of such magnitude.

To knowingly allow the defendant to be further prosecuted by that offense by sending it to the jury or allowing an amendment or lesser included instructions upon that offense after such falsity has been revealed to the Court must be determined to be a miscarriage of justice.

The exonerations was a factual determinations of defendant's innocence that made the indictment moot by effect. And the Grand Jury only, has the power to re issue a indictment. The Court has no power to give New life to a moot indictment. Any claim by the state of lack of prejudice must be disregarded.

APP. Atto

(3)



A69

3. Plain Error or Abuse of discretion

The State's response to defendant's argument that Court Committed Plain error by instructing the jury on the lesser included offense doctrine, the state attempts to re-shape defendant's argument to her liking. which does not adequately address the relevant issues.

The defendants position is that the Court gave a lesser included instructions on the offense of Burglary in the First degree, As a ripple effect course by the Courts decision to give a lesser included instruction one the assault second offense.

The lesser included offense doctrine only allows such one instructions if the instructions is truely a lesser included instruction.

The instructions given by the Court is not truly a lesser included offense because without that instruction the defendant could not have been found guilty of Burglary First degree which is the only Felony which allowed the defendant to be found guilty of Possession of deadly weapon during commissions of a Felony.

and Burglary first degree is not a lesser included offense of Assault second and therefore such instructions should not have been give. Furthermore, defendant argued that the instruction upon the Burglary first offense served to broaden the criminal element of the offense which determines as well that such instruction is not a ▇ truely lesser included offense instruction and as such must be vacated.

Therefore this Court should grant defendants Motion to

APP-A79
Yes                          A 70

set aside, vacate, acquit or declare a mistrial in the
above captioned case.

Nov. 21, 2006

Hillard M. Winn
Mr. Hillard M. Winn
SBI. 152383 SHU18
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

APP.P18
LAY



A71

39

## SUPERIOR COURT
## OF THE
## STATE OF DELAWARE

RICHARD R. COOCH                           NEW CASTLE COUNTY COURTHOUSE
RESIDENT JUDGE                                    500 North King Street, Suite 10400
                                                          Wilmington, Delaware 19801-3733
                                                                    (302) 255-0664

Marsha J. White, Esquire
Deputy Attorney General
Department of Justice
Carvel State Office Building
820 North French Street
Wilmington, Delaware 19801

Hillard M. Winn
S.B.I. 152383
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

FILED
PROTHONOTARY
2006 DEC 13  PM

**Re:  State of Delaware v. Hillard M. Winn**
        **I.D. No. 0603002909**

Submitted: November 21, 2006
Decided: December 13, 2006

On Defendant's "Motion for Acquittal/Mistrial"
**DENIED**.

Dear Ms. White and Mr. Winn:

        Before the Court is Defendant's *pro se* motion for acquittal or for a mistrial.[1]

---

[1] Defendant also filed a related motion for transcripts of his trial and a motion to proceed in forma pauperis in connection therewith. His sentencing is scheduled for December 15, 2006. The Court finds these motions to be premature. Any later need by Defendant for transcripts can be addressed at that time. The motion for transcripts and the motion to proceed in forma pauperis are denied without prejudice.



A72

Because the Court finds that the State presented sufficient evidence at trial to sustain a guilty verdict and that Defendant has not presented any grounds entitling him to a new trial, the motion is **DENIED**.[2]

On September 11, 2006, after a jury trial, Defendant was found guilty of Burglary First Degree, Assault Third Degree, Possession of a Deadly Weapon During the Commission of a Felony, and Terroristic Threatening. Defendant subsequently filed this motion *pro se* on September 20, 2006.

The State's theory at trial was that the Defendant came to the victim's apartment on the night of March 5, 2006 to retrieve some belongings that he had left there several weeks before. Defendant was let in the apartment by a man named "Smoke," and then proceeded to enter the victim's bedroom where he woke her and allegedly assaulted her and yelled at her while trying to determine where his belongings were. Defendant briefly left the apartment to look for his things in another woman's apartment while he had a man named "Pooh" remain with the victim to watch her. Defendant returned to the apartment and this time "Pooh" opened the door for Defendant. By this time, the victim had escaped out of the back bedroom window.

In his motion, Defendant contends that the State "deprived the defendant of a fair trial" by making an inappropriate statement about the burglary charge during closing statements. Specifically, he asserts that the State improperly suggested to the jury that if they found Defendant had committed an assault when he first entered the premises, then it was "totally impossible" that they could find that the Defendant was lawfully on the property when he reentered the premises.

One of the elements that the State must prove in order to convict someone of First Degree Burglary is that the defendant "knowingly enter[ed] or remain[ed] unlawfully in a dwelling."[3] Moreover, "[a] person who enters when he is not licensed or privileged to do so enters unlawfully."[4] There was more than sufficient evidence presented at trial for the jury to find that Defendant was on the property unlawfully. Additionally, the Court notes that Defendant made no objection to the State's statement at the time of trial

---

[2] *See Vouras v. State*, 452 A.2d 1165, 1169 (Del. 1982) (stating that a motion for acquittal is to be granted only when the State has presented insufficient evidence to sustain a verdict of guilt). *See also McCloskey v. State,* 457 A.2d 332, 337 (Del. 1983) (noting that a motion for a mistrial based on impropriety occurring at trial is left to the sound discretion of the trial court).

[3] 11 *Del. C.* § 826(a).

[4] *Pauls v. State*, 476 A.2d 157 (Del. 1984).

 A73

and the Court properly instructed the jury on the elements of burglary.[5] Therefore, the Court does not find that the alleged improper statement deprived the Defendant of a fair trial.[6]

Next, Defendant claims that the Court erred by allowing the charge of Assault Second Degree to go to the jury. He contends that a taped statement where the victim stated that Defendant did not hit her with a crowbar "clearly exonerated" him from that charge.

When a defendant challenges the sufficiency of the evidence to convict him, the Court must inquire "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[7] While there may have been inconsistencies in the victim's testimony, there was sufficient evidence presented at trial for the jury to have found Defendant guilty of Assault Second Degree. Specifically, the victim testified that she was hit in the shoulder area with the crowbar. In addition, the State introduced photographs of the victim's shoulder, which demonstrated a "pattern injury" according to the testimony of the State's witness, a forensic nurse evaluator. Any inconsistencies in the testimony were properly left to the jury, the "sole judge of the credibility of the witnesses," to resolve.[8] Furthermore, the Court notes that the jury did not find Defendant guilty of Assault Second Degree.

Additionally, Defendant contends that the Court should not have instructed the jury at the request of the State on Assault Third Degree, as a lesser-included offense of Assault Second Degree. An offense is lesser-included when "[i]t is established by the proof of the same or less than all the facts required to establish the commission of the offense charged."[9] Moreover, a Court may charge the jury on a lesser included offense if "there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting the defendant of the included offense."[10] After the evidence was presented at trial, the Court determined that there

---

[5] The jury instructions stated that a "person 'enters or remains unlawfully' in a place when the person has no license or privilege to be there; that is, the person does not have the permission or consent of the owner of the place to be there."

[6] *Wilson v. State*, 1985 WL 188316 (Del. Supr.) ("Since defendant neither objected to the statements when made nor requested of the Court a cautionary instruction to the jury, the prosecutor's improper statements would not constitute reversible error unless they were so prejudicial as to affect defendant's substantial right to a fair trial.").

[7] *Williams v. State*, 539 A.2d 164, 168 (Del. 1988).

[8] *Tyre v. State*, 412 A.2d 326, 330 (Del. 1980).

[9] 11 *Del. C.* § 206(b)(1).

[10] *Id.* at § 206(c).



3   A84   A 74

was a rational basis in the evidence to conclude that the Defendant did not injure the victim with a crowbar, but that he caused her injuries without the use of a weapon. Therefore, the Court properly instructed the jury on the lesser-included charge of Assault Third Degree.[11]

For the above reasons, Defendant's motion for acquittal or a mistrial is **DENIED**.

**IT IS SO ORDERED.**

oc: Prothonotary

FILED PROTHONOTARY 2006 DEC 13 PM 1:49

---

[11] *See Moore v. State*, 2003 WL 1987899 (Del. Supr.) (holding that "the trial judge correctly instructed the jury on the lesser-included offense of third degree assault, since there was a rational basis in the evidence for a finding by the jury that [the defendant] recklessly caused [the victim's] physical injury).

4    A75

IN THE SUPREME Court of THE State of DELAWARE

Hillard M. Winn                                    |
Defendant, Below Appellant    |
                                                          |
v.                                                     |  No. 22, 2007
State of Delaware               |  Date submitted 7/23/07
Plaintiff, Below Appellee    |

On Appeal from the Superior Court of the state
___of Delaware In and for New Castle County___


_Appellant's Opening Brief_


Date: 7 /23/ 07             By: Mr. Hillard M. Winn Pro se,
                                            Delaware Correctional Center
                                            1181 Paddock Road
                                            Smyrna, Delaware 19977

Titles:                    Table of Contents                    Pages:

Table of Contents . . . . . . . . . . . . . I - II

Table of Citations. . . . . . . . . . . . . III - V

Nature And stage of proceedings . . . . . . . 1 - 3

Summary of Arguments . . . . . . . . . . . 4 - 13

Statement of facts . . . . . . . . . . . . . 14 - 32

Arguments :

Argument one . . . The Court Committed error
                   when facts required Acquittal
                   And the Court denied defendants
                   Motion for Acquittal . . . . . . 33 - ▮

Conclusion . . . . . . . . . . . . . . 39 ▮

Argument Two . . . The Court erred when it's
                   instruction exceeded bounds
                   of recognized rules of law,
                   denied Adequate Notice, Created
                   Ambiguity and broadened
                   indictment which served to
                   prejudice substantial rights . . . 40 -

Conclusion. . . . . . . . . . . . . . . 59

Argument Three . . . The Court Committed error
                     when Court dismissed Motion
                     for Acquittal based on sufficient

I    ~~AGS~~    A 77

Titles:                        Table of Contents                        Pages:


                            Evidence to Sustain Conviction   .   .   .   .60
Conclusion.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .64


 Exhibits:


Ofc. Provenza's warrant affidavit A1-A2.   .   .   .   .   .18,34,35,39
Motion For Acquittal / Mistrial A103-A108, .   .   .   .   .   .33,34,35,60
State's Response - Motion for Acquittal / Mistrial A109-A120,   .   .   .35,60,61
Defendant's reply to state's response A121-A127, .   .   .   .   ..   .35,36,61
Court's order/Opinion - Motion for Acquittal / Mistrial A130-A133, .   .36,62
Indictment  A32-A34, .   .   .   .   .   .   .   .   .   .   .   .   .39-59
Melissa Gordon's Audiotape
Exhibit No. 5 Ruth Boccelli's Audiotape.   .   .   .   .   .   .18,34,38
State v. Eaton, Del.Oyer & Term, Kent, 1840, 3 Harr., Del., 554, .   .   .54

Titles:  Table of Citations  Pages:

Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed 1314.  59

Coffield v. State, 794 A.2d 588 (2002)  49

Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed 849 (1887)  49

Franks v. State, Del. Supr., 438 U.S. 154, 98 S.Ct. 2674  5, 7, 34

Harley v. State, Del. Supr., 534 A.2d 255 (1987)  56

Johnson v. State, Del. Supr., 711 A.2d 18 (1998).  49, 51, 55, 59

Keller v. State, Del. Supr., 425 A.2d 152 (1981)  52

Lewis v. State, 251 A.2d 197 (1968).  54

Napue v. Illinois, 360 U.S. 264 79 S.Ct. 1173, 3 L.Ed 2d 1217 (1959)  7, 35

Pauls v. State, Del. Supr., 476 A.2d 157 (1984).  12, 61, 63

Plant v. State, 660 A.2d 395 (1995)  54

Schmuck v. United States, 489 U.S. 705, 716, 109 S.Ct. 1443, 103 L.Ed
2d 734 (1989).  50

State v. Biendt, 120 A.2d 324 (1956).  52

State v. Eaton, Oyer & Terms, Kent, 3 Harr. Del. 554.  54

State v. Hamilton, Del. Super., 318 A.2d 624 (1974)  54

State v. McCullough, 348 F.3d 620, 624 (7th Cir. 2003).  50

State v. Minnick, Del. Supr., 3 Storey 261, 168 A.2d 93 (1960).  53, 54

Stirone v. United States, 361 U.S. 212, 218, 80 S.Ct. 270, 4 L.Ed 2d 252
(1960).  49, 55, 59

United States v. Castro, 776 F.2d 1118, 1121-23 (3d Cir. 1985).  56

United States v. Floresca, 38 F.3d 706, 714-13 (4th Cir 1994).  56

United States v. Murphy, 406 F.3d 857 (2005)  50

III A65 A79

Titles:                    Table of Citations                    Pages:


United States V. Olano, 507 U.S. 734, 113 S.ct. 1770, 123 L.Ed

2d 508 (1993)  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  53,63

United States V. Randall, 171 F. 3d 195 (4th Cir. 1999)  .  .  ..  ..  .. 56

United States V. Redd, 161 F. 3d 793, 795 (4th Cir. 1998) .  .  ..  .  . 56

United States V. Schnabel, 939 F. 2d 197, 203 (4th Cir. 1991) .  ..  .  . 56

United States V. Syme, 276 F. 3d 131 (2002)  .  .  .  .  . 58, 59, 63

Williams V. State, Del. Supr., 539 A. 2d 164 (1988)  .  .  ..  ..  . 33

Yates V. United States, 354 U.S. 298, 77 S.ct. 1064, 1 L.Ed 2d 1356

(1957)  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  . 62


                    Statutes / Rules


Delaware Constitutional Article 1, Section 8  .  ..  ..  .  .  .  . 52, 57


Superior Court Criminals Rule 7 (E) ..  .  .  .  ..  ..  .. 46, 48, 52, 54, 57


Title Eleven Delaware Code:

Section 206 .  .  .  .  .  .  .  .  .  . 45, 47, 48, 50, 51, 53, 54, 57

Section 222 .  ..  .  .  .  .  .  .  .  .  .  .  .  . 50

Section 602  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  1

Section 611 (2) .  .  .  .  ..  .  .  .  .  .  .  .  .  .  . 51

Section 612 (2),  .  .  .  .  .  .  .  ..  .  .  ..  .. 1, 50, 51

Section 621 (A)(1)  .  .  .  ..  .  .  .  .  ..  ..  . 1

Section 826 (3)  .  .  .  ..  .  .  .  .  .  .  .  . 1, 22, 41, 63

Titles:                    Table of Citations                    Pages:


Section 1447  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   1
Section 1448 (B)  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   1
Section 1902  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   15
Section 1904  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   16
Section 1909  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   16

## Nature And stage of proceedings

The defendant was taken into custody on March 5, 2006 and Charged with Burglary in the first degree in violation of title 11, Del. Code. Section 826 (2); Assault second in Violation of title 11, Section 612 (2); Possession of a deadly weapon during the Commission of a felony, in violation of title 11, section 1447 ▬ ; Terroristic Threatening, in violation of title 11, Section 621 (A)(1); Possession of a deadly weapon by a person prohibited, in violation of title 11, Section 1448 (B) and Aggravated Menacing, in violation of title 11, Section 602 (B)

On April 3, 2006 The grand jury issued a True Bill, Charging the defendant with four Counts of violating the Delaware Code title Eleven. The grand jury's indictment Charge the defendant as follows;

Count I, Burglary in the first degree.

Hillard M. Winn, on or about the 5th day of March, 2006, in the County of New Castle, State of Delaware, did knowingly enter or remain unlawfully in a dwelling located at 106 Avalon building at Night, with the intent to commit the Crime of Assault second degree, therein, and when, in Effecting entry or when in said dwelling or in immediate flight therefrom, he or another participant in the Crime did Cause physical injury to Ruth Ann Boccieli, who was not a participant in the Crime.

A 82

Count II, Assault in the second degree

Hillard M. Winn, on or about the 5th day of March, 2006, in the County of New Castle, State of Delaware, did intentionally or recklessly cause physical injury to Ruth Ann Boccelli, by means of a Crowbar, a deadly weapon or dangerous instrument as those terms are defined in title 11, section 222 of the Delaware Code of 1974, as amended.

Count III, Possession of a deadly weapon during the commission of a felony.

Hillard M. Winn, on or about the 5th day of March 2006, in the County of New Castle, State of Delaware, did knowingly possess a deadly weapon during the commission of a felony by possessing a Crowbar, a deadly weapon as defined by title 11, section 222 of the Delaware Code of 1974, as amended, during the commission of Burglary first degree and/or Assault Second degree, a felony as set forth in Count I and/or II of this indictment, which is incorporated herein by reference.

Count IV, Terroristic threatening.

Hillard M. Winn, on or about the 5th day March, 2006, in the County of New Castle, state of Delaware, did threaten to commit a Crime likely to result in death or serious injury to the person or property of Ruth Ann Boccelli, by threatening to kill her.

Trial in these matters commenced on September 6, 2006. The jury found the defendant not guilty on Count II of the indictment

A82  A82  A83

As charged by the grand jury and guilty of the lesser included offense of assault in the third degree. And guilty on all remaining counts of the indictment.

The defendant was sentenced on January 3, 2007. Defendant was declared an habitual offender and sentenced as such on Count I of the indictment to thirty (30) years and two (2) years on Count III. Consecutive. On the assault third, one (1) year at level V. Suspended immediately for one (1) year at Level II, suspended after six (6) months for six (6) months level III probation. On Count IV, one (1) year at level V, suspended immediately for one (1) year at Level II.

The defendant filed a notice of appeal with the Delaware Supreme Court on January 17, 2007 and this appeal commenced.

A84

## Summary of Arguments

### Argument One

1) At the close of the evidence phase defendant moved the Court for a direct verdict of acquittal on Count II of indictment.

2) The defendant argued that, (A) defendant was exonerated by the evidence of the offense as charged by the grand jury's indictment. Where alleged victims taped statement established that the defendant in fact, <u>did not</u> hit her with a crowbar.

3) The state's argument was that, there is evidence on the record that would allow the Court to dismiss defendant's motion. That evidence being,

4) (A) At some point, she did say (at trial) that she was hit with the crowbar, that, she believed that it hit her both in the eye and in the shoulder.

5) (B) The evidence of the photographs no 7 and 8 which show pattern injury according to Sane Nurse, which the state claims match the pattern of the lug nut on the tire iron. and,

6) (C) Mr. Rollin's testimony that the tire iron was removed from the residence.

A84   A85

7) The Court Ruled that, yes, there was some inconsistencies in the testimony. But there was also testimony by the victim, if believed by the jury, that she was hit in the shoulder by you, the defendant, with the crow bar. There's testimony about the pattern injury. There's the evidence that the crowbar was in the apartment. Just because there are inconsistencies doesn't mean, looking at the evidence in light most favorable to the state, that the Court should be dismissed. It should not.

8) After trial, the defendant filed a written Motion for acquittal wherein the defendant argued, ■ that the Court erred in allowing Count II to go to the jury where,

9) (A) defendant was clearly exonerated by the alleged victims taped statement on the night of the alleged incident which definitively established that the defendant did not hit her with a crowbar. And,

10) (B) where the officer's testimony clearly established that the officer erroneously relied on the alleged victim's taped statement to make the charge against the defendant which must be void and its fruits suppressed in accordance with Franks v. state, 438 U.S. 154, 98 S.ct. 2674

 A86

11) In their Response the state argued that, where the complaining witness gives contendictory accounts of the events, the supreme Court has concluded that the jury is in the best position to evaluate the credibility of the witness. Citing state v. smith, Del. super., 1993 W.L. 1617680. and arguing that it is the law in Delaware that the jury is the sole judge of the credibility of witnesses and is responsible for resolving conflicts in the testimony. Citing tyre v. state, Del. supo., 419 A.2d 326, 330 (1980); sheeran v. state, Del. supo., 526 A.2d 886, 893 (1987); williams v. state, Del. supr., 539 A.2d 164, 168 (1988) ane,

12) the state argued that, in any case, given the verdict, Defendant cannot demonstrate any prejudice resulting from the jury's consideration of the assault second change.

13) In reply, the defendant argued that,
(A) Conviction obtained through use of false testimony known to be such by representatives of the state is a denial of due process, and there is also a denial of due process, when the state, though not soliciting false evidence, allows it to go uncorrected when it appears and, the principle that a state may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility

A87

of the witness. Citing, Napue V. ILLinois, 360 U.S. 264
79 S.ct. 1173, 3 L.ed 2d 1217 (1959) And,

(14) (B) The proposition that, the defendant Cannot demonstrate
any prejudice is shortsighted and fails to Consider all the
facts. And that, the state fails to acknowledge defendant's
Argument as relevant to Franks. Arguing that Franks
Requires the warrant and, it's fruits voided and,
thereby prejudice is demonstrated by the effect of any
lesser included offense or any offense which is fruit
of that offense.

(15) The Court ruled that, any inconsistencies were properly
Left to the jury, the sole judge of the credibility of
Witnesses and that, the jury did not find defendant guilty
of Assault second degree

(16) In this appeal the defendant Argues that the Court's denial
is in error that effects the fairness and integrity of the
process and Requires the Court to vacate the convictions and
Sentences in Counts I through III of the indictment to
Avoid an Manifested injustice.

<u>Argument Two</u>

(1) The state Moved the Court for a lesser included offense
instruction. In support of that instruction the state Argued,

A88

(2) (a) The defendant was charged with assault in the second degree, and it alleges that victim was caused physical injury by means of a dangerous instrument or a deadly weapon, i.e., the crowbar/tire iron. The jury may conclude that Mr. Winn caused physical injury to the victim but, not by means of a deadly weapon or a dangerous instrument. So the state is going to be asking for the lesser included of assault in the third degree as one of the alternatives. That being the case, that then impacts on the crime of burglary in the first degree, where it was indicted, and it says in your instructions that he did break into the building at night with the intent to commit the crime of assault in the second degree. Our statute, under 826, certainly would permit this still to be a burglary in the first degree even if the defendant only committed assault in the third degree.

(3) The defendant objected on the basis that,

(4) (a) there was not a rational basis in the evidence due to the alleged victims testimony and the states evidence that the alleged victim was hit with a crowbar.

(5) (b) that the defendant had a right to be tried as the indictment reads. And that, the defendant had defended the case from the reading of the indictment and that, to allow the state to change at this point would impair

A89

the defendants ability to now defend himself against other items.

(6)(c) That the defendant was not given adequate notice to prepare a defense against physical injury by means of hits, kicks, punches ect. because that was not charged within the indictment.

(7) The Court observed that, Had the state moved to amend the assault second degree indictment to read, or by fist or punching, I probably would have not allowed it because of the theory in the case law that the state can only proceed in the way that the grand jury presumably heard the evidence. And since the grand jury presumably was only told that the injuries occurred by way of the tire iron and Crowbarn (sic) not any other way, I wouldn't have allowed it. And I think it follows, ███ then, that there i not a rational basis in the evidence, given the law as I see it, for the giving of the assault third degree instruction, because that would require a finding of causation of physical injury other than the way the indictment says.

(8) The state further argued that,
" I can appreciate why your honor would have denied my motion had I moved to amend, because. I do agree with the court that, that is different than what the grand jury heard. However, for purposes of a lessee included),

OX AXE  A-90

As your honor just stated, it's a rational basis in the evidence. And this witness more than once -- in fact, every time she testified said not only was she hit by a crowbar, but she was punched and kicked and hit, and items were thrown at her. So there is a rational basis in the evidence for this juey to conclude that she was not hit with a crowbar, because there was evidence that Mr. Winn introduced that the crowbar missed hee, but, nevertheless, she did suffer physical injury at the hands of Mr. Winn by means of being punched and kicked and hit.

(9) The Couet advantually ruled that;

As I mentioned on friday. when the issue first came up, I gave it much thought in connection with the case law and the standard required under criminal Rule 7 (E) which becomes involved if there's a motion to amend an indictment or an information. And as we know and as I said, amendments to indictments or to counts of indictments, can occur if there's no new or additional change sought to be included and the substantial rights of the defendant are not prejudiced. And I believe, as I thought about it further, the standard of whether or not either party can request a lesser-included offense is whether or not there is a rational basis in the evidence, under section 206 of the criminal code. Here, I do think there is a rational basis in the evidence for the juey to potentially, to find that injuries -- ordinary

(PX DX7  A91

physical injury was inflicted by the defendant, not necessarily by use of the crowbar or tire iron. So, for that reason, I will grant the state's request. The instruction will reflect that I will give the lesser-included offense of assault third degree. It follows from that, as the state said, that, in the burglary first degree charge, the indictment -- the instruction will be changed to add in assault with the intent to commit the offense of assault second degree or assault third degree. The verdict page will be amended to reflect the possibility of the lesser included offense of assault third degree.

(10) In a written motion for acquittal the defendant argued that, the court's instruction was not a truely lesser included offense instruction in it's totality of effects because it served to broaden Counts I and III of the indictment. And,

(11) that such is prejudicial to the defendant too, considering that no notice was given to prepare a defense to such changes.

(12) The defendant amended the motion for acquittal ▬▬▬▬ to included the argument that third degree assault is insufficient to sustain a conviction for burglary first degree because burglary is legally required to lay a felonous intent.

(13) The Court ruled that, the jury was properly instructed.

A9a

(14) In this appeal the defendant argues that, The Court erred when it's instruction exceeded bounds of recognized rules of law, denied adequate notice, created ambiguity and broadened the indictment which served to prejudice substantial rights of the defendant.

## Argument Two

(1) In a Motion for acquittal / Mistrial, the defendant argued that the state presented an erroneous basis for conviction to the jury, on the unlawful entry element of a burglary offense. The defendant argued that,

(2) The state instructed the jury that they could find the defendant guilty of entering or remaining unlawfully in the dwelling if the found the defendant committed the act of assault on the premises.

(3) The state agreed that this was their basis for conviction and cites Pauls V. State, Del. Supr., 476 A.2d 157 (1984) as thire authority

(4) The defendant argued that the states interpretation of _Pauls_ is misplaced and that Pauls turned on the fact that permission was withdrawn and not the criminal act.

(32) A39  A93

(5) The defendant argued that such erroneious instruction deprived him a fair trial and effected Count III of the indictment as well.

(6) The Court acknowledged that the state based its Case on the theory that the defendant's presence was unlawful due to the Criminal Act Committed on the premises. But the Court ruled that there was ████ sufficient evidence to support Conviction.

(7) In this appeal the defendant argues that the Court Committed error when the Court dismissed the defendants motion for acquittal based on sufficient evidence to sustain Conviction.

A94

## Statement of Facts

On March 5, 2006, Mr. Winn was taken into custody and Charged with (1) Bueglary in the first degree (2) Assault in the Second degree (3) Possession of a deadly weapon during the Commission of a Felony (4) Possession of a deadly weapon by a person prohibited (5) Aggravating Mencing and, (6) Terroristic Threatening.

On March 6, 2006, officer Deborah Provenza, of the New Castle County Police Department, filed a Police report with supervisor Jamie A Dolan, of the events and investigation leeding to the Arrest of Mr. Winn. That report reflects that it was initiated on March 5, 2006, at 5:50 AM.

On August 7, 2006, Mr. Winn, filed a Pro se Motion to Suppress Evidence or dismiss indictment. Most of the facts surrounding the Arrest are largely undisputed by the partys, or at least Conceded by Mr. Winn. It is undisputed that Mr. Winn and four other individuals were detained between 12:47 am and 12:53 AM. And, Mr. Winn was identified as the main problem in a show up line up identification process at 1:05 am and that, the four other individuals were identified as being in the alleged victims apartment. It is undisputed that Mr. Winn and the other four individuals were transported to the New Castle County Police headquarters "For interviews" at 1:13 AM. and that all individuals were given Miranda warnings prior to signing Miranda waivers and agreed to be interviewed. that interviews begin at 3:00 AM and ended with Mr. Winn's

A95

interviews which begin at 4:30 AM. It is undisputed that
the vehicle Mr. Winn was driving was towed back to the
New Castle County Police Headquarters E.D.U. at 5:17 AM.
It is undisputed that search warrant and arrest warrant
were not � sought until 7:08 AM. and were not issued
until 7:25 AM. It is undisputed that Mr. Winn was processed
on arrest warrant at approximately 7:30 AM and video
arraigned at 8:45 AM. And that search warrant was
executed at 7:42 AM.

What is in dispute is the extent of the officers knowledge
at the point of initial contact. The 911 log sheet documents
that an emergency dispatch was issued of a robbery just
occurred with a weapon.

The State Claims at the time of original seizure the officers
knew that a home invasion had occurred at 106 Avalon Building;
that the perpetrator was a black male; that he had a crowbar;
that he kicked alleged victim: he said he had a gun.

This issue is in dispute because Mr. Winn's claim that officers
lacked the requisite reasonable articulable suspicion necessary
to effect a stop under the law pursuant to 11 Del. C. Section 1902.
It is also disputed whether or not as Mr. Winn claims, the
officers actions exceeded the permissible bounds of section 1902.

Although Mr. Winn argued that circumstances amount to arrest
at initial contact the State acknowledges that circumstances
amounted to arrest at the point when Mr. Winn was transported
to police headquarters at 1:13 AM.

It is disputed as to whether the officer had sufficient

A96

Knowledge at that point to amount to Probable Cause as is
required under the law in 11 Del. C. Section 1904

However, the Police report demonstrates. and, the state conceded
to the fact that Mr. Winn and the four other individuals
were transported to Police headquarters for interviews
at 1:13 am not arrest.

Plus, at trial the officer, Ofc. Provenza, testified that
Mr. Winn, was transported for interviews, that Mr. Winn
was being detained and was not under arrest. and that
Mr. Winn was not under arrest until after warrants were
Completed.

It is also disputed that there was unnecessary delay in violation
of 11 Del. C. Section 1909 as Mr. Winn contends.

the state argues that because Mr. Winn was arraigned at 8:45 am.
Clearly within the 24 hr provisions of section 1909 there was
no delay.

However, It is Mr. Winn's argument that, the state conceded
the circumstance amounted to arrest at 1:13 am when Mr. Winn
was escorted back to Police headquarters. And because the
officer is required to have enough Probable Cause in his / her
Mind to satify Probable Cause, the law only allows for interviews
incident to arrest and not investigative, that the officer used
this time to investigate other suspects Criminal actions and were
unnecessary to Mr. Winn's arrest and that the arrest was
illegal because it lacked probable Cause and the detention was
illegal because it exceeded the two hours provided by section
1902. And that the unnecessary delay violated Mr. Winn's

(46) A88 A97

due process Constitutional protection. And that, such question
of unreasonable delay turned on the question of reasonableness,
not duration of 24 hour period.

Mr. Winn also argued that the warrantless seizure of the
vehicle was unreasonable and the state failed to demonstrate
any exigent circumstances warranting the warrantless seizure
which the state acknowledges in their response to Mr. Winn's
Motion to Suppress / dismiss.

On September 1, 2006, Judge Jan R. Jurden, Summery denied
Mr. Winn's Motion to dismiss / suppress but Mr. Winn
has never been served with a copy of the Courts order.
Mr. Winn, was instead informed by the state and by the
trial judge of Judge Jurden's decision.

On or about the date of September 1, 2006 the state sent
from Ms. Whites office with six (6) audiotapes for me to
hear. Of those tapes There was the 911 Call with Ruth Boccelli,
The tape recorded statement of Ruth Boccelli and Ofc. Provenza,
And the recorded statement of Melissa Gordon and Ofc. Provenza,
and the recorded statement of Daekwon Rollins and Ofc. Godwin.

These five tapes are particularly important because they
demonstrate that the arrest warrant, Probable Cause Affiant
Submitted a Probable Cause affidavit based in significant part
on knowingly false information. pointedly, Ofc. Provenza, Claimed
that Ms Boccelli, Said that Mr. Winn, "Forced his way in," her
apartment. However, the taped recorded statement of Ms.
Boccelli, demonstrates that Ms. Boccelli, told Ofc. Provenza
that a man Name "Smoke" opened the door and allowed

(17)  A99  A99

Mr. Winn inside. (See paragraph 4 of warrant affidavit.)
Ofc. Provenza Claimed in the affidavit that, " Ms. Boccelli,
advised that Hillard Winn began swinging the crowbar at
her, and eventually threw it at her causing a contusion
and swelling to the left temple area.

However, in Ms. Boccelli's taped statement Ofc. Provenza is
recorded asking Ms. Boccelli, if Mr. Winn had hit her with
the Crowbar and Ms. Boccelli, clearly answered "No, he threw
it at me but it missed". (See warrant affidavit paragraph 4 and
Defense Exhibit No. 5)

Ofc. Provenza, Claimed that, " Ms. Gordon stated that she responds
upstairs to the apartment and observes Hillard Winn assaulting
Ruth Boccelli and she and Daekwon attempted to stop him."
However, in Ms. Gordon's recorded statement, Ms. Gordon is
recorded repeatedly telling Ofc. Provenza that she did not
witness any assault. Until Ofc. Provenza, threatened Ms. Gordon
with what is clearly false arrest. It is only after that
threat that Ms. Gordon, responded, if it's going to keep me
out of jail, yeah I seen it, I seen everything. (See -
paragraph 6 of warrant affidavit and Ms. Gordon's taped statement)

Ofc. Provenza, also Claimed that, " Daekwon Rollins provides
a similar incident to that of Ms. Gordon". However,
Mr. Rollins statement does not say that Mr. Rollins witness
an assault upon Ms. Boccelli or that Mr. Rollins helpped pull
Mr. Winn off Ms. Boccelli. In fact, Mr. Rollins is recorded
telling Ofc. Godwin that he did not witness an assault.
On the morning of September 6, 2006, on the first day of

trial, Judge Richard R. Cooch, Addressed Counsel and Mr. Winns, and the following transpired in relevant part....:

The Court:

Any matters or issues that I should be made aware of from the states perspective? I, usually ask if there are any legal or evidentiary issues of any significance that I should be made aware of?....

Mr. Winn:

Okay, I have no objection to the voir dire. But I would like to reinstate my request for suppression.

The Court:

Well that Motion -- No I'm not going to discuss that. That Application is denied. Judge Jurden Ruled on August 31.

Mr. Winn:

But I've been resently given New Evidence from the prosecution that was not considered when that Motion was Made. That evidence was brought to light that the officer threatened a witness on tape for her testimony against me.

The Court:

Well, I'm not going to hear any day of trial requests for a Suppression of further evidence. So you've made a record of your request, but that request to reopen and consider your Motion to suppress is denied.

On september 8, during recross examination by Mr. Winn, ofc. Provenza, testified that:

(9) A16  A101

Mr. Winn:

Okay. when you had me and everybody down to the police station, at what point did you consider me under arrest?

Ofc. Provenza:

Once we finished the investigation, which was the time that I completed the warrant.

Mr. Winn:

So when you took me in, you had me detained, right, I was being detained?

Ofc. Provenza:

Correct.

Mr. Winn:

And you was doing your investigation, and you was investigating not only me, but you was investigating everybody's actions, participation for whatever criminality that they might have done, right?

Ofc. Provenza:

Yes, they were all being held.

Mr. Winn, asserts that the trial transcriptions are extremely ~~flawed~~ in strategic places throughout the transcripts. For example:

In response to the Court's inquiry into any legal or evidentiary issues that should be brought to the Court's attention Ms. white stated, as the transcripts reflect:

"In light of the fact that Mr. Winn is pro se, and in light of the fact that the state acknowledges that

(20) ~~???~~ A102

Oftentimes in those types of prosecutions it behooves the State to somewhat pick up after a pro se defendant who may not be quite so legally versed, the state has gone out of its way to make sure that there will be no glaring legal issues. I have decided to proceed with this case in such a way to minimize any objections that the defendant may have in terms of any possible tainting of evidence regarding his prior criminal history, so forth and so on."

It was in relation to this statement that Ms. White made an in limine motion to the Court to present evidence that Mr. Winn may would oppose on grounds of variance, however, although the evidence would be of other injurys by other means than those presented in the indictment, Ms. White assured the Court and Mr. Winn that, such evidence would only be used as back ground to give the jury a complete picture of circumstances involved. Mr. Winn, informed the Court that he did not object as long as Ms. White would not be able to use such information to convict him. And, the Court granted the states motion under this condition. However, aside from the above statement by Ms. White, that is documented in the transcripts, and that, makes no sense in it's documented form, because it is a statement made in relation to an evidence issue that, is never discussed in the transcripts as they now exist. Yet, there is evidence ■ in the next facts of the same purposeful omissions from the transcripts.

(21) A88 A103

On September 8, after the close of the evidence phase, the state moved the court for a lesser included offense instructions. The following took place in pertinent part.

The Court:

First, the state's comments on the jury instructions.

Ms. White:

On the indictment -- well, I'm going to flip -- your honor, I'm going to move ahead and I'm going to work backwards, and you'll understand how my logic works ....

Defendant was charged with assault in the second degree, and it alleges that victim was caused physical injury by means of a dangerous instrument or a deadly weapon, i.e., the crowbar / tire iron. The jury may conclude that Mr. Winn, caused physical injury to the victim but not by means of a deadly weapon or a dangerous instrument. So the state is going to be asking for the lesser included of assault in the third degree as one of the alternatives.

That being the case, that, then impacts on the crime of burglary in the first degree where it was indicted, and it says in your instructions that he did break into the building at night with the intent to commit the crime of assault in the second degree. Our statute, under 826, certainly would permit this still to be a burglary in the first degree even if the defendant only committed assault in the third degree.

However the court demonstrated knowledge of the fact that the state's request was not truly for a lesser

(20) ~~ ~~ A104

included offense instruction, when the Court addressed the request to Mr. Winn, for response. The Court stated:

All right. Let me hear Mr. Winn's position on the state's request to give the jury the 'so called lesser included offense instruction of assault third degree Misdemeanor'. And if I were to do that, that would also potentially affect the burglary in the first degree instruction, because the crime would then be either assault second degree or the Misdemeanor assault third degree.

To which Mr. Winn responded in pertinent part:

I object, your Honor. I believe I have the right to be tried as the indictment reads. And thats how I would like the jury to address the indictment.... I don't see that there's a rational basis in the evidence. The victim testified that she was hit with a Crowbar. The state put on evidence that she was hit with a Crowbar. And I think I have a right for the jury to decide whether or not that's true, that's factual.

The Court further acknowledged that the states requested lesser included offense instruction was not truly a lesser included offense instruction, when the Court stated:

I actually have been thinking about this issue during the trial, and I'm going to deny the state's request for a lesser included offense for this reason:

it's almost a parallel thinking whether or not the state could have moved to amend the assault second degree indictment to charge physical injury other than by a tire iron or Crowbar.

(33) 101 A105

had the state moved to amend the assault second degree indictment to read, or by fist or punching, I probably would have not allowed it because of the theory in the case law that the state can only proceed in the way that the grand jury presumably heard the evidence. And since the grand jury presumably was only told that the injuries occurred by way of the tire iron and crowbar (sic), not any other way, I wouldn't have allowed it. And I think it follows, then, that there's not a rational basis in the evidence, given the law as I see it, for the giving of the assault third degree instruction, because that would require a finding of causation of physical injury other than the way the indictment says.

Ms. White asked the court for permission to argue the court's ruling. And, the court granted permission, which left the matter opened -- undecided.

Ms. White then argues that because the witness testified that not only was she hit with a crowbar, but she was also punched and kicked so there is a rational basis in the evidence for the jury to conclude that she was not hit with a crowbar due to defense evidence that it missed her but, she did suffer injury by means of being punched and kicked and hit.

The state argued that, that is a different ▉▉▉▉ standard than the motion to amend, which there is a rational basis in the evidence for a jury to find.

In thinking through the state's argument, the court stated: The problem is that the defendant has been defending the case,

(24) ▉▉ A106

And I think I can sort of glean that from his Cross-examination, to the Crowbar defense. The state could have phrased the indictment originally " by means of a Crowborn (sic) or tire Iron, or by fists."

The state argued that:

Then it wouldn't have been assault in the second degree, your honor, because fists and hands are not a deadly weapon or a dangerous instrument. So we would have had to indicted assault in the second degree and assault in the third degree both.

To which Mr. Winn responded and argued that:

But the state still had ▮▮▮ the option of putting that before the grand jury, though, right? They had the option when they sent up the packet to the grand jury to present the evidence in that manner and let the grand jury decide how they was going to rule on it. They had that option.

Throughout the whole trial I defended my case from the reading of the indictment, because that's what I was under the impression that I had to defend against. Now she wants to change the reading of the indictment and impair my ability to now defend myself against fists and other -- because that wasn't originally in the indictment.

In response the state acknowledged that Mr. Winn, defend himself against an assault in the second degree charge, against the use of a Crowbar pointedly. But argued that;

But that does not preclude him to be found guilty of the lesser included offense which is part of the indicted offense

(20) ▮▮   A107

of an assault without a crowbar.

Mr. Winn, then opposed that:

But I was not given due notice that I would have to defend myself against fists and kicks or --

The Court interrupted and set forth that:

All right. I'm going to think about this and I'll make a ruling at the end of the prayer conference.

The Court then addressed Mr. Winn as follows:

All right. Mr. Winn, what issues, if any, or comments do you have to make about the proposed jury instructions?

Mr. Winn:

I don't know enough to argue if there's any flaws in the jury instructions at this time, I don't know enough. I can tell you, since we're going to recess until Monday, I can make any objections or anything at that time that I may come up with over the weekend. But, you know what I mean, for me to tell you definitively right now that I can present to you every argument I may have, I can't do that. But -- from what I've seen so far, I don't have a problem.

This seemed to irritate Judge Cooch and the Court decided ultimately to do a bit more research on the states motion for the lesser included offense instruction over the weekend. Although the Court's attitude can not be demonstrated by the transcripts. It was clear in the court room that the Courts decision was to retaliate against Mr. Winn for withholding comments on jury instruction until after the weekend.

(26) A36   A108

The beginning of the transcripts for Monday September 11, 2007 are extremely faulted. They do not correctly state the events as they occurred. The transcripts fail to illustrate that the Court first denied the states motion for the lesser included offense instruction stating that it would amount to a impermissible amendment of the indictment. The Court then asked Mr. Winn, for his comments on the purposed jury instructions. Mr. Winn, told the Court that he did not know enough about the law to agree or disagree with the Courts instructions. The Court, then immediately said, well I think I mis-spoke then, if the state would care to re-present its motion for the lesser included offense instruction I will re hear it.

Evidence of these event can be discried from whats in the transcripts as well as whats not. Friday, Sept 8, transcripts document that Mr. Winn would consider the jury instructions over the weekend, but Monday, Sept. 11, transcripts fail to show the Court addressing the issue with Mr. Winn. Furthermore, the Court docket shows that the state first made the lesser included offense request on Sept 8, 06 and that it was denied. And On Sept. 11, 06 the state made a re-motion to the Court for the lesser included offense instruction which was granted. The transcripts failed to show the Re-motion.

Nevertheless, the Court declared that the lesser included offense instruction was considered in connection with the case name and standards required under Superior Court Criminal Rule 7(e) which becomes involved if there's a motion to amend an indictment or information. The Court ruled that

Amendments to indictments or to Counts of indictments, can occur if there's no new or additional charge added. And the substantial rights of the defendant are not prejudiced. Therefore, the issue of the state's request being a motion to amend was duly considered by the Court. And in relationship to the lesser included offense request.

The Court ruled that, ' I believe, as I thought about it further, the standard of whether or not either party can request a lesser included offense is whether or not there is a " rational basis in the evidence, " under section 206 of the Criminal Code.

The Court further ruled that;

Here, I do think there is a rational basis in the evidence for the jury, potentially, to find that injuries -- ordinary physical injury was inflicted by the defendant, not necessarily by use of the crowbar or tire iron. So, for that reason, I will grant the state's request. The jury instructions will reflect that I will give the lesser included offense of assault third degree. It follows from that, as the state said, that, in the burglary first degree charge, the indictment -- the instruction will be changed to add in assault with the intent to commit the offense of assault second degree or assault third degree. The verdict page will be amended to reflect the possibility of the lesser included offense of assault third degree.

In the state's closing summation to the jury, the state instructed the jury that:

Now, ladies and gentleman, you're going to hear, when the judge read the instructions, that you also are going to be able to consider, if you do not believe, or if you find him not guilty beyond a reasonable doubt that her injury was caused by a tire iron or a crowbar, you're also going to be able to consider the fact of a lesser included offense charge of assault in the third degree. That means you could convict him of an assault third degree, which would allege that he caused her physical injury, period, he recklessly or intentionally caused physical injury to her. Taking the crowbar out of the equation, we also heard that he punched her, he kicked her, he threw her against a wall. (which is three different possible causes of injury)

The state went on to instruct the jury that:
And you will see photographs and half photographs and documented by the same nurse of almost seven separate injuries to Ruth Boccelli's body: A bruise here, the cut here; the bruises on the inside of the arms, the bruises on the outside of her arm could have been, and the state submits were caused by the defendant not by use of the crowbar, but by use of his feet and / or his hands. (which is four natures of multible injuries )

The jury did return a verdict of guilty of the so called lesser included offense of assault third degree. But the jury's verdict failed to establish upon which act caused which injury it found the defendant guilty of causing.

The state also instructed the jury erroneously on elements

(39) A89 A111

of the Burglary first degree offense. when the state:
The Code, the charge states that he did either knowingly enter unlawfully or he did remain unlawfully. thats what the wording of the Code says and the state subjects -- suggests and submits to you, he remained unlawfully.

What does that mean? what does that mean? Think about it. He might have entered lawfully because Smoke let him in. But the minute he made the intent in his mind to assault Ruth in that dwelling, he is not remaining lawfully anymore because, once you form the intent to commit a crime, you can't be in that place lawfully. You're not in a place, committing a crime, lawfully. It's impossible. So, once he started to assault her, even if he had been let in lawfully to begin with, he was no longer in there lawfully when he began his assault on Ruth.

Although Mr. Winn, attempted to clarify the law in this regard in his closing summation his was stopped by the Court. which events was not transcribed either. the Court also instructed the jury that the states position on the law of remaining unlawfully was correct. which was not transcribed either.

Yet, the fact can not be disputed that the above state primise of remaining [redacted] unlawfully is, the only theory put before the jury upon which it was alleged that Mr. Winn was on the primises unlawfully. therefore, to establish guilt[redacted] of the element beyond a reasonable doubt the jury had to have relied on the states reasoning in its summation.

Both the State and the Court acknowledge as much when
after trial Mr. Winn, filed a motion to dismiss or mistrial.
both the state and the Court acknowledged that it was the
States theory at trial that Mr. Winn's presence became
unlawful upon the act of assault. And although the Court
acknowledged in it's ruling upon that motion that, "a person
enters or remains unlawfully when the person has no license
or privilege to be there; that is, the person does not have
the permission or consent of the owner of the place to be there."
Yet, the Court still found sufficient evidence to support the
conviction. But neglected to state that evidence.

The Court's instruction as it is set forth in the transcripts ▬▬
on the lesser included offense instruction are constitutionally
~~flawed~~ The assault third degree instruction fails to state the
Constitutionally required nature and cause of the offense charged.
And an burglary offense is required by statue to lay a felonous
intent. And Mr. Winn was convicted of Burglary in the first degree
upon a misdemeanor intent. ~~Furthermore~~, the law requires that,
that felonous intent must be proven.
Mr. Winn, attempted to make these motions to dismiss based on
these facts at sentencing and the Court refused to hear the
matters.
Mr. Winn filed a motion to dismiss with the Court dated January
12, 2007 based on these arguments.
On February 9, 2007 Claiming that the Court is without jurisdiction
to act because Mr. Winn filed an appeal. However the record

(SL) ~~ARG~~ A113

will reflect that as of February 9, 2006 the Superior Court still had jurisdiction over the case.

1. The Court Committed error
   when facts required Acquittal
   AND the Court denied defendants
   Motion for Acquittal

The standard and scope of review applicable to this Argument is harmless error. Defendant request that this Court afford the Arguments herein, the liberal Construction provisions reserved for Pro se Litigants

## Argument

The defendant Argues that the issues Argued herein were properly reserved in a Motion to Acquit at trial and a timely filed Motion for Acquittal / Mistrial after trial.

This Court has held that, when a defendant Challenges the Sufficiency of the evidence to Convict him, the Court must inquire ' whether any rational trier of fact could have found the essential elements of the Crime beyond a reasonable doubt." Williams v. State, Del. Supr., 539 A. 2d 164, 168 (1988)

At the Close of the evidence phase, the defendant moved the Court for a direct verdict of Acquittal on Count II of the indictment which would have required like verdicts on Counts I and III of the indictment as well.

The defendant argued that, the Complaining witness's recorded

(35) A104 A115

Statement, taken by officer Provenza on the night of the Alleged incident, clearly exonerated him of the offense as charged by the grand jury indictment. Where the alleged victim clearly tells the officer that the defendant did not hit her with a crowbar. (A695) (Defense Exhibit No.5)

The defendant argued that, the indictment was moot by effect of that statement.

The defendant argues that his argument to the Court that, I think her claims are argumentative with the -- with the-- the complaining witness stated on the record -- its factual -- she said it did not hit her. And that -- what she said after that point is all argumentative. Meaning that, from the night of the alleged incident the facts as established by the taped statement demonstrates that the defendant was not accused of assaulting the alleged victim, by the alleged victim, with a crowbar. thus, everything after that, is excess to me. Everything done by police and the state is excess from that point. (A697-A698)

The defendant argues that, the defendant's position in this regard was better set forth in the written Motion for acquittal / Mistrial filed by the defendant. wherein, the defendant argued that, where it was clear from the officer's testimony that the officer erroneously relied upon the alleged victim's taped statement that, defendant hit her with a crowbar causing a contusion to the left temple area, to support a probable cause finding for an arrest warrant on charges of Assault second degree. Citing FRANKs V. STATE,

(34) A702 A116

Del. Supr., 438 U.S. 154, 98 S. Ct. 2674 And Arguing that, The preponderance of the evidence showing requirement that, A false statement Knowingly and intentionally, or with reckless disregard for the truth was included by the Affiant in a warrant affidavit Must be voided and it's fruits excluded to the same extent as if probable Cause was lacking on the face of the affidavit.

The defendant argued that the officer Knowingly committed perjury. but that, the evidence at least established that the officer made the statements with a reckless disregard for the truth. Considering the fact that the true statement was recorded on tape and could have been verified. For the actual language used see (A105-A106)

At trial And, in their written response, the substance of the states objection to the Motion was that, the issues Argued by the defendant Are Matters of Credibility and, that there was sufficient evidence presented through the S.A.N.E. Nurse, photographs and complaining witnesses, in Court, testimony to support conviction. (A696-A697) And, (A110-A111)

In reply to the state's objections, the defendant argued that, 'Convictions obtained through use of false testimony, Known to be such by representatives of the state is a denial of Due process And there is Also a denial of due process when, the state, though not soliciting false evidence Allows it to go uncorrected when it appears. Citing, Napue v. Illinois, 360 U.S. 264 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959)

The defendant also argued that, The principle that a state

(35) A103 A117

May Not Knowingly use false evidence, including false
testimony, to obtain a tainted Conviction, implicit in any
concept of ordered liberty, does not cease to apply Merely
because the false testimony goes only to the Credibility
of the witness. And therefore the Court was legally required
to stop the offense from going to the jury. (A123 - A125)

The Court Ruled the same on both the in Court Motions for direct
verdict of acquittal as well as defendant's written Motions for
acquittal / New trial. The Court Ruled that, while there May have
been inconsistencies in the victim's testimony, there was
sufficient evidence presented at trial for the jury to have
found defendant guilty of assault second degree. (A133)

In the instant case the defendant argues that, the facts
Leaves No doubt that, No evidence Exist upon which a
Reasonable trier of fact could find defendant guilty beyond
a reasonable doubt. Due to the fact that prior to trial an
Appropriate Complaint was Never Made to the officer to
support the offenses for which the defendant was before
the Court. This is an undeniable fact. Consider the officers
testimony to the effect that;

The defendant: Q; In your Affidavit of probable Cause
            for Arrest, I believe you stated that
            I hit her in the head, I hit her in
            the temple area with a Crowbar, right?

(36) A104   A118

Ofc. Provenza, A: yes, I did state that you eventually threw it and caused a contusion and swelling to the left temple area.

Defendant, Q: okay, so evidently she told you that I hit her with the crowbar in her temple area, right?
Ofc. Provenza, A: NO. that's not —

Defendant, Q: I threw it and it hit her in her temple area, she told you that?
Ofc. Provenza, A: she didn't say where it hit her, like I stated earlier.

Defendant, Q: Then why did you put it in there if she didn't say it?
Ofc. Provenza, A: Because that was the major injury that she sustained that night, that I could observe, so thats why I put it in there.

Defendant, Q: So you can just automatically make it up and say, well, it hit her in the temple area?
Ofc. Provenza, A: its not made up, sir.

Defendant, Q: You're submitting that to a judge as reasonable cause to arrest me. So that's supposed to be factual evidence that

(34) A105   A119

you're putting forth to a judge to
make a decision to arrest me, and
you're telling him factually that she
told you, or that it was thrown and
hit her in the head and she suffered
a wound from that thing hitting her
in the head, that's what you're saying
factually?

Ofc. Provenza, A: I came to the conclusion through the
investigation that since she couldn't
determine if it hit her in the head or
the hip, that the throwing of the crowbar
did at least, from the injury that I
saw on her temple area, was sustained
by the crowbar striking her in the head.
(A370-A373)


The defendant argues that the officers above testimony when
viewed with the alleged victims ▓▓▓▓▓▓ taped statement in
which the officer asked, did he hit you with the crowbar
the alleged victim answered, "No". "he threw it but it missed,"
(see A619 - A620) and, (see Defense Exhibit No. 5#) Leaves
no doubt that the complaint was never made that the defendant
committed this act, thus, the defendant argues that it's
legally impossible for there to be "sufficient evidence"
upon which a reasonable trier of fact could determine
that defendant committed this act.

(88) A104  A120

Therefore, the defendant argues that, the requirement of an preponderance of the evidence showing that a knowingly false statement, necessary to a finding of probable cause was intentionally, or with reckless disregard for the truth was included in the affidavit and thus, the Court was required to void the warrant and it's fruits to the same effect as if probable cause is lacking on it's face.

The defendant argues that such fruit includes, any lesser "included offense", the burglary count, where this assault second is the intent element of that offense. And, ▬ Count III of the indictment, where Counts I and II are the predicate offenses of that charge. Both of which are fruits of the assault offense.

## Conclusion

In this interest of justice, to preserve the fairness and integrity of the process and to avoid a manifested injustice the defendant moves this honorable Court to vacate the convictions and sentences in these matters with no further prosecutorial consideration.

The defendant so moves.

a. The Court erred when it's
   instruction exceeded bounds
   of recognized rules of law,
   denied adequate notice, created
   ambiguity and broadened
   indictment which served to
   prejudice substantial rights

Defendant properly preserved argument by objection, therefore,
standard and scope of review applicable to this argument
is harmless error. Defendant request that this court afford
the arguments herein, the liberal construction provisions
reserved for pro se litigants.

## Argument

At the close of both evidence phases, the state moved the court
for a lesser included offense instruction. The state argued that:
" Defendant was charged with assault in the second degree,
and it alleges that the victim was caused physical injury by
means of a dangerous instrument or deadly weapon, i.e., the
crowbar / tire iron. The jury may conclude that Mr. Winn
caused physical injury to the victim but not by means of a
deadly weapon or a dangerous instrument. So the state is
going to be asking for the lesser included of assault in the
third degree as one of the alternatives. That being the case,

(46) A108  A122

that then, impacts on the crime of burglary in the first
degree where it was indicted, and it says in your instruction
that he did break into the building at night with the
intent to commit the crime of assault in the second degree.
Our statute, under 826, certainly would permit this still
to be a burglary in the first degree even if the defendant
only committed assault in the third degree." (A680-A681)

The defendant argues that the court acknowledged that the
states request was not actually for a lesser included offense
instruction when the court, directed the defendant to respond.
The court alleged that:
" Let me hear Mr. Winn's position on the state's request
to give the so-called lesser included offense instruction
of assault third degree misdemeanor. And if I were to do
that, that would also potentially affect the burglary in the
first degree instruction, because the crime would then be
either assault second degree or the misdemeanor assault third
degree." ( A681)

The Defendant objected to such instructions arguing that:
" I believe I have the right to be tried as the indictment reads,
And thats how I would like the jury to address the indictment"
..... " I don't see that there's a rational basis in the
evidence, the victim testified that she was hit with a
crowbar, the state put on evidence that she was hit with
a crowbar, and I think I have a right for the jury
(47) A104 A123

to decide whether or not thats true, thats factual."
(A681) (A682)

The Court acknowledged, the defendant argues, that the state's
requested instruction was parallel to a motion to amend the
indictment and that such an instruction would be impermissible
when the Court declared:
"I have actually been thinking about this issue during the
trial, and I'm going to deny the states request for a lesser
included offense for this reason:
It's almost a parallel thinking to whether or not the state
could have moved to amend the assault second degree
indictment to charge physical injury other than by a fire
iron or crowbar. Had the state moved to amend the assault
second degree indictment to read, 'or by fist or punching',
I probably would have not allowed it...." (A682)

The defendant argues that the Court went on to acknowledge that
such an instruction would require a finding of guilt based on a
theory other than the one the grand jury set forth in the indictment:
"...because of the theory in the case law that the state can
only proceed in the way that the grand jury presumably heard
the evidence. And since the grand jury presumably was only
told that the injuries occurred by way of the fire iron and
crowhorn (sic) not any other way, I wouldn't have allowed
it." (A682-A683)

(45) A110    A124

The defendant also argues that the court continued on to acknowledge that there could be <u>no</u> rational basis in the evidence for a instruction that would require a finding of causation other than that charged by the grand jury when the court stated:

" .... And I think it follows, then, that there's not a rational basis in the evidence, given the law as I see it, for the giving of the assault third degree instruction, because that would require a finding of causation of physical injury other than the way the indictment says." (A683)

The state, then moved the court for leave to argue it's ruling, which the court permitted. The defendant argues that the state failed to present any new issue or compelling law or statute that would challenge or over come the legal foundation upon which the court's purposed ruling stood. And,

The defendant argues that the state's further argument served to concede to several of defendant's arguments. The state agreed that what she was asking the court to do was not in the indictment presented by the grand jury when the state said:

" I can appreciate why y/our honor would have denied my motion had I moved to amend, because I do agree with the court that, that is different than what the grand jury heard." (A683)

The state further agree with the defendant when he argued that:

(43) AHL    A125

"Throughout the whole trial I defended my case from the reading of the indictment, because that's what I was under the impression that I had to defend against...." (A685) The state agreed when the stated declared:

" I can appreciate that he did defend himself against an assault in the second degree charge against the use of a crowbar." (A685)

The defendant argues that he went on to argue that the untimeliness of the request impairs his ability to adequately defend against such an instruction at this juncture. When the defended argued that:

".... Now she wants to change the reading of the indictment and impair my ability to now defend myself against fists and other -- because that wasn't originally in the indictment." (A685)

The court also acknowledged that the defendant had defendant himself throughout the trial from the crime as alleged in the indictment when the court stated :

" I'm thinking through the states position -- the problem is that the defendant has been defending the case, and I think I can sort of glean that from his cross-examinations, to the crowbar defense."(A684)

The court further pointed out to the state that:

" the state could have phrased the indictment originally, by means of a crowhorn (sic) or tire iron or by fists." (A684)

(74) A112   A126

To which the state argued that:

" There it wouldn't have been an assault in the second degree, your honor, because fists and hands are not a deadly weapon or a dangerous instrument. So we would have had to indicted assault in the second degree and assault in the third degree both." (A684)

However, the defendant argued that:

" But the state still had the option of putting that before the grand jury, though, right? They had the option when they sent up the packet to the grand jury to present the evidence in that manner and let the grand jury decide how they was going to rule on it. They had that option." (A684-(A685)

The defendant argues that if you consider the totality of the state's argument. The basis seems to be that, an assault third degree, without the deadly weapon, is a lesser included offense of assault second degree that contains the deadly weapon. And that the state is entitled to such an instruction even though it would require the jury to return a verdict based on a finding not charged in the indictment because there was an rational basis in the evidence to warrant that finding. And even though the defendant never was given notice by the indictment because title eleven Delaware Code ▓ Section 206 is due notice. Consider the states arguments that :

"Your Honor, if I can respond to Mr. Winn, I can appreciate that he did defend himself against an assault in the second degree charge against the use of a crowbar. But that does not preclude him to be found guilty of the lesser included offense which is part of the indicted offense of an assault without a crowbar." (A685)

To which the defendant argued:

" But I was not given due notice that I would have to defend myself against fists and kicks or --". (A685-A686)


The defendant asserts that the record reflects that the court issued its ruling consistent with the state's arguments but sets forth no rationale for going against the courts earlier findings or what factors that over came those reservations. The defendant asserts that, that is because the transcripts do not adequately reflect the events that caused the court to change it's ruling. However, the defendant has decided to proceed on the record as it stands to avoid prolonged incarceration to address the issue, as the transcripts are sufficient enough to effect and process this appeal.


The record reflects that, the court ruled that:

" ▬ I gave this much thought in connection with the case law and the standard required under criminal rule 7(e) which becomes involved if there's a motion

(36) A14   A128

to amend an indictment or information.... As I said, amendments to indictments or to counts of the indictments, can occur if there's no new or additional charge sought to be included and the substantial rights of the defendant are not prejudiced. And I believe, as I thought about it further, the standard of whether or not either party can request a lesser included offense is whether or not either party can request a lesser included offense is whether or not there is a 'rational basis in the evidence'. Under Section 206 of the Criminal Code. Here, I do think there is a rational basis in the evidence for the jury, potentially, to find that injuries -- ordinary physical injury was inflicted by the defendant, not necessarily by use of the crowbar or tire iron. So, for that reason, I will grant the state's request. The jury instructions will reflect that I will give the lesser-included offense of assault third degree. It follows from that, as the state said, that, in the burglary first degree charge, the indictment -- the instruction will be changed to add in assault with the intent to commit the offense of assault second degree or assault third degree. The verdict page will be amended to reflect the possibility of the lesser included offense of assault third degree."
(A693 - A694)

The defendant argues that due to the two-fold structure and

(47) AHS    A129

substance of the state's argument for the lesser included offense that effects two counts of the indictment and, the two-fold structure and substance of the court's ruling upon two counts of the indictment is a matter of some confusion whether the court's ruling is actually a lesser included offense instruction or an amendment of the indictments or in some degree both. So, it is necessary to demonstrate error of law from both propositions upon both counts of the indictment. One of the most efficient ways to illustrate the errors of law committed here is by reviewing the courts own declarations and the state's concessions that serve to make it impossible to grant the state's request under the rules, laws and authorities of our state.

The defendant argues that the facts recognized by the court and conceded by the state make it impossible for the court to permissibly grant the state's motion under any concept of our laws at this stage of the proceedings. Be it ~~section 206~~, rule 7(E), or otherwise.

As illustrated above, the court had already determined that; "it's almost a parallel thinking to whether or not the state could have moved to amend the assault second degree indictment to charge physical injury other than by a tire iron or crowbar .... since the grand jury presumably was only told that the injuries occurred by way of the tire iron, not any other way .... I think it follows then, that there's not a rational basis in the evidence given the law as I see it, for the giving of

Assault third degree instruction, because that would require a finding of Causation of physical injury other than the way the indictment says". (A682-A683) to which the state agreed. (A683)

This Court has clearly stated that in NO instance may the trial Court authorize an amendment if that amendment would in any way alter the substance of the grand jury's charge. Cotfield v. state, 794 A.2d 588 (2002)

The defendant argues that, the agreed upon fact that the lesser included offense instruction would require a finding of Causation of physical injury, by the jury, other than the way the indictment says, is an insurmountable established Conclusion. That has been prohibited in our laws since the original Delaware Constitution of 1776, and throughout our case law history to the present times. see Ex parte Bain, 121 U.S. 1, 7 S. Ct. 781, 30 L.Ed 849 (1887); Stirone v. United States, 361 U.S. 212, 218, 80 S.ct. 270, 4 L.Ed.2d 252 (1960); Johnson v. State, Del.Supr, 711 A.2d 18 (1998)


Therefore, the defendant argues that, it makes no difference if the Court's instruction is identified as an "lesser-included offense instruction or an amendment. Either way, the instruction requires the jury, to find the defendant guilty of Causing physical injury ▬ based on a manner of Causation other than the one alleged in the grand jury issued indictment. Such an instruction is prohibited in any instance and violates the substantial protections guaranteed the defendant by both the state and federal Constitutions.

(49) A117   A131

Furthermore, the defendant argues that the instruction requested by the state, could never be an lesser included offense instruction under <u>Section 206</u>. The United States Court of Appeals seventh Circuit, set forth that a lesser offense is necessarily included in the charged offense if it's elements are a "subset" of the elements of the charged offense. see - <u>United States v. Murphy</u>, <u>406 F. 3d 857 (2005)</u> Citing <u>State v. McCullough, 348 F. 3d 620, 624 (7th Cir. 2003)</u>; <u>Schmuck v. United States, 489 U.S. 705, 716, 109 S.Ct. 1443, 103 L.Ed. 2d 734 (1989)</u>

The defendant was arrested under violation of title eleven, Delaware Code <u>Section 612 (2)</u> (see A4)

The Grand jury returned a true bill charging the defendant in the language particular to <u>Section 612 (2)</u> The indictment reads that:

Assault second degree in violation of title 11, <u>Section 612</u> of the Delaware Code of 1974, as amended.

Hillard M. Winn, on or about the 5th day of March, 2006, in the County of New Castle, State of Delaware, did intentionally or recklessly cause physical injury to Ruth Ann Borzelli, by means of a crowbar, a deadly weapon or a dangerous instrument as those terms are defined in title 11, section 222 of the Delaware Code of 1974, as amended. (A32-A33)

<u>Section 612</u> provisions set forth:

(A) A person is guilty of assault in the second degree when:

(1) The person recklessly or intentionally causes serious physical injury to another person; or

(2) The person recklessly or intentionally causes physical injury

(50)  AH8  A132

to another person by means of a deadly weapon or a dangerous instrument.

Section 611 Provisions set forth:

A person is guilty of assault in the third degree when:

(1) The person intentionally or recklessly causes physical injury to another person; or

(2) With Criminal Negligence the person causes physical injury to another person by means of a deadly weapon or a dangerous instrument.

Therefore, the defendant argues that the "subset" of <u>section 612(2)</u>, is <u>Section 611 (2)</u> both of these sections require the same findings of physical injury by means of a deadly weapon or dangerous instrument. And only differ where <u>section 611 (2)</u> provides for a finding of a less ▬▬▬▬ Culpable state of mind. Where <u>Section 612 (2)</u> only provides for intention and recklessness, <u>section 611 (2)</u> provides for intention, recklessness and Criminal Negligence.

In fact, the defendant argues that this Court has recognized that: "There are three degrees to the assault offense. The various degrees are distinguished by the defendant's mental state, the severity of the injury inflicted, and the lethality of the weapon used. Johnson v. State, Del. Supr., 711 A.2d 18 (1998)

Defendant argues that because <u>Section 206 (b) (3)</u> limits the provisions authority to a "dissimilarity" in the elements, the states request could not be permissibly granted under section 206, because the request required the Court to remove the weapon element completely. While <u>section 206 (b) (1)</u> still required proof of the element.

(54)    A133

Therefore, it is the defendant's argument that under section 206 the state would still be required to prove the weapon element but by some lesser degree of cognicible state of mind or lethality of the weapon used.

Superior Court Criminal <u>Rule 7(E)</u> permits an indictment or information to be amended only if no additional or different offense is charged and, if substantial rights of the defendant are not prejudiced.

This rule reflects the common law grand jury principles that are embodied in our Delaware Constitutional <u>Article 1, section 8.</u>

The Delaware Bill of rights permits grand jury indictments to be amended as to form, but not as to substance. <u>State v. Blendt, 120</u> <u>A.2d 324 (1956)</u>

The defendant argues that, under the phraseology in which Count II of the indictment was drawn, the deadly weapon or dangerous instrument element, is the method of causation upon which physical injury is alleged to have occurred.

This Court held that, once incorporated in the indictment, the original averments as to method becomes an material element of the ▬▬▬ charged offense which the state is required to prove and can not be changed by amendment after the evidence is in. <u>Keller v. State,</u> <u>Del. Supe., 425 A.2d 152 (1981)</u>

Therefore, the defendant argues that, Courts instruction served to remove a matter of substance from the indictment and as such is error, under both standards of law.

The defendant argues that, the second half of the Court's ruling,

As it applies to Count I, of the indictment is clearly error of law as well. The Court ruled that;

"The Jury instruction will reflect that I will give the lesser included offense of assault third degree. 'it follows from that', that in the burglary first degree Charge, the indictment - the instruction will be Changed to _add in_ assault with the intent to Commit the offense of assault second degree or assault third degree. The verdict page will be amended to reflect the possibility of the lesser included offense of assault third degree. (A694)

The defendant argues that, the state, moved and, the Court ruled that, the Court's lesser included offense instruction necessarily impacted on Count I of the indictment. Requiring the Court to "Add in" Assault third degree into the intent element, of that burglary first degree offense. Such a proposition must be found to be error, in light of the well settled law of one of Superior Courts own Cases, State V. Minnick, Del. Super, 3 Storey 261, 168 A. 2d 93 (1960) which held that, "Each Count in an indictment must normally be Considered as an individual unit, as though it were a separate indictment standing by itself."

Therefore, the defendant argues that, reviewing the Courts instruction as an individual unit, subject to the provisions of section 206, the Courts instruction must be found to be error of law.

Section 206 (C) Requires, as a prerequisite to a lesser included offense instruction that, there be a rational basis in the evidence to acquit the defendant of the charged offense....

(33) 474 A190 A135

The offense Charged in Count I of the indictment is burglary in the first degree. Nor could it be claimed that assault in any degree is a lesser included offense of burglary. That question was decided in State v. Hamilton, Del. Super., 318 A.2d 624 (1974)

Therefore, the Courts instruction on Count I of the indictment was impermissible error under Section 206

The defendant argues that, as an individual unit, the Courts instruction upon Count I, of the indictment, subject to the provisions of Rule 7 (E) Must be found to be error of law because it Changes the very essence of the burglary indictment which is strictly prohibited by well established Delaware Case law and Superior Court Rule 7(E) As well as the Bill of Rights.

Since the year 1840, in the Case of State v. Eaton, Oyer & Term, Kent, 3 Harr., Del. 554, the intent element of the burglary offense has been determined to be the very essence of the offense which Required that a distinct Crime must be laid and that distinct Crime Must be proven. Such distinct provisions are still demanded of the burglary indictment today. See State v. Minnick, 3 Storey 261, 168 A.2d 93; Lewis v. State, 251 A.2d 197 (1968); Plant v. State, 660 A.2d 395 (1995)

The defendant argues that the degree of precision require in the intent element of a burglary offense would necessarily make a change that charged an additional offense other than that charged by the grand jury's indictment, one of substantial change.

The defendant argues that the Court's instruction is also error because

(54) A151 A136

it served to broaden the charging part of both counts I and II of the indictment. in count I the grand jury specified an assault second degree intent, which was broaden to allow convict of an assault third degree intent as well.

in count II of the indictment the grand jury charged assault second degree, physical injury by means of a particular weapon. That was changed to allow conviction by unspecified means of physical injury.

The United States Supreme Court held that, "when only one particular kind of commerce is charged to have been burdened a conviction must rest on that charge and not another, even though it be assumed that under an indictment drawn in general terms a conviction might rest upon a showing that commerce of one kind or another had been burdened. The right to have the grand jury make the charge on its own judgement is a substantial right which cannot be taken away with or without court amendment." see- Stirone V. United States, 361 U.S. 212, 218, 80 S.Ct. 270, 4 L.Ed. 2d 252 (1960)

The defendant argues that, after the indictments were changed they could no longer be considered the indictments of the grand jury who presented them. Any other doctrin would place the rights of the citizen, which were intended to be protected by the constitutional provision, at the mercy and control of the court or prosecuting attorney. Johnson V. State, Del. Supr., 711 A.2d 18 (1998)

(55) A122 A137

Furthermore, the defendant argues that, the Court's instruction is error of law because it amounted to a Constructive Amendment of the indictment. which constitutes a per se violation of the fifth Amendment grand jury Clause, which is per se reversible error. United States v. Castro, 776 F. 2d ▆ 1118, 1121-22 (3d Cir. 1985)

The defendant argues that, when the state, through its presentation of evidence and/or its argument, or the court through it's instructions to the jury, or both, broadens the bases for conviction beyond those charged in the indictment, A Constructive Amendment sometimes referred to as a fatal variance - occurs. See United States v. Redd, 161 F. 3d 793, 795 (4th Cir. 1998.) A Constructive Amendment is a fatal variance because the indictment is altered to change the elements of the offense charged, such that the defendant is actually convicted of A crime other than that charged in the indictment. United States v. Schnabel, 939 F. 2d 197, 203 (4th Cir. 1991) Thus, a Constructive Amendment violates the fifth amendment right to be indicted by a grand jury, is error per se, And must be corrected on appeal even when the defendant did not preserve the issue by objection. see United States v. Floresca, 38 F. 3d 706, 719-13 (4th Cir. 1994); United States v. Randall, 171 F. 3d 195 (4th Cir. 1999)

the defendant argues that both the state and the Court conceded that to be the case here. (A680 - A686)

The defendant argues that the Court's instruction denied him notice of nature and cause of action, which is a substantial right. Hooley v. State, Del. supr, 534 A. 2d 255 (1987)

(56) A123    A138

The defendant argues that the errors complained of herein, are clearly stated on the recorded between the collogy, involving the state's, request and argument in support of the lesser included offense instruction, the defendant's objections and arguments in opposition to those instructions, the Court's observations, declarations and rulings, as documented in the transcripts and, the laws, which governs the Courts rulings.

The Bill of Rights, _Article 1, Section 8_, of the present Delaware Constitution of 1897, with it's common law powers, provides that: " The Court has the power to amend an indictment as to matters of form only, but not as to matters of substance, as long as no New, Additional or different charge is made thereby and, if the Accused will not otherwise suffer prejudice to substantial rights."

Superior Court Criminal _Rule 7(E)_ Provides:
" The Court May permit an indictment or an information to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced."

The provisions upon which a lesser included offense instruction is permissible are clearly layed out in title 11, Del. Code. _Section 206_ Thus the defendant argues that the errors are clear.

The defendant argues that, the united states Court of appeals for the third Circuit, Delaware, held that, "in most cases the requirement that error must effect substantial rights, means that the error must have been prejudicial, that is, it must have effected

(57) ~~A124~~ A139

the outcome of the proceedings". United States v. Syme, 276 F. 3d 131 (2002) (quoting United States V. Olano, 507 U.S. 734, 113 S. Ct. 1770, 123 L.Ed. 2d 508 (1993)

The defendant argues that the pattern of the jury's verdicts leaves no doubt that the jury's guilty verdicts depended on, and were a result of the Court's instructions that changed Counts I and II, from what the grand jury actually charged. It can not be disputed that the jury found the defendant not guilty of assault with a deadly weapon as alleged in Count II of the grand jury's indictment.

The defendant argues that because this assault second was also the essential element of the burglary indictment, the jury was legally require to return a verdict consistant with its finding upon Count II. thereby, requiring not guilty verdicts upon Counts I and III as well. Due to the fact that Count III required a finding of guilt upon which the weapon was used in the commission of a felony and, Counts I and II were the felonies incorporated in count III of the indictment.

The defendant argues that the fact that the jury returned a guilty verdict on the Court's so-called lesser included offense of assault third and the fact that the Court incorporated that offense in the intent element of Count I ████████████████████ the jury's verdict necessarily rest on that instruction. which then provided the felony to support a conviction of Count III.

Therefore, it can not be claimed that the errors did not effect the substantial rights of the defendant.

(55) A145   A140

The defendant argues that, this Court held that, " the prejudice caused by the Superior Court's substantive amendment of an indictment is always the same - the defendant loses the protection of being proceeded against in a felony prosecution only upon indictment by the grand jury, that is guaranteed by the Delaware Constitution Article 1, Section 8. Johnson v. State, Del. Supr., 711 A.2d 18 (1998)

The defendant argues that, the United States Supreme Court held that, Deprivation of such a basic right is far too serious to be dismissed as harmless error. Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270 (1960) Citing Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314. The United States Court of Appeals for the third Circuit, Delaware, held that, not to correct an error which amounted to a constructive amendment effected defendants substantial rights would seriously effect the fairness and integrity of the judicial process. United States v. Syme, 276 F.3d 131 (2002)

## Conclusion

Therefore, upon the reasons and authorities set forth herein, the defendant moves this honorable Court to vacate the conviction and sentences set forth in the Superior Court of the state of Delaware in counts I through III of the indictment with no further prosecutorial consideration.

The defendant so moves.

(38)    A126    A141

3. The Court Committed Error
    When Court dismissed Motion
    for Acquittal based on sufficient
    Evidence to sustain Conviction

The standard and scope of review applicable to this argument
is harmless error. Defendant Request that this Court afford
the arguments presented herein, the liberal Construction
Reserved for pro se Litigants

## Argument

The defendant argues that, the Court committed error when Court
dismissed defendants Motion for acquittal after both the Court
And the State, acknowledged premise of evidence and that
premise was an invalid legal basis for Conviction.

    The defendant argues that he properly reserved this issue
for argument in a timely filed Motion for acquittal / Mistrial. (see
A103-A108)

In that Motion for acquittal / Mistrial, the defendant argued that,
the State presented the jury with an erroneous basis for conviction
on the unlawful entry element of the burglary offense.

The defendant argues that the state agree with the defendants
summary of the state's premise of guilt on the unlawful element
when, in their Response the state Claimed;

"Defendant summarizes the state's argument by stating,
(Claiming that the very act of Criminality Makes defendants

(60)   A127  A142

presence unlawful.' This Summary of State's Argument does, in fact, Correctly set forth the State's position, as well as the Case law precedent which is Analogous to the instant Case." _Citing Pauls v. State, Del. Supr., 476 A.2d 157 (1984)._ (A109)

In Reply to the State's Response, the defendant argued that, the States reliance on _Pauls_ is Misplaced." The State seems to Assert that the Unlawful Element in _Pauls_, was decided on the Assault and Re-entry factors set forth therein. Counsel is Mistaken. Counsel fails to Acknowledge that in _Pauls_ the victim Ordered the defendant to leave the Store, thereby, because of victims previous order to leave, the defendants subsequent re-entry was determined by the Court to be unlawful. (A122)

The defendant Argues that even the Court Acknowledged ~~that~~ the State's theory at trial, when in it's summary opinion the Court stated;

" The State's theory At trial was that the defendant Came to the victim's Apartment on the night of March 5, 2006 to Retrieve Some belongings that he had left there several weeks before. Defendant was Let in the Apartment by a Man Named 'Smoke', And then proceeded to enter the victim's bedroom where he woke her And allegedly Assaulted her and yelled At her while trying to determine where his belongings were. Defendant briefly left the Apartment to look for his things in Another Woman's Apartment while he had a Man Named 'Pooh' Remain with the Victim to watch her. Defendant

Returned to the apartment and this time 'Pooh' opened the door for defendant. By this time, the victim had escaped out of the back bedroom window." (A131)

The defendant argues that although the transcripts fails to reflect the Courts true instruction to the jury (the defendant asserts that the Court instructed the jury that they could find defendant guilty base upon this proposition by the state due to a dispute over the issue during defendants closing which has also not been recorded in the transcripts) and although the Court Claims to have Correctly instructed the jury on the elements of burglary, It is clear that the jury found the defendant guilty on the only proposition submitted to them. which is based on an involid interpretation of the legal standard of unlawful entry.

Defendant Argues that it was error for the Court to dismiss the defendants motion for acquittal after both the state and the Court acknowledged that it was the state's theory and evidence at trial that defendant's presence was unlawful, based on an Act of Criminal Conduct, which is an involid legal premise upon which to determine unlawful entry. Yates v. United States, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957).

Thus, it is the defendants argument that, where evidence was towards an illegal interpretation of the law the evidence can not be sufficient to support the conviction.

The defendant further argues that, the state never presented any evidence to show that the alleged victim "Cleary withdrew the defendant's privilege" to be on the premises which was conceded that defendant originally was granted by "Smoke".

(62) A149 A144

The defendant argues that, the error committed here is clear. As established by the current law, Title II, Delaware Code Section 826 (A), <u>Pauls v. State, Del. Supr., 476 A.2d 157 (1984)</u>

The United States Court of appeals for the Third Circuit, Delaware, held that, " in most cases the requirement that error must effect substantial rights, means that the error must have been prejudicial, that is, it must have effected the outcome of the proceedings." <u>United States V. Syme, 276 F.3d 131 (2002)</u> (quoting <u>United States V. Olano, 507 U.S. 734, 113 S.Ct, 1770, 123 L.Ed 2d 508 (1993)</u>

The defendant argues that, the Court's error allowed an insufficient verdict to go uncorrected. which resulted in a 30 year sentence upon the defendant. And where, such insufficient verdict on Count I, resulted in a conviction on Count III where, Count I was the predicate offense of Count III, error must be concluded to have effected the outcome of the proceedings thus, the defendant's substantial rights.

The defendant further argues that, error's which effect substantial rights must be corrected on appeal because allowing an insufficient verdict to stand uncorrected would seriously effect the fairness and integrity of the proceedings.

### Conclusion

Due to the facts as argued herein and the laws as presented herein, the defendant argues that this Court is required to

VACATE the Convictions in Count I and III of the indictment
with no further prosecutorial Consideration and set aside
sentence thereto.

The Defendant-Appellant so Moves

Date: 7/25/07

Mr. Hillard M. Winn Pro se

SBI. 152383  SHU 19
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| HILLARD M. WINN, | § | |
| | § | No. 22, 2007 |
| Defendant Below, | § | |
| Appellant, | § | Court Below–Superior Court |
| | § | of the State of Delaware, in |
| v. | § | and for New Castle County |
| | § | |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | Cr. ID No. 0603002909 |
| Appellee. | § | |

Submitted:  October 26, 2007
Decided:      January 28, 2008

Before **STEELE,** Chief Justice, **JACOBS** and **RIDGELY,** Justices.

### O R D E R

This 28th day of January 2008, upon consideration of the parties' briefs it appears to the Court that:

(1)    In April 2006, a grand jury indicted Hillard M. Winn on charges of Burglary in the First Degree, Assault in the Second Degree, Possession of a Deadly Weapon During the Commission of a Felony and Terroristic Threatening.    In August 2006, Winn was granted permission to proceed *pro se* in the Superior Court.

(2)    On the last day of his four-day jury trial in September 2006, Winn moved for an acquittal of the second degree assault charge. Winn argued that there was insufficient evidence presented at trial to show that he used a deadly weapon

during his alleged assault of the victim.[1]    The Superior Court denied Winn's motion.[2]

(3)    The jury convicted Winn of Burglary in the First Degree, Possession of a Deadly Weapon During the Commission of a Felony and Terroristic Threatening.    On the second degree assault charge the jury found Winn guilty of the lesser-included offense of Assault in the Third Degree.[3]

(4)    After the trial, Winn filed a "Motion for Acquittal/Mistrial."    Winn contended that the Superior Court erred when it allowed the jury to consider the second degree and, as a lesser-included offense, third degree assault charge.    Winn also contended that, due to the State's failure to establish that he was in the victim's apartment "unlawfully," there was insufficient evidence for a jury to convict him of first degree burglary.[4]

---

[1] *See* Del. Code Ann. tit. 11, § 612(a)(2) (2007) (providing in relevant part that a person is guilty of assault in the second degree when the person recklessly or intentionally causes physical injury to another person by means of a deadly weapon or a dangerous instrument).

[2] Trial Tr. at 7 (Sept. 11, 2006).

[3] *See* Del. Code Ann. tit. 11, § 611(a) (2007) (providing in relevant part that a person is guilty of assault in the third degree when the person intentionally or recklessly causes physical injury to another person).

[4] *See* Del. Code Ann. tit. 11, § 826 (2007) (providing in relevant part that a person is guilty of burglary in the first degree when the person knowingly enters or remains unlawfully in a dwelling at night with intent to commit a crime therein, and when, in effecting entry or when in the dwelling, the person causes physical injury to any person who is not a participant in the crime).

2

A133   A148

(5)    By order dated December 13, 2006, the Superior Court denied Winn's "Motion for Acquittal/Mistrial." After Winn's sentencing, this appeal followed.[5]

(6)    In an appeal from the denial of a motion for judgment of acquittal this Court must make a *de novo* determination whether any rational trier of fact, viewing the evidence in a light most favorable to the State, could find a defendant guilty beyond a reasonable doubt.[6] We similarly review *de novo* whether there was any rational basis for the Superior Court to instruct the jury on a lesser-included offense.[7]

(7)    Having reviewed the record *de novo*, it is clear to the Court, first, that there was ample evidence presented at trial to support the jury's guilty verdict of first degree burglary, *i.e.*, that Winn was guilty beyond a reasonable doubt of entering or remaining unlawfully in the victim's apartment with the intent to assault her, and that he caused her physical injury. Second, the Court finds that sufficient evidence was presented to allow submission of the charge of Assault in the Second Degree to the jury. Third, the Court concludes that there was a rational

---

[5] At sentencing, Winn was declared a habitual offender pursuant to title 11, section 4214(a) of the Delaware Code and was sentenced to thirty years in prison for Burglary in the First Degree and a total of five years in prison suspended after two years on the remaining counts.

[6] *Shockley v. State* 2004 WL 1790198 (Del. Supr.) (citing *Davis v. State*, 706 A.2d 523, 525 (Del. 1998)).

[7] *Cf. Miller v. State*, 893 A.2d 937, 948 (Del. 2006) (reviewing *de novo* defendant's claim that there was a rational basis for the requested instruction).

basis in the record for the Superior Court to instruct the jury, at the State's request, on the lesser-included offense of Assault in the Third Degree.[8]

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

_____
Justice

---

[8] "Under Delaware case law, a 'trial judge must give a lesser-included offense instruction at the request of either [party] if the evidence presented is such that a jury could rationally find the defendant guilty of the lesser-included offense and acquit the defendant of the greater offense.'" *Keyser v. State*, 893 A.2d 956, 961 (Del. 2006) (quoting *State v. Cox*, 851 A.2d 1269, 1275 (Del. 2003)).

App. A4   A135   A 150

IN THE SUPREME COURT OF THE STATE OF DELAWARE

Hillard M. Winn                          |
Defendant-Appellant Below    |

v.                                                |  No. 22, 2007
State of Delaware                      |  Date Submitted:
Plaintiff-Appellee Below         |

Motion For Reargument

Comes Now, The Defendant, Hillard M. Winn, Pro Se, Pursuant
to Supreme Court Rule 18 Respectfully Requesting this honorable
Court to reconsider it's ruling and order dated January 28, 2008 upon
and in consideration to the appellant's foregoing reargument. Because
it appears from the Courts Opinion that the Merits of appellants
ground for reversal has not been addressed. In support the appellant
State the following:

1) The Courts Opinion seemed to fail to address the primary
issue raised in appellant's first argument. The appellants first
grounds for reversal was predicated on a FRANKS veracity
Challenge to the affidavit of Probable Cause supporting the issuance
of an arrest warrant for assault second degree. Appellant's
argument is that sufficient proffer was demonstrated at trial,
consisting of warrant affidavit, where officer Provenza Claimed
that alleged victim told her that defendant threw a Crowbar at her,
which hit her in the left temple area causing a contusion and swelling.
(see A1 paragraph 4) officer Provenza's trial testimony which

App. 77    (1)    ████    AT86    A151

revealed that she was never given such a complaint. (see A3, page 36, Lns 17 - A4 page 39, Lns 19 ) The taped statement of alleged victim to ofc. Provenza, wherein it was definitively record that the defendant had not injured her with a crowbar, to warrant a preponderance of the evidence finding that a knowingly false statement was intentionally or with reckless disregard for the truth was included in affidavit necessary to a finding of probable cause and without which the remaining content is insufficient to establish probable cause thus requiring arrest warrant voided and its fruits excluded to the extent as if probable cause had been lacking on face of affidavit in accordance with United State Supreme Court case law Franks v. State, 438 U.S. 154, 98 S.ct. 2674. (see A5, pg 110, Lns 3 - pg 111, Lns 18 for tape statement )

2) The Courts Opinion also failed to address the merits of appellant's second argument. In which the appellant raised the claim of impermissible amendments to Counts I and II of the indictment which served to broaden both indictments, denied adequate notice of nature and cause of offense and deprived due process of law. The Grand Jury indicted defendant in Count I, charging Burglary 1st with an assault second intent (see A6) and Count II, assault and, physical injury by means of a deadly weapon / dangerous instrument (see A6-A7) The Court changed the Burglary indictment to allow conviction upon an assault 3rd - Misdemeanor intent. And changed the assault second indictment to allow conviction without a finding of weapon or causation. United States Court of appeals (N.C.) held where indictment specifies predicate offense on which it relies, conviction may not rest, no matter how comfortably on another. U.S. v. Randall, 171 F.3d 195 citing U.S. v. Willoughby, 27 F.3d 263, 266 (7th Cir. 1994); Cotfield v. State, 794 A.2d 588 (2002) states, "in no instance" may a court amend a indictment if that

App. ~~F~~ ~~(8?~~ ▓▓▓ ~~A137~~   A153

Amendment would "in any way" alter the substance of the grand jury's charge. Johnson v. State, 711 A.2d 18. (1998) Citing Ex parte Bain, 121 U.S. 1, 13, 7 S.Ct. 781, 30 L.ed 849 (1887) held that after an indictment was changed it was no longer the indictment of the grand jury who presented it. Both the intent element of a Burglary indictment and the weapon alleged in an assault indictment are essential material elements of the offenses which can not be changed. See- Eaten v. State, Oyer & Teen, Kent 3 Harr. Del. 554; Minnick v. State, Del. Supr, 3 Storey 261, 168 A.2d 93 (1960); Plant v. State, 660 A.2d 395 (1995); Stirone v. United State, 361 U.S. 212, 218, 80 S.Ct. 270, 4 L.Ed 2d 252 (1960) Johnson v. State, Del. Supr, 711 A.2d 18 (1998) Appellant argues that amendments amounted to constructive amendments which are per se reversable. See- United States v. Randall, 171 F.3d 195 (4th Cir. 1999); United States v. Syme, 276 F.3d 131 (2002); United States v. Castro, 776 F.2d 1118, 1121-22 (3rd Cir 1985); United States v. Redd, 161 F.3d 793, 795 (4th Cir. 1998); United States v. Schnabel, 939 F.2d 197, 203 (4th Cir. 1991); United States v. Floresca, 38 F.3d 706, 712-13 (4th Cir. 1994)

3) The appellant reargues to this court that reversal is required where both the state and the lower court acknowledge that it was the states premise at trial that the defendant's presence became unlawful upon the effect of committing a criminal act of assault on the premises. which is a legally erroneous bases upon which to establish unlawful entry or remaining unlawfully. See Pauls v. State, Del. Supr, 476 A.2d 157 (1984) (For the states acknowledgment see A13-14) The United States Supreme court held that if one of two or more alternative theories supporting a count of conviction is either (1) unconstitutional, or (2) legally invalid,

App. T3 (3) [redacted] A138 A153

then the REVIEWING Court should vacate the jury's verdict
and REMAND for a New trial without the invalid or unconstitutional
theory. U.S. V. Syme, 276 F.3d 131 (2002) quoting Griffin V. U.S.,
502 U.S. 56, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991) Citing Stromberg V.
California, 283 U.S. 359, 367-68, 51 S.Ct. 532, 75 L.Ed. 1117
(1931)

## Conclusion

Upon the rearguments set forth herein, in Conjunction with
the Cited recognized rules of law and practice the appellant
Moves this honorable Court to vacate the Conviction and sentence
in the above Captioned Matter with no further prosecutorial
consideration or grant whatever relief the Court may deem
appropriate.


Mr. Hillard M. Winn
SBI. 152383 SHU 19
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

ADD. 14 (d) ▇ A59 A154

EFiled: Feb 14 2008 3:02PM
Filing ID 18609753
Case Number 22,2007

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| HILLARD M. WINN, | § | |
| | § | No. 22, 2007 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware in and |
| v. | § | for New Castle County |
| | § | |
| STATE OF DELAWARE | § | ID # 0603002909 |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: February 11, 2008
Decided: February 14, 2008

Before **STEELE**, Chief Justice, **JACOBS** and **RIDGELY**, Justices.

### *O R D E R*

This 14th day of February 2008 the Court, having carefully considered the appellant's motion for reargument pursuant to Supreme Court Rule 18, of this Court's Order dated January 28, 2008, we conclude that the motion should be denied.

NOW, THEREFORE, IT IS ORDERED that the motion for reargument is **DENIED**.

BY THE COURT:

/s/Henry duPont Ridgely
Justice

APP. E1   AHQ   A 155

IN THE Superior Court of THE State of Delaware
IN And For New Castle County

IN THE Matter of THE Petition of | C.A. No.
Hillard M. Winn                  | Habeas Corpus

V.
The State of Delaware
Warden Terry Philps

You ARE Commanded:

To have Hillard M. Winn, who is allegedly detained in your
Custody, before the Superior Court of the State of Delaware, at the
County Court House at 500 North King Street, Wilmington, Delaware
immediately after the Receipt of this Writ; And to Abide any order
which the Court shall make Concerning Petitioner.
    And further, to Certify fully in writing under oath the
true Cause of said detention, And to have there a Copy of all
process or Orders, if any, under which he is detained and also
this Writ.

Date: ___ / /                              Prothonotary

To the above Named Respondent:

In Case of your failure to produce Hillard M. Winn, as above

Commanded, And fully Certify in writing under oath the true Cause of his detention, with a Copy of All process or orders, if any, under which he is detained, within 3 days After service hereof upon you if the place where he is detained is Not More than 20 Miles from the County Court House, or within 6 days if such place is More than 20 Miles, you May be adjudged to be in Contempt of Court.

_____
Prothonotary

A157

State of Delaware

        SS.

New Castle County


_____, Sheriff of _____ County,
deposes and says that he served personally upon _____
the original Writ of Habeas Corpus of which the within is a
true Copy, by leaving the original Writ with _____
_____ on _____ 200__


SWORN TO AND SUBSCRIBED before Me, _____ 200__


_____

Prothonotary

ANCR          A-158

IN THE Superior Court of THE State of Delaware
IN AND For New Castle County

IN THE Matter of
Hillard M. Winn - Petitioner        | C.A. No.
v.
State of Delaware
Warden Terry Philps - Respondant
For a Writ of Habeas Corpus

MEMORANDUM IN Support of Writ of Habeas Corpus

The Above defendant submits this MEMORANDUM in support
of his petition for Writ of Habeas Corpus. Petitioner states
the following in Support:

1. The Criminal Action Number in this Case is, 0603002909

2. Your Petitioner is being unlawfully restrained of his liberty,
in violation of the laws of the State of Delaware, by reason
of an indictment Not drawn by The Grand Jury AND, by perjurous
Statements in a affidavit of Probable Cause Material to Such
a finding AND, by reason of the fact that the state Knowingly
presented such perjurous Material to Grand Jury Causing
the indictment issued to depend in full OR, in part on perjurous
Material.

3. The Delaware Constitution for more than two hundred years have afforded its Citizens the right of being proceeded against in a felony Criminal prosecution only upon an indictment by the grand jury.

The Grand Jury returned a true bill charging the defendant in a four (IV) Count indictment with committing specific Criminal Acts. pertinently;

In Count I, the grand jury charged the defendant with first degree Burglary with a felonous Assault second degree intent. (see Ex. A1) attached hereto.

In Count II, the Grand jury charged the defendant with second degree Assault, Specifying, Physical injury to Ruth Ann Boccelli, by means of a deadly weapon or dangerous instrument. (see Ex. A1-A2) attached hereto.

In Count III, the Grand jury charged the defendant with Possession of a deadly weapon during the Commission of a felony and incorporated Counts I and II by reference (see Ex. A2) attached hereto

However, the Petitioner is being deprived of his liberty unlawfully by virtue of a Criminal prosecution Materially different from the true bill returned by the grand jury.

In Count I, the Superior Court allowed prosecution of the defendant on a first degree Burglary charging two Criminal intent elements, one, the felonous intent of Assault second degree and, two the Misdemeanor intent of assault third degree. (see Ex. A4, page 3, Lns 6-17) and (see Ex. A5, page 64, Lns 13-16) attached hereto.

A145    A160

which is further unlawful by virtue of the fact that a Burglary offense is required by statue to lay a felonous intent only.

In Count II, the Superior Court allowed the defendant to be prosecuted for third degree assault that required no finding of physical injury by means of a weapon or any means of physical injury at all.

(See Ex. A4, page 2, Lns 23 - page 3, Lns 6) and (see Ex. A6, page 67, Lns 20 - page 68, Lns 19) attached hereto.

Which is further unlawful by virtue of the fact that Delaware Constitutional Article 1, section 7, requires that the defendant be plainly and fully informed of the nature and cause of the accusation against him.

In Count III, the Superior Court allowed the defendant to be prosecuted for Possession of a deadly weapon during the commission of a felony upon predicate offenses materially different from those incorporated into the Count by reference by the grand jury returned Counts as demonstrated above.

4. Your Petitioner is being deprived of his liberty unlawfully by virtue of a violation of his United States Constitutional protection of the fourth amendment guaranteed to him by virtue of the fourteenth amendment to the Constitution. which provides in pertinent part that; "The right of the people to be secure in their person ···· Shall not be violated and no warrant shall issue, but upon probable cause, supported by Oath or affirmation."

Franks v. State of Delaware, 438 U.S. 154, 98 S.Ct. 2674,

AD#6    A161

Quoting United States v. Halsey, 257 F. Supp. 1002, 1005 (S.D.N.Y. 1966) and stating that it is established law, states in pertinent part that; " When the Fourth Amendment demands a factual showing sufficient to comprise probable cause the obvious assumption is that there will be a truthful showing' this does not mean truthful in the sense that every fact recited in the warrant affidavit is necessarily correct ···· But surely it is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true ".

The merits of this proffer is as set forth as follows;

On March 5, 2006, at 7:08 AM, Officer Deborah Provenza (2479) of the New Castle County Police Department, knowingly presented a perjurous arrest warrant affidavit to Judge Thomas M. Kenney, at the Justice of the Peace Court 11#, upon oath and affirmation which the officer then knew to be sufficiently untrue.

The officer knew the following to be untrue;

(1) " Ms. Boccelli advised that Hilard Winn came banging on her front door' and forced his way in." "
(see Ex. A7, paragraph 4, Lns 3-4) attached hereto.

(2) " Ms. Boccelli advised that Hilard Winn began swinging the crowbar at her and eventually threw it at her ' causing a contusion and swelling to the left temple area'"
(see Ex. A7, paragraph 4, Lns 5-6) attached hereto.

(3) "Ms. Gordon Stated that she Responds upstairs
to the apartment and observes Hillard Winn,
Assaulting Ruth Boccelli and she and Daekwon attempt
to stop him. Ms. Gordon Stated that Daekwon Rollins
Responds into the apartment and pulls (T.c) Hillard Winn,
off of the lady and they walk out back."
(See Ex. A7, paragraph 6, Lns 6-9) Attached hereto.

(4) "Daekwon Rollins provides a similar incident to that of
Ms. Gordon."
(See Ex. A8, paragraph 7, Lns 2) Attached hereto.

The Proffer Facts that establishes by a preponderance of the
evidence offered herewith that officer Provenza acted Knowingly
or with Reckless disregard for the truth are as follows;

(1) Officer Provenza, Recorded Ms. Boccelli's Actual Statement
on Mirco Cassette which recorded officer Provenza' Asking
Ms. Boccelli, Did he hit you with the Crowbar? Ms. Boccelli
is recorded Answering, No, he threw it at me but it Missed.
(See Ex. A9, page 11, Lns 2-5); (See Ex. A10, page 107, Lns 9- page
108, Lns 8) And (See Ex. A11, page 110, Lns 3- page 111, Lns 11); Attached.
(See Boccelli recorded Statement, Defense Exhibit No. 5 held in
Court vault)

(2) officer Provenza's trial testimony that Ms. Boccelli had Not
told her where she was hit and how the officer formulated
that Statement,
(See Ex. A12, page 36, Lns 17- Ex. A13, page 39, Lns 23) Attached hereto.
This perjurous Content was Necessary to a finding of
Probable Cause in which to Charge the defendant with

Assault in the second degree and to provide the Necessary felonous intent element to charge the defendant with first degree Burglary. No other statements exist with the affidovit to support such probable Cause findings.

(3) Ms. Boccelli's recorded statement also attest to the fact that Ms. Boccelli Never told officer Provenza that the defendant "forced his way in", But instead that Ms. Boccelli told officer Provenza that "Smoke" (Mr. Harris) had let the defendant in. (see Boccelli's recorded statement, Defense Exhibit No. 5 in Court Vault) which was also the states contention at trial.

(see Ex. A14, page 42, Lns. 4-13) and (see Ex. A16, paragraph 2, of prosecutorial Misconduct response) attached hereto.

This perjurous statement was material to the probable Cause finding of unlawful entry which is Necessary to the offense of Burglary and without which No other content within the affidovit Could support such a finding.

(4) The New Castle County Police Department taped recorded officer Provenza's interrogation and statement of Ms. Melissa Gordon. Which revealed officer Provenza threatening Ms. Gordon with false arrest unless she agreed to be a witness against Mr. Winn, from memory recall the dialog went like this; after repeatedly telling officer Provenza that she had not witnessed an assault on Ms. Boccelli, the officer states, Let me tell you how we see you and Pooh, in this incident, we see you as witnesses because everyone said ya'll had nothing to do with it and was only trying to stop Mr. Winn from assaulting Ms. Boccelli. But you have a choice in this matter, you can be charged up in this thing with

A14

Mr. Winn or, you can be a witness against Mr. Winn, what
do you want to do? To which Ms. Gordon replied, well,
if its going to keep me out of jail, yeah, I seen it, I
seen everything.

For actual language used (see Ms. Gordon's taped statement held
in Court Vault)

The NewCastle County Police Department recorded on tape,
officer Eric Godwin's interrogation and statement of Mr. Rollins.
Which reveal that Mr. Rollins had not provided a similar situation
as to that of Ms. Gordon, in that Mr. Rollins never claimed to
witness an assault on Ms. Boccelli
(see States exhibit No. 22, held in Court Vault)

Both Ms. Gordon's and Mr. Rollins statements as perjurously presented
in the warrant affidavit was material to the finding of Probable
Cause in that they provided the indicia of reliability necessary
to such a finding to charge the defendant with criminal acts alleged
by the officer.

Your Petitioner has particularly identified the alleged false
material with supporting evidence establishing such portions as
false and material to a finding of probable cause and has demonstratively
established by evidence of the warrant affidavit content that with
such false material set to one side, there remains no sufficient
content to support probable cause. Due to such established Proffer
the Fourth Amendment requires that a hearing be held at defendants
request.

The Petitioner makes such request by and through the Petition.

5. Your Petitioner is being deprived of his liberty unlawfully
   by virtue of Prosecutorial Misconduct. Assistant Attorney
   General Marsha J. White, prosecuting attorney for the state,
   had within her possession all of the taped recorded statements
   and officer Provenza's warrant affidavit well before
   jeopardy attached, yet knowingly or with reckless disregard
   for the truth, presented the Grand Jury with perjurous and
   fraudulent material and causing the Grand Jury to return an
   indictment base in full or ███ in part on illegal intented material.
   And where, the State's Attorney General is under a sworn duty
   to protect the defendant and the institution of Justice from
   such illegal abuses and has neglected this responsibility.

   Wherefore, Petitioner prays the Petition issue and the Writ
   Granted.

   Date: 3 / 3 / 08

                                    Mr. Hillard M. Winn, Pro se
                                    SBI. 159383
                                    Delaware Correctional Center
                                    1181 Paddock Road
                                    Smyena, Delaware 19977

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| **THE STATE OF DELAWARE** | ) |
| | ) |
| **V.** | ) **INDICTMENT BY THE GRAND JURY** |
| | ) |
| | ) I.D. #        0603002909 |
| **HILLARD M. WINN** | ) |

The Grand Jury charges **HILLARD M. WINN** with the following offenses:

### COUNT I. A FELONY

#N_____

**BURGLARY FIRST DEGREE** in violation of Title 11, Section 826 of the Delaware Code of 1974, as amended.

**HILLARD M. WINN**, on or about the 5th day March, 2006, in the County of New Castle, State of Delaware, did knowingly enter or remain unlawfully in a dwelling located at 106 Avalon Building at night, with the intent to commit the crime of Assault Second Degree, therein, and when, in effecting entry or when in said dwelling or in immediate flight therefrom, he or another participant in the crime did cause physical injury to Ruth Ann Bocceloli, who was not a participant in the crime.

### COUNT II. A FELONY

#N_____

**ASSAULT SECOND DEGREE** in violation of Title 11, Section 612 of the Delaware Code of 1974, as amended.

**HILLARD M. WINN**, on or about the 5th day of March, 2006, in the County of New Castle, State of Delaware, did intentionally or recklessly cause physical injury to Ruth Ann Boccelli, by



A167

means of a crowbar, a deadly weapon or a dangerous instrument as those terms are defined in Title 11, Section 222 of the Delaware Code of 1974, as amended.

## COUNT III. A FELONY

#N_____

**POSSESSION OF A DEADLY WEAPON DURING THE COMMISSION OF A FELONY** in violation of Title 11, Section 1447 of the Delaware Code of 1974, as amended.

**HILLARD M. WINN**, on or about the 5th day of March, 2006, in the County of New Castle, State of Delaware, did knowingly possess a deadly weapon during the commission of a felony by possessing a crowbar, a deadly weapon as defined by Title 11, Section 222 of the Delaware Code of 1974, as amended, during the commission of Burglary First Degree and/or Assault Second Degree, a felony as set forth in Count I and/or II of this Indictment, which is incorporated herein by reference.

## COUNT IV. A MISDEMEANOR

#N_____

**TERRORISTIC THREATENING** in violation of Title 11, Section 621 of the Delaware Code of 1974, as amended.

**HILLARD M. WINN**, on or about the 5th day March, 2006, in the County of New Castle, State of Delaware, did threaten to commit a crime likely to result in death or serious

ADS    A169

injury to the person or property of Ruth Ann Boccelli, by threatening to kill her.

A TRUE BILL

_____
(FOREPERSON)

ATTORNEY GENERAL

DEPUTY ATTORNEY GENERAL

,12

3

1

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE          )
                           )
        v.                 )    I.D. No. 0603002909
                           )
HILLARD M. WINN,           )
                           )
        Defendant.         )

MONDAY, SEPTEMBER 11, 2006

BEFORE:  HONORABLE RICHARD R. COOCH, J
         AND A JURY

APPEARANCES:

        DEPARTMENT OF JUSTICE
        BY: MARSHA WHITE, ESQ., Deputy Attorney General
            for the State

        HILLARD M. WINN, Pro Se

        TRANSCRIPT OF TRIAL

- - - - - - - - - - - - - - - - - -
        LYNNE BELL COALE
        Registered Diplomate Reporter
        Certified Realtime Reporter
        SUPERIOR COURT·REPORTERS
500 N. KING STREET     WILMINGTON, DELAWARE  19801
              (302) 255-0562

---

2

1    (Courtroom 6A, 9:23 A.M.)

2            - - -

3            THE COURT:  Good morning, everyone.

4            MS. WHITE:  Good morning, your Honor.

5            THE COURT:  Still pending before me is the

6    State's request to have the jury instructions on the

7    lesser-included offense of assault in the third degree.  And

8    after thinking about it, I will grant the State's request

9    for the following reasons:

10           As I mentioned on Friday, when the issue first

11   came up, I gave it much thought in connection with the case

12   law and the standard required under Criminal Rule 7(e),

13   which becomes involved if there's a motion to amend an

14   indictment or an information.  And as we know and as I said,

15   amendments to indictments, or to counts of indictments, can

16   occur if there's no new or additional charge sought to be

17   included and the substantial rights of the defendant are not

18   prejudiced.  And I believe, as I thought about it further,

19   the standard of whether or not either party can request a

20   lesser-included offense is whether or not there is a

21   "rational basis in the evidence," under Section 206 of the

22   criminal code.

23           Here, I do think there is a rational basis in the/

---

3

1    evidence for the jury, potentially, to find that injuries --

2    ordinary physical injury was inflicted by the defendant, not

3    necessarily by use of the crowbar or tire iron.  So, for

4    that reason, I will grant the State's request.  The jury

5    instructions will reflect that I will give the

6    lesser-included offense of assault third degree.  It follows

7    from that, as the State said, that, in the burglary

8    first-degree charge, the indictment -- the instruction will

9    be changed to add in assault with the intent to commit the

10   offense of assault second degree or assault third degree.

11   The verdict page will be amended to reflect the possibility

12   of the lesser-included offense of assault third degree.  And

13   the only other change is the change on the very first

14   instruction to the jury, speaking -- instructing them on the

15   law about the offenses, as well as any lesser offense of

16   which the defendant might be convicted.

17           So, that's the Court's ruling.

18           MR. WINN:  Your Honor, I would like to object to

19   that because I was never made aware of the fact that I would

20   have to defend against a simple assault charge.

21           THE COURT:  You've already -- Mr. Winn, you've

22   already had your chance for oral argument on the motion.  I

23   understand your position.  You said that on Friday.  Of

---

4

1    course, I've taken into account the position you

2    articulated, but that's the Court's decision.

3            MR. WINN:  Okay.

4            THE COURT:  Anything else to take up before we

5    bring in the jury?

6            MR. WINN:  I would like to read something into --

7    on to the record.

8            Your Honor --

9            THE COURT:  What is this you want to read into

10   the record?

11           MR. WINN:  A motion for direct acquittal on

12   Count 2 because it was -- it's actually incumbent upon the

13   Court, when the officer -- when the tape was played --

14   before you made any amendments to Count 2, when the tape was

15   played and the statement of the complaining witness said

16   that I did not hit her with a crowbar, I was effectively

17   exonerated of the charge at that point.  And there should

18   have been no amendment from that point because the

19   indictment was made moot by -- or moat, or however you

20   pronounce it --

21           THE COURT:  Moot.

22           MR. WINN:  -- by the statement made by the

23   complaining party.  Now, everything else is -- is excess to

A155  A170

Page 1 to 4 of 93                                    05/21/2007 03:59:48 PM

61

1   a person representing himself is to zealously and
2   effectively advance the claims of themselves or the party
3   she represents within the bounds of the law. An attorney or
4   a party representing himself may argue all reasonable
5   inferences from evidence in the record. However, it is not
6   proper for an attorney or person representing himself to
7   state his or her opinion as to the truth or falsity of any
8   testimony or evidence, or the guilt or innocence of an
9   accused. What an attorney or a person representing himself
10  personally thinks or believes about the testimony or
11  evidence in a case is not relevant, and you are instructed
12  to disregard any personal opinion or belief concerning
13  testimony or evidence which an attorney or person
14  representing himself offers during opening or closing
15  statements or at any other time during the course of the
16  trial.
17         Further, what an attorney or person representing
18  himself states in his or her opening or closing arguments is
19  not evidence. Evidence consists of testimony from witnesses
20  testifying from the witness stand and exhibits introduced
21  through their testimony. If your recollection of that
22  evidence disagrees with anything said about it either by
23  counsel or by the Court, you should be guided entirely by

62

1   your own recollection. It's this evidence only which you
2   may consider in reaching your verdicts.
3         The defendant is charged in this Court by an
4   indictment. An indictment is a mere accusation against the
5   defendant. It is not in itself any evidence of the guilt of
6   the defendant. You should not allow yourselves to be
7   influenced in any way, however slight, by the fact that an
8   indictment has been returned against this defendant.
9         Whether this defendant is guilty or not guilty is
10  for you to determine solely from the testimony that has been
11  presented during the trial. The determination of the true
12  facts and the drawing of any inferences from the proven
13  facts are matters solely within your province.
14         The indictment reads as follows: Count 1,
15  burglary first degree reads that Hillard M. Winn, on or
16  about March 5, 2006, in New Castle County, Delaware, did
17  knowingly enter or remain unlawfully in the dwelling located
18  at 106 Avalon Building at night, with the intent to commit
19  the crime of assault second degree therein; and when, in the
20  -- in effecting entry, or when in said dwelling or in
21  immediate flight therefrom, he or another participant in the
22  crime did cause physical injury to Ruth Ann Bocelli, who is
23  not a participant in the crime.

63

1         Count 2 is assault second degree and it reads
2   that the defendant, on or about the same date and place, did
3   intentionally or recklessly cause physical injury to Ruth
4   Ann Bocelli by means of a crowbar or tire iron, a deadly
5   weapon or dangerous instrument as those terms are defined by
6   law.
7         Count 3 is possession of a deadly weapon during
8   the commission of a felony. And it reads that the
9   defendant, on or about the same date and place, did
10  knowingly possess a deadly weapon during the commission of a
11  felony by possessing a crowbar or tire iron, a deadly weapon
12  as defined by law, during the commission of burglary first
13  degree and/or assault second degree, a felony as set forth
14  in Counts 1 and/or 2 of this indictment which is
15  incorporated herein by reference.
16         Count 4, the last count, is misdemeanor
17  terroristic threatening. And it reads that the defendant on
18  or about that date and place, did threaten to commit a crime
19  likely to result in death or serious injury to the person or
20  property of Ruth Ann Bocelli by threatening to kill her.
21         Delaware law defines the offense of burglary
22  first degree as follows: A person is guilty of burglary in
23  the first degree when the person knowingly enters or remains

64

1   unlawfully in a dwelling at night, with the intent to commit
2   a crime therein; and when, in effecting entry or when in the
3   building or in immediate flight therefrom, the person or
4   another participant in the crime causes physical injury to
5   any person who is not a participant in the crime.
6         In order to find defendant guilty of burglary in
7   the first degree, you must find that the following elements
8   have been established beyond a reasonable doubt:
9         One, the defendant entered or remained unlawfully
10  in a dwelling; and, two, the place where the defendant
11  entered or remained unlawfully was a dwelling; and, three,
12  the defendant acted knowingly; and, four, defendant actions
13  occur at night; and, five, the defendant intended to commit
14  a crime in the dwelling -- in this case, assault second
15  degree or the lesser-included offense of assault third
16  degree; and, six, at the time of effecting entry or when in
17  the dwelling or immediate flight therefrom, the defendant
18  caused physical injury to any person who is not a
19  participant in the crime -- in this case, to Ruth Ann
20  Bocelli.
21         A person enters or remains unlawfully in a place
22  when the person has no license or privilege to be there;
23  that is, the person does not have the permission or consent

A-156   A-171

65

1  of the owner of the place to be there.  Dwelling means a
2  building which is normally occupied by a person lodging
3  there at night.  Knowingly means that he was aware that the
4  property involved was a dwelling and that he was entering or
5  remaining unlawfully.  Night means that the offense occurred
6  during the period between 30 minutes after sunset and
7  30 minutes before sunrise.  Physical injury means any
8  impairment of physical condition or substantial pain.
9       If, after considering all of the evidence, you
10  find that the State has established beyond a reasonable
11  doubt that the defendant acted in such a manner as to
12  satisfy all the elements that I have just stated at or about
13  the date and place stated in the indictment, you should find
14  the defendant guilty of burglary first degree.  If you do
15  not so find, or if you have any reasonable doubt as to any
16  element of this offense, you must find the defendant not
17  guilty of burglary first degree.
18       Count 2 is assault second degree.  Delaware law
19  defines the offense of assault second degree in pertinent
20  part as follows:
21       A person is guilty of assault in the second
22  degree when the person recklessly or intentionally causes
23  physical injury to another person by means of a deadly

66

1  weapon or dangerous instrument.
2       In order to find defendant guilty of assault
3  second degree, you must find that the following elements
4  have been established beyond a reasonable doubt:
5       One, defendant caused physical injury to the
6  victim -- in this case, Ruth Ann Bocelli -- by using a
7  crowbar or tire iron; and, two, the defendant acted
8  recklessly or intentionally; and, three, the defendant used
9  a deadly weapon or a dangerous instrument -- in this case, a
10  crowbar or tire iron.
11       Physical injury means impairment of physical
12  condition or substantial pain.  Deadly weapon includes a
13  billy or bludgeon or any dangerous instrument which is used
14  or attempted to be used to cause death or serious physical
15  injury.  Dangerous instrument means any instrument, article
16  or substance which, under the circumstances in which it is
17  used, attempted to be used, or threatened to be used, is
18  readily capable of causing death or serious physical injury.
19       Serious physical injury means physical injury
20  which creates a substantial risk of death, or which causes
21  serious and prolonged disfigurement, or prolonged impairment
22  of health, or prolonged loss or impairment of the function
23  of any bodily organ.

67

1       Recklessly means the defendant was aware of and
2  consciously disregarded a substantial and unjustifiable risk
3  that physical injury of another person would result from his
4  conduct.  The risk must be of such a nature and degree that
5  disregard thereof constitutes a gross deviation from the
6  standard of conduct that a reasonable person would observe
7  in the situation.
8       Intentionally means that it was defendant's
9  conscious object or purpose to cause physical injury to
10  another person.
11       If, after considering all the evidence, you find
12  that the State has established beyond a reasonable doubt
13  that the defendant acted in such a manner as to satisfy all
14  the elements that I have just stated at or about the date
15  and place stated in the indictment, you should find the
16  defendant guilty of assault second degree.  If you do not so
17  find, or if you have a reasonable doubt as to any element of
18  this offense, you must find the defendant not guilty of
19  assault second degree.
20       If you find the defendant not guilty on the
21  charge of assault second degree, or if, after reasonable
22  effort, you are at an impasse and are unable to reach a
23  unanimous verdict on the charge of assault second degree,

68

1  then you may go on to consider the lesser-included offense
2  of assault third degree.
3       Delaware law defines the offense of assault third
4  degree in pertinent part as follows:
5       A person is guilty of assault in the third degree
6  when the person intentionally or recklessly causes physical
7  injury to another person.  In order to find the defendant
8  guilty of assault third degree, you must find that all the
9  following elements have been established beyond a reasonable
10  doubt:
11       One, the defendant caused physical injury to Ruth
12  Ann Bocelli; and, two, defendant acted intentionally or
13  recklessly.  Recklessly has been previously defined for you.
14  The risk must be of such a nature and degree that disregard
15  thereof constitutes a gross deviation from the standard of
16  conduct that a reasonable person would observe in the
17  situation.  Intentionally has been previously defined for
18  you.  Physical injury means impairment of physical condition
19  or substantial pain.
20       If, after considering all the evidence, you find
21  that the State has established beyond a reasonable doubt
22  that the defendant acted in such a manner as to satisfy all
23  of the elements that I have just stated at or about the date

A172

State of Delaware vs. **HILLARD M. WINN**    Case Number: 06 03 002909

## Exhibit B

SBI Number: **00152383**    Also Known As:
Date of Birth/Age: **04/09/1965 (40)**    Sex: **Male**    Race: **Black**
Eye Color: **Brown**    Hair Color: **Gray**    Height: **5'10"**    Weight: **185 lbs**
Driver's License:    Social Security Number: **221603239**

Address: **718 N scott ST**    Next of Kin, Address, Employer
**Wilmington, DE 19805**    **ROSLIE MINUS**
Phone:    **710 RYSING DR**
    **EDGMOORE**
Employer:    **WILMINGTON, DE 19809**
    Phone: **3027619667**

**(302) 479-7500**
Date and Times of Offense: **Between 03/05/2006 at 0020 and 03/05/20060045**
Location of Offense: **106 AVALON BLDG - Bear, 19701**

Your affiant OFC. DEBORAH PROVENZA can truly state that:
1. Your affiant is a sworn police officer for the New Castle County Police Department and has been since November 1996. Your affiant is currently assigned to the Patrol Division.
2. On 030506, your affiant responded to 106 Avalon Building, Newark, De 19702, which is in the County of New Castle, State of Delaware for a Burglary in Progress.
3. Upon arrival, your affiant and several other officers were confronted with several subjects exiting the residence. The following subjects were identified as they were taken into custody, Hillard Winn (040965), Daekwon Rollins (050677), and Dominique Benson (101690). There were two females that were also detained as they exited the building Melissa Gordon (061680) and Alberta Grant (012760).
4. Your affiant responded to the location where Ruth Boccelli (012563) was located. Your affiant who responded back to the scene with Ms Boccelli for a show up. Ms Boccelli positively identified all the above subjects being in her residence. Ms Boccelli stated that Hillard Winn (T.C.) was the main problem. Ms Boccelli advised that Hillard Winn came banging on her front door and forced his way in. Ms Boccelli stated that Hillard Winn came into her rear bedroom armed with a crow bar. Ms Boccelli advised that Hillard Winn began swinging the crowbar at her, and eventually threw it at her causing a contusion and swelling to the left temple area.
5. Ms Boccelli stated that she observed a black semi-automatic handgun in his waistband. Ms Boccelli advised that Hillard Winn continued to assault her about the apartment while Daekown Rollins (Pooh) tried to get him to stop. Ms Boccelli stated that Hillard Winn stated he was going to kill her and put her in the ground. Ms Boccelli advised that she convinced Hillard Winn to let her go change and she responded to the rear bedroom window and jumped. Ms Boccelli stated that she jumped over the fence and fled to the church to call the police.
6. All the above subjects were detained and transported back to headquarters for interviews. Your affiant spoke with Melissa Gordon (061680) after miranda was waived. Ms Gordon stated that she was with (Pooh) Daekown Rollins and (T.C.) Hillard Winn in the vehicle and Hillard Winn stated that he needed to get his clothes. Ms Gordon advised that she was in the vehicle while Daekown Rollins and Hillard Winn responded up to the apartment. Ms Gordon stated that about 20 minutes passed and Daekown Rollins responded back to the vehicle with a crow bar and said Hillard Winn is beating up that lady you need to come back and help. Ms Gordon stated that she responds upstairs to the apartment and observes Hillard Winn assaulting Ruth Boccelli and she and Daekown attempt to stop him. Ms Gordon stated that Daekown Rollins responds into the apartment and pulls (T.C.) Hillard Winn off of the lady and they walk out back. Ms Gordon stated that she waited outside and Hillard Winn and Daekown Rollins respond back upstairs and the police arrive.
7. Your affiant with the assistance of Ofc. Godwin interviewed the other persons above. Ofc. Godwin interviews

Affiant
Sworn and subscribed to before me this 5th day of March AD 2006.

Judge/Commissioner/Court Official

A173

NEW CASTLE CIY POLICE     → JP11     ☎020

State of Delaware vs. **HILLARD M. WINN**            Case Number:  06 03 002909

Daekown Rollins after miranda was waived.  Daekown Rollins provides a similar incident to that of Ms Gordon.
Writer interviewed Alberta Grant after miranda was waived.  Ms Grant advised that she got involved after she
was contacted by Daekown Rollins and Dominique Benson that T.C. (Hillard Winn) was assaulting Ruth
Boccelli.  Ms Grant advised that she ran over to the residence to help when the police arrived.  Ofc. Godwin
spoke with Dominique Benson after miranda and parental permission.  Dominique could not provide much
information pertaining to this incident.

8. Your affiant interviewed Hillard Winn about the incident after he waived miranda.  Mr Winn stated that he
responded over to the residence to obtain his personal belongings because he left them there until he had a place
to stay.  Mr Winn advised that originally no one answered the front door and he got really mad.  Mr Winn stated
that he be gan banging on the front door and a tall black male opened the door.  Mr Winn advised that he walked
right into the residence looking for Ruth Boccelli to get his things.  Mr Winn stated that he never touched Ruth
Boccelli but he did throw things around the apartment.  Mr Winn denied any thing involving a weapon or
assaultive behavior.

9. Your affiant inquired through deljis and found that Hillard Winn pled guilty to Robbery 2nd on 010792 (CN
9506006838) making him a person prohibited.

Affiant: OFC. DEBORAH PROVENZA (2479) of New Castle County PD

| Victims: | Date of Birth | Relationship Victim to Defendant |
|---|---|---|
| RUTH ANN BOCELLI | 01/25/1963 | Relationship Undetermined |
| SOCIETY/PUBLIC | | Victimless Crime |

Ofc. N Provenza #2479

Affiant

Sworn to and subscribed to before me this 5th day of March AD, 2006.

Judge/Commissioner/Court Official

9

Provenza - Direct

1   position?
2   A. I was on patrol.
3   Q. Were you called to an incident that occurred
4   at 106 Avalon Building, Lexington Green Apartments?
5   A. Yes, I was.
6   Q. Did you have an occasion to speak with a
7   Ruth Boccelli?
8   A. Yes, I did.
9   Q. When you first came in contact with her,
10  where was she?
11  A. She was at the church around the corner from
12  her residence.
13  Q. At that point, what did you do in
14  relationship to ascertaining the facts of what her
15  complaint was?
16  A. I asked her what occurred that evening.
17  Q. Did you conduct that interview at the church
18  that was around the corner from her house or
19  someplace else?
20  A. I brought her back to the residence.
21  Q. Prior to taking a statement from her, did
22  you do anything in terms of a show-up lineup? If you
23  know what I mean by that.

10

Provenza - Direct

1   A. Yes, I did.
2   Q. And please explain to the jury what you did.
3   A. What happened was when we arrived initially
4   at the apartment we detained several subjects exiting
5   Ms. Boccelli's residence. Once we detained those
6   subjects, I responded over to Ms. Boccelli, who was
7   at the church, and I brought her back to the rear of
8   her building for a show-up of the subjects that we
9   detained.
10  Q. And she was able to identify the defendant
11  Hillard Winn?
12  A. Yes.
13  Q. As being involved in this incident?
14  A. Yes.
15  Q. When you interviewed her, where did you
16  interview her?
17  A. In her residence, in the living room.
18  Q. To the best of your knowledge, what was the
19  state of that apartment? Were there lights on in
20  that apartment?
21  A. No.
22  Q. Was there electricity, to the best of your
23  knowledge, in that apartment?

11

Provenza - Direct

1   A. To the best of my knowledge, no.
2   Q. Did you in any way record the statement that
3   you made with Ms. Boccelli?
4   A. Yes, I did. I had a micro cassette
5   recorder.
6   Q. Prior to coming into court yesterday and
7   today did you review the statement that Ms. Boccelli
8   made?
9   A. Yes.
10  Q. Can you please tell the jury what it was
11  that she told you occurred on earlier that evening
12  that brought you and her together?
13  A. She stated that she was in the rear bedroom
14  of her residence sleeping when she heard loud banging
15  at the front door. She stated that her friend,
16  Smoke, who was in the living room area sleeping
17  basically was saying who was it at the door. She
18  said that she woke up actually in the back bedroom
19  with T.C., which Mr. Winn was identified as, standing
20  over top of her with a crowbar.
21  Q. What else did she tell you happened?
22  A. She stated that he basically ripped her out
23  of bed, started tossing her around, swinging the

12

Provenza - Direct

1   crowbar at her, telling her that she was going to
2   die, bitch. He wanted to know where her stuff was --
3   or his actual words were, "Where is my shit, bitch?"
4   She tried to state that, to basically keep
5   him from assaulting her, that she gave it to Mom,
6   which is a female that lives in the complex.
7   She stated that at that point Mr. Winn left the
8   residence and within a few minutes later came back
9   and began to assault her again because he had found
10  out she threw the property away.
11  MS. WHITE: One minute, your Honor, if you
12  would.
13  Q. Did she tell you how it was that Mr. Winn's
14  property came to be at her house to begin with?
15  A. Yes. She stated that she had just met him
16  through a mutual friend a little while prior. She
17  said that he didn't have a place to stay, so she
18  allowed him to keep his property at her residence.
19  And she hadn't heard from him in approximately ten
20  days, and she was getting evicted, so she needed to
21  get rid of it, so she threw it away.
22  MS. WHITE: Again, one minute, your Honor,
23  if I could. (Pause.)   A175

105

Provenza - Cross

1  incident. For further details refer to audio
2  cassette."
3          You have this documented as 1:52 in the
4  morning?
5      A. That was the time of her interview, her full
6  interview.
7      Q. That's the time of her interview.
8          On your sheet, your log sheet, you have us
9  being -- what time did you do the line-up, show-up
10 identification done?
11     A. For the show-up it was at zero 105 hours.
12     Q. That's 1:05. You sent us back to police
13 station at what?
14     A. I'm sorry, what?
15     Q. What time.
16     A. What time did we take you back?
17     Q. Yeah. What time did we get escorted back to
18 the police station?
19     A. It looks like people started to be
20 transported at zero 113 hours.
21     Q. Now, you was identifying five people one at
22 a time, right?
23     A. Correct.

106

Provenza - Cross

1      Q. Now, you said you went and picked Ruth up,
2  you did, went and picked Ruth up from the church.
3  You got her back at 1:05. So how did you take those
4  pictures of Ruth at one o'clock?
5      A. It's an estimated time when the pictures are
6  taken in the report.
7      Q. Well --
8      A. It's not the exact time. Because my watch
9  might say something different than yours, so it's
10 always an estimated time of when evidence is
11 collected.
12     Q. Well, considering your testimony, your
13 estimated time is like an hour off, right?
14     A. No. I said that the pictures were taken at
15 zero 100 hours.
16     Q. Okay. What time -- you took the pictures
17 during her interview, correct?
18     A. Yes.
19     Q. Her interview started at 1:52?          Attct
20     A. Correct. It's an estimated time.
21     Q. Is there any facts that you document in your
22 report that's reliable that I can look at and say
23 they're not going to change, those facts aren't going

107

Provenza - Cross

1  to change?
2          MS. WHITE: Your Honor, I consider that an
3  argumentative question.
4          THE COURT: Overruled. It is
5  cross-examination. You may ask the question.
6          THE WITNESS: I mean, do you want me to go
7  through the entire report?
8  BY MR. WINN:
9      Q. Well, see, here's the thing: You stated in
10 your affidavit of probable -- what is an affidavit of
11 probable cause?
12     A. It's probable cause for a warrant.
13     Q. Okay. And it's a sworn statement, right?
14     A. Correct.
15     Q. And you're swearing that it's, all the
16 information you're putting in here is true?
17     A. True and correct to the best of my knowledge
18 is the way it's sworn to.
19     Q. And you put in here that "Ms. Boccelli
20 advised that Hillard Winn began swinging the crowbar
21 at her and eventually threw it at her causing a
22 contusion and swelling to the left temple area."
23          Ain't that what you put in there?

108

Provenza - Cross

1      A. Like I said yesterday, yes.
2      Q. That's not true, though, right?
3      A. It was part of the investigation. To the
4  best of my knowledge the injuries that she sustained
5  to her face was from when the crowbar was thrown.
6      Q. Did she tell you that?
7      A. I can't recall her exact statements, I
8  haven't listened to the audiotape.
9      Q. Well, why don't we just listen to her
10 audiotape.
11         MR. WINN: Can we listen to the audiotape
12 that she gave to her?
13         THE WITNESS: It's in evidence right there
14 on the table.
15         MR. WINN: Can we hear it?
16         THE COURT: Do you wish to play a portion of
17 the tape?
18         MR. WINN: I want it admitted into evidence.
19         THE WITNESS: Your Honor, just so you're
20 aware, it's a micro cassette, which I don't know if
21 we have one.
22         MS. WHITE: I have made the micro cassette
23 into a regular cassette.          A176

109

Provenza - Cross

1  THE COURT: How long is the tape?
2  THE WITNESS: It's, I would estimate
3  approximately 15 minutes, if that.
4  THE COURT: May I, let me meet with Mr. Winn
5  and Ms. White at sidebar with the court reporter.
6  (The following took place at sidebar:)
7  THE COURT: So this is a micro cassette tape
8  of approximately 15 minutes in length?
9  MS. WHITE: Seems about right.
10  THE COURT: Any objection from the State to
11  it being played?
12  MS. WHITE: No.
13  THE COURT: Mr. Winn, if it's your wish to
14  play the entirety of the tape, I'll do that. Is that
15  your wish?
16  MR. WINN: Well, yes. Yes, I want to, yes,
17  I want the whole tape played.
18  THE COURT: All right. Then, we'll play
19  that tape.
20  (Sidebar concluded.)
21  MS. WHITE: Without objection, the State --
22  is this going to be the State's next exhibit?
23  THE COURT: Well, it's really a defense

110

Provenza - Cross

1  exhibit because it's being introduced by the
2  defendant, although it's the State's object.
3  THE CLERK: Defendant's Exhibit No. 5.
4  (Portion of Ms. Boccelli audiotape statement
5  played, 2:33 to 2:38 p.m.)
6  MR. WINN: Can we stop that for one second?
7  Did you hear that?
8  BY MR. WINN:
9  Q. She said he threw it at me and it missed me?
10  A. She said it hit her.
11  MR. WINN: Can you just, it's a couple
12  seconds back, can you just play that back?
13  (Portion of Ruth Boccelli audiotape played.)
14  MR. WINN: Stop it.
15  BY MR. WINN:
16  Q. Now, what part of that "miss" did you
17  interpret it as hit?
18  A. That sounded like "hit" to me from here.
19  Q. Cha, cha, cha, cha.
20  A. But that's not the completion of her
21  statement, either.
22  MR. WINN: Well, can you please finish it?
23  THE COURT: Continue playing the tape,

111

Provenza - Cross

1  please.
2  (Ruth Boccelli audiotape played.)
3  BY MR. WINN:
4  Q. Well, did you hear it? Can you tell us
5  where it's at? You heard the whole tape like us.
6  A. Like I stated, it sounded like hit to me.
7  And I wouldn't have put it in a warrant that I'd
8  sworn to if it wasn't incorrect.
9  Q. But you just did. I mean, that's the
10  statement that's in the warrant. Can you show me in
11  the statement, where it's in the statement?
12  A. There's other statements that weren't
13  recorded, as well. I mean, not, the entire
14  statement, while she was going back to the scene with
15  me she was talking to me the whole time.
16  Q. So, again, is there any facts that you have
17  that don't change when you need them to change?
18  A. I haven't changed my statements at all.
19  Q. Well, you said, you testified, right, that
20  the things you're putting in your report are a tape.
21  synapsis of the things you took from the tape. But
22  now that you look and listen to the tape, and it's
23  not in the tape, you're saying it's coming from

112

Provenza - Cross

1  other --
2  A. It stated -- she stated that you threw it
3  and it hit her, is what I understood that to say.
4  Q. I don't understand that, though. I mean,
5  unless --
6  THE COURT: You can't make statements, you
7  can only ask questions.
8  MR. WINN: Okay, whatever. All right.
9  THE COURT: Any further questions of this
10  witness?
11  MR. WINN: Yeah.
12  BY MR. WINN:
13  Q. You made out an affidavit in another sworn
14  affidavit charging me with the offense of
15  intimidating a witness. And it was entered into
16  evidence here a letter, an envelope that I was
17  supposed to have sent to Ms. Boccelli. Would you
18  mind reading -- I'll give it to you.
19  MR. WINN: Can I give this to her, or have
20  someone give it to her?
21  THE COURT: Yes.
22  MS. WHITE: Can I see what it is, please?
23  MR. WINN: Yes (indicating).

A177

## Provenza - Cross

1    A.  Like I said, this is a brief synapsis. What
2   she said was that she heard the pounding --
3    Q.  Well --
4        THE COURT:  Mr. Winn, you have to let the
5   witness finish your question before you ask another
6   one.
7    A.  She heard the pounding on the door, Smoke
8   said whoever's pounding on your door is going to
9   break it down. She said then she woke up with you --
10   someone might not -- might hear something, but
11   they're waking up out of bed and looking up and
12   you're standing in front of her with a crowbar.
13    Q.  But she can have a conversation with a
14   person about somebody banging on her door, she can
15   hear somebody banging on her door, and she can talk
16   to somebody about it, but she's not really woke, and
17   through that time he opens the door, a person comes
18   in her room, she don't know they're in her room, she
19   wakes up from a punch in the face.
20        Does that sound realistic to you?
21    A.  That was her statement.
22    Q.  And you're the investigator.
23        Okay. All right. She said that she was in

## Provenza - Cross

1   her pajamas and she urinated on herself, right?
2    A.  Correct.
3    Q.  She went to change her clothes. So when she
4   left, when you picked her up she had pants on. And
5   in this statement she only told you she urinated
6   once, right?
7    A.  She stated that -- she didn't say once or
8   twice, she said she urinated on herself.
9    Q.  Well, she only gave you one example in here.
10   So could it mean five times, or could it mean one
11   time or three times?
12    A.  I don't know. It was her statement. She
13   said that she was scared, that she urinated on
14   herself.
15    Q.  You was taking this statement, what did you
16   consider it as?
17    A.  I took it that she was scared and she
18   urinated on herself. I didn't ask how many times.
19        MR. WINN:  Your Honor, can I let the jury
20   see these pictures?
21        THE COURT:  Yes. Have they all been
22   introduced into evidence? I understand the State has
23   no objection, I understand?

## Provenza - Cross

1        MS. WHITE:  That's correct, your Honor.
2        THE COURT:  So they'll be introduced as
3   Defendant's Exhibits 1, 2 and 3. They may then be
4   shown to the jury. And let's have two in the first
5   row, one in the second row. And, again, when the
6   jury looks at them, they're not allowed to discuss
7   them, just observe them in silence, and one or more
8   jurors can look at the picture at the same time.
9   BY MR. WINN:
10    Q.  Um...
11        THE COURT:  Excuse me. What we need to do
12   now, since you've asked they go to the jury, is get
13   them marked, give them to the jury, and we'll have to
14   hold off any questioning until the jury's finished
15   seeing the photographs.
16        THE COURT:  Publishing the photos,
17   your Honor.
18        (Jury views photographs.)
19        THE COURT:  The jury has completed its view
20   of the pictures, so you may continue with any further
21   cross-examination questions.
22   BY MR. WINN:
23    Q.  All right. In your, in your statement here

## Provenza - Cross

1   she says that I woke her up standing over top of her
2   with a crowbar swinging it at her and asking her
3   where is my shit, right?
4    A.  Yes.
5    Q.  But in her testimony yesterday she said I
6   woke her up by punching her in the face. And here
7   you don't say anything about waking her up, punching
8   her in her face. Is that because it's only a brief
9   synapsis of what the statement was?
10    A.  I haven't listened to the micro cassette
11   recently, so I can't say 100 percent.
12    Q.  Well, if she told you I woke her up by
13   punching her in her face, don't you think that would
14   have been important enough to put in here?
15    A.  Like I stated several times, it's a brief
16   synapsis of the incident.
17    Q.  In your affidavit of probable cause for
18   arrest, I believe you stated that I hit her in the
19   head, I hit her in the temple area with a crowbar,
20   right?
21    A.  If that's what it states. I don't have
22   that.
23    Q.  Evidently that's what she says she said to

A 178

37

Provenza - Cross

1  you, right, that I hit her in her temple area?
2  A. I never said that's what she stated.
3  Q. Well, you wrote here --
4      MR. WINN: And can I let her see this?
5      THE COURT: Yes. The bailiff can hand the
6  document to the witness.
7      (Bailiff hands picture to witness.)
8  BY MR. WINN:
9  Q. If you don't mind, you can read the whole
10 thing, I don't mind.
11 A. Well, I need to answer your question first.
12     THE COURT: What is your question?
13     MR. WINN: Go ahead.
14     THE WITNESS: You stated that, you wanted to
15 know if it was where she, it struck her was in the
16 temple area, correct?
17 BY MR. WINN:
18 Q. Yeah. That's what you put in there.
19 A. Yes, I did state that you eventually threw
20 it and caused a contusion and swelling to the left
21 temple area.
22 Q. Okay. So evidently she told you that I hit
23 her with the crowbar in her temple area, right?

38

Provenza - Cross

1  A. No. That's not --
2  Q. I threw it and it hit her in her temple
3  area, she told you that?
4  A. She didn't say where it hit her, like I
5  stated earlier.
6  Q. Then why did you put it in there if she
7  didn't say it?
8  A. Because that was the major injury that she
9  sustained that night, that I could observe, so that's
10 why I put it in there.
11 Q. So you can just automatically make it up and
12 say, well, it hit her in the temple area?
13 A. It's not made up, sir.
14 Q. Well, if she didn't actually tell you it hit
15 her in the temple area, you're actually saying on
16 paper that it hit her in the temple, what is it?
17 A. If you recall, I stated earlier that she
18 wasn't sure that if it hit her in the head area or
19 the hip area because she was crawled up in a ball.
20 Q. That's what you said in this report --
21 A. That's the report --                    A#47
22 Q. An affidavit for my arrest, that's the
23 affidavit you used to arrest me on --

39

Provenza - Cross

1  A. It's because she sustained an injury --
2      THE COURT: Let Mr. Winn finish his
3  question.
4      THE WITNESS: I'm sorry.
5  BY MR. WINN:
6  Q. You're submitting that to a judge as
7  reasonable cause to arrest me. So that's supposed to
8  be factual evidence that you're putting forth to a
9  judge to make a decision to arrest me, and you're
10 telling him factually that she told you, or that it
11 was thrown and hit her in the head and she suffered a
12 wound from that thing hitting her in the head, that's
13 what you're saying factually?
14 A. I came to the conclusion through the
15 investigation that since she couldn't determine if it
16 hit her in the head or the hip, that the throwing of
17 the crowbar did at least, from the injury that I saw
18 on her temple area, was sustained by the crowbar
19 striking her in the head.
20 Q. Okay. But she also told you that she was
21 punched in the face. So what made you decide that
22 the injury came from the crowbar rather than a fist?
23 A. I never testified that she told me that.

40

Provenza - Cross

1  That was from her statements yesterday.
2  Q. Well, she told you, she testified yesterday
3  that she was hit in the face. And you're saying that
4  she never told you throughout any of your interviews
5  with her that she was hit in the face?
6  A. Like I stated, I can't say 100 percent
7  because I have not listened to her statements on the
8  micro cassette. What's in my report is a brief
9  synapsis of the incident.
10     MR. WINN: Okay. Let me get that back.
11     THE BAILIFF: (Indicating.)
12     MR. WINN: Thank you.
13 Q. There was no lights, and the crowbar, she
14 says, is black. How could she determine a color if
15 you can't -- could you see in the apartment?
16 A. I could see, yes.
17 Q. Did you take pictures of the apartment?
18 A. No, I did not.
19 Q. It's a crime scene. You said that I threw
20 things all over the place. And from your scenario,
21 it should have been pretty bad, you didn't think       A179
22 there was evidence to take pictures of?
23 A. We're not required to take pictures of a

41

1   We know this occurred at about midnight, or 40 minutes after
2   midnight, clearly after sunset and before sunrise. So, we
3   know that this is a dwelling. We know beyond a reasonable
4   doubt that it happened at night.
5           And the charge goes on to say, "And while in the
6   dwelling or in flight thereof, he did cause physical injury
7   to Ruth Ann Bocelli." We know she was injured. The only
8   question that you may have left to answer for yourselves is,
9   did the defendant knowingly enter or remain unlawfully?
10          Now, defendant is going to argue to you, ladies
11  and gentlemen, that Smoke let him in. He knocked on the
12  door, he knocked on the door, and Smoke let him in.
13  Therefore, he is going to argue to you, ladies and
14  gentlemen, that he was there lawfully. His belongings were
15  there, she had let him in the past, he was let in, he had
16  the right to be there. But the logic fails, ladies and
17  gentlemen, the State submits. The logic fails for several
18  reasons:
19          The first is, Ruth had told him, and he admits in
20  his statement, she had told him to get out, "Get your stuff
21  and get out." Chances are, to begin with, he was not
22  welcome there. But that's not it. The code, the charge
23  states that he did either knowingly enter unlawfully or he

42

1   did remain unlawfully. That's what the wording of the code
2   says. And the State subjects -- suggests and submits to
3   you, he remained unlawfully.
4           What does that mean? What does that mean? Think
5   about it. He might have entered lawfully because Smoke let
6   him in. But the minute he made the intent in his mind to
7   assault Ruth in that dwelling, he is not remaining lawfully
8   anymore because, once you form the intent to commit a crime,
9   you can't be in that place lawfully. You're not in a place,
10  committing a crime, lawfully. It's impossible. So, once he
11  started to assault her, even if he had been let in lawfully
12  to begin with, he was no longer in there lawfully when he
13  began his assault on Ruth.
14          So, he remained unlawfully and, while he remained
15  unlawfully in a dwelling at night, he did cause physical
16  injury to Ruth. And he had, when he remained unlawfully, he
17  formed the intent to assault her, to commit a crime.
18  Whether he intended to hit her with a crowbar, assault in
19  the second degree, or whether he intended to just kick her
20  and hit her and punch her, assault in the third degree,
21  while in the building in a dwelling at night, he remained
22  unlawfully and he formed the intent to commit the crime of
23  assault and she was injured. It's burglary in the first

43

1   degree.
2           So, the State submits you will find beyond a
3   reasonable doubt the State has proven burglary in the first
4   degree. I've already gone through assault in the second
5   degree. And I started with possession of a deadly weapon
6   during commission of a felony. And now that I've explained
7   burglary, he can be found guilty of possessing a deadly
8   weapon, the crowbar, whether you find during the commission
9   of a felony. Assault in the second degree is a felony.
10  Therefore, he could be found guilty of this charge based
11  upon assault, or he could be found guilty of this charge
12  based upon the fact that he burglarized somebody. Burglary
13  has a different meaning than we all think, where you go in
14  and steal. It can also be this kind of burglary, as I just
15  said. Anyway, it could be he had the crowbar while he was
16  committing the felony of burglary. Either way, whatever is
17  the State's pleasure -- your pleasure, and the State submits
18  that we have proven both, or either.
19          And, lastly, there is the charge of terroristic
20  threatening. I have a feeling that the defendant isn't even
21  going to deny that he did this. It said, "He did threaten
22  to commit a crime likely to result in death or injury to
23  Ruth Bocelli." She said he said, "I'm going to kill you

44

1   tonight, Bitch. Clear the trunk. We're going to kill this
2   bitch tonight." He threatened to kill her. State submits
3   you should find him guilty beyond a reasonable doubt of that
4   charge, as well.
5           Now, lastly, defendant is going to argue to you,
6   ladies and gentlemen, that this victim is not to be believed
7   at all -- that she's not a very honest person, that she's
8   not a very trustworthy person, she has criminal convictions,
9   she told you she was using illegal electric service, she's a
10  drug user, she's a crack head.
11          She's been clean for six months, ladies and
12  gentlemen. When she came here and put her hand on the
13  Bible, she's not a crack head -- not today. Look at her
14  demeanor on the stand. First of all, look at her demeanor
15  to the 911 call taker. She was hysterical. She was
16  frantic. Her demeanor to Debbie Provenza -- hysterical,
17  upset -- to the SANE nurse three days later. And most
18  importantly, most importantly, the State submits, on the
19  stand, when she testified during the two days that she
20  testified, ask yourselves -- you are the judge of the
21  demeanor of every witness on the stand -- what did she say?
22  She looked right at TC and said, "TC, you know you did
23  this." She said it more than once. "You hit me and beat me

A180



# STATE OF DELAWARE
### DEPARTMENT OF JUSTICE

## CARL C. DANBERG
**Attorney General**

| NEW CASTLE COUNTY | KENT COUNTY | SUSSEX COUNTY |
|---|---|---|
| Carvel State Building | 102 West Water Street | 114 E. Market Street |
| 820 N. French Street | Dover, DE 19904 | Georgetown, DE 19947 |
| Wilmington, DE 19801 | Criminal Division (302) 739-4211 | (302) 856-5352 |
| Criminal Division (302) 577-8500 | Fax: (302) 739-6727 | Fax: (302) 856-5369 |
| Fax: (302) 577-2496 | Civil Division (302) 739-7641 | TTY: (302) 856-2500 |
| Civil Division (302) 577-8400 | Fax: (302) 739-7652 | |
| Fax: (302) 577-6630 | TTY: (302) 739-1545 | |
| TTY: (302) 577-5783 | | |

**PLEASE REPLY TO:**

New Castle County - Criminal Division

November 20, 2006

The Honorable Richard R. Cooch,
Resident Judge
500 North King Street, Suite 10400
Wilmington, Delaware 19801-3733

> **RE:  State of Delaware v. Hillard M. Winn**
> **I.D. #0603002909**

Dear Judge Cooch:

This is the State's response to Hillard M. Winn's (hereafter, "Defendant") Motion for Acquttal/Mistrial filed with the Prothonotary on September 20, 2006.

1.  Prosecutorial Misconduct

Defendant asserts that the State disregarded Your Honor's admonition regarding defining and explaining the elements of the offense charged[1], and that my method of summation deprived Defendant of a fair and impartial trial. In particular, Defendant claims that counsel's assertion in summation, ". . . if they (the jury) found that defendant had committed the crime of assault on the premises. . . it is totally impossible, unthinkable and beyond imagination of how you can find that the defendant was on the property lawfully." Defendant summarizes the State's argument by stating, "[c]laiming that the very act of criminality makes defendants presence unlawful." This summary of State's argument <u>does</u>, in fact, correctly set forth the State's position, as well as the case law precedent which is analogous to the instant case. In <u>Pauls v. State</u>, Del. Supr., 476 A.2d 157 (1984), defendant was charged with and convicted of the charge of burglary second degree, involving an incident that occurred at a convenience store. There, defendant Pauls argued that he could not be convicted of a burglary because the store was open to

---

1 The State has not had the benefit of a trial transcript to review prior to drafting this response; so, all factual assertions are made from trial counsel's memory.

A-181

the public at the time of the incident. In that case, defendant entered the store with a weapon. The victim refused to turn over cash and told defendant to leave. The victim left the store, with defendant following and then she re-entered the store with defendant following. It was at this point that the victim turned over cash to the defendant. The Supreme Court concluded that defendant Pauls was not in the store lawfully when he re-entered after having been told to leave by the victim.

By analogy, the jury could conclude that the facts of this case indicate that initially Defendant was let into the victim's apartment by a man named "Smoke". At that point, Defendant was arguably on the premises lawfully. The testimony by the victim indicated that she was hit, grabbed and thrown to the floor by Defendant. It was at that point, in order to get Defendant to leave the apartment, that the victim indicated his belongings were at "Mom's" house. Defendant, in his statement to the New Castle County Police, admitted that he left his friend, Duane Rollins "Pooh", there to watch the victim. When he returned, it was "Pooh" who opened the door to Defendant. By analogy to the Pauls case, Defendant, who was originally invited into the victim's apartment, could no longer be considered to be there "lawfully" when he re-entered the apartment IF the jury concluded beyond a reasonable doubt that prior to leaving the apartment to look for his belongings at Mom's house, he had assaulted the victim. The State's argument to the jury stated that proposition clearly: if the jury concluded that Defendant assaulted the victim before he left the apartment and before he re-entered the apartment, then there is no conceivable way, based-upon the evidence before the jury, that Defendant re-entered the property lawfully.

The State asserts, therefore, that counsel's arguments were proper and that Defendant was not deprived of a fair trial.

2. Plain Error or Abuse of Discretion

Here, Defendant asserts that the trial Court erred by allowing the charge of Assault Second to go to the jury. Defendant asserts that the victim's statement to the police the evening of the incident exonerates him of this charge. Defendant asserts that the victim in this taped statement clearly states that the Defendant did not hit her with a crowbar. However, victim's trial testimony was to the contrary. The victim indicated that she was hit in the shoulder area with the crowbar. The State introduced photographs of the shoulder injury that the Forensic Nurse Evaluator, Deborah Resurrection, indicated evidenced a "pattern injury." The victim also stated that Defendant threw the crowbar at her, but she wasn't sure where it hit her.

Defendant is correct that the victim appeared to give contradictory testimony regarding whether or not she had been hit by the crowbar, and, if she had been hit, where on her body that occurred. In instances such as this, where the complaining witness gives contradictory accounts of the event, the Supreme Court has concluded that the jury is in the best position to evaluate the credibility of the witness. State v. Smith, Del. Super., 1993 WL 1617680. It is the law of Delaware that the jury is the sole judge of the credibility of witnesses and is responsible for resolving conflicts in the testimony. See Tyre v. State, Del. Supr., 412 A.2d 326, 330 (1980); Sheeran v. State, Del. Supr., 526 A.2d 886, 892 (1987); Williams v. State, Del. Supr., 539 A.2d 164, 168 (1988).



A182

The Court is bound to allow the charge to go to the jury for determination if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Williams v. State, supra at 168. The Court did so properly in this case, and the jury found Defendant guilty of the lesser-included offense of Assault Third Degree; thereby concluding that Defendant did not injure the victim with a crowbar. In any case, given the verdict, Defendant cannot demonstrate any prejudice resulting from the jury's consideration of the Assault Second charge.

   3.  Plain Error or Abuse of Discretion

Here Defendant asserts that the Court should not have instructed the jury on the lesser-included offense of Assault Third Degree. Defendant's argument is that the charge is not "truly" a lesser included offense. Defendant's contention is that it is not lesser because if the jury found him guilty (as it did) of the Assault Third, then, he is vulnerable to liability for the more serious offense of Burglary First Degree (of which he was found guilty).

Title 11, Section 206(b)(1) defines an offense as "lesser included" when: [i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged. Title 11, Section 206(c) states that the court is not obliged to charge the jury with respect to an included offense unless there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting the defendant of the included offense.

Here, Your Honor concluded that there was a rational basis in the evidence to conclude that Defendant did not injure the victim using a deadly weapon (the crowbar), but that the injuries she sustained were caused by Defendant without the use of a weapon, other than his hands and/or feet. The jury, therefore, was correctly instructed regarding the crimes of Assault Second Degree (physical injury caused by a deadly weapon) and Assault Third Degree (physical injury). The jury found Defendant guilty of Assault Third Degree. See State v. Cox, 851 A.2d 1269, 1274-75 (Del. 2003) ("The defendant is not entitled to 'force an all or nothing verdict' by objecting to instructions on the lesser included offense if the evidence warrants it.") (citations omitted).

The true gravamen of Defendant's issue is not that the jury was instructed on the lesser-included charge of Assault Third Degree, but that he was convicted of the Burglary First Degree (the jury having concluded that when he re-entered the apartment, he intended to cause physical injury to the victim and he did so cause such physical injury). Defendant had wrongly assumed that if he were acquitted of Assault Second Degree (the jury concluding that he did not injure the victim with a crowbar), then he could not be convicted of the Burglary First and the concomitant Possession of a Deadly Weapon During the Commission of a Felony.

Defendant sees this situation as prejudicial in that it "broadened" his chances of being found guilty. Merely because Defendant failed to foresee this possibility, does not make it legally infirm or prejudicial. Defendant claims he was not given notice to prepare a defense to Assault Third. Title 11, Section 206, involving lesser-included offenses, is sufficient notice to Defendant. The State asserts that the Court's decision to give the jury instruction to the lesser-included Assault Third is legally sound.

A168                (  )    A183

For the foregoing reasons, the State respectfully requests this Honorable Court to <u>DENY</u> Defendant's request to set aside, vacate, acquit or declare a mistrial in the above-captioned case.

Respectfully submitted,

Marsha J. White
Deputy Attorney General

MJW/edd
Enclosure
Cc:    Hillard Winn



A184

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR NEW CASTLE COUNTY

|  |  |
|---|---|
| **IN THE MATTER OF** | ) <br> ) <br> ) **CIVIL ACTION NO. 08M-03-018 RRC** <br> ) **CRIMINAL ID:  0603002909** <br> ) |
| **Hillard Winn** | ) <br> ) <br> ) <br> ) <br> ) **HABEAS CORPUS PETITION** |

## ORDER

This ___10ᵀ___ day of ___March_____, **2008**, upon review of

the foregoing Petition for a Writ of Habeas Corpus and the record in this case, it is the

decision of the Court that the Petition is hereby **DENIED.** Petitioner is legally detained.

Petitioner fails to state a claim upon which such a writ may be issued. The relief

requested is not properly granted through a Writ of Habeas Corpus.


**IT IS SO ORDERED**


_____

The Honorable Richard R. Cooch


Orig:  Prothonotary
cc:    Defendant
       Department of Justice


(A185)