United States District Court
District of Delaware



Hillard M. Winn
Defendant, Petitioner Below                    |    No. 22, 2007
                                               |    Case No. 0603002909
                                               |
V.                                             |
Warden Terry Phelps                            |        CA 08-422
Respondant                                     |


Motion For release Pending Habeas Corpus Review

Comes Now, Petitioner Hillard M. Winn, Pro Se,
Pursuant to the Bail Reform Act of 18 U.S.C. §§ ss 3141-3150
(2000) Moving this honorable Court to grant the Petitioner
Release upon personal Recognizance or unsecure Appearance
bond pending Habeas Corpus review.

In support of this Motion Petitioner Submits the
following:
1) The Petitioner is a life long Resident of the state of
   Delaware. Born and raised.
2) The Petitioner Raises issues of Fact and law that require
   dismissal of indictment and / or reversal of Conviction
   and sentence with no further prosecutorial Consideration.
   to the issues of Fact and law raised the Petitioner can
   t be found to be a flight risk or a danger to society.

4) The Petitioner's actual innocence require that the Court grant release in this instance where the facts establish that an appropriate complaint was never alleged against the Petitioner for offenses charged.

On March 5, 2006 New Castle County Police officer Deborah Provenza, filed an arrest warrant affidavit to have the Petitioner charged with Burglary 1st, Assault 2nd, possession of a deadly weapon during the commission of a felony and, Terroristic Threatening. In that affidavit ofc. Provenza Swore that Ms. Ruth Ann Boccelli told the officer that Mr. Winn (the Petitioner) "forced his way in" her residence. (see A4, paragraph 4, Lines 4) that Mr. Winn threw a crowbar at her causing contusion and swelling to her left temple area. (see A4, paragraph 4, Lines 5-6) and that the assault was witnessed by Melissa Gordon and DaeKown Rollins whom both provided tape statements. (see A4-A5, paragraph 6-7)

However, the facts establish that ofc. Provenza either intentionally or recklessly submitted these false statements in the arrest warrant affidavit. Because each of the alleged statement were recorded on tape and could have been verified there submition had to have been at least reckless. The recordings also establish the statements falsehood. Ms. Boccelli's statement establish that Ms. Boccelli never told ofc. Provenza that Mr. Winn, "forced his way in" his residence but rather that Ms. Boccelli told ofc. Provenza that her friend "Smoke" Let Mr. Winn in. (see Defense Exhibit No. 5) which was also the state's

position at trial (A18, pg. 42, Lns. 4-13) Ms. Boccelli's recorded statement also established the fact that Ms. Boccelli never told Ofc. Provenza that Mr. Winn hit her with a crowbar "causing a contusion and swelling to the left temple area." But in fact had told Ofc. Provenza, "No, he threw it at me but it missed." (See A8, pg 107, Lns. 9 — A9, pg 112, Lns 3.) Ofc. Provenza also testified that Ms. Boccelli did not tell the officer this allegation and that it was a conclusion derived by the officer. (See A6, pg. 36, Lns. 17 — pg 39, Lns 19)

The facts further establish that Mr. Rollins never told Ofc. Provenza or anyone else that he witnessed a assault on Ms. Boccelli (A10, pg 46, Lns 18 - 23) (See also Mr. Rollins recorded statement state's exhibit No 22.)

Although not played at trial Melissa Gordon's recorded statement establish that Ms. Gordon repeatedly told Ofc. Provenza that she did not witness anything that by the time of her arrival what-ever had transpired was over. Ofc. Provenza is than recorded threatening Ms. Gordon to the effect that, "You have a choice, you can be charged up in this thing with Mr. Winn or you can be a witness against Mr. Winn, what do you want to do." (See Ms. Gordon's recorded statement in Court Vault)

The factual content of the warrant affidavit establish that the false statements were material to the finding of probable cause to the extent that the false allegation that Mr. Winn, "forced in way in" the residence was the lone statement that established the unlawful entry element necessary to the offense of burglary and that the false allegation that Ms. Boccelli told

Officer Provenza that Mr. Winn, threw a crowbar at her "causing a contusion and swelling to her left temple area." was the lone statement supporting a finding of Probable Cause to charge the petitioner with assault 2nd. Without these two statements the remaining content of the affidavit is insufficient to charge either burglary or assault 2nd and therefore Probable Cause.

By a preponderance of these facts the law as set forth in the fourth Amendment to the United States Constitution and bound on the state through the Fourteenth Amendment to the United States Constitution, has been violated. Under such factual circumstances the law requires that the warrant be voided and its fruits suppressed to the same extent as if Probable Cause was lacking on its face. (See Franks v. Delaware, Del. Supr., 438 U.S. 154, 98 S.Ct. 2674.) For complete argument raised in Petition see ground Three of Memorandum.

5) The Court should grant the Petitioner's request for release based on the fact that a trial jury established the Petitioner's innocence beyond a reasonable doubt of the offenses as charged by the grand jurys indictment and because Convictions challenged require reversal due to lack of adequate notice and opportunity to prepare a defense to offense as alleged by Constructive amendment which are per se error and must be corrected by reviewing Court.

The facts and law are that the Grand Jury charged the Petitioner in Count one of the indictment with

burglary in the first degree. Alleging intering or remaining unlawfully with the intent to commit the specific offense of assault second degree. In Count two of the indictment the grand jury charged the Petitioner with assault second degree. Specifically, physical injury by means of a deadly weapon or dangerous instrument, a Crowbar. (See A11-A12) The Court instructed the jury that they could find the Petitioner guilty of burglary first degree if they found that the Petitioner entered or remained unlawfully with the intent to commit the Crime of assault second or the lesser included offense of assault third degree - Misdemeanor. (See A14, pg. 64, Lns. 9-16) On Count two of the indictment the Court instructed the jury that they could find the Petitioner guilty of the lesser included offense of assault third degree if they found the petitioner (1) intentionally or recklessly Caused physical injury to ruth ann Boccelli. (See A15, pg. 68, Lns 7-13) However, the state instructed the jury that they could take the Crowbar out of the equation and find that physical injury was caused by hands and feet. (See A17, pg 39, Lns. 6-12) The Court's instruction fails to state all the elements necessary to state an offense of assault third degree and removes a material element from the indictment and thus charges an offense sufficiently different than that charged by the grand jury. The state's instruction served to charge new allegations which the grand jury never gave the Petition Notice to prepare a defense too. ▪

In such circumstances the law is clear, the guaranteed rights of the united states Constitutional amendment,

the Fourteenth Amendment require reversal.
The fact that the jury found the Petitioner not guilty of
Assault Second degree Means that convictions depends on
the Constructive Amendments of the indictment and once
Corrected a New trial will not be required as the jury
has adjudicated the Petitioner innocent of a Material
element necessary to and fatal to counts one through
three of the indictment. For Complete ground raised See
grounds one and two of Memorandum in support of Petition.

6) The Petitioner is willing to Comply with any and all
    Conditions the Court May set upon such release.

7) For the reasons as established by the laws and facts set forth
    Above make it unreasonable to conclude that the Petitioner
    poses a threat to society or poses a flight risk where
    in all likelihood anyone would make themselves available
    to receive a judgement that must end the prosecution of
    such felony matters in their favor forever.

8) The Court should grant the Petitioner's request for release
    to bond because the facts and law establish that Petitioner
    has suffered under the oppressive weight of this
    Manifest injustice for too long and it would be unreasonable
    for the Court to allow this injustice to Continue.


The Petitioner further moves this Court for a hearing on this
Matter before the Court Conclude this Matter against the
Petitioner wishes.

THE PETITIONER SO MOVES.

7 / 7 / 2008

Mr. Hillard M. Winn, PRO SE
SBI. 152383   SHU 19
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

NEW CASTLE CTY POLICE    JP14

Adult Complaint and Warrant
## In the Justice of the Peace Court
In and for the
### State of Delaware

State of Delaware vs. **HILLARD M. WINN**

I, OFC. DEBORAH PROVENZA (2479) of New Castle County PD, do hereby state under oath or affirmation, to the best of my knowledge, information and belief that the above-named accused violated the laws of the State of Delaware by committing criminal acts in New Castle county on or about the date, or dates, and at or about the location, or locations, as indicated in Exhibit A hereto attached and made a part hereof.

Wherefore, your affiant prays that the above-named accused may be forthwith approached and held to answer this complaint consisting of 6 charges, and to be further dealt with as the law directs.

_____
Affiant

Sworn to and subscribed to before me this 5th day of M_____ 06.

_____
Judge/Comm_____

To be completed by the Judge/Commissioner/Co_____

A. _____ The crime was committed by a_____
B. _____ A misdemeanor was committed against a child.
C. _____ A misdemeanor was committed by one family member against another family member.
D. _____ Other: Explain _____

### Warrant

To any constable or other authorized person:

Whereas, the foregoing complaint consisting of 6 charges, having been made, as listed in Exhibit A which is attached hereto and incorporated herein, and having determined that said complaint has been properly sworn to and having found that there exists probable cause for the issuance of process, based upon the affidavit of probable cause which is attached hereto and incorporated herein as Exhibit B, you are hereby commanded in the name of the State of Delaware, to take **HILLARD M. WINN** accused, and bring same before

**Justice of the Peace Court 11, FORTHWITH, to answer said charges**

GIVEN UNDER MY HAND, this 5th day of March AD, 2006.

_____
Judge/C_____

Executed on **March 05, 2006** by _____ #2479

Case Number: **06 03 002909**  Warrant Number: **92 06 001494**  Arrest Number: _____

A-1

State of Delaware vs. **HILLARD M. WINN**                    Case Number: 06 03 002909

### Exhibit A

Charge Sequence: 001        Police Complaint Number: 32 06 025964  Arrest Number: 227550
Charge: **Possession of a Deadly Weapon During the Commission of a Felony**
In Violation of 11 Del.C. § 1447 0000 F B
Location: 106 AVALON BLDG - Bear, 19701

TO WIT: HILLARD M WINN, on or about the 5th day of MARCH, 2006, in the County of NEW
CASTLE, State of Delaware, did knowingly possess a deadly weapon during the commission of a felony
by possessing BURGLARY 1ST, a deadly weapon, during the commission of BURGLARY 1ST. To
wit: did have a crow bar in his possession.

Charge Sequence: 002        Police Complaint Number: 32 06 025964  Arrest Number: 227550
Charge: **Burglary First Degree Dwelling Night Physical Injury to Person Not Participant**
In Violation of 11 Del.C. § 0826 0002 F C
Location: 106 AVALON BLDG - Bear, 19701

TO WIT: HILLARD M WINN, on or about the 5th day of MARCH, 2006, in the County of NEW
CASTLE, State of Delaware, did knowingly enter or remain unlawfully in a dwelling at night located at
106 . AVALON BLDG., Newark 19702with the intent to commit the crime of ASSAULT 2ND ME
therein and while in said dwelling did cause physical injury to Ruth A. Bocelli, who was not a
participant in the crime by throwing a crowbar at her and striking her in the head causing swelling and a
contusion to same.

Charge Sequence: 003        Police Complaint Number: 32 06 025964  Arrest Number: 227550
Charge: **Assault Second Degree Recklessly or Intentionally Causes Phys Injury Weapon**
In Violation of 11 Del.C. § 0612 00A2 F D
Location: 106 AVALON BLDG - Bear, 19701

TO WIT: HILLARD M WINN, on or about the 5th day of MARCH, 2006, in the County of NEW
CASTLE, State of Delaware, did recklessly intentionally cause physical injury to RUTH ANN
BOCELLI by means of a deadly weapon, to wit: did throw a crow bar a Ruth Bocelli striking her in the
head and causing swelling and a contusion to same.

Charge Sequence: 004        Police Complaint Number: 32 06 025964  Arrest Number: 227550
Charge: **Aggravated Menacing**
In Violation of 11 Del.C. § 0602 000B F E
Location: 106 AVALON BLDG - Bear, 19701

TO WIT: HILLARD M WINN, on or about the 5th day of MARCH, 2006, in the County of NEW
CASTLE, State of Delaware, did by displaying what appears to be a deadly weapon, intentionally place
RUTH ANN BOCELLI in fear of imminent physical injury, to wit: did swinga crow bar at Ruth Bocelli
prior to throwing same at her.

A-2

State of Delaware vs. **HILLARD M. WINN**                    Case Number:  06 03 002909

Charge Sequence: 005        Police Complaint Number: 32 06 025964  Arrest Number:
Charge: **Possession of a Deadly Weapon By Person Prohibited**
In Violation of 11 Del.C. § 1448 000B F F
Location: 106 AVALON BLDG - Bear, 19701
TO WIT: HILLARD M WINN, on or about the 5th day of MARCH, 2006, in the County of NEW
CASTLE, State of Delaware, did have in his possession CROW BAR, a deadly weapon defined under
11 DEL. C. sec 222(5), after having pled guilty convicted in Criminal Action No(s) 9506006838 in the
Superior Court of the State of Delaware in and for NEW CASTLE COUNTY on 010792 of the charges
of ROBBERY SECOND.

Charge Sequence: 006        Police Complaint Number: 32 06 025964  Arrest Number:
Charge: **Terroristic Threatening**
In Violation of 11 Del.C. § 0621 00a1 M A
Location: 106 AVALON BLDG - Bear, 19701
TO WIT: HILLARD M WINN, on or about the 5th day of MARCH, 2006, in the County of NEW
CASTLE, State of Delaware, did threaten to commit a crime likely to result in death or serious injury to
person or property, to wit: did state he was going to kill Ruth Bocelli and put her in the ground.

A3

State of Delaware vs. **HILLARD M. WINN**                    Case Number: 06 03 002909

## Exhibit B

SBI Number: **00152383**      Also Known As:
Date of Birth/Age: **04/09/1965 (40)**        Sex: **Male**          Race: **Black**
Eye Color: **Brown**        Hair Color: **Gray**      Height: **5'10"**        Weight: **185 lbs**
Driver's License:        Social Security Number: **221603239**

Address: **718 N scott ST**                    Next of Kin, Address, Employer
        **Wilmington, DE 19805**              **ROSLIE MINUS**
Phone:                              **710 RYSING DR**
                                **EDGMOORE**
Employer:                          **WILMINGTON, DE 19809**
                                Phone: **3027619667**

        **(302) 479-7500**
Date and Times of Offense: Between **03/05/2006 at 0020 and 03/05/20060045**
Location of Offense: **106 AVALON BLDG - Bear, 19701**

Your affiant OFC. DEBORAH PROVENZA can truly state that:

1. Your affiant is a sworn police officer for the New Castle County Police Department and has been since November 1996. Your affiant is currently assigned to the Patrol Division.

2. On 030506, your affiant responded to 106 Avalon Building, Newark, De 19702, which is in the County of New Castle, State of Delaware for a Burglary in Progress.

3. Upon arrival, your affiant and several other officers were confronted with several subjects exiting the residence. The following subjects were identified as they were taken into custody, Hillard Winn (040965), Daekwon Rollins (050677), and Dominique Benson (101690). There were two females that were also detained as they exited the building Melissa Gordon (061680) and Alberta Grant (012760).

4. Your affiant responded to the location where Ruth Boccelli (012563) was located. Your affiant who responded back to the scene with Ms Boccelli for a show up. Ms Boccelli positively identified all the above subjects being in her residence. Ms Boccelli stated that Hillard Winn (T.C.) was the main problem. Ms Boccelli advised that Hillard Winn came banging on her front door and forced his way in. Ms Boccelli stated that Hillard Winn came into her rear bedroom armed with a crow bar. Ms Boccelli advised that Hillard Winn began swinging the crowbar at her, and eventually threw it at her causing a contusion and swelling to the left temple area.

5. Ms Boccelli stated that she observed a black semi-automatic handgun in his waistband. Ms Boccelli advised that Hillard Winn continued to assault her about the apartment while Daekown Rollins (Pooh) tried to get him to stop. Ms Boccelli stated that Hillard Winn stated he was going to kill her and put her in the ground. Ms Boccelli advised that she convinced Hillard Winn to let her go change and she responded to the rear bedroom window and jumped. Ms Boccelli stated that she jumped over the fence and fled to the church to call the police.

6. All the above subjects were detained and transported back to headquarters for interviews. Your affiant spoke with Melissa Gordon (061680) after miranda was waived. Ms Gordon stated that she was with (Pooh) Daekown Rollins and (T.C.) Hillard Winn in the vehicle and Hillard Winn stated that he needed to get his clothes. Ms Gordon advised that she was in the vehicle while Daekown Rollins and Hillard Winn responded up to the apartment. Ms Gordon stated that about 20 minutes passed and Daekown Rollins responded back to the vehicle with a crow bar and said Hillard Winn is beating up that lady you need to come back and help. Ms Gordon stated that she responds upstairs to the apartment and observes Hillard Winn assaulting Ruth Boccelli and she and Daekown attempt to stop him. Ms Gordon stated that Daekown Rollins responds into the apartment and pulls (T.C.) Hillard Winn off of the lady and they walk out back. Ms Gordon stated that she waited outside and Hillard Winn and Daekown Rollins respond back upstairs and the police arrive.

7. Your affiant with the assistance of Ofc. Godwin interviewed the other persons above. Ofc. Godwin interviews

Affiant

Sworn and subscribed to before me this 5th day of March AD 2006.

Judge/Commissioner/Court Official

A4

State of Delaware vs. **HILLARD M. WINN**                    Case Number:  06 03 002909

Daekown Rollins after miranda was waived. Daekown Rollins provides a similar incident to that of Ms Gordon. Writer interviewed Alberta Grant after miranda was waived. Ms Grant advised that she got involved after she was contacted by Daekown Rollins and Dominique Benson that T.C. (Hillard Winn) was assaulting Ruth Boccelli. Ms Grant advised that she ran over to the residence to help when the police arrived. Ofc. Godwin spoke with Dominique Benson after miranda and parental permission. Dominique could not provide much information pertaining to this incident.

8. Your affiant interviewed Hillard Winn about the incident after he waived miranda. Mr Winn stated that he responded over to the residence to obtain his personal belongings because he left them there until he had a place to stay. Mr Winn advisedthat originally no one answered the front door and he got really mad. Mr Winn stated that he be gan banging on the front door and a tall black male opened the door. Mr Winn advised that he walked right into the residence looking for Ruth Boccelli to get his things. Mr Winn stated that he never touched Ruth Boccelli but he did throw things around the apartment. Mr Winn denied any thing involving a weapon or assaultive behavior.

9.  Your affiant inquired through deljis and found that Hillard Winn pled guilty to Robbery 2nd on 010792 (CN 9506006838) making him a person prohibited.

Affiant: OFC. DEBORAH PROVENZA (2479) of New Castle County PD

| Victims: | Date of Birth | Relationship Victim to Defendant |
|---|---|---|
| RUTH ANN BOCELLI | 01/25/1963 | Relationship Undetermined |
| SOCIETY/PUBLIC | | Victimless Crime |

Affiant

Sworn to and subscribed to before me this 5th day of March AD, 2006.

Judge/Commissioner/Court Official

33

Provenza - Cross

1    A. Like I said, this is a brief synapsis. What
2    she said was that she heard the pounding --
3    Q. Well --
4        THE COURT: Mr. Winn, you have to let the
5    witness finish your question before you ask another
6    one.
7    A. She heard the pounding on the door, Smoke
8    said whoever's pounding on your door is going to
9    break it down. She said then she woke up with you --
10   someone might not -- might hear something, but
11   they're waking up out of bed and looking up and
12   you're standing in front of her with a crowbar.
13   Q. But she can have a conversation with a
14   person about somebody banging on her door, she can
15   hear somebody banging on her door, and she can talk
16   to somebody about it, but she's not really woke, and
17   through that time he opens the door, a person comes
18   in her room, she don't know they're in her room, she
19   wakes up from a punch in the face.
20       Does that sound realistic to you?
21   A. That was her statement.
22   Q. And you're the investigator.
23       Okay. All right. She said that she was in

34

Provenza - Cross

1    her pajamas and she urinated on herself, right?
2    A. Correct.
3    Q. She went to change her clothes. So when she
4    left, when you picked her up she had pants on. And
5    in this statement she only told you she urinated
6    once, right?
7    A. She stated that -- she didn't say once or
8    twice, she said she urinated on herself.
9    Q. Well, she only gave you one example in here.
10   So could it mean five times, or could it mean one
11   time or three times?
12   A. I don't know. It was her statement. She
13   said that she was scared, that she urinated on
14   herself.
15   Q. You was taking this statement, what did you
16   consider it as?
17   A. I took it that she was scared and she
18   urinated on herself. I didn't ask how many times.
19       MR. WINN: Your Honor, can I let the jury
20   see these pictures?
21       THE COURT: Yes. Have they all been  A6
22   introduced into evidence? I understand the State has
23   no objection, I understand?

35

Provenza - Cross

1        MS. WHITE: That's correct, your Honor.
2        THE COURT: So they'll be introduced as
3    Defendant's Exhibits 1, 2 and 3. They may then be
4    shown to the jury. And let's have two in the first
5    row, one in the second row. And, again, when the
6    jury looks at them, you're not allowed to discuss
7    them, just observe them in silence, and one or more
8    jurors can look at the picture at the same time.
9    BY MR. WINN:
10   Q. Um...
11       THE COURT: Excuse me. What we need to do
12   now, since you've asked they go to the jury, is get
13   them marked, give them to the jury, and we'll have to
14   hold off any questioning until the jury's finished
15   seeing the photographs.
16       THE BAILIFF: Publishing the photos,
17   your Honor.
18       (Jury views photographs.)
19       THE COURT: The jury has completed its view
20   of the pictures, so you may continue with any further
21   cross-examination questions.
22   BY MR. WINN:
23   Q. All right. In your, in your statement here

36

Provenza - Cross

1    she says that I woke her up standing over top of her
2    with a crowbar swinging it at her and asking her
3    where is my shit, right?
4    A. Yes.
5    Q. But in her testimony yesterday she said I
6    woke her up by punching her in the face. And here
7    you don't say anything about waking her up, punching
8    her in her face. Is that because it's only a brief
9    synapsis of what the statement was?
10   A. I haven't listened to the micro cassette
11   recently, so I can't say 100 percent.
12   Q. Well, if she told you I woke her up by
13   punching her in her face, don't you think that would
14   have been important enough to put in here?
15   A. Like I stated several times, it's a brief
16   synapsis of the incident.
17   Q. In your affidavit of probable cause for
18   arrest, I believe you stated that I hit her in the
19   head, I hit her in the temple area with a crowbar,
20   right?
21   A. If that's what it states. I don't have
22   that.
23   Q. Evidently that's what she says she said to

37

Provenza - Cross

1  you, right, that I hit her in her temple area?
2     A. I never said that's what she stated.
3     Q. Well, you wrote here --
4       MR. WINN: And can I let her see this?
5       THE COURT: Yes. The bailiff can hand the
6  document to the witness.
7       (Bailiff hands picture to witness.)
8  BY MR. WINN:
9     Q. If you don't mind, you can read the whole
10  thing, I don't mind.
11     A. Well, I need to answer your question first.
12       THE COURT: What is your question?
13       MR. WINN: Go ahead.
14       THE WITNESS: You stated that, you wanted to
15  know if it was where she, it struck her was in the
16  temple area, correct?
17  BY MR. WINN:
18     Q. Yeah. That's what you put in there.
19     A. Yes, I did state that you eventually threw
20  it and caused a contusion and swelling to the left
21  temple area.
22     Q. Okay. So evidently she told you that I hit
23  her with the crowbar in her temple area, right?

38

Provenza - Cross

1     A. No. That's not --
2     Q. I threw it and it hit her in her temple
3  area, she told you that?
4     A. She didn't say where it hit her, like I
5  stated earlier.
6     Q. Then why did you put it in there if she
7  didn't say it?
8     A. Because that was the major injury that she
9  sustained that night, that I could observe, so that's
10  why I put it in there.
11     Q. So you can just automatically make it up and
12  say, well, it hit her in the temple area?
13     A. It's not made up, sir.
14     Q. Well, if she didn't actually tell you it hit
15  her in the temple area, you're actually saying on
16  paper that it hit her in the temple, what is it?
17     A. If you recall, I stated earlier that she
18  wasn't sure that if it hit her in the head area or
19  the hip area because she was crawled up in a ball.
20     Q. That's what you said in this report --
21     A. That's the report --
22     Q. An affidavit for my arrest, that's the
23  affidavit you used to arrest me on --

*A-7*

39

Provenza - Cross

1     A. It's because she sustained an injury --
2       THE COURT: Let Mr. Winn finish his
3  question.
4       THE WITNESS: I'm sorry.
5  BY MR. WINN:
6     Q. You're submitting that to a judge as
7  reasonable cause to arrest me. So that's supposed to
8  be factual evidence that you're putting forth to a
9  judge to make a decision to arrest me, and you're
10  telling him factually that she told you, or that it
11  was thrown and hit her in the head and she suffered a
12  wound from that thing hitting her in the head, that's
13  what you're saying factually?
14     A. I came to the conclusion through the
15  investigation that since she couldn't determine if it
16  hit her in the head or the hip, that the throwing of
17  the crowbar did at least, from the injury that I saw
18  on her temple area, was sustained by the crowbar
19  striking her in the head.
20     Q. Okay. But she also told you that she was
21  punched in the face. So what made you decide that
22  the injury came from the crowbar rather than a fist?
23     A. I never testified that she told me that.

40

Provenza - Cross

1  That was from her statements yesterday.
2     Q. Well, she told you, she testified yesterday
3  that she was hit in the face. And you're saying that
4  she never told you throughout any of your interviews
5  with her that she was hit in the face?
6     A. Like I stated, I can't say 100 percent
7  because I have not listened to her statements on the
8  micro cassette. What's in my report is a brief
9  synapsis of the incident.
10       MR. WINN: Okay. Let me get that back.
11       THE BAILIFF: (Indicating.)
12       MR. WINN: Thank you.
13     Q. There was no lights, and the crowbar, she
14  says, is black. How could she determine a color if
15  you can't -- could you see in the apartment?
16     A. I could see, yes.
17     Q. Did you take pictures of the apartment?
18     A. No, I did not.
19     Q. It's a crime scene. You said that I threw
20  things all over the place. And from your scenario,
21  it should have been pretty bad, you didn't think
22  there was evidence to take pictures of?
23     A. We're not required to take pictures of a

Provenza - Cross

1  incident. For further details refer to audio
2  cassette."
3          You have this documented as 1:52 in the
4  morning?
5      A. That was the time of her interview, her full
6  interview.
7      Q. That's the time of her interview.
8          On your sheet, your log sheet, you have us
9  being -- what time did you do the line-up, show-up
10  identification done?
11      A. For the show-up it was at zero 105 hours.
12      Q. That's 1:05. You sent us back to police
13  station at what?
14      A. I'm sorry, what?
15      Q. What time.
16      A. What time did we take you back?
17      Q. Yeah. What time did we get escorted back to
18  the police station?
19      A. It looks like people started to be
20  transported at zero 113 hours.
21      Q. Now, you was identifying five people one at
22  a time, right?
23      A. Correct.

Provenza - Cross

1      Q. Now, you said you went and picked Ruth up,
2  you did, went and picked Ruth up from the church.
3  You got her back at 1:05. So how did you take those
4  pictures of Ruth at one o'clock?
5      A. It's an estimated time when the pictures are
6  taken in the report.
7      Q. Well --
8      A. It's not the exact time. Because my watch
9  might say something different than yours, so it's
10  always an estimated time of when evidence is
11  collected.
12      Q. Well, considering your testimony, your
13  estimated time is like an hour off, right?
14      A. No. I said that the pictures were taken at
15  zero 100 hours.
16      Q. Okay. What time -- you took the pictures
17  during her interview, correct?
18      A. Yes.
19      Q. Her interview started at 1:52?
20      A. Correct. It's an estimated time.
21      Q. Is there any facts that you document in your
22  report that's reliable that I can look at and say
23  they're not going to change, those facts aren't going

Provenza - Cross

1  to change?
2          MS. WHITE: Your Honor, I consider that an
3  argumentative question.
4          THE COURT: Overruled. It is
5  cross-examination. You may ask the question.
6          THE WITNESS: I mean, do you want me to go
7  through the entire report?
8  BY MR. WINN:
9      Q. Well, see, here's the thing: You stated in
10  your affidavit of probable -- what is an affidavit of
11  probable cause?
12      A. It's probable cause for a warrant.
13      Q. Okay. And it's a sworn statement, right?
14      A. Correct.
15      Q. And you're swearing that it's, all the
16  information you're putting in here is true?
17      A. True and correct to the best of my knowledge
18  is the way it's sworn to.
19      Q. And you put in here that "Ms. Boccelli
20  advised that Hillard Winn began swinging the crowbar
21  at her and eventually threw it at her causing a
22  contusion and swelling to the left temple area."
23          Ain't that what you put in there?

Provenza - Cross

1      A. Like I said yesterday, yes.
2      Q. That's not true, though, right?
3      A. It was part of the investigation. To the
4  best of my knowledge the injuries that she sustained
5  to her face was from when the crowbar was thrown.
6      Q. Did she tell you that?
7      A. I can't recall her exact statements, I
8  haven't listened to the audiotape.
9      Q. Well, why don't we just listen to her
10  audiotape.
11          MR. WINN: Can we listen to the audiotape
12  that she gave to her?
13          THE WITNESS: It's in evidence right there
14  on the table.
15          MR. WINN: Can we hear it?
16          THE COURT: Do you wish to play a portion of
17  the tape?
18          MR. WINN: I want it admitted into evidence.
19          THE WITNESS: Your Honor, just so you're
20  aware, it's a micro cassette, which I don't know if
21  we have one.
22          MS. WHITE: I have made the micro cassette
23  into a regular cassette.

109

Provenza - Cross

1    THE COURT: How long is the tape?

2    THE WITNESS: It's, I would estimate

3  approximately 15 minutes, if that.

4    THE COURT: May I, let me meet with Mr. Winn

5  and Ms. White at sidebar with the court reporter.

6    (The following took place at sidebar:)

7    THE COURT: So this is a micro cassette tape

8  of approximately 15 minutes in length?

9    MS. WHITE: Seems about right.

10    THE COURT: Any objection from the State to

11  it being played?

12    MS. WHITE: No.

13    THE COURT: Mr. Winn, if it's your wish to

14  play the entirety of the tape, I'll do that. Is that

15  your wish?

16    MR. WINN: Well, yes. Yes, I want to, yes,

17  I want the whole tape played.

18    THE COURT: All right. Then, we'll play

19  that tape.

20    (Sidebar concluded.)

21    MS. WHITE: Without objection, the State --

22  is this going to be the State's next exhibit?

23    THE COURT: Well, it's really a defense

110

Provenza - Cross

1  exhibit because it's being introduced by the

2  defendant, although it's the State's object.

3    THE CLERK: Defendant's Exhibit No. 5.

4    (Portion of Ms. Boccelli audiotape statement

5  played, 2:33 to 2:38 p.m.)

6    MR. WINN: Can we stop that for one second?

7  Did you hear that?

8  BY MR. WINN:

9    Q. She said he threw it at me and it missed me?

10    A. She said it hit her.

11    MR. WINN: Can you just, it's a couple

12  seconds back, can you just play that back?

13    (Portion of Ruth Boccelli audiotape played.)

14    MR. WINN: Stop it.

15  BY MR. WINN:

16    Q. Now, what part of that "miss" did you

17  interpret it as hit?

18    A. That sounded like "hit" to me from here.

19    Q. Cha, cha, cha, cha.

20    A. But that's not the completion of her

21  statement, either.    A9

22    MR. WINN: Well, can you please finish it?

23    THE COURT: Continue playing the tape,

111

Provenza - Cross

1  please.

2    (Ruth Boccelli audiotape played.)

3  BY MR. WINN:

4    Q. Well, did you hear it? Can you tell us

5  where it's at? You heard the whole tape like us.

6    A. Like I stated, it sounded like hit to me.

7  And I wouldn't have put it in a warrant that I'd

8  sworn to if it wasn't incorrect.

9    Q. But you just did. I mean, that's the

10  statement that's in the warrant. Can you show me in

11  the statement, where it's in the statement?

12    A. There's other statements that weren't

13  recorded, as well. I mean, not, the entire

14  statement, while she was going back to the scene with

15  me she was talking to me the whole time.

16    Q. So, again, is there any facts that you have

17  that don't change when you need them to change?

18    A. I haven't changed my statements at all.

19    Q. Well, you said, you testified, right, that

20  the things you're putting in your report are a brief

21  synapsis of the things you took from the tape. But

22  now that you look and listen to the tape, and it's

23  not in the tape, you're saying it's coming from

112

Provenza - Cross

1  other --

2    A. It stated -- she stated that you threw it

3  and it hit her, is what I understood that to say.

4    Q. I don't understand that, though. I mean,

5  unless --

6    THE COURT: You can't make statements, you

7  can only ask questions.

8    MR. WINN: Okay, whatever. All right.

9    THE COURT: Any further questions of this

10  witness?

11    MR. WINN: Yeah.

12  BY MR. WINN:

13    Q. You made out an affidavit in another sworn

14  affidavit charging me with the offense of

15  intimidating a witness. And it was entered into

16  evidence here a letter, an envelope that I was

17  supposed to have sent to Ms. Boccelli. Would you

18  mind reading -- I'll give it to you.

19    MR. WINN: Can I give this to her, or have

20  someone give it to her?

21    THE COURT: Yes.

22    MS. WHITE: Can I see what it is, please?

23    MR. WINN: Yes (indicating).

45

Rollins - Cross

1   a minute because there's people that's in the house
2   that don't want to answer the door?
3       A. Yeah. You said you did see her or somebody
4   in there with her, and they wouldn't answer the door.
5       Q. I popped the trunk, I went in the trunk.
6   Did you see me take anything out of the trunk?
7       A. No, I didn't.
8       Q. You followed me upstairs?
9       A. Right.
10      Q. Did you see anything in my hands when I went
11  upstairs?
12      A. No, I didn't.
13      Q. When we got to the door, I'm banging on the
14  door. Did I force the door open, or did the door --
15  did somebody open the door?
16      A. No. The guy that was sitting there in the
17  hood opened the door, that was on the other side of
18  the door opened the door.
19      Q. Did you see a crowbar leave my hand and fall
20  on the floor?
21      A. The crowbar was on the floor. I picked it
22  up from the floor and put it in the trunk.
23      Q. But you never actually seen the crowbar

46

Rollins - Cross

1   leave my hand from -- at what point did you see the
2   crowbar?
3       A. I think it was after you all started talking
4   about where your clothes was, and stuff like that.
5   Actually, after he opened the door, after that,
6   that's when the crowbar was on the floor.
7       Q. How long after you seen the crowbar did you
8   pick the crowbar up?
9       A. I think it was immediately after I seen it I
10  picked it up.
11      Q. And what you do with it?
12      A. I put it in the trunk.
13      Q. Did you immediately take it to the trunk?
14  Did you take it later on to the trunk, or did you --
15      A. I think it was, I think it was when I went
16  out to go talk to Moms about the clothes, or
17  whatever, that's when I put it in there, I think.
18      Q. At anytime did you see me put my hands on
19  Ruth?
20      A. No, I didn't.
21      Q. In no kind of way, no smack, no push, no
22  punch, no kick, no nothing?
23      A. No, I didn't.

47

Rollins - Cross

1       Q. When the police came, where were you?
2       A. I was outside. The thing is, I was trying
3   to get ready for you to bring your clothes
4   downstairs, I thought you was going to bring your
5   clothes down, so that's why I had somebody bring the
6   car around the back, that's where I was parked in the
7   fire lane.
8       Q. At some point did you see me inside the
9   trash Dumpster getting bags out of the Dumpster?
10      A. Yes.
11      Q. And is that when you went and got the car,
12  or had somebody get the car?
13      A. Yes.
14      Q. When the police came, when they first
15  approached you, where were you at?
16      A. I was standing outside, like right outside
17  of the building.
18      Q. In the back of the building by the car?
19      A. Yes.
20      Q. Now, the Dumpster, did I take bags out of
21  the Dumpster?
22      A. Yes, you did.
23      Q. And they're my stuff that's sitting outside

48

Rollins - Cross

1   in the Dumpster?
2       A. Right outside the Dumpster on the floor,
3   right on the ground.
4       Q. If you're at the trunk of your car and you
5   turn around and you put your back to the trunk of
6   your car, what are you facing?
7       A. The Dumpster.
8       Q. All right. When the police arrested you,
9   what did they say -- did they say anything to you?
10  How did they approach you?
11      A. I don't understand your question.
12      Q. Okay. Tell me what happened when the police
13  came, when they came and ran up on you, or seized
14  you, or arrested you, or when they first made contact
15  with you, how did that happen?
16      A. I was walking up the steps to try to get my
17  mom to tell her to come downstairs. And that's when
18  the door opened, flew open. And all I seen was the
19  dog and the gun. And I didn't know if it was the
20  police or somebody trying to rob me, so I immediately
21  ran up the steps.
22      Q. And they said, "Halt"?
23      A. And they told me to freeze, and I stopped.

A-10

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| THE STATE OF DELAWARE | ) |
| | ) |
| V. | ) INDICTMENT BY THE GRAND JURY |
| | ) |
| | ) I.D. #        0603002909 |
| HILLARD M. WINN | ) |

The Grand Jury charges **HILLARD M. WINN** with the following offenses:

### COUNT I. A FELONY

#N_____

**BURGLARY FIRST DEGREE** in violation of Title 11, Section 826 of the Delaware Code of 1974, as amended.

**HILLARD M. WINN,** on or about the 5th day March, 2006, in the County of New Castle, State of Delaware, did knowingly enter or remain  unlawfully in a dwelling located at 106 Avalon Building at night, with the intent to commit the crime of Assault Second Degree, therein, and when, in effecting entry or when in said dwelling or in immediate flight therefrom, he or another participant in the crime did cause physical injury to Ruth Ann Bocceloli, who was not a participant in the crime.

### COUNT II. A FELONY

#N_____

**ASSAULT SECOND DEGREE** in violation of Title 11, Section 612 of the Delaware Code of 1974, as amended.

**HILLARD M. WINN,** on or about the 5th day of March, 2006, in the County of New Castle, State of Delaware, did intentionally or recklessly cause physical injury to Ruth Ann Boccelli, by



means of a crowbar, a deadly weapon or a dangerous instrument as those terms are defined in Title

11, Section 222 of the Delaware Code of 1974, as amended.

### COUNT III. A FELONY

#N_____

**POSSESSION OF A DEADLY WEAPON DURING THE COMMISSION OF A**

**FELONY** in violation of Title 11, Section 1447 of the Delaware Code of 1974, as amended.

**HILLARD M. WINN**, on or about the 5th day of March, 2006, in the County of New Castle,

State of Delaware, did knowingly possess a deadly weapon during the commission of a felony by

possessing a crowbar, a deadly weapon as defined by Title 11, Section 222 of the Delaware Code

of 1974, as amended, during the commission of Burglary First Degree and/or Assault Second

Degree, a felony as set forth in Count I and/or II of this Indictment, which is incorporated herein by

reference.

### COUNT IV.  A MISDEMEANOR

#N_____

**TERRORISTIC THREATENING** in violation of Title 11, Section 621 of the Delaware

Code of 1974, as amended.

**HILLARD M. WINN**, on or about the 5th day March, 2006, in the  County of New

Castle, State of Delaware, did threaten to commit a crime likely to result in death or serious



injury to the person or property of Ruth Ann Boccelli, by threatening to kill her.

A TRUE BILL

_____
(FOREPERSON)

_____
ATTORNEY GENERAL

_____
DEPUTY ATTORNEY GENERAL



A13

61

1    a person representing himself is to zealously and
2    effectively advance the claims of themselves or the party
3    she represents within the bounds of the law. An attorney or
4    a party representing himself may argue all reasonable
5    inferences from evidence in the record. However, it is not
6    proper for an attorney or person representing himself to
7    state his or her opinion as to the truth or falsity of any
8    testimony or evidence, or the guilt or innocence of an
9    accused. What an attorney or a person representing himself
10   personally thinks or believes about the testimony or
11   evidence in a case is not relevant, and you are instructed
12   to disregard any personal opinion or belief concerning
13   testimony or evidence which an attorney or person
14   representing himself offers during opening or closing
15   statements or at any other time during the course of the
16   trial.
17         Further, what an attorney or person representing
18   himself states in his or her opening or closing arguments is
19   not evidence. Evidence consists of testimony from witnesses
20   testifying from the witness stand and exhibits introduced
21   through their testimony. If your recollection of that
22   evidence disagrees with anything said about it either by
23   counsel or by the Court, you should be guided entirely by

62

1    your own recollection. It's this evidence only which you
2    may consider in reaching your verdicts.
3          The defendant is charged in this Court by an
4    indictment. An indictment is a mere accusation against the
5    defendant. It is not in itself any evidence of the guilt of
6    the defendant. You should not allow yourselves to be
7    influenced in any way, however slight, by the fact that an
8    indictment has been returned against this defendant.
9          Whether this defendant is guilty or not guilty is
10   for you to determine solely from the testimony that has been
11   presented during the trial. The determination of the true
12   facts and the drawing of any inferences from the proven
13   facts are matters solely within your province.
14         The indictment reads as follows: Count 1,
15   burglary first degree reads that Hillard M. Winn, on or
16   about March 5, 2006, in New Castle County, Delaware, did
17   knowingly enter or remain unlawfully in the dwelling located
18   at 106 Avalon Building at night, with the intent to commit
19   the crime of assault second degree therein; and when, in the
20   -- in effecting entry, or when in said dwelling or in
21   immediate flight therefrom, he or another participant in the
22   crime did cause physical injury to Ruth Ann Bocelli, who is
23   not a participant in the crime.

63

1          Count 2 is assault second degree and it reads
2    that the defendant, on or about the same date and place, did
3    intentionally or recklessly cause physical injury to Ruth
4    Ann Bocelli by means of a crowbar or tire iron, a deadly
5    weapon or dangerous instrument as those terms are defined by
6    law.
7          Count 3 is possession of a deadly weapon during
8    the commission of a felony. And it reads that the
9    defendant, on or about the same date and place, did
10   knowingly possess a deadly weapon during the commission of a
11   felony by possessing a crowbar or tire iron, a deadly weapon
12   as defined by law, during the commission of burglary first
13   degree and/or assault second degree, a felony as set forth
14   in Counts 1 and/or 2 of this indictment which is
15   incorporated herein by reference.
16         Count 4, the last count, is misdemeanor
17   terroristic threatening. And it reads that the defendant on
18   or about that date and place, did threaten to commit a crime
19   likely to result in death or serious injury to the person or
20   property of Ruth Ann Bocelli by threatening to kill her.
21         Delaware law defines the offense of burglary
22   first degree as follows: A person is guilty of burglary in
23   the first degree when the person knowingly enters or remains

64

1    unlawfully in a dwelling at night, with the intent to commit
2    a crime therein; and when, in effecting entry or when in the
3    building or in immediate flight therefrom, the person or
4    another participant in the crime causes physical injury to
5    any person who is not a participant in the crime.
6          In order to find defendant guilty of burglary in
7    the first degree, you must find that the following elements
8    have been established beyond a reasonable doubt:
9          One, the defendant entered or remained unlawfully
10   in a dwelling; and, two, the place where the defendant
11   entered or remained unlawfully was a dwelling; and, three,
12   the defendant acted knowingly; and, four, defendant actions
13   occur at night; and, five, the defendant intended to commit
14   a crime in the dwelling -- in this case, assault second
15   degree or the lesser-included offense of assault third
16   degree; and, six, at the time of effecting entry or when in
17   the dwelling or immediate flight therefrom, the defendant
18   caused physical injury to any person who is not a
19   participant in the crime -- in this case, to Ruth Ann
20   Bocelli.
21         A person enters or remains unlawfully in a place
22   when the person has no license or privilege to be there;
23   that is, the person does not have the permission or consent

A-14

**65**

1 of the owner of the place to be there. Dwelling means a
2 building which is normally occupied by a person lodging
3 there at night. Knowingly means that he was aware that the
4 property involved was a dwelling and that he was entering or
5 remaining unlawfully. Night means that the offense occurred
6 during the period between 30 minutes after sunset and
7 30 minutes before sunrise. Physical injury means any
8 impairment of physical condition or substantial pain.
9 　　　If, after considering all of the evidence, you
10 find that the State has established beyond a reasonable
11 doubt that the defendant acted in such a manner as to
12 satisfy all the elements that I have just stated at or about
13 the date and place stated in the indictment, you should find
14 the defendant guilty of burglary first degree. If you do
15 not so find, or if you have any reasonable doubt as to any
16 element of this offense, you must find the defendant not
17 guilty of burglary first degree.
18 　　　Count 2 is assault second degree. Delaware law
19 defines the offense of assault second degree in pertinent
20 part as follows:
21 　　　A person is guilty of assault in the second
22 degree when the person recklessly or intentionally causes
23 physical injury to another person by means of a deadly

**66**

1 weapon or dangerous instrument.
2 　　　In order to find defendant guilty of assault
3 second degree, you must find that the following elements
4 have been established beyond a reasonable doubt:
5 　　　One, defendant caused physical injury to the
6 victim -- in this case, Ruth Ann Bocelli -- by using a
7 crowbar or tire iron; and, two, the defendant acted
8 recklessly or intentionally; and, three, the defendant used
9 a deadly weapon or a dangerous instrument -- in this case, a
10 crowbar or tire iron.
11 　　　Physical injury means impairment of physical
12 condition or substantial pain. Deadly weapon includes a
13 billy or bludgeon or any dangerous instrument which is used
14 or attempted to be used to cause death or serious physical
15 injury. Dangerous instrument means any instrument, article
16 or substance which, under the circumstances in which it is
17 used, attempted to be used, or threatened to be used, is
18 readily capable of causing death or serious physical injury.
19 　　　Serious physical injury means physical injury
20 which creates a substantial risk of death, or which causes
21 serious and prolonged disfigurement, or prolonged impairment
22 of health, or prolonged loss or impairment of the function
23 of any bodily organ.

**67**

1 　　　Recklessly means the defendant was aware of and
2 consciously disregarded a substantial and unjustifiable risk
3 that physical injury of another person would result from his
4 conduct. The risk must be of such a nature and degree that
5 disregard thereof constitutes a gross deviation from the
6 standard of conduct that a reasonable person would observe
7 in the situation.
8 　　　Intentionally means that it was defendant's
9 conscious object or purpose to cause physical injury to
10 another person.
11 　　　If, after considering all the evidence, you find
12 that the State has established beyond a reasonable doubt
13 that the defendant acted in such a manner as to satisfy all
14 the elements that I have just stated at or about the date
15 and place stated in the indictment, you should find the
16 defendant guilty of assault second degree. If you do not so
17 find, or if you have a reasonable doubt as to any element of
18 this offense, you must find the defendant not guilty of
19 assault second degree.
20 　　　If you find the defendant not guilty on the
21 charge of assault second degree, or if, after reasonable
22 effort, you are at an impasse and are unable to reach a
23 unanimous verdict on the charge of assault second degree,

**68**

1 then you may go on to consider the lesser-included offense
2 of assault third degree.
3 　　　Delaware law defines the offense of assault third
4 degree in pertinent part as follows:
5 　　　A person is guilty of assault in the third degree
6 when the person intentionally or recklessly causes physical
7 injury to another person. In order to find the defendant
8 guilty of assault third degree, you must find that all the
9 following elements have been established beyond a reasonable
10 doubt:
11 　　　One, the defendant caused physical injury to Ruth
12 Ann Bocelli; and, two, defendant acted intentionally or
13 recklessly. Recklessly has been previously defined for you.
14 The risk must be of such a nature and degree that disregard
15 thereof constitutes a gross deviation from the standard of
16 conduct that a reasonable person would observe in the
17 situation. Intentionally has been previously defined for
18 you. Physical injury means impairment of physical condition
19 or substantial pain.
20 　　　If, after considering all the evidence, you find
21 that the State has established beyond a reasonable doubt
22 that the defendant acted in such a manner as to satisfy all
23 of the elements that I have just stated at or about the date

A 15

69

1  and place stated in the indictment, you should find the
2  defendant guilty of assault third degree. If you do not so
3  find, or if you have any reasonable doubt as to any element
4  of this offense, you must find the defendant not guilty of
5  assault third degree.
6       Count 3 is possession of a deadly weapon during
7  the commission of a felony. Note: If you, the jury, find
8  the defendant not guilty of burglary first degree and not
9  guilty of assault second degree, then the jury must find the
10  defendant not guilty on this count.
11      Delaware law defines the offense of possession of
12  a deadly weapon during the commission of a felony in
13  pertinent part as follows:
14      A person who is in possession of a deadly weapon
15  during the commission of a felony is guilty of possession of
16  a deadly weapon during the commission of a felony. In order
17  to find the defendant guilty of this charge, you must find
18  that all of the following elements have been established
19  beyond a reasonable doubt:
20      One, that the defendant committed a felony -- in
21  this case, the felony charge is burglary first degree and,
22  in Count 2, assault second degree -- and, two, during the
23  commission of the felony, the defendant possessed a deadly

70

1  weapon -- in this case, a crowbar or tire iron -- and,
2  three, defendant acted knowingly.
3       A deadly weapon includes a billy or bludgeon or
4  any dangerous instrument which is used or attempted to be
5  used to cause death or serious physical injury. Dangerous
6  instrument means any instrument, article or substance which,
7  under the circumstances in which it is used, attempted to be
8  used, or threatened to be used is readily capable of causing
9  death or serious physical injury.
10      By possession, I do not mean that the weapon may
11  have been in the area or vicinity of the defendant so that
12  it might have been taken possession of if the defendant
13  wanted to do so. Rather, in order for defendant to be found
14  in possession of a deadly weapon as that word is used in
15  this statute, you must find that the weapon was in the
16  immediate personal possession of or under the immediate
17  control of the defendant so that it was physically available
18  or accessible during the commission of the crime. Defendant
19  acted knowing if he was aware that the deadly weapon was in
20  his possession at the time and place of the alleged offense.
21      If, after considering all the evidence, you find
22  that the State has established beyond a reasonable doubt
23  that the defendant acted in such a manner as to satisfy all

71

1  the elements that I've just stated at or about the date and
2  place stated in the indictment, you should find the
3  defendant guilty of possession of a deadly weapon during the
4  commission of a felony. If you do not so find, or if you
5  have a reasonable doubt reasonable doubt as to any element
6  of this offense, you must find the defendant not guilty of
7  possession of a deadly weapon during the commission of a
8  felony.
9       Count 4 is terroristic threatening. A person is
10  guilty of terroristic threatening when the person threatens
11  to commit any crime likely to result in death or serious
12  injury to person or property. In order to find defendant
13  guilty of terroristic threatening, you must find that the
14  following elements have been established beyond a reasonable
15  doubt:
16      One, defendant threatened to kill Ruth Ann
17  Bocelli; and, two, the threatened crime would likely result
18  in death or serious physical injury to person or property --
19  in this case, Ruth Ann Bocelli -- and, three, defendant
20  acted intentionally or knowingly. I have previously defined
21  intentionally for you. Knowingly means that the defendant
22  was aware that he was threatening to commit a crime likely
23  to result in death or serious injury.

72

1       The statute imposes criminal liability for the
2  use of words. Even if the actor does not intend to actually
3  carry out his threat, the threat itself creates certain
4  identifiable injuries; e.g., mental distress or panic that
5  the criminal code protects against. Thus, the crime is
6  complete when the actor threatens a crime, the commission of
7  which would reasonably entail death or serious injury to a
8  person. Whether the threatened act is completed is
9  immaterial.
10      If, after considering all the evidence, you find
11  that the State has established beyond a reasonable doubt
12  that the defendant acted in such a manner as to satisfy all
13  the elements that I've just stated at or about the date and
14  place stated in the indictment, you should find the
15  defendant guilty of terroristic threatening. If you do not
16  so find, or if you have a reasonable doubt as to either
17  element of this offense, you must find the defendant not
18  guilty of terroristic threatening.
19      There are two types of evidence from which a jury
20  may properly find the facts in a case. One is direct
21  evidence, such as the testimony of an eyewitness. The other
22  is indirect, or circumstantial evidence. That is the proof
23  of facts or circumstances from which the existence or

37

1 courtroom were clearer, not as dark and more defined. But,
2 anyway, the State is directing you to look at the notch on
3 that bruise. And the State submits, if you look at that
4 notch and if you look at that tire iron, they match. They
5 match.
6       Ruth thinks perhaps -- she's not sure -- that
7 when she got hit on the shoulder with the tire iron, this
8 end of it hit her on the eye. And the State submits that is
9 a very real possibility, if you look at the length of the
10 tire iron, the positioning. And you'll see, on the other
11 photographs, the ones that show her eye, which are -- well,
12 State's No. 3, in particular, there is the cut that you see
13 to -- well, this, I believe, is a birthmark on her eye. So,
14 the cut right by her eye lines up with the crowbar having
15 been thrown at her and that pointy end having hit her in the
16 eye. Pattern injury on the arm consistent with that rounded
17 part of the crowbar, Ruth said she was hit with the crowbar,
18 we know the crowbar was there.
19       Now, think about it. Think about this for a
20 minute, ladies and gentlemen. Out of all the potential
21 items in the world that Miss Bocelli could have said she was
22 hit with, because she was woken out of a sleep and it was
23 dark, did she see a crowbar? Ladies and gentlemen, it is a

38

1 hundred percent that she saw the crowbar in the defendant's
2 hand because she could have said it was a riding crop, it
3 was a cord to an electric toaster, it was a snorkel, it was
4 -- think of any object that you can possibly think of. But
5 she said tire iron, and, lo and behold, Poohmere says
6 there's a tire iron and, lo and behold, there is a tire
7 iron. Why is that happening? Because there was a tire iron
8 that he was swinging at her.
9       Now, the defense is going to say, "Oh, she's been
10 inconsistent. She says oh, he was swinging it, he threw it,
11 oh, he missed it." All of those things are possible without
12 being a lie. Could he have been swinging it at her,
13 swinging it but never hitting her, to scare her? Yes. Yes.
14 He probably was swinging it at her, just to scare her but
15 not hitting her with it. Could he have, one time, thrown it
16 at her and hit her with it? Yes. Could he have swung once
17 or twice and missed her? Yes. All of those things could
18 have happened without them being lies. So we know that
19 there's a tire iron and, therefore, the State submits, if
20 you believe beyond a reasonable doubt that the defendant
21 caused her injury by means of a tire iron, crowbar, he is
22 guilty of assault in the second degree. 
23       Now, ladies and gentlemen, you're going to hear,

39

1 when the judge read the instructions, that you also are
2 going to be able to consider, if you do not believe, or if
3 you find him not guilty beyond a reasonable doubt that the
4 injury was caused by a tire iron or a crowbar, you're also
5 going to be able to consider the fact of a lesser-included
6 offense charge of assault in the third degree. That means
7 you could convict him of an assault in the third degree
8 which would allege that he caused her physical injury,
9 period, he recklessly or intentionally caused physical
10 injury to her. Taking the crowbar out of the equation, we
11 also heard that he punched her, he kicked her, he threw her
12 against a wall. And you will see photographs and half
13 photographs and documented by the SANE nurse of almost seven
14 separate injuries to Ruth Bocelli's body: A bruise here,
15 the cut here, the bruises on the inside of the arms, the
16 bruises on the outside of her arm could have been, and the
17 State submits were caused by the defendant not by use of the
18 crowbar, but by use of his feet and/or his hands. And you
19 can convict on assault in the third degree if you do not
20 find him guilty of assault in the second degree -- either
21 one, not both. State submits this is an assault in the
22 second degree, and that's where you should find him guilty.
23 But I am telling you that the Court will be giving you an

40

1 option.
2       Now, why did I start with the assault charge when
3 the very first charge of the indictment is a burglary
4 charge? And I'll explain why. Because one charge sort of
5 builds on the other. And let me backtrack a second before I
6 go on with the burglary.
7       The third count of this indictment is possession
8 of a deadly weapon during commission of a felony. If you
9 find that the defendant had a crowbar or tire iron in his
10 possession, he can be convicted of this possession of a
11 deadly weapon during commission of a felony if you believe
12 beyond a reasonable doubt -- if you believe the State has
13 proven beyond a reasonable doubt that he did possess this
14 tire iron, crowbar, either while he committed the burglary
15 or while he committed the assault. Now, it's either/or in
16 that case.
17       Now, I'll go back to the burglary and, then, I'll
18 go back to this charge again.
19       Burglary alleges that he did enter or remain
20 unlawfully in a dwelling. A dwelling is a place, the judge
21 -- Judge Cooch will tell you it is a place where people
22 sleep at night, it's a dwelling. This is at night. At
23 night is defined, the hours after sunset and before sunrise.

A/7

1 We know this occurred at about midnight, or 40 minutes after

2 midnight, clearly after sunset and before sunrise. So, we

3 know that this is a dwelling. We know beyond a reasonable

4 doubt that it happened at night.

5     And the charge goes on to say, "And while in the

6 dwelling or in flight thereof, he did cause physical injury

7 to Ruth Ann Bocelli." We know she was injured. The only

8 question that you may have left to answer for yourselves is,

9 did the defendant knowingly enter or remain unlawfully?

10     Now, defendant is going to argue to you, ladies

11 and gentlemen, that Smoke let him in. He knocked on the

12 door, he knocked on the door, and Smoke let him in.

13 Therefore, he is going to argue to you, ladies and

14 gentlemen, that he was there lawfully. His belongings were

15 there, she had let him in in the past, he was let in, he had

16 the right to be there. But the logic fails, ladies and

17 gentlemen, the State submits. The logic fails for several

18 reasons:

19     The first is, Ruth had told him, and he admits in

20 his statement, she had told him to get out, "Get your stuff

21 and get out." Chances are, to begin with, he was not

22 welcome there. But that's not it. The code, the charge

23 states that he did either knowingly enter unlawfully or he

42

1 did remain unlawfully. That's what the wording of the code

2 says. And the State subjects -- suggests and submits to

3 you, he remained unlawfully.

4     What does that mean? What does that mean? Think

5 about it. He might have entered lawfully because Smoke let

6 him in. But the minute he made the intent in his mind to

7 assault Ruth in that dwelling, he is not remaining lawfully

8 anymore because, once you form the intent to commit a crime,

9 you can't be in that place lawfully. You're not in a place,

10 committing a crime, lawfully. It's impossible. So, once he

11 started to assault her, even if he had been let in lawfully

12 to begin with, he was no longer in there lawfully when he

13 began his assault on Ruth.

14     So, he remained unlawfully and, while he remained

15 unlawfully in a dwelling at night, he did cause physical

16 injury to Ruth. And he had, when he remained unlawfully, he

17 formed the intent to assault her, to commit a crime.

18 Whether he intended to hit her with a crowbar, assault in

19 the second degree, or whether he intended to just kick her

20 and hit her and punch her, assault in the third degree,

21 while in the building in a dwelling at night, he remained

22 unlawfully and he formed the intent to commit the crime of

23 assault and she was injured. It's burglary in the first

44

1 degree.

2     So, the State submits you will find beyond a

3 reasonable doubt the State has proven burglary in the first

4 degree. I've already gone through assault in the second

5 degree. And I started with possession of a deadly weapon

6 during commission of a felony. And now that I've explained

7 burglary, he can be found guilty of possessing a deadly

8 weapon, the crowbar, whether you find during the commission

9 of a felony. Assault in the second degree is a felony.

10 Therefore, he could be found guilty of this charge based

11 upon assault, or he could be found guilty of this charge

12 based upon the fact that he burglarized somebody. Burglary

13 has a different meaning than we all think, where you go in

14 and steal. It can also be this kind of burglary, as I just

15 said. Anyway, it could be he had the crowbar while he was

16 committing the felony of burglary. Either way, whatever is

17 the State's pleasure -- your pleasure, and the State submits

18 that we have proven both, or either.

19     And, lastly, there is the charge of terroristic

20 threatening. I have a feeling that the defendant isn't even

21 going to deny that he did this. It said, "He did threaten

22 to commit a crime likely to result in death or injury to

23 Ruth Bocelli." She said he said, "I'm going to kill you

1 tonight, Bitch. Clear the trunk. We're going to kill this

2 bitch tonight." He threatened to kill her. State submits

3 you should find him guilty beyond a reasonable doubt of that

4 charge, as well.

5     Now, lastly, defendant is going to argue to you,

6 ladies and gentlemen, that this victim is not to be believed

7 at all -- that she's not a very honest person, she's

8 not a very trustworthy person, she has criminal convictions,

9 she told you she was using illegal electric service, she's a

10 drug user, she's a crack head.

11     She's been clean for six months, ladies and

12 gentlemen. When she came here and put her hand on the

13 Bible, she's not a crack head -- not today. Look at her

14 demeanor on the stand. First of all, look at her demeanor

15 to the 911 call taker. She was hysterical. She was

16 frantic. Her demeanor to Debbie Provenza -- hysterical,

17 upset -- to the SANE nurse three days later. And most

18 importantly, most importantly, the State submits, on the

19 stand, when she testified during the two days that she

20 testified, ask yourselves -- you are the judge of the

21 demeanor of every witness on the stand -- what did she say?

22 She looked right at TC and said, "TC, you know you did

23 this." She said it more than once. "You hit me and beat me



Certificate of Mailing

I, Hillard M. Winn, hereby Certify under penalty of perjury that I have placed one (1) Copy of the enclosed Motion for Release pending Habeas Corpus review in the state Mailing system Address to:

Department of Justice
Carvel State office Building
820 North French street
Wilmington, Delaware 19801

On this 11th day of July, 2008

I/M: _Mr. Hilliard et Wiest_

SBI# _152353_ _____ UNIT _SHU 19_

**DELAWARE CORRECTIONAL CENTER**
**1181 PADDOCK ROAD**
**SMYRNA, DELAWARE  19977**



02.14
\$ 02.36⁰
0004518975
MAILED FROM ZIP CODE 19977

U.S. _District Court of Delaware_

    _844 North King st._

    _Lockbox 18_

    _Wilmington, Delaware_

        _19801_